**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
James M. Treglio (SBN 228077)
Isabel Rose Masanque (SBN 292676)
classactions@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
(415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of themselves and all others similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA WASHINGTON, DENNIS GUERETTA, and REBECCA MATULIC, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH, a California nonprofit corporation; MEMORIAL HEALTH SERVICES, INC., a California nonprofit corporation; MEMORIALCARE MEDICAL FOUNDATION, a California nonprofit foundation; and DOES 1-100, inclusive<br><br>Defendants. | CASE NO.<br><br>**CLASS COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT (Cal. Penal Code §§ 632 & 637.2);**<br>**(2) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, ET SEQ.);**<br>**(3) VIOLATION OF UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.);**<br>**(4) INVASION OF PRIVACY - INTRUSION UPON SECLUSION;**<br>**(5) FEDERAL WIRETAP ACT, 28 U.S.C. § 2510 *et seq*.**<br><br>**DEMAND FOR JURY TRIAL** |

---

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

Class Representative Plaintiffs Christina Washington, Dennis Gueretta, and Rebecca Matulic ("Plaintiffs"), by and through their attorneys, individually and on behalf of others similarly situated, allege upon information and belief as follows:

## NATURE OF THE ACTION

1.      This class action challenges Defendants' practice of recording confidential physician–patient conversations during medical appointments through the use of an "ambient AI" clinical documentation tool and transmitting those conversations to third-party systems for automated processing. Through this system, highly sensitive medical communications were intercepted, recorded, and processed without patients' informed consent.

2.      Defendants Sutter Health, a California nonprofit public benefit corporation ("Sutter Health"); Memorial Health Services, Inc., a California nonprofit public benefit corporation and Memorialcare Medical Foundation, a California nonprofit medical foundation ("Memorial Care"); and Does 1-100 (collectively, "Defendants") deployed an artificial-intelligence-powered recording technology developed by Abridge AI, Inc., commonly referred to as an "ambient clinical documentation" system. This technology was used during patient encounters to capture and transcribe physician-patient conversations. When activated on microphone-enabled devices in examination rooms, the Abridge application recorded clinical encounters, transmitted the audio to external servers for automated transcription and analysis, and generated draft clinical notes that were later incorporated into Defendants' electronic health record ("EHR") system.

3.      The audio recordings and transcripts generated by this system contain individually identifiable medical information, including patients' symptoms, diagnoses, medications, treatment discussions, and other personal health information disclosed during confidential medical consultations. These recordings and transcripts are transmitted outside the clinical encounter for processing through the AI platform's infrastructure.

4.       Despite California's strict protections for confidential communications and medical information—including the all-party consent requirement for recording confidential communications and the requirements of the Confidentiality of Medical Information Act

1

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

("CMIA")—Defendants implemented the AI recording system without obtaining meaningful, informed consent from patients prior to recording and transmitting their medical conversations.

5.     Plaintiffs Christina Washington, Dennis Gueretta, and Rebecca Matulic each received medical care from providers affiliated with Defendants within the past six months. During their appointments, Plaintiffs discussed sensitive medical information with their healthcare providers under circumstances in which they reasonably expected their communications to remain confidential.

6.     Unknown to Plaintiffs at the time of their visits, Defendants' deployment of the Abridge system captured and processed their confidential physician-patient communications.

7.     Plaintiffs did not receive clear notice that their medical conversations would be recorded by an artificial intelligence platform, transmitted outside the clinical setting, or processed through third-party systems.

8.     By implementing and operating this recording system without obtaining valid consent, Defendants unlawfully intercepted confidential communications, disclosed protected medical information, and intruded upon Plaintiffs' privacy rights in violation of California and federal law.

**PARTIES**

9.     Plaintiff Christina Washington resides in San Felipe, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff was in California when she visited Sutter Health.

10.     Plaintiff Dennis Gueretta resides in San Francisco, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff was in California when he visited Sutter Health.

11.     Plaintiff Rebecca Matulic resides in Signal Hill, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff was in California when she visited Memorial Care.

12.     Defendant Sutter Health is a California nonprofit public benefit corporation headquartered in California. Sutter Health operates an integrated healthcare delivery system that

2

includes hospitals, outpatient clinics, and affiliated physician organizations throughout California. Through its network of hospitals, medical foundations, and affiliated physician groups, Sutter Health provides medical care and healthcare services to patients and is responsible for implementing and overseeing clinical technologies and documentation systems used during patient encounters, including artificial intelligence–based clinical documentation tools.

13.    Defendant Memorial Health Services, Inc. is a California nonprofit public benefit corporation that operates the Memorial Care health system. Memorial Health Services manages and oversees hospitals, clinics, and affiliated physician organizations that provide healthcare services to patients in California. Memorial Health Services exercises control over the policies, technologies, and clinical documentation systems implemented across the Memorial Care network.

14.    Defendant MemorialCare Medical Foundation is a California nonprofit medical foundation that employs and contracts with physicians who provide medical services within the Memorial Care health system. MemorialCare Medical Foundation operates clinics and medical offices where physicians provide patient care and where clinical documentation technologies— including ambient artificial intelligence recording systems used during medical visits—are deployed during physician-patient encounters.

## VENUE AND JURISDICTION

15.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiffs, and at least one member of the putative Class, as defined below, are citizens of a different state than Defendants, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs. This Court has jurisdiction over Defendants because Defendants operate in and directs commerce to this District. Defendants intentionally avails itself of the markets within this District, rendering the exercise of jurisdiction by this Court just and proper. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiffs reside in this District.

## I. INTRODUCTION

### A. The Confidentiality of Medical Information Act

CLASS COMPLAINT AND DEMAND FOR JURY TRIAL

1. Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* ("CMIA"), Plaintiffs and all other persons similarly situated, had a right to keep their personal identifiable medical information confidential. The short title of the CMIA states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The CMIA specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a). The CMIA further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Civil Code § 56.101(a).

2. Defendants Sutter Health and Memorial Care are a provider of health care within the meaning of CMIA and maintains and handles individually identifiable medical information relating to its patients, including Plaintiffs. Plaintiffs Christina Washington, Dennis Gueretta, Rebecca Matulic, and the members of the proposed Class, are "patients" within the meaning of Civil Code § 56.05(k) whose individually identifiable medical information was created, maintained, and handled by Defendants in connection with their medical treatment. The communications recorded during Plaintiffs' medical visits—including discussions regarding symptoms, medical history, diagnoses, medications, and treatment plans—constitute "medical information" within the meaning of Civil Code § 56.05(j) because they relate to a patient's medical condition and identify the patient. By recording, transmitting, processing, and allowing third-party access to Plaintiffs'

4

confidential medical communications through the artificial-intelligence platform developed by Abridge AI, Inc., Defendants disclosed and handled Plaintiffs' medical information without first obtaining a valid authorization that complies with CMIA.

3.      Civil Code § 56.36(b) provide Plaintiffs, and all other persons similarly situated, with a private right to bring an action against Defendants for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the patient." (Emphasis added.)

**B. The California Invasion of Privacy Act**

4.      The California Legislature enacted CIPA to protect certain privacy rights of California citizens. The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

5.      CIPA prohibits any person from intentionally recording or eavesdropping upon a confidential communication without the consent of all parties to that communication. Cal. Penal Code § 632(a). A "confidential communication" includes any communication carried on in circumstances reasonably indicating that any party to the communication desires it to be confined to the parties involved. Communications between a patient and a physician during a medical visit constitute confidential communications within the meaning of CIPA because they occur in a private medical setting where patients reasonably expect that their discussions regarding symptoms, diagnoses, treatment, and other personal health matters will remain private.

6.      CIPA provides a private right of action to any person whose confidential communication has been recorded or intercepted in violation of the statute. Cal. Penal Code § 637.2

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

authorizes recovery of statutory damages of five thousand dollars ($5,000) per violation or three times the amount of actual damages, whichever is greater.

**C. The Federal Wiretap Act**

7.      The ECPA, commonly referred to as the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq., prohibits the intentional interception, use, or disclosure of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device. It was originally enacted in October 1986 to extend privacy protections to emerging technologies. In drafting the legislation, Congress acknowledged that "[t]he dramatic development of the Internet has transformed methods of gathering, processing and sharing information." Senate Judiciary Committee Report (S. Rep. No. 99-541, 1986). Therefore, the statute aimed to address "individuals' concerns that a sufficient degree of privacy and the integrity of personal information are maintained in an age of modern communications and information storage." *Id.*

8.      Although limiting overreach by law enforcement was one of the main purposes of the statute, the ECPA explicitly applies to private actors, including "any individual, partnership, association, joint stock company, trust, or corporation" who illegally intercepts, or attempts to intercept the communications. 18 U.S.C. § 2511.

9.      Communications between a patient and a physician during a medical appointment constitute protected communications under the statute because they involve private discussions concerning medical symptoms, diagnoses, treatment plans, and other confidential health matters. The Federal Wiretap Act provides a private right of action to any person whose communications are intercepted, disclosed, or intentionally used in violation of the statute. 18 U.S.C. § 2520.

10.     The statute authorizes individuals to recover civil damages of up to $10,000 from any person who violates the provisions of the ECPA.

## II. DEFENDANTS' AMBIENT AI SYSTEM INTERCEPTS AND RECORDS CONFIDENTIAL DOCTOR–PATIENT COMMUNICATIONS

**A. Defendants' Deployment of the Abridge Ambient AI Recording System**

11.     Defendants deployed an artificial-intelligence-powered "ambient clinical documentation" system developed by Abridge AI, Inc. to record, transcribe, process, and

6

summarize conversations between healthcare providers and patients during medical encounters. The Abridge platform was activated on clinicians' microphone-enabled devices, including smartphones, tablets, or similar recording-enabled hardware used during patient visits. When activated, the system captured and recorded the entirety of the doctor–patient conversation in real time.

12.    Unlike traditional medical documentation—where a physician manually records relevant information during or after a consultation—the Abridge system electronically records the live oral communication itself. The platform captures the substance of what both the patient and physician say, converts the recorded speech into text, and applies artificial intelligence models to generate structured clinical documentation.

13.    To perform these functions, the Abridge platform necessarily intercepts the communications at the moment they occur. The audio of the clinical encounter is transmitted to external servers associated with the Abridge platform, where it is processed, analyzed, and converted into draft clinical notes that are subsequently incorporated into Defendants' EHR system. The audio recordings and transcripts generated through this system contain individually identifiable medical information, including highly sensitive health data disclosed during confidential physician–patient consultations. Such information includes, but is not limited to:

- Symptoms described by the patient;
- Medical history and prior conditions;
- Diagnoses and differential diagnoses;
- Medications and treatment plans;
- Mental health disclosures;
- Family medical history; and
- Other intimate and identifying health information.

14.    Upon information and belief, the recorded communications and transcripts are transmitted outside the clinical environment and retained, stored, or otherwise processed on infrastructure associated with the Abridge platform. The handling of these recordings and transcripts involves automated processing and may involve review or access for purposes such as

7

transcription functionality, system maintenance, troubleshooting, quality assurance, and model improvement. As a result, the contents of confidential physician–patient communications are transmitted beyond the immediate clinical encounter and handled by systems and personnel outside Defendants' healthcare facility.

15. Because the Abridge system captures and processes the substance of oral communications during the medical encounter itself, the technology intercepts the contents of those communications within the meaning of federal and California privacy laws governing the interception and disclosure of confidential communications.

16. Defendants implemented and deployed this recording technology across its healthcare operations in order to obtain operational and financial benefits, including reducing clinicians' documentation burdens, improving efficiency in generating clinical notes, and enhancing the capture of billable medical services.

17. Despite obtaining these operational advantages, Defendants implemented the Abridge system without first establishing legally compliant consent procedures, authorization protocols, or adequate safeguards necessary to protect patients' confidential medical communications and medical information.

**B. Lack of Informed Consent, Unauthorized Recording, and Disclosure of Confidential Medical Communications**

18. California law strictly protects the confidentiality of physician–patient communications. Patients receiving medical care reasonably expect that their private discussions with healthcare providers—including discussions concerning symptoms, diagnoses, medications, medical history, and treatment—will remain confidential and will not be recorded, intercepted, or disclosed without their knowledge and consent.

19. Under the California Invasion of Privacy Act, including California Penal Code § 632, all parties to a confidential communication must consent before that communication may be recorded. Separately, the CMIA, Civil Code §§ 56 et seq., protects the confidentiality of individually identifiable medical information and prohibits healthcare providers and contractors from disclosing such information without a valid authorization from the patient.

8

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

20. Defendants deployed an artificial-intelligence-powered recording system developed by Abridge AI, Inc. during medical encounters involving Plaintiffs and Class Members. When activated on clinicians' microphone-enabled devices, the system captured and recorded live physician–patient conversations occurring during confidential medical visits.

21. The system recorded the full substance of the physician–patient discussion and transmitted the audio to external systems associated with the Abridge platform for transcription, processing, and analysis. Through this process, the platform captured and acquired the contents of confidential medical communications contemporaneously with their occurrence.

22. The recorded communications contained highly sensitive and individually identifiable medical information, including but not limited to descriptions of symptoms, medical history, diagnoses, treatment recommendations, medications, and other intimate health-related disclosures exchanged between patients and their physicians. These communications constitute "medical information" under CMIA because they relate to a patient's medical history, condition, diagnosis, or treatment and identify the patient.

23. Despite the sensitive nature of these communications and the legal protections governing them, Defendant failed to implement a standardized or system-wide procedure to obtain valid all-party consent within the meaning of California Penal Code § 632 before recording physician–patient conversations using the Abridge system.

24. Defendants also failed to ensure that patients received clear and conspicuous notice prior to their medical visits that their conversations might be recorded. Defendants did not require clinicians to follow standardized procedures or scripts to obtain express consent before activating the recording system, nor did Defendants provide reliable visual or auditory indicators notifying patients that recording was occurring during the clinical encounter.

25. Defendants further failed to obtain written authorizations that satisfy the requirements of CMIA before transmitting or disclosing patients' medical information through the Abridge platform. Among other deficiencies, Defendants did not obtain authorizations that identified the third-party recipient, disclosed the purpose for which the information would be

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

transmitted, described the nature and scope of the medical information disclosed, specified the duration of the authorization, or informed patients of their right to revoke consent.

26.    Upon information and belief, the recordings and transcripts generated through the Abridge system were transmitted to and processed on infrastructure outside the clinical setting, where the communications were stored, processed, or otherwise handled for purposes such as transcription, system operation, quality assurance, maintenance, or model improvement. In doing so, Defendants permitted the contents of confidential physician–patient communications to be transmitted to and processed by a third-party technology vendor that was not a party to the medical encounter.

27.    Defendants did not obtain Plaintiffs' prior, express, and informed consent to intercept, record, transmit, or process these confidential communications, nor did Defendants obtain any court order authorizing such interception. By implementing and operating technology that captures and transmits the contents of confidential medical conversations in real time, Defendants intercepted and acquired Plaintiffs' communications within the meaning of the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act.

28.    Defendants' conduct also constitutes an unauthorized disclosure of confidential medical information in violation of CMIA, including Civil Code §§ 56.10 and 56.101, which require healthcare providers and contractors to preserve the confidentiality of patient medical information and prohibit disclosure without proper authorization.

29.    The communications intercepted and processed by Defendants contain the "contents" of a communication because they reveal the substance, purport, and meaning of the physician–patient discussions, including patients' symptoms, medical concerns, diagnoses, and treatment recommendations.

30.    Because Defendants intercepted, recorded, and transmitted these communications without obtaining the consent of all parties and without obtaining lawful authorization for the disclosure of medical information, Defendants' conduct violates California law and federal law protecting the privacy of confidential communications.

### III. PLAINTIFFS' AND THE CLASS MEMBERS' EXPERIENCES

10

31.    Within the past six months, Plaintiffs Christina Washington and Dennis Gueretta sought and received medical care from healthcare providers affiliated with Sutter Health in California. During the same time period, Plaintiff Rebecca Matulic sought and received medical care from healthcare providers affiliated with Memorial Care in California.

32.    During their respective medical appointments, healthcare providers utilized the artificial intelligence recording platform developed by Abridge AI, Inc. As a result, Plaintiffs' live oral communications with their physicians were captured and recorded during the course of their confidential medical consultations.

33.    The platform, as implemented by Defendants Sutter Health and Memorial Care, intercepted and acquired the substance of Plaintiffs' confidential doctor–patient conversations contemporaneously with their occurrence. Upon information and belief, the recorded communications were transmitted to and processed on infrastructure associated with the Abridge platform for purposes including transcription, analysis, and the generation of clinical documentation.

34.    During these medical encounters, Plaintiffs discussed highly sensitive medical information with their healthcare providers, including symptoms, diagnoses, treatment plans, medications, and other individually identifiable health information. Plaintiffs did not provide prior, express, and informed consent for Defendants or any third-party technology vendor to intercept, record, transmit, process, or store these confidential medical communications.

35.    Defendant did not obtain a court order authorizing the interception or recording of Plaintiffs' confidential communications.

36.    As a result of Defendants' conduct, Plaintiffs' confidential physician–patient communications were recorded and transmitted to a third-party technology vendor without lawful authorization, in violation of the California Invasion of Privacy Act, the Electronic Communications Privacy Act, and the Confidentiality of Medical Information Act.

37.    Plaintiffs seek to receive medical care without having their confidential physician-patient communications intercepted, recorded, and processed by third-party technology vendors

11

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

without valid authorization, or, at minimum, to be provided with clear notice and a meaningful opportunity to provide or withhold consent before any such recording occurs.

### IV. PATTERN AND PRACTICE: CLASS-WIDE POLICY OF RECORDING PATIENT ENCOUNTERS WITHOUT VALID CONSENT

38.    Plaintiffs' experiences were not isolated incidents but were the result of Defendants' systematic deployment of an artificial-intelligence recording system during patient encounters without implementing lawful consent or authorization safeguards.

39.    Upon information and belief, Defendants Sutter Health and Memorial Care deployed the ambient clinical documentation platform developed by Abridge AI, Inc. across their healthcare facilities and physician practices. As part of this deployment, healthcare providers were encouraged or permitted to activate the system during outpatient medical appointments to capture physician–patient conversations for automated transcription and clinical documentation.

40.    The use of the Abridge system was not limited to the encounters involving Plaintiffs. Rather, upon information and belief, the platform was implemented across numerous clinics and provider practices operated or affiliated with Defendants, resulting in the recording of a substantial number of patient visits throughout Defendants' healthcare networks.

41.    Upon information and belief, the recordings generated through the Abridge system were routinely transmitted to external infrastructure associated with the platform for transcription, analysis, and the generation of draft clinical documentation. These recordings and transcripts contained patients' confidential medical communications, including discussions of symptoms, diagnoses, treatment plans, medications, and other individually identifiable health information.

42.    Upon further information and belief, the Abridge platform retained or stored recordings and transcripts for defined periods of time, and such materials could be accessed or processed for purposes including system operation, troubleshooting, quality assurance, or model improvement. This process resulted in the handling of patients' confidential medical information outside the immediate physician–patient encounter and beyond the direct control of the healthcare provider.

12

43.    Defendants implemented and maintained this recording practice without establishing uniform procedures to ensure that patients provided prior, express, and informed consent before their confidential medical conversations were recorded and transmitted through the Abridge system.

44.    As a result of this practice, numerous patients across Defendants' healthcare networks had their confidential physician–patient communications recorded, transmitted, and processed through the Abridge platform without valid consent or authorization.

45.    Defendants' pattern and practice caused class-wide harm, including the invasion of patients' privacy, loss of control over their confidential medical information, emotional distress, and the increased risk that sensitive medical communications could be accessed, disclosed, or misused by unauthorized persons.

## CLASS ACTION ALLEGATIONS

46.    Class Representative Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.  The putative class that Class Representative Plaintiffs seek to represent is composed of:

**Nationwide Class**

All United States residents who received medical care from healthcare providers affiliated with Sutter Health or Memorial Care during which their confidential physician–patient communications were recorded, intercepted, transmitted, stored, or processed using the artificial-intelligence recording platform developed by Abridge AI, Inc. without their prior informed consent and/or despite declining consent two years prior to the filing date of this Complaint through the date of an order granting class certification and/or a motion for preliminary approval of class action settlement (hereinafter the "Class").

**California subclass**

All California residents who received medical care from healthcare providers affiliated with Sutter Health or Memorial Care during which their confidential physician–patient communications were recorded, intercepted, transmitted,

13

stored, or processed using the artificial-intelligence recording platform developed by Abridge AI, Inc. without their prior informed consent and/or despite declining consent one year prior to the filing date of this Complaint through the date of an order granting class certification and/or a motion for preliminary approval of class action settlement (hereinafter the "Subclass").

47.    Excluded from the Class are the natural persons who are directors, and officers, of the Defendant, as well as judicial officers, their families, and their staff who are assigned to this action.  Class Representative Plaintiffs expressly disclaim that they are seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

48.    Plaintiffs are informed and believe that the members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Class Representative Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendants.

49.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiffs' claims are typical of the members of the class, and Class Representative Plaintiffs can fairly and adequately represent the interests of the Class.

50.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    Whether Defendants had a policy or practice of using Abridge or similar technology to record patient conversations without obtaining all-party consent;

(b)    Whether Defendants failed to implement any system-wide protocol reasonably designed to ensure that patient consent was obtained prior to recording;

(c)    Whether Defendants violated CIPA section 632;

(d)    Whether doctor–patient conversations during medical consultations constitute "confidential communications" within the meaning of CIPA;

(e)    Whether Defendants' recording and transmission of audio and transcripts to third-

14

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

party vendors involved "medical information" within the meaning of the CMIA;

(f)    Whether Defendants violated CMIA Civil Code §§ 56, *et seq.*;

(g)    Whether Defendants' practices constitute "unlawful," "unfair," and/or "fraudulent" business acts and practices under the UCL;

(h)    Whether Defendants committed intrusion upon seclusion by secretly recording private medical consultations;

(i)    Whether Defendants violated the Wiretap Act, 28 U.S.C. section 2510 et seq.;

(j)    Whether Defendants sought or obtained prior consent—express or otherwise—from Plaintiffs and the Class;

(k)    Whether Plaintiffs and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations; and

(l)    The appropriate form and scope of injunctive relief necessary to remedy and prevent recurrence of Defendants' practices.

Class Representative Plaintiffs' claims are typical of those of the other Class members because Class Representative Plaintiffs, like every other Class member, were exposed to virtually identical conduct and are entitled to the same relief under the CIPA, CMIA, ECPA, UCL and the common-law tort of intrusion upon seclusion.

51.    Class Representative Plaintiffs will fairly and adequately protect the interests of the Class. Moreover, Class Representative Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period. In addition, Class Representative Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

52.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Class Representative Plaintiffs know of no difficulty that will be

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

53. Proper and sufficient notice of this action may be provided to the Class members through direct mail.

54. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative Plaintiffs and the members of the Class will continue to be damaged by the practices of Defendants.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the California Invasion of Privacy Act,**

**Cal. Penal Code § 632, et. esq.**

**(California subclass only)**

55. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

56. Plaintiffs bring this cause of action pursuant to Penal Code section 637.2 for violations of Penal Code section 632.

57. California Penal Code section 632 prohibits the intentional recording of a confidential communication between parties, including communications made in the presence of one another, without the consent of all parties to the communication.

58. Doctor–patient conversations during clinical encounters in private exam rooms and similar settings are confidential communications made under circumstances reasonably indicating an expectation that they are not being overheard or recorded.

59. Defendants, through their providers, staff, agents, and the Abridge system, intentionally recorded Plaintiffs' and Class members' confidential communications with their healthcare providers without obtaining the consent of all parties.

16

60.     Defendants did not provide meaningful notice that recording would occur, did not seek or obtain all-party consent prior to recording, and did not implement a system designed to ensure that consent was obtained.

61.     Each recording of a clinical encounter using Abridge or similar ambient AI technology constituted a separate violation of Penal Code section 632.

62.     As a direct and proximate result of Defendants' violations, Plaintiffs and Class members suffered harm, including invasion of their legally protected privacy interests, emotional distress, loss of autonomy over their communications, and the dignitary and personal harms inherent in secret recording of intimate medical conversations.

63.     Pursuant to Penal Code section 637.2, Plaintiffs and Class members are entitled to statutory damages of $5,000 per violation or three times the amount of actual damages, whichever is greater, as well as injunctive relief and any other relief the Court deems proper.

## SECOND CAUSE OF ACTION

### Violations of the Confidentiality of Medical Information Act,

### Civil Code § 56, et seq.

### (California subclass only)

64.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

65.     Defendants are "providers of health care," "contractors," and/or other covered entities within the meaning of Civil Code §56.05(d). At all relevant times, Defendants created, maintained, transmitted, stored, or otherwise handled "medical information," as defined by Civil Code § 56.05(j).

66.     Plaintiffs and the Class are "patients" within the meaning of Civil Code § 56.05(k). Within the past six months, Plaintiffs received medical treatment from healthcare providers affiliated with Defendants. During those medical encounters, Plaintiffs disclosed highly sensitive and confidential health information to their physicians in the course of private physician–patient consultations. During these encounters, Defendants deployed an artificial-intelligence clinical documentation platform developed by Abridge AI, Inc., which captured, recorded, and transmitted

17

the substance of physician–patient conversations for automated transcription and documentation purposes.

67. The recordings and transcripts generated by the Abridge system contained individually identifiable medical information, including but not limited to medical histories, symptoms, diagnoses, medications, treatment discussions, and other sensitive health disclosures communicated during confidential medical consultations. Such information constitutes "medical information" within the meaning of Civil Code § 56.05(j) because it relates to a patient's medical history, condition, diagnosis, or treatment and identifies the patient.

68. Defendants disclosed and transmitted Plaintiffs' and Class members' medical information to third-party vendors, including Abridge, without first obtaining valid written authorizations satisfying the requirements of Civil Code §§ 56.10 and 56.11. Among other deficiencies, Defendants failed to obtain written authorizations that:

- clearly identified the recipient of the medical information;

- described the purpose of the disclosure;

- specified the nature and extent of the medical information to be disclosed;

- provided a defined duration for the authorization; and

- informed patients of their right to revoke authorization.

69. Upon information and belief, employees, agents, or contractors associated with the Abridge platform had the ability to access, review, or process the audio recordings and transcripts containing Plaintiffs' and Class members' medical information for purposes including transcription processing, quality assurance, troubleshooting, and artificial-intelligence model improvement.

70. Defendants further failed to maintain and preserve the confidentiality of Plaintiffs' and Class members' medical information as required by Civil Code § 56.101(a). Among other failures, Defendants transmitted confidential medical communications to third-party technology vendors without adequate safeguards, permitted retention and processing of the recordings outside the control of patients, and failed to implement reliable mechanisms allowing patients to halt processing or require deletion of their recorded medical communications.

71. By recording, transmitting, disclosing, and failing to safeguard Plaintiffs' and Class

18

members' confidential medical information without valid authorization, Defendants violated multiple provisions of the CMIA, including but not limited to Civil Code §§ 56.10 and 56.101.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members suffered injury, including the unauthorized disclosure of their confidential medical information, invasion of privacy, loss of control over sensitive health data, emotional distress, and dignitary harm.

73. Pursuant to Civil Code §56.35, Plaintiffs and the Class members are entitled to receive their actual damages, plus punitive damages, not to exceed $3,000, plus attorneys' fees of $1,000 for each and every unauthorized disclosure.

74. Pursuant to Civil Code § 56.36, Plaintiffs and Class members are also entitled to recover statutory nominal damages of $1,000 per violation, as well as actual damages where applicable, punitive damages as permitted by law, equitable and declaratory relief, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**Violation of Unfair Competition Law,**

**(Cal. Bus. & Prof. Code § 17200 et seq.)**

**(California subclass only)**

75. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

76. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice.

**Unlawful Prong**

77. Defendants' acts and practices are "unlawful" under the UCL because they violate CIPA, the CMIA, and other statutes and regulations designed to protect the privacy and confidentiality of medical information.

78. Defendants' violations of these statutes constitute predicate "unlawful" acts under the UCL.

**Unfair Prong**

79. Defendants' conduct is "unfair" because it offends established public policy and is

19

CLASS COMPLAINT AND DEMAND FOR JURY TRIAL

immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

80. Defendants exploited patients' vulnerability and trust in the medical setting by secretly recording confidential medical communications, transmitting medical information to third-party vendors without valid authorization all to advance Defendants' operational and financial interests.

81. Any purported utility Defendants claim from improved documentation or efficiency is outweighed by the severe invasion of privacy and erosion of trust in the physician-patient relationship.

**Fraudulent Prong**

82. Defendants' conduct is also "fraudulent" within the meaning of the UCL because it is likely to deceive members of the public, including patients seeking medical care.

83. Patients reasonably expect that confidential physician–patient conversations will not be recorded, transmitted to technology vendors, or processed by artificial-intelligence systems without clear notice and meaningful consent. By failing to adequately disclose the recording, transmission, and processing of patient communications through the Abridge platform, Defendants created a misleading impression that medical visits were conducted in the ordinary confidential manner expected in healthcare settings.

84. These omissions and nondisclosures were material and likely to mislead reasonable patients regarding the privacy of their medical consultations and the handling of their sensitive health information.

**Injury and Restitution**

85. Plaintiffs Christina Washington, Dennis Gueretta, and Rebecca Matulic would not have sought treatment from Sutter Health or Memorial Care, or would have demanded different conditions of treatment, had they known their confidential physician–patient communications would be recorded, transmitted to third-party vendors, and processed by artificial-intelligence systems without their consent.

86. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs and members of the Class suffered injury in fact and lost money or

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

property, including but not limited to the payment of fees for medical services that were provided under circumstances that violated patients' privacy rights and statutory protections governing medical information.

87.     Plaintiffs and the Class therefore seek restitution and disgorgement of all monies and benefits Defendants obtained as a result of their unlawful, unfair, and fraudulent practices, including the portion of fees and economic benefits attributable to the unauthorized recording and processing of patients' medical communications.

88.     Plaintiffs further seek injunctive relief pursuant to Business and Professions Code § 17203 requiring Defendants to cease the challenged practices and to implement lawful consent procedures and safeguards governing the recording, processing, and disclosure of physician–patient communications.

## FOURTH CAUSE OF ACTION

### Invasion of Privacy – Intrusion Upon Seclusion

### (California subclass only)

89.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

90.     Intrusion upon seclusion occurs when a defendant intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or the other's private affairs or concerns, in a manner that would be highly offensive to a reasonable person.

91.     Plaintiffs and Class members engaged in private medical consultations with their physicians in exam rooms and other private clinical environments. These conversations concerned highly personal and sensitive health information, including medical histories, symptoms, diagnoses, treatments, medications, mental health, sexual health, and other intimate matters.

92.     Medical examination rooms and doctor–patient consultations are quintessentially private spaces and conversations. Patients reasonably expect that their conversations in such settings will not be recorded or transmitted to third parties without their knowledge and consent.

93.     Defendants intentionally intruded into Plaintiffs' and Class members' private affairs by surreptitiously recording entire medical consultations using electronic recording devices and

21

cloud-based processing systems without notice or consent.

94. The intrusions were deliberate and systemic. Defendants authorized and implemented the Abridge system, trained providers to use it, and configured it to record entire encounters and transmit recordings to a vendor.

95. The intrusions were highly offensive to a reasonable person. They captured intimate medical communications in their entirety, in one of the most sensitive contexts recognized by law and society, and were executed covertly, in a manner that involved deception and betrayal of trust.

96. Defendants' motives were commercial and operational, including improving documentation and billing, rather than patient-protective. Reasonable persons would find it highly offensive when a healthcare provider prioritizes such interests over fundamental privacy rights.

97. As a direct and proximate result of Defendants' intrusion upon seclusion, Plaintiffs and Class members suffered damages, including invasion of their legally protected privacy interests, emotional distress, mental anguish, anxiety, anger, humiliation, loss of dignity and autonomy, loss of trust in their healthcare providers, and apprehension regarding future medical visits.

98. Plaintiffs and Class members are entitled to general and compensatory damages in amounts to be proven at trial.

99. Defendants' conduct was carried out with oppression, fraud, or malice within the meaning of Civil Code section 3294. Defendants knowingly implemented a recording system in a context of heightened privacy and failed to obtain consent. Plaintiff seeks punitive damages on behalf of himself and the Class in an amount sufficient to punish and deter such conduct.

**FIFTH CAUSE OF ACTION**

**Violation of the Federal Wiretap Act**

**Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510, *et seq*.)**

100. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

101. The Wiretap Act prohibits the intentional interception, use, and/or disclosure of the contents of any wire, oral, or electronic communication. 18 U.S.C. § 2511(a), (c), (d).

102. "Intercept" is defined as "the aural or other acquisition of the contents of any wire,

22

electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4).

103.   "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8).

104.   "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

105.   Plaintiffs are individuals and is therefore a "person" for purposes of § 2510(6).

106.   Defendants are corporations and is therefore a "person" for purposes of § 2510(6).

107.   When Plaintiffs and Class Members visited Sutter Health and Memorial Care facilities that utilizes the AI platform developed by Abridge AI, Inc. that captured, recorded, and transmitted the substance of live physician–patient conversations occurring during confidential medical encounters, Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting the contents of Plaintiffs' and Class members' confidential communications through the use of electronic recording devices and software integrated into Defendants' clinical workflow.

108.   Defendant further violated 18 U.S.C. § 2511(1)(c) when it disclosed the contents of Plaintiff's and Class Members' intercepted communications through transmission to, and processing on, external systems and infrastructure associated with the Abridge platform and related technology vendors, without their consent.

109.   Defendant also violated 18 U.S.C. § 2511(1)(d) when it used Plaintiffs and Class Members' intercepted communications to generate clinical documentation and to operate and improve artificial intelligence systems, without their consent.

110.   Plaintiffs and Class members did not provide prior express consent to the interception, disclosure, or use of their confidential physician–patient communications through the Abridge system.

111.   As a result of Defendants' violations of the Wiretap Act, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, loss of their information and loss of money and costs incurred, all of which have

23

ascertainable value to be proven at trial.

112.    Pursuant to 18 U.S.C. § 2520, Plaintiffs and Class have been damaged by the interception, disclosure, and/or use of their communications in violation of the ECPA and are each entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by Defendants as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (2) reasonable attorneys' fees and other litigation costs reasonably incurred.

## DEMAND FOR JURY TRIAL

113.    Plaintiffs and the Class hereby demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants as follows:

1.  For an order certifying the Class, naming Plaintiffs as the representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

2.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

3.  For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

4.  For nominal, actual, and/or statutory damages for each violation of CMIA section 56;

5.  For statutory damages of $5,000 for each violation of CIPA section 632;

6.  For actual damages, plus $3,000 in punitive damages, plus $1,000 in attorneys' fees for each and every unauthorized disclosure of medical information;

7.  For nominal damages of $1,000 for each negligent release of medical information;

8.  For statutory damages of $10,000 for each violation of the Federal Wiretap Act;

9.  For pre- and post-judgment interest on all amounts awarded;

10. For an order of restitution and all other forms of equitable monetary relief; and

11. For an order providing injunctive and other equitable relief as necessary to protect the Plaintiffs interests as requested herein, including, but not limited to:

     a.  Ordering that Defendant immediately cease and desist intercepting, recording, transmitting, storing, or processing  of Plaintiffs' confidential physician-patient

24

communications without valid authorization;

    b.  Ordering that Defendant implement safeguards, policies, and technical controls to ensure that no medical communications are intercepted or processed without prior, express, and informed consent consistent with applicable law;

    c.  Ordering that Defendant purge, delete, and destroy in a reasonably secure manner any unlawfully obtained medical communications or data not necessary for its provision of services.

12. For an order awarding and the Class their reasonable attorney's fees and expenses and costs of suit.

Dated: April 7, 2026

**POTTER HANDY LLP**

By: _____
James M. Treglio, Esq.
Mark Potter, Esq.
Isabel Rose Masanque, Esq.
Attorneys for Plaintiffs

25

**CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**