J. Jonathan Hawk (254350)
jhawk@mcdermottlaw.com
Ari R. Swazer (359884)
Aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

David P. Saunders (Admitted *pro hac vice)*
dsaunders@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

Attorneys for Defendant SUTTER HEALTH

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA WASHINGTON, DENNIS GUERETTA, and REBECCA MATULIC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH, a California nonprofit corporation; MEMORIAL HEALTH SERVICES, INC., a California nonprofit corporation; MEMORIALCARE MEDICAL FOUNDATION, a California nonprofit foundation; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO. 4:26-cv-03012<br><br>**DEFENDANT SUTTER HEALTH'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (ECF NO. 1) PURSUANT TO FED. R. CIV. P. 12(B)(1); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Declaration of Veema Jones; Declaration of Braden Carkhuff; [Proposed] Order]*<br><br>Date: September 3, 2026<br>Time: 2:00 P.M.<br>Courtroom: Courtroom 2, 4th Floor (Oakland)<br>Judge: Haywood S. Gilliam, Jr. |

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................1
MEMORANDUM OF POINTS & AUTHORITIES ....................1
I. INTRODUCTION ....................1
II. STATEMENT OF ISSUES TO BE DECIDED ....................3
III. BACKGROUND ....................3
A. Sutter and Its Operations ....................3
B. Patient Visit Documentation Processes ....................4
1. Role and Necessity of Documenting Patient Visits ....................4
2. Sutter's Notice of Privacy Practices Informs Patients of Its Use of Business Associates for Transcription ....................5
C. Abridge's Functionalities and BAA with Sutter ....................6
1. The Abridge Platform as a Clinical Documentation Program ....................6
2. Sutter's BAA With Abridge as a Business Associate ....................7
D. The Complaint's Allegations ....................7
1. Allegations Specific to Plaintiff Matulic ....................7
2. Allegations Specific to Plaintiff Gueretta ....................8
3. Allegations Specific to Plaintiff Washington ....................8
4. Allegations Common to All Named Plaintiffs ....................8
IV. LEGAL STANDARD ....................9
A. Injury In Fact, Generally (Element 1) ....................10
B. Traceability and Redressability, Generally (Elements 2 and 3, Respectively) 11
V. ARGUMENT ....................12
A. Plaintiff Matulic Does Not and Cannot Show Traceability (Element 2) ....................12
B. Plaintiff Gueretta Does Not and Cannot Show Injury-in-Fact (Element 1) ....................13
C. Plaintiff Washington Does Not and Cannot Show Injury-in-Fact (Element 1) ....................14
1. Plaintiff Washington Did Not Have a Reasonable Expectation of Privacy ....................14

2. Plaintiff Washington Cannot Show Any Intrusion ..... 15

3. Plaintiff Washington Cannot Show Any Public Disclosure of Her Information ..... 15

4. Plaintiff Washington Cannot Show Any Highly Offensive Intrusion . 17

5. Plaintiff Washington Cannot Show Any Emotional or Economic Harm ..... 18

VI. CONCLUSION ..... 19


McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Novant Health, Inc.*,
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....10, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....10, 18

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ....2, 9, 10

*Cannara v. Nemeth*,
467 F. Supp. 3d 877 (N.D. Cal. 2020) ....10

*Cohen v. Facebook, Inc.*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) ....18

*Easter v. Am. W. Fin.*,
381 F.3d 948 (9th Cir. 2004) ....2, 9, 11, 12

*In re Facebook Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....10, 19

*Gastelum v. Blue Diamond Hosp. LLC*,
2023 WL 3958898 (N.D. Cal. June 12, 2023) ....10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....14, 15

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....17

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ....10

*Hill v. Nat'l Collegiate Athletic Ass'n.*,
7 Cal. 4th 1 (1994) ....17

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
48 F.4th 1236 (11th Cir. 2022) ....16

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Ingraham v. Capital One Fin. Corp.*,
2026 WL 1755170 (N.D. Cal. May 22, 2026) ........ 11, 14

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ........ 10

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 14

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........ 17

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........ 18

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) ........ 12

*Martinez v. Newsom*,
46 F.4th 965 (9th Cir. 2022) ........ 9

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........ 10

*McCann v. Iroquois Mem. Hosp.*,
622 F.3d 745 (7th Cir. 2010) ........ 15

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) ........ 10

*McNamar v. Experian Info. Sols., Inc.*,
2026 WL 1603306 (N.D. Cal. June 4, 2026) (Gilliam, J.) ........ 11, 16

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) ........ 11

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 14

*Myers v. Dick's Sporting Goods, Inc.*,
2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) ........ 17

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 15

*Polo v. Innoventions Int'l, LLC*,
833 F.3d 1193 (9th Cir. 2016) ........ 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....15

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998)....14

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976)....11, 12

*Smith v. Radius Global Solutions, LLC*,
2023 WL 6373874 (C.D. Cal. Sept. 25, 2023)....16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....9, 10, 11

*Taferner v. Inspire Brands, Inc.*,
2025 WL 942498 (C.D. Cal. Mar. 25, 2025)....13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).... *passim*

*U.S. v. Azure*,
801 F.2d 336 (8th Cir. 1986)....15

*Whalen v. Roe*,
429 U.S. 589 (1977)....15

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)....9, 10, 13

**Statutes**

Cal. Bus. & Prof. Code § 2266....4

Cal. Civ. Code § 56.10....1, 9, 18

**Other Authorities**

42 C.F.R. § 482.24(c)....4

45 C.F.R. § 164.308....7

45 C.F.R. § 164.310....7

45 C.F.R. § 164.312....7

45 C.F.R. § 164.410....7

45 C.F.R. § 164.502(e)(1)....1, 7, 18

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

45 C.F.R. § 164.520 .......... 5
Fed. R. Civ. P. 12(b)(1) .......... 1, 9, 13, 19
Fed. R. Civ. P. 12(b)(6) .......... 14, 18
Rest. (2nd) of Torts § 652D (1977) .......... 16

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 3, 2026 at 2:00 p.m. PT, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Haywood S. Gilliam, Jr., or any judge sitting in his stead in courtroom 2 of the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, and shall then and there present *Sutter Health's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*.

Defendant Sutter Health, by and through its undersigned counsel, moves to dismiss Plaintiffs' Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(1), on the basis that none of the three Plaintiffs have pleaded, or can show, Article III standing for any of their claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Sutter Health ("Sutter") is a Northern California-based not-for-profit healthcare system committed to advancing care for everyone. Declaration of Veena Jones, M.D. ("Jones Decl."), ¶ 3. Sutter's integrated health system offers a connected care model that delivers treatment to patients in Northern and Central California and that relies on modern technologies to deliver and improve both care and access to care for its patients. In its continuing effort to improve patient outcomes, Sutter began using the Abridge platform to assist its physicians in documenting patient clinical encounters more efficiently, meaning the providers could spend more time with patients. *Id.* at ¶ 15.

The practice at issue here—Sutter's use of the Abridge platform—is an example of the type of technology that improves patient care. The Abridge platform records a patient clinical visit and then generates the beginning of a clinical note, which a provider can then review, edit and add to a patient's medical record. *Id.* The Abridge platform replaces or supplements other methods of note-taking with a modern platform designed to reduce administrative burden and allow clinicians to devote more attention to their patients. *Id.* at ¶ 16. Abridge is a HIPAA business associate, subject to a Business Associate Agreement with Sutter, and is the type of service provider that both Federal and California law expressly allows to receive patient information. Declaration of Braden Carkhuff ("Carkhuff Decl."), ¶ 5; *see also* 45 C.F.R. § 164.502(e)(1); Cal. Civ. Code § 56.10(c)(3). Sutter also discloses the use of platforms like Abridge in its Notice of Privacy Practices ("NPP"), a copy of

which is regularly provided to every Sutter patient and is available on its website. Carkhuff Decl., ¶¶ 8–10.

All three named Plaintiffs nonetheless allege that Sutter's use of the Abridge platform caused them actionable, *intangible* injury in the form of privacy violations under the California Invasion of Privacy Act ("CIPA"), California's Confidentiality of Medical Information Act ("CMIA"), the Unfair Competition Law ("UCL"), the Electronic Communications Privacy Act ("ECPA"), and the common law tort of intrusion upon seclusion. ECF No. 1, Compl., ¶¶ 55–112. Each of these claims attempts to analogize the use of the Abridge platform to a form of wiretapping and complains that the three named Plaintiffs never provided consent to their physicians for the use of the Abridge platform. *Id.* The three named Plaintiffs acknowledge, however, that they would have been fine with their physicians using "more traditional" methods to document their visits without consent, as they know it is commonplace for healthcare providers to create notes of patient visits. *Id.* at ¶ 12.

For Plaintiffs to have Article III standing, the Complaint must show—as to *each* claim for *each* Plaintiff—"(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). To show an injury in fact for a privacy-related harm, Plaintiffs must plausibly analogize the alleged injury to a harm traditionally recognized at common law. *TransUnion*, 594 U.S. at 423. The touchstones of privacy torts, including invading a zone where someone has a reasonable expectation of privacy, are absent here. The Complaint fails to meet this standard for each of the Plaintiffs.

Plaintiffs Matulic and Gueretta lack Article III standing for the simple reason that Sutter never used the Abridge platform with either of them. Carkhuff Decl., ¶¶ 11–13. Plaintiff Matulic was never a patient at any Sutter healthcare facility, *id.* at ¶ 12, and Plaintiff Gueretta never attended any clinical visit with any Sutter physician who had access to the Abridge platform. *Id.* at ¶ 13. Both Plaintiffs thus do not and cannot demonstrate the injury-in-fact or causation (traceability) elements of an Article III analysis. *See TransUnion LLC*, 594 U.S. at 423; *Easter v. Am. W. Fin.*, 381 F.3d 948, 962–63 (9th Cir. 2004).

Plaintiff Washington also lacks Article III standing because she cannot demonstrate the injury-in-fact element. Her claims are premised on, among other things, her argument that she had a reasonable expectation of privacy in *not* having the Abridge platform used during her visit with a Sutter physician. Compl., ¶¶ 18, 83, 92. But her expectation that Sutter would use a particular manner of documenting her visit—while knowing it would be documented in some form—is patently unreasonable. Nothing in the Complaint can support the assertion that the intangible harm she allegedly suffered due to Sutter's use of the Abridge platform resembles any harm traditionally recognized at common law. A new technology was used to document Plaintiff Washington's visit when she already knew that her visit would be documented in some form; Sutter's NPP disclosed to her *in advance* that third-party transcription services would be used for documentation; and, the new technology actually reduced the number of people who otherwise would have seen visit notes as a basic and expected part of the healthcare process. Even putting aside the NPP, it is widely-understood and common sense that clinical visits are documented, and that those medical records are then shared with other healthcare personnel as part of providing medical services and record-keeping functions. That is precisely what happened with Plaintiff Washington. Nothing about the circumstances here resembles the historic tort of invasion of privacy.

This case asks the Court to treat routine healthcare operations, performed transparently, with notice and in compliance with state and federal law, as a basis for Article III standing. The Constitution does not permit such an expansion of federal jurisdiction. Plaintiffs have not alleged a concrete, particularized, or traceable injury, and their claims therefore must be dismissed.

## II. <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether Plaintiffs can each demonstrate Article III standing for all of their claims as required to maintain this case.

## III. <u>BACKGROUND</u>

### A. Sutter and Its Operations

Founded in 1921 and headquartered in Northern California, Sutter is a not-for-profit, healthcare system committed to advancing care for everyone. Jones Decl., ¶ 3. Sutter's integrated health system offers a connected care model that delivers treatment when, where and how people

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

need it. *Id.* at ¶ 4. Through its more than 14,000 clinicians and 57,000 employees, Sutter provides patients with coordinated care at its 27 hospitals, more than 200 clinics, and more than 40 outpatient, imaging and surgery, and home service centers across Northern and Central California. *Id.* As part of its mission to achieve higher levels of care quality and deliver stronger healthcare outcomes, Sutter has implemented new technologies in multiple facets of patient care, recognizing that these new technologies increase the speed and improve the accuracy with which many diseases can be diagnosed and enable its caregivers to dedicate more of their time to patient care. *Id.*

**B. Patient Visit Documentation Processes**

**1. Role and Necessity of Documenting Patient Visits**

Pursuant to state and federal regulations, providers are required to create records of patient visits. *See, e.g.,* 42 C.F.R. § 482.24(c); Cal. Bus. & Prof. Code § 2266. Healthcare provider notes are increasingly shared directly with patients, empowering them to actively track their symptoms, review care instructions, and participate more actively in managing their health. Jones Decl., ¶ 13. It follows that documenting patient encounters is a routine and essential component of healthcare. *Id.* at ¶ 8. The manner in which that documentation is performed nevertheless varies. Healthcare providers have, for example: created handwritten or typed notes during or after a patient visit; had a colleague sit through a patient visit to write or type notes; and/or dictated notes. *Id.* at ¶ 9. Written or dictated notes are often then passed to other personnel to review, organize, and type into a final set of notes to be placed into the patient file. *Id.*

It is also a routine part of modern medicine that patient records are shared among care teams, specialists, and support staff to ensure appropriate record-keeping and coordinated treatment. *Id.* at ¶ 10. To illustrate, it is common for a patient to first meet with a medical assistant during a visit who reviews the patient's file, discusses their health issues, and takes notes. That medical assistant may then discuss that encounter with a doctor, who reviews the patient's notes, meets with the patient, takes their own notes, and further discusses the visit with other personnel (who also may review the file) in connection with planning treatment steps, discharging the patient, and ensuring proper record-keeping. *Id.* The patient's file may then be shared with further healthcare providers to consult on potential treatments or diagnoses. *Id.* at ¶ 11. It may also be shared with billing vendors, electronic

health record providers, administrative personnel, and insurance providers in connection with various administrative tasks. *Id.* Ultimately, this back-and-forth is reflected in a medical record hosted by a third-party service provider. In other words, the involvement of additional personnel or service providers in documentation and subsequent review of patient files is not new; it is how healthcare is delivered. *Id.* at ¶¶ 9–14.

Documenting patient encounters is important to the provision of high-quality care, but it imposes significant burdens on healthcare providers. Throughout the healthcare industry, administrative burden has been widely recognized as a major contributor to provider fatigue and burnout, reducing the time clinicians can devote to direct patient care. *Id.* at ¶ 14.

**2. Sutter's Notice of Privacy Practices Informs Patients of Its Use of Business Associates for Transcription**

To provide support for administrative functions involved in providing patient care, healthcare providers have long relied on third-party business associates such as vendors, contractors, and other organizations that perform services for healthcare providers. In supporting healthcare providers, these business associates create, receive, maintain, or transmit protected health information ("PHI"), *i.e.,* patient data. Under HIPAA, covered entities must provide patients a NPP that explains the use and disclosure—including to business associates—of protected health information. *See* 45 C.F.R. § 164.520.

Sutter provides patients with its NPP, which explains how Sutter and its affiliates use and disclose patient PHI. *See* Ex. 2 to Carkhuff Decl. (Sutter's current NPP) at 7; Ex. 3 to Carkhuff Decl. (Prior version of Sutter's NPP) at 7. Sutter's NPP provides:

> There are some services provided in our organization through contracts with business associates. Examples include transcribing your medical record, surveying for patient satisfaction, and a copy service we use when making copies of your health record. When services are provided by contracted business associates, we may disclose the appropriate portions of your health information to them so they can perform the job we have asked them to do. However, our business associates are also required by law to safeguard your information.

*See* Ex. 2 to Carkhuff Decl. at 7; Ex. 3 to Carkhuff Decl. at 7; *see also* Carkhuff Decl., ¶¶ 6–8. Sutter's NPP is publicly available on its website. Carkhuff Decl., ¶ 9.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. Abridge's Functionalities and BAA with Sutter

#### 1. The Abridge Platform as a Clinical Documentation Program

Sutter implemented the Abridge platform to support clinical documentation, ease administrative burden and thereby enable its providers to spend more of their time providing care—all as part of its larger mission of improving patient care and expanding access to care. Jones Decl., ¶¶ 15–16. Initially, Sutter provided certain affiliated physicians with access to the Abridge platform for a clear clinical purpose: to support the provision of care while reducing the documentation burden driving physician burnout. *See id.* at ¶¶ 14–15. Sutter's decision in this regard reflects an industry-wide effort to reduce administrative burden on healthcare providers while improving accuracy and patient engagement.[1] And as even the Complaint concedes, the Abridge platform enables Sutter-affiliated physicians to achieve those goals. *See* Compl., ¶ 16; *see also* Jones Decl., ¶ 18.

The Abridge platform works in three steps: (1) a microphone-enabled device captures the audio of a patient visit; (2) Abridge, without the need to involve any human, generates a transcript of that audio and drafts the beginnings of a clinical note; and, (3) the physician reviews, edits, and finalizes the draft before it is added to the patient's medical file. *See* Jones Decl., ¶ 15. A patient can opt out of the use of the Abridge platform at any time by asking their provider to stop using the platform. That opt-out is then recorded in the patient's medical record. *Id.* at ¶ 17.

Sutter's implementation of the Abridge platform and similar technologies has returned more than one million working hours to employees and physicians—time that clinicians can, in turn, devote to patient care. *See* Ex. 1 to Jones Decl. (Sutter's 2024 Annual Report) at 51. The use of the Abridge platform brings another benefit—it enhances patient privacy by replacing human beings who would serve as transcriptionists of handwritten or dictated notes of patient visits with automated processes, thereby reducing the number of people who otherwise would have eyes on notes of a patient's visit.

---

[1] Georgia Garvey, *Health Systems Help Doctors Bogged Down by Administrative Burdens*, Am. Med. Ass'n (Dec. 10, 2024), https://www.ama-assn.org/practice-management/physician-health/health-systems-help-doctors-bogged-down-administrative-burdens.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2. Sutter's BAA With Abridge as a Business Associate

Federal law expressly recognizes the long-standing and central role of third-party service providers in performing essential healthcare functions. *See* 45 C.F.R. § 164.502(e)(1). HIPAA business associates can permissibly receive and process patient information pursuant to the terms of binding Business Associate Agreements ("BAAs") that limit how patient information can be used or disclosed by the business associate. *See* 45 C.F.R. § 164.504(e)(2). HIPAA BAAs require business associates to implement administrative, technical, and physical safeguards to protect patient information from misuse or unauthorized access. *See* 45 C.F.R. §§ 164.308, 164.310, 164.312. They also impose affirmative obligations on the business associate to report any unauthorized use or disclosure. *See* 45 C.F.R. § 164.410.

Sutter has a BAA with Abridge, executed before Sutter provided affiliated physicians access to the Abridge platform. *See* Carkhuff Decl., ¶ 5; Ex. 1 to Carkhuff Decl. (BAA). The BAA between Sutter and Abridge supplies the legal and contractual framework governing how Abridge must protect PHI while supporting Sutter's healthcare operations.

Sutter's BAA with Abridge imposes obligations governing Abridge's receipt, use, disclosure, and safeguarding of patient PHI. *See* Ex. 1 to Carkhuff Decl. (BAA). For example, it requires Abridge to perform its services "in strict compliance with HIPAA, California law, and all other applicable laws." *Id.* § 2. It prohibits Abridge from using or disclosing PHI, except as necessary to provide services to Sutter or as otherwise permitted by HIPAA, and bars Abridge from receiving remuneration in exchange for Sutter patients' PHI. *Id.* §§ 2(j), 3. The BAA also requires Abridge to implement and maintain safeguards designed to protect the confidentiality and security of patient PHI, including administrative, technical, and physical safeguards, and imposes reporting obligations for unauthorized uses or disclosures. *Id.* §§ 2(a)–(c). Abridge's public Privacy Policy acknowledges these limitations, stating that Abridge processes patient information "solely on behalf of" its covered entity customers and under the terms of its BAAs. *See* Ex. A (Abridge's Privacy Policy) at 1.

## D. The Complaint's Allegations

### 1. Allegations Specific to Plaintiff Matulic

The Complaint alleges that Plaintiff Matulic "sought and received medical care from

healthcare providers affiliated with Memorial Care in California." Compl., ¶ 31. It does not identify the date of any medical visit, the name of any treating provider, the location of any clinic, or any specific medical interaction involving Plaintiff Matulic. *Id.* ¶¶ 32–34. The Complaint, however, *fails* to allege that Plaintiff Matulic received care from Sutter. In fact, Sutter's records confirm that Plaintiff Matulic has never received treatment at any Sutter facility or from any Sutter-affiliated healthcare provider. Carkhuff Decl., ¶ 12.

**2. Allegations Specific to Plaintiff Gueretta**

The Complaint alleges that Plaintiff Gueretta received medical care from healthcare providers affiliated with Sutter Health in California. Compl., ¶ 31. It goes on to allege that, during some unspecified appointment, the Abridge platform was used. *Id.* ¶¶ 2 (p. 1), 32–33.[2] The Complaint does not identify the date of his visit, the provider he saw, or the location of his care. *See id.* Sutter's records, however, reflect that Plaintiff Gueretta was treated by a Sutter provider who did not have access to the Abridge platform. Carkhuff Decl., ¶ 13. As a result, the Abridge platform could not have been used.

**3. Allegations Specific to Plaintiff Washington**

The Complaint alleges that Plaintiff Washington received medical care from a Sutter-affiliated provider in California. Compl., ¶¶ 9, 31–33. It goes on to allege that, during some unspecified medical appointment, the Abridge platform was used. *Id.* at ¶¶ 2, 32–33. The Complaint does not, however, identify the date of her visit, the specific provider involved, the clinic location, the substance of any particular conversation or treatment at issue, or the specific information that Plaintiff Washington claims was recorded during her clinical visit(s). *Id.* at ¶¶ 22, 32–34.

**4. Allegations Common to All Named Plaintiffs**

Plaintiffs' remaining allegations are a web of speculation and leave too much for the Court to fill in even at the pleading stage. The Complaint generally alleges that Sutter-affiliated physicians used the Abridge platform to record their medical encounters with each of Plaintiffs Washington,

[2] The Complaint contains duplicative paragraph numbers. Where multiple paragraphs have the same number, Sutter provides the Complaint page number to identify the paragraph.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Gueretta, and Matulic, without consent between October 8, 2025, and April 8, 2026, i.e., the six months preceding the filing of the Complaint. *Id.* at ¶¶ 2–8.

Each allegation in the Complaint concerning Sutter's use of the Abridge platform and how the platform functions is made on "information and belief."[3] *Id.* at ¶¶ 14, 39–42. Moreover, the Complaint does not identify a single statement made by any particular Plaintiff that was purportedly recorded by the Abridge platform. At most, the Complaint alleges generally that the recordings and transcripts of Plaintiffs' visits with healthcare providers contain individually identifiable medical information, including symptoms, diagnoses, medications, treatment plans, and medical history. *Id.* at ¶ 3.

Based on this, the Complaint asserts claims under Section 632 of CIPA, Sections 56.10 and 56.11 of CMIA, UCL, and ECPA, as well as a common law claim for intrusion upon seclusion. *Id.* at ¶¶ 55–112. Plaintiffs also seek to represent a nationwide class. *Id.* at ¶¶ 31–33, 46. But the Complaint identifies no concrete, particularized, and traceable injury, and therefore no Article III basis for this Court to exercise jurisdiction.

## IV. LEGAL STANDARD

Article III standing is a jurisdictional prerequisite, and "[t]o satisfy Article III's case or controversy requirement, a plaintiff must establish that she has standing to invoke the jurisdiction of the federal courts." *Bowen*, 118 F.4th at 1142 (citing *TransUnion LLC*, 594 U.S. at 423). "To do so, [the plaintiff] 'must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs must establish Article III standing *individually* as well as to *each* of their claims; one named Plaintiff cannot rely on the standing of another. *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022); *see also Easter*, 381 F.3d at 961–62.

Each element can be challenged at the pleading stage via a motion under Rule 12(b)(1), as

---

[3] The Court need not rely on such unsupported allegations where the record contradicts Plaintiffs' allegations. *White*, 227 F.3d at 1242. The Court may properly consider evidence beyond the face of the complaint where a defendant raises a factual attack on a motion to dismiss under Rule 12(b)(1). *Id.*



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

either a facial attack or a factual attack with evidence. *Bowen*, 118 F.4th at 1142–43. In the context of a factual attack—such as Sutter's motion here—the defendant can rely both on the complaint's allegations[4] and extrinsic evidence. *Gastelum v. Blue Diamond Hosp. LLC*, 2023 WL 3958898, at *5 n.1 (N.D. Cal. June 12, 2023). Once the defendant has "contested 'the truth of the plaintiff['s] factual allegations,' the plaintiff has the burden 'to support her jurisdictional allegations with competent proof'" and by a preponderance of the evidence. *Bowen*, 118 F.4th at 1142–43 (quoting *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021)); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Importantly, however, in a factual challenge to jurisdiction, the Court does *not* presume the truth of the complaint's allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court can weigh the parties' evidence and resolve factual disputes that bear on the jurisdictional issue, provided that they are not "intertwined with the merits of the claim." *Bowen*, 118 F.4th at 1143; *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Cannara v. Nemeth*, 467 F. Supp. 3d 877, 882 (N.D. Cal. 2020); *Gastelum*, 2023 WL 3958898, at *5. If a plaintiff fails to carry its burden to satisfy *all* three elements of Article III standing, the claim must be dismissed. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### A. Injury In Fact, Generally (Element 1)

"To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized,'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo, Inc.*, 578 U.S. at 339), and "real or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. A concrete injury must be "real" and not "abstract." *In re Facebook*, 956 F.3d at 598.

"Various intangible harms can also be concrete." *TransUnion*, 594 U.S. at 425; *see also Spokeo*, 578 U.S. at 340. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[,] . . . for example,

[4] A complaint's allegations must still satisfy relevant pleading standards; labels, conclusions, and formulaic recitations of elements do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. Nonetheless, a mere statutory violation is insufficient. *Spokeo*, 578 U.S. at 341. A plaintiff does *not* "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right;" a court must still "independently decide whether a plaintiff has suffered concrete harm under Article III." *Id.*; *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025).

Specifically, when a plaintiff alleges an intangible harm, courts must look to the specific alleged underlying harm and compare it, in detail, to substantive features and *specific elements* of the common-law tort. *Popa*, 153 F.4th at 791–92. Comparing the alleged injury to common law privacy rights "at a high level of generality" is not a proper analysis under *TransUnion*. *Id.* at 792. For example, if a plaintiff's allegations in a privacy case fail to explain what was "'highly offensive' or 'embarrassing,' invasive, or otherwise private'" in a manner that comports with a common law claim, the plaintiff has failed to establish injury in fact for an invasion of privacy. *Id.* at 791; *see also McNamar v. Experian Info. Sols., Inc.*, 2026 WL 1603306, at *4 (N.D. Cal. June 4, 2026) (Gilliam, J.); *Ingraham v. Capital One Fin. Corp.*, 2026 WL 1755170, at *7–8 (N.D. Cal. May 22, 2026).

**B. Traceability and Redressability, Generally (Elements 2 and 3, Respectively)**

Article III also requires that the alleged injury be fairly traceable to the defendant's conduct and be redressable. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976). These "components for standing overlap and are 'two facets of a single causation requirement.'" *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022). To establish the traceability element, a plaintiff must show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* Traceability cannot be established by relying on the conduct of a different entity, even if that entity engaged in similar conduct. *Easter*, 381 F.3d at 962.

The element of "[r]edressability is satisfied so long as the requested remedy 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Mercinas*, 30 F.4th at 900; *see also Spokeo*, 578 U.S. at 338.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## V. ARGUMENT

### A. Plaintiff Matulic Does Not and Cannot Show Traceability (Element 2)

The Complaint fails to allege that Plaintiff Matulic suffered any injury that is fairly traceable to Sutter. That is because Plaintiff Matulic was not treated by Sutter. Carkhuff Decl., ¶ 12. By the Complaint's own allegations, Plaintiff Matulic purportedly received healthcare services only from the Memorial Defendants. Compl., ¶ 31. Sutter is a legal entity separate and distinct from, and does not share operations with, the Memorial Defendants. Carkhuff Decl., ¶ 3.

Article III requires that a plaintiff's alleged injury be "fairly traceable" to the defendant's challenged conduct. *Simon*, 426 U.S. at 41. This element demands a causal connection between the alleged injury and the conduct of the specific defendant. *Id.* A plaintiff cannot seek to establish traceability to pursue claims against one defendant by relying solely on conduct allegedly perpetrated by a separate defendant. This holds true even if the entities are alleged to have engaged in similar conduct. *Easter*, 381 F.3d at 962. *Easter* is illustrative. There, borrowers sued dozens of securitization trusts but could trace their alleged injury—the payment of usurious interest rates—to only one specific trust that held their loan. 381 F.3d at 962. The remaining trusts never held the named plaintiffs' loan, and the Ninth Circuit held that there was no traceability because the plaintiffs' injury was not caused by those defendants' conduct. *Id.*

The Complaint's allegations as to Plaintiff Matulic suffer from the same defect. The Complaint alleges that Plaintiff Matulic "sought and received medical care from healthcare providers affiliated with ***Memorial Care*** in California." Compl., ¶ 31 (emphasis added). It does not allege that she received care at Sutter, a fact borne out in Sutter's internal records. Carkhuff Decl., ¶ 12.[5]

Just as in *Easter*, Plaintiff Matulic's allegations are insufficient to establish traceability to Sutter. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) ("[Plaintiff] however, fails to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured

[5] Nor does the Complaint allege any basis to attribute Memorial Care's conduct to Sutter. It pleads no facts suggesting agency, control, joint operations, or any other relationship that would permit liability to be imputed.

other parties."). For this reason, all of Plaintiff Matulic's claims against Sutter must be dismissed. *See Taferner v. Inspire Brands, Inc.*, 2025 WL 942498, at *7 (C.D. Cal. Mar. 25, 2025).

### B. Plaintiff Gueretta Does Not and Cannot Show Injury-in-Fact (Element 1)

Plaintiff Gueretta also lacks Article III standing for any of his claims because he has not suffered the injury on which his claims all depend. Each of Plaintiff Gueretta's claims rests on the allegation that his clinical visit was recorded by Sutter using the Abridge platform. *See, e.g.*, Compl., ¶¶ 59 (CIPA), 66 (CMIA), 77–84 (UCL). But that is not possible; the Sutter provider that Plaintiff Gueretta saw *did not have access to the Abridge platform*. Carkhuff Decl., ¶ 13.

Article III requires a plaintiff to show that he *personally* suffered the alleged injury. A plaintiff cannot rely on generalized allegations or injuries suffered by others. *TransUnion LLC*, 594 U.S. at 423. The Supreme Court illustrated this principle in *TransUnion*, where putative class members whose erroneous credit reports were disseminated had standing, but those whose reports were never shared did not. *Id.* at 439. Where the alleged conduct did not affect the plaintiff, there can be no injury in fact. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016) (affirming dismissal where plaintiff "could not have been injured in the manner in which she alleges").

That is precisely the case here. Sutter's initial deployment of the Abridge platform was to only certain providers, who had to be granted access in order to use the platform. Carkhuff Decl. ¶ 4. Without that access, Sutter providers could not use the platform. *See id.* Sutter's records reflect that Plaintiff Gueretta was *only* seen by a provider who did <u>not</u> have access to the Abridge platform. *Id.* at ¶ 13.

The Complaint's allegations that Plaintiff Gueretta's "confidential physician-patient communications [were] recorded, transmitted to third-party vendors, and processed by artificial-intelligence systems" are baseless. Compl., ¶ 85. The Complaint's conclusory allegations are insufficient in light of Sutter's evidence. *See White*, 227 F.3d at 1242 (the court "may look beyond the complaint" and "need not presume the truthfulness of the plaintiffs' allegations" when considering a factual attack under Rule 12(b)(1)). Because Plaintiff Gueretta's clinical visits were not recorded using the Abridge platform, he lacks Article III standing and his claims against Sutter must be dismissed.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. Plaintiff Washington Does Not and Cannot Show Injury-in-Fact (Element 1)[6]

To establish Article III standing for Plaintiff Washington, the Complaint must allege facts demonstrating that the conduct that purportedly caused Plaintiff Washington's harm bears a "close relationship" to a traditionally recognized injury. *TransUnion*, 594 U.S. at 425. The gravamen of each of Plaintiff Washington's claims is that Sutter's use of the Abridge platform constituted a violation of the traditionally recognized tort of invasion of privacy. *See*, *e.g.*, Compl., ¶¶ 5, 18, 58, 83, 92. That tort requires allegations showing (1) a reasonable expectation of privacy; (2) an intrusion or disclosure of the private content; (3) in a way that was highly offensive and Article III standing requires (4) compensable damages. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). The Complaint fails to adequately plead any of these elements. *See* Sutter's concurrently filed motion to dismiss under Fed. R. Civ. P. 12(b)(6), Sec. V.A.

#### 1. Plaintiff Washington Did Not Have a Reasonable Expectation of Privacy[7]

Where a plaintiff proceeds with medical care while knowing that their information will be collected or shared with third parties, there cannot be a reasonable expectation of privacy and thus there cannot be any concrete privacy injury for purposes of Article III standing. *See Hammerling*, 615 F. Supp. 3d at 1089 (no reasonable expectation of privacy when the plaintiff "should know" about the practice being complained of and nonetheless continues to participate in that activity); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *15 (N.D. Cal. Sept. 26, 2024) (same); *Ingraham v. Capital One Fin. Corp.*, 2026 WL 1755170, at *8 (N.D. Cal. May 22, 2026) (no concrete privacy injury where plaintiff continued to submit information despite knowing how it would be used).

Here, Plaintiff Washington had no reasonable expectation that her clinical visit would not be documented, and the contents shared amongst other Sutter personnel and business associates within

---

[6] To the extent that the Court does not dismiss the claims of Plaintiffs Gueretta and Matulic for the reasons described *supra*, the following arguments apply equally to them and form an independent basis to dismiss their claims.

[7] Plaintiffs likely will rely on an entirely different species of case in efforts to shoehorn their allegations into the types of privacy claims that have been allowed to proceed past the pleading stage on wiretapping theories. But this is not a case involving the allegedly surreptitious use of pixels to track user movements on the internet for purposes of driving advertising revenue. *Cf. In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1151 (N.D. Cal. 2025). It is not a case where the plaintiff expected her discussions would not be documented at all. *Cf. Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 233 (1998). This is not even a case where a third-party human being is claimed to have eavesdropped. *Cf. Id.*



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

the chain of healthcare delivery. Sutter's NPP expressly informs patients that Sutter could use a business associate such as Abridge to "transcrib[e] [her] medical record." *See* Ex. 2 to Carkhuff Decl. (Current NPP) at 7; Ex. 3 to Carkhuff Decl. (Prior NPP) at 7. Moreover, even aside from the NPP, it is common sense and widely-understood experience that clinical visits are documented in various ways and shared with other healthcare personnel. *See Whalen v. Roe*, 429 U.S. 589, 602 (1977) (recognizing the common practice of sharing medical records); *McCann v. Iroquois Mem. Hosp.*, 622 F.3d 745, 749 (7th Cir. 2010) (recognizing use of dictation machine recordings and transcription as common practices in healthcare); *U.S. v. Azure*, 801 F.2d 336, 342 (8th Cir. 1986) (recognizing transcription of examination notes into reports as a common practice in healthcare). Under these circumstances, any expectation of privacy that Plaintiff Washington may have had was patently and objectively ***un***reasonable. Plaintiff Washington therefore cannot allege an actionable injury-in-fact. *See, e.g.*, *Hammerling*, 615 F. Supp. 3d at 1089.

**2. Plaintiff Washington Cannot Show Any Intrusion**

Plaintiff Washington similarly cannot show any intrusion that would be akin to an injury at common law. A party that is voluntarily included in a conversation, and is known to the other parties to that discussion, cannot "intrude" upon that discussion. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024). Those are the circumstances here.

The Complaint alleges that Plaintiff Washington communicated medical information to her physician during treatment. Compl., ¶¶ 5, 31. But as the Complaint acknowledges, Sutter was knowingly and voluntarily included in that discussion by Washington; indeed, Sutter was the intended recipient. That is dispositive in this context. *Saedi*, 2025 WL 1141168, at *6; *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023) (dismissing intrusion upon seclusion claim on the grounds that there can be no intrusion where plaintiffs acknowledge in the complaint that they voluntarily provided their information directly to defendant).

**3. Plaintiff Washington Cannot Show Any Public Disclosure of Her Information**

The Complaint likewise fails to allege that Sutter publicly disclosed private medical

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

information. Public disclosure of private facts requires "publicity." *McNamar v. Experian Info. Sols., Inc.*, No. 25-CV-04819-HSG, 2026 WL 1603306, at *3 (N.D. Cal. June 4, 2026). Publicity means the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D (1977); *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022) ("[T]he harm at the core of the tort is based not on the fact that embarrassing information exists, but that the public knows about it. So without publicity, there can be no public disclosure."). Public disclosure "is essential to creating the comparator tort in the first place" and substituting it for private or internal handling creates a "qualitatively different harm" that cannot support standing. *Hunstein*, 48 F.4th at 1249; *see also Smith v. Radius Global Solutions, LLC*, 2023 WL 6373874, at *3 (C.D. Cal. Sept. 25, 2023) ("disclosure of private information absent publication—is not a historically recognized harm.").

In a case similar to this one, *Smith v. Radius Global Solutions, LLC*, the court held that a healthcare provider's sharing information with a printing vendor did not constitute a concrete privacy injury because there was no dissemination beyond the service provider engaged for that specific purpose. 2023 WL 6373874, at *3. The court explained this type of data use lacked the defining feature of the historical tort—publicity—and thus did not bear a close relationship to public disclosure of private facts. *Id.* The Supreme Court, in *dicta*, has echoed the same sentiment, noting disclosures to vendors do not satisfy the publication requirement and therefore do not bear a close relationship to traditional privacy harms. *TransUnion*, 594 U.S. at 434 n.6 (plaintiffs' contention that disclosure to a printing vendor constituted publication was unavailing because American courts historically did not recognize disclosures to printing vendors as actionable publications).

This matter is no different. The Complaint lacks any allegation that Plaintiff Washington's medical information was publicized. It merely alleges "upon information and belief" that a HIPAA business associate "may" have accessed patient data for purposes such as transcription, maintenance, or quality assurance. Compl., ¶ 14. These allegations describe internal processing of data *consistent* with the scope of both HIPAA and CMIA; not some public disclosure sufficient to give rise to a cognizable injury.

Compounding this pleading deficiency is the fact that the Complaint's allegations are untethered from Plaintiff Washington herself. The Complaint does not allege what of Plaintiff Washington's information was actually disclosed, electing instead for vague allegations of what "may" have been shared with the Abridge platform. *Id.* at ¶¶ 3 (p. 1), 2 (p. 4), 13 (p. 7), 67; *see also Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 682 (N.D. Cal. 2021) (no standing where plaintiffs failed to allege their particular communications may have improperly been sent to a third-party contractor). For these additional reasons, Plaintiff Washington lacks Article III standing.

**4. Plaintiff Washington Cannot Show Any Highly Offensive Intrusion**

Even if the Complaint could plausibly allege an intrusion or a disclosure, Plaintiff Washington still lacks standing because the Complaint does not and cannot show that Sutter's conduct would be "highly offensive to a reasonable person." *Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *3 (E.D. Cal. Apr. 17, 2026). Courts have long recognized that the "highly offensive" inquiry turns on whether the conduct meaningfully departs from social norms and reasonable expectations of privacy. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). The Complaint alleges no such departure. Nothing about the alleged conduct here meets that demanding standard. The use of patient information in a manner consistent with ordinary healthcare operations, patient expectations, and California and federal law is not comparable to the type of egregious conduct historically required to sustain an invasion of privacy claim.

The Complaint's own allegations and the evidence confirm that the challenged practices fall squarely within routine and disclosed healthcare operations. Sutter's practice is to regularly provide its NPP (which is also available on its website) to patients prior to treatment. Carkhuff Decl., ¶ 8. That notice expressly informs patients that their information may be used and disclosed to business associates for, *inter alia*, transcribing medical records. Ex. 2 to Carkhuff Decl. (Current NPP) at 7; Ex. 3 to Carkhuff Decl. (Prior NPP) at 7. Having notice of these practices and nonetheless electing to proceed with treatment, Plaintiff Washington cannot plausibly claim that those same disclosed and expected practices are "highly offensive." *See, e.g.*, *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 26 (1994) (noting that in an invasion of privacy case where consent is given, conduct will rarely be found highly offensive so as to justify tort liability).



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Nor could a reasonable person find Sutter's alleged conduct offensive. Federal and California law allows third-party service providers to perform essential healthcare functions. *See* 45 C.F.R. § 164.502(e)(1); Cal. Civ. Code § 56.10(c)(3). In other words, Plaintiff challenges the propriety of the careful legislative balance struck by both California and Federal authorities in determining when patient information can be disclosed to service providers. *See* Sutter's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Sec. V.D.3.

Against that backdrop, Plaintiff Washington's theory would convert standard, statutorily permitted healthcare practices into tortious conduct. Because the Complaint is bereft of conduct that a reasonable person could regard as highly offensive, it lacks the defining feature of the privacy torts on which Plaintiff Washington relies. Accordingly, Plaintiff Washington lacks Article III standing.

**5. Plaintiff Washington Cannot Show Any Emotional or Economic Harm**

To establish standing, a plaintiff must plausibly allege a concrete injury. Under *Twombly* and *Iqbal*, a complaint must allege facts—not labels or formulaic recitations—that make the asserted injury plausible. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Courts routinely reject claims of emotional distress or economic loss that are untethered to concrete facts or to harms recognized at common law. *See, e.g.*, *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011); *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 782–84 (N.D. Cal. 2019).

The Complaint's allegations of Plaintiff Washington suffering emotional harm are entirely conclusory. Plaintiff Washington asserts only that she suffered "emotional distress, mental anguish, anxiety, anger, [and] humiliation." Compl., ¶¶ 44, 62, 72, 97. The Complaint asserts no specific facts explaining how or why that harm occurred, nor does it include any facts supporting such assertions. The Complaint also does not allege public exposure, reputational injury, or any circumstance historically associated with emotional injury in privacy cases. It merely asserts—without explanation—that routine clinical documentation caused severe emotional harm. Those circumstances do not make it plausible that Plaintiff Washington suffered some emotional distress. *See Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *7 (S.D. Cal. Feb. 23, 2026) (rejecting bare allegations of emotional injury stemming from alleged misuse of medical information where the conclusory allegations failed to include any detail or specific claims of genuine injury); *Cohen*, 798

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

F. Supp. 2d at 1097 (dismissing conclusory allegations of harm unsupported by factual detail).

Plaintiff Washington's economic injury theory fails for the same reason. The Complaint alleges, in formulaic terms, that Plaintiff Washington "lost money or property" by paying for medical services rendered. Compl., ¶ 86. But the Complaint does not allege she paid more, received diminished care, or relied on any representation regarding how her information would be documented. The Complaint also does not specify what her actual (alleged) economic loss was; there is no mention of additional bills, payments or *anything* else. Courts reject this type of theory as insufficient. In *In re Facebook*, for example, the court dismissed claims where plaintiffs alleged economic harm but failed to connect that theory to any actual loss or diminished value. 402 F. Supp. 3d at 782–84. The same is true here. Plaintiff's allegation that she paid for medical care does not plausibly establish a cognizable economic injury tied to the alleged conduct.

Because Plaintiff does not plausibly allege emotional or economic harm stemming from her purported privacy injury that bears a close relationship to a traditionally recognized injury, Plaintiff Washington does not have Article III standing, and her claims should be dismissed.

## VI. CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing.

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: July 13, 2026

Respectfully submitted,

**MCDERMOTT WILL & SCHULTE LLP**

By: */s/ J. Jonathan Hawk*

J. JONATHAN HAWK
ARI R. SWAZER
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

DAVID P. SAUNDERS (*pro hac vice*)
dsaunders@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

*Attorneys for Defendant*
SUTTER HEALTH