J. Jonathan Hawk (254350)
jhawk@mcdermottlaw.com
Arianna R. Swazer (359884)
aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     +1 310 277 4110
Facsimile:     +1 310 277 4730

David P. Saunders (Admitted *pro hac vice*)
dsaunders@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, IL  60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

Attorneys for Defendant Sutter Health

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA WASHINGTON, DENNIS GUERETTA, and REBECCA MATULIC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH, a California nonprofit corporation; MEMORIAL HEALTH SERVICES, INC., a California nonprofit corporation; MEMORIALCARE MEDICAL FOUNDATION, a California nonprofit foundation; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO. 4:26-cv-03012<br><br>**DEFENDANT SUTTER HEALTH'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (ECF NO. 1) PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Sutter Health's Request for Judicial Notice; [Proposed] Order]*<br><br>Date:        September 3, 2026<br>Time:        2:00 P.M.<br>Courtroom:  Courtroom 2, 4th Floor (Oakland)<br>Judge:       Haywood S. Gilliam, Jr. |

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION .................................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ...................................................................4

III.    BACKGROUND ...................................................................................................................4

      A.      Sutter Health .............................................................................................................4

      B.      The Complaint's Allegations .....................................................................................4

      C.      Sutter's Use of the Abridge Platform ........................................................................5

IV.     LEGAL STANDARD ............................................................................................................6

V.      ARGUMENT .........................................................................................................................7

      A.      The Complaint Does Not and Cannot Plead a Claim for Intrusion Upon
            Seclusion ....................................................................................................................7

            1.      The Intrusion Upon Seclusion Claim Does Not Allege a Reasonable
                    Expectation of Privacy (Fourth Claim, Element (1)) ...................................8

                  a.      Applicable Law .................................................................................8

                  b.      Plaintiffs' Expectation Was Unreasonable .......................................9

            2.      The Complaint's Claim for Intrusion Upon Seclusion Does Not Allege
                an Intentional Intrusion (Fourth Claim, Element (1)) .................................11

            3.      The Complaint's Claim for Intrusion Upon Seclusion Does Not Allege
                a Highly Offensive Intrusion (Fourth Claim, Element (2)) .........................12

      B.      The Complaint Does Not and Cannot Plead a CMIA Claim (Second Claim) .............13

            1.      Disclosure of Medical Records to Abridge Is Authorized Under CMIA ........13

            2.      Disclosure of Medical Records to Abridge Is Authorized by HIPAA.............14

            3.      The Complaint Fails to Plead Any Disclosure of "Medical
                Information".................................................................................................14

      C.      The Complaint Does Not and Cannot Plead an ECPA Claim (Fifth Claim) ...............15

      D.      The Complaint Does Not and Cannot Plead a Claim Under CIPA, Section 632 ........16

            1.      Plaintiffs Consented to the Use of Recording Technologies .........................16

- i -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

2. Plaintiffs' Conversations Were Not "Confidential" Under Section 632 .........17

3. CIPA Cannot Contradict CMIA or HIPAA .......................................................18

4. The Rule of Lenity Requires Resolving Any Ambiguity in Sutter's Favor ................................................................................................................20

E. The Complaint Does Not and Cannot Plead a Claim Under Any Prong of the UCL (Third Claim) ......................................................................................................21

1. The Complaint Fails to Plead Statutory Standing ...........................................21

2. The Complaint Fails to Plead a Claim Under Any UCL Prong.....................22

a. Legally Authorized Conduct Cannot Support a UCL Claim ...............22

b. There Is No Unfair Conduct That Supports a UCL Claim ..................23

c. Plaintiffs Cannot Meet Rule 9(b)'s Heightened Pleading Standard for Fraudulent Conduct ...........................................................24

d. There Is No Unlawful Conduct to Support a UCL Claim ...................25

VI. CONCLUSION.................................................................................................................25

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal. App. 4th 1176 (2012) ..................................................................................................25

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ....................................................................................................23

*Andersen v. Oak View Grp., LLC*,
  2024 WL 5426654 (C.D. Cal. Nov. 22, 2024)............................................................................7

*Anglin v. Pratti*,
  643 F. Supp. 3d 1077 (E.D. Cal. 2022)......................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................6, 7, 22, 23

*Atlas Res., Inc. v. Liberty Mut. Ins. Co.*,
  2010 WL 11552917 (D.N.M. June 24, 2010) ...........................................................................14

*B.K. v. Eisenhower Medical Center*,
  721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...............................................................................15, 16

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) .................................................................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................................6

*Blaker v. NetScout Systems, Inc.*,
  No. 25STCV31283 (L.A. Cnty. Super. Ct., May 27, 2026) ......................................................21

*Capito v. San Jose Healthcare Sys., LP*,
  17 Cal. 5th 273 (2024) ..............................................................................................................24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .........................................................................................................22, 25

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) .....................................................................................................22

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ......................................................................................................7

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023)......................................................................................15

- iii -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) .................................................................................19, 22

*De May v. Roberts*,
  9 N.W. 146 (Mich. 1881) ...................................................................................................9

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*,
  42 F.3d 1541 (9th Cir. 1994) .............................................................................................7

*Desnick v. Am. Broadcasting Companies, Inc.*,
  44 F.3d 1345 (7th Cir. 1995) .............................................................................................8

*Deteresa v. Am. Broad. Cos., Inc.*,
  121 F.3d 460 (9th Cir. 1997) ...........................................................................................16

*Dietemann v. Time, Inc.*,
  449 F.2d 245 (9th Cir. 1971) .............................................................................................9

*Doe v. Davita Inc.*,
  2024 WL 1772854 (S.D. Cal. Apr. 24, 2024)..................................................................15

*Doe v. Eating Recovery Ctr. LLC*,
  806 F. Supp. 3d 1109 (N.D. Cal. 2025) .....................................................................20, 21

*Doe v. Kaiser Foundation Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................................................................14

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
  2018 WL 10072961 (C.D. Cal. May 1, 2018) .................................................................21

*Elliott v. QF Circa 37, LLC*,
  2017 WL 6389775 (S.D. Cal. Dec. 14, 2017)..................................................................22

*Emmerick v. Ridgecrest Regional Hospital*,
  2018 WL 784302 (E.D. Cal. Feb. 8, 2018).......................................................................13

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) .....................................................................................................17

*Fleites v. MindGeek S.A.R.L.*,
  801 F. Supp. 3d 1045 (C.D. Cal. 2025) .............................................................................6

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
  353 U.S. 222 (1957)..........................................................................................................19

*In re Google, Inc. Privacy Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ...............................................................................13

*Graham v. Bank of Am.*,
  226 Cal. App. 4th 594 (2014) ...........................................................................................23

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................................12

*Hale v. Morgan*,
   22 Cal. 3d 388 (1978) ..........................................................................................................20

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................................8, 11

*Harrott v. County of Kings*,
   25 Cal. 4th 1138 (2001) ........................................................................................................20

*Hellon & Associates, Inc. v. Phoenix Resort Corp.*,
   958 F.2d 295 (9th Cir. 1992) ................................................................................................18

*Hill v. Nat'l Collegiate Athletic As'sn*,
   7 Cal. 4th 1 (1994) ............................................................................................................8, 12

*Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   2023 WL 7284160 (N.D. Cal. Nov. 3, 2023) .......................................................................25

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................................13

*Javier v. Assurance IQ, LLC*,
   649 F. Supp. 3d 891 (N.D. Cal. 2023) .................................................................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................................................7, 24

*Khoury v. Maly's of Cal., Inc.*,
   14 Cal. App. 4th 612 (1993) .................................................................................................23

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ..........................................................................................................21

*Libman v. Apple, Inc.*,
   2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ......................................................................8

*Lisota v. Heartland Dental, LLC*,
   No. 25 CV 7518, 2026 WL 91667 (N.D. Ill. Jan. 13, 2026)................................................16

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................................13

*Mahajan v. Kumar*,
   2010 WL 481215 (E.D. Cal. Feb. 5, 2010).......................................................................11, 12

*Massey-Diez v. Univ. of Iowa Comm. Med. Srvcs., Inc.*,
   826 F.3d 1149 (8th Cir. 2019) ................................................................................................9

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*McCann v. Iroquois Mem. Hosp.*,
622 F.3d 745 (7th Cir. 2010) ...................................................................................................9

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ..................................................................................................6

*Membrila v. Receivables Performance Mgmt., LLC*,
2010 WL 1407274 (S.D. Cal. Apr. 6, 2010)...........................................................................16

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .................................................................................................6

*Moran v. Prime Healthcare Mgmt., Inc.*,
94 Cal. App. 5th 166 (2023) ..................................................................................................23

*Myers v. Medquist, Inc.*,
2006 WL 3751210 (D.N.J. Dec. 20, 2006)..........................................................................1, 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)..............................................................................11

*Oddei v. Optum, Inc.*, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021),
*aff'd*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) ...............................................................13

*In re Padilla*,
222 F.3d 1184 (9th Cir. 2000) ...............................................................................................19

*Perez v. Romantix Online, Inc.*,
2026 WL 1802589 (N.D. Cal. June 23, 2026) ......................................................................17

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ..............................................................................................22

*Pierce v. Holifield*, 2022 WL 126503 (E.D. Cal. Jan. 13, 2022),
*report and recommendation adopted*,
2022 WL 4280248 (E.D. Cal. Sept. 15, 2022)........................................................................1

*In re Qualcomm Litig.*,
2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .........................................................................24

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) ..................................................................................................17

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ....................11, 12

*Sanchez-Scott v. Alza Pharma.*,
86 Cal. App. 4th 365 (2001) ....................................................................................................9

McDermott Will & Schulte LLP
ATTORNEYS AT LAW
LOS ANGELES

*Sanders v. Am. Broadcasting Companies, Inc.*,
  20 Cal. 4th 907 (1999) ..............................................................................................................8, 9

*Shulman v. Grp. W. Prods., Inc.*,
  18 Cal. 4th 200 (1998) ....................................................................................................................8

*In re Silica Prod. Liab. Litig.*,
  398 F. Supp. 2d 563 (S.D. Tex. 2005) .......................................................................................1, 9

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017),
  *aff'd*, 745 F. App'x 8 (9th Cir. 2018).........................................................................................17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..........................................................................................................7

*Sussman v. Am. Broad. Cos., Inc.*,
  186 F.3d 1200 (9th Cir. 1999) ......................................................................................................16

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................................................7, 24

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
  445 F.Supp. 3d 139 (N.D. Cal. 2020) .............................................................................................4

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..................................................................................................................24

*Tucker v. Pac. Bell Mobile Servs.*,
  208 Cal. App. 4th 201 (2012) .......................................................................................................25

*U.S. v. Azure*,
  801 F.2d 336 (8th Cir. 1986) ..........................................................................................................9

*U.S. v. Hall*,
  419 F.3d 980 (2005)........................................................................................................................9

*Weston v. Lefiti*,
  2024 WL 4579237 (9th Cir. Oct. 25, 2024)..................................................................................16

*Whalen v. Roe*,
  429 U.S. 589 (1977)................................................................................................................*passim*

*White v. FIA Card Services, N.A.*,
  2013 WL 756292 (S.D. Cal. Feb. 26, 2013) .................................................................................16

*White v. Soc. Sec. Admin.*,
  111 F. Supp. 3d 1041 (N.D. Cal. 2015) ..........................................................................................7

*Whiting v. Coachella Valley Hous. Coal.*,
  2024 WL 4891021 (9th Cir. Nov. 26, 2024)..................................................................................25

- vii -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Williams v. United Airlines, Inc.*,
    2021 WL 77932 (N.D. Cal. Jan. 8, 2021) ........................................................................15

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...............................................................11

*Zarif v. Hwareh.com, Inc.*,
    789 F. Supp. 3d 880 (S.D. Cal. 2025) .............................................................................15

*In re Zuniga*,
    714 F.2d 632 (6th Cir. 1983) .............................................................................................9

**Statutes**

18 U.S.C. § 2510 ........................................................................................................................2

18 U.S.C. § 2511(2)(d) ..............................................................................................................3

Cal. Bus. & Prof. Code § 17200 ...............................................................................................2

Cal. Bus. & Prof. Code § 17204 .............................................................................................21

Cal. Civ. Code § 56 ...................................................................................................................2

Cal. Civ. Code § 56.05 ............................................................................................................14

Cal. Civ. Code § 56.10 ..................................................................................................... *passim*

Cal. Penal Code § 632 ..................................................................................................... *passim*

Cal. Stat. ch. 123, § 2 ..............................................................................................................18

Cal. Stat. ch. 855, § 1 ..............................................................................................................18

**Other Authorities**

45 C.F.R. § 160.103 ..............................................................................................................3, 14

45 C.F.R. § 164.308 ................................................................................................................19

45 C.F.R. § 164.310 ................................................................................................................19

45 C.F.R. § 164.312 ................................................................................................................19

45 C.F.R. § 164.502 ........................................................................................................ *passim*

45 C.F.R. § 164.506 ......................................................................................................3, 18, 19

45 C.F.R. § 164.520 ................................................................................................................19

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Fed. R. Civ. P. 8 ........................................................................................................................6

Fed. R. Civ. P. 9(b) ..............................................................................................................7, 24

Fed. R. Civ. P. 12(b)(1) ........................................................................................................2, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 6, 25

Fed. R. Evid. 201(b)(2) ..............................................................................................................4

SUTTER HEALTH'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)
CASE NO. 3:26-CV-03012

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 3, 2026 at 2:00 p.m. PT, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Haywood S. Gilliam, Jr., or any judge sitting in his stead in courtroom 2 of the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, and shall then and there present *Sutter Health's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*.

Defendant Sutter Health, by and through its undersigned counsel, moves to dismiss Plaintiffs' Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6) as set forth below.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For centuries, it has been fundamental to the provision of high-quality healthcare for care providers to document the details of their clinical sessions with patients and share those details with others who provide care.[1]  Indeed, it has long been widely accepted as common sense that providing healthcare involved multiple people discussing patients' conditions and documenting the healthcare process.[2]  For example, patients visiting doctor's offices regularly witness front desk personnel, medical assistants, and doctors all accessing and reviewing medical files.  Patients also witness providers documenting their clinical visits in various ways, and then sharing and discussing those notes with other healthcare personnel as part of the delivery of services and record-keeping processes.

At no point, however, do patients ever reasonably expect that providers will take no notes in any form, maintain no files, and not consult with anyone else about their care.  In their Complaint against Sutter Health ("Sutter"), Plaintiffs tacitly acknowledge this, by seemingly not taking issue with some forms of clinical notetaking.  *See* ECF No. 1, Compl., p. 7 ¶ 12.[3]

The Complaint nonetheless asserts myriad privacy claims, all starting from the premise that

---

[1] *See*, *e.g.*, *Whalen v. Roe*, 429 U.S. 589, 602 (1977) ("[D]isclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice[.]").

[2] *See*, *e.g.*, *Myers v. Medquist, Inc.*, 2006 WL 3751210, at \*2 (D.N.J. Dec. 20, 2006); *Pierce v. Holifield*, 2022 WL 126503, at \*2 (E.D. Cal. Jan. 13, 2022), *report and recommendation adopted*, 2022 WL 4280248 (E.D. Cal. Sept. 15, 2022); *In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 583 (S.D. Tex. 2005).

[3] The Complaint contains duplicative paragraph numbers.  Where multiple paragraphs have the same number, Sutter provides the Complaint page number to identify the paragraph.

- 1 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs expected their healthcare providers would, at most, create hand-written or typed notes of their visits, and then not share those notes with any other party. *Id.* But Plaintiffs' alleged expectations are patently **un**reasonable in light of common experience regarding providers' record keeping methods. Claims under wiretap laws should not be expanded for the first time here to upend what have been historically-recognized practices that are expressly permitted under California and federal healthcare privacy laws. This is particularly true where the challenged note-taking method presents significant benefits by reducing physician documentation obligations and burnout, leading to greater attention to patients. Compl., ¶¶ 16–17.

Yet here, the Complaint takes issue with Sutter allegedly using a third-party transcription platform, Abridge, to aid providers in creating clinical notes. As explained in Sutter's accompanying Rule 12(b)(1) motion, Abridge is a business associate under the Health Insurance Portability and Accountability Act ("HIPAA"). The Complaint asserts that Plaintiffs were harmed when Sutter allegedly did not obtain Plaintiffs' consent to use the Abridge platform during clinical visits. The Complaint alleges violations of the California Invasion of Privacy Act, Cal. Penal Code § 632 ("CIPA"), the Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.* ("CMIA"), the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ("ECPA"), and intrusion upon seclusion.

All of these claims fail for a threshold reason: it would be unreasonable as a matter of law for Plaintiffs to expect that Sutter would *not* be documenting their clinical visits in some form, including potentially recording them and ultimately sharing their health information with certain third-party transcription service providers. Indeed, maintaining electronic health records ("EHR") in a third-party tool is central to the operation of modern healthcare. Everyone, from the Court to Plaintiffs, accesses their medical records through a third-party platform. Moreover, Sutter's Notice of Privacy Practices ("NPP"), which is publicly available and which is regularly made available to patients prior to receiving treatment, expressly informed Sutter patients that Sutter will use business associates like Abridge for the very purpose about which Plaintiffs now complain.

Each claim also fails for additional, independent reasons. The claim for intrusion upon seclusion (Fourth Claim) requires *both* an intentional intrusion as well as one that was egregious or

- 2 -

offended social norms.  The Complaint, however, does not include any specific factual allegations that could meet either element.  The Complaint admits that Plaintiffs voluntarily provided information to Sutter as a known-participant in their conversations, meaning there is no actionable intrusion.  Moreover, there is nothing egregious or offensive to social norms associated with using a business associate to perform routine transcription functions as expressly permitted under both state and federal law, and to improve the overall process of providing healthcare services.  *See, e.g.*, 45 C.F.R. §§ 164.502(a)(1), 164.506(c); Cal. Civ. Code § 56.10(c); *see also* Compl., ¶¶ 16–17.

The Complaint's claim under CMIA (Second Claim) fails for two simple reasons.  First, CMIA expressly permits the disclosure of information to third parties that are part of the delivery of care chain.  *See* Cal. Civ. § 56.10(c)(3) (permitting disclosure to "a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care.").  It also permits the disclosure of medical information consistent with federal law, such as HIPAA.  *See* 45 C.F.R. §§ 164.502(e)(1)(i), 160.103.  The Complaint's allegations describing the Abridge platform place it squarely within those permitted disclosures.  *See* Compl. ¶¶ 11–12.  Second, the Complaint fails to allege with any specificity what of Plaintiffs' medical information was supposedly disclosed, which is equally fatal to its CMIA claim.

The Complaint's claim under ECPA (Fifth Claim) likewise fails.  ECPA is a one-party consent statute, meaning that only one of the parties to the communication must consent to a recording.  *See* 18 U.S.C. § 2511(2)(d).  Here, Sutter, as a party to the communication, was entitled to consent.  There is no allegation in the Complaint of any circumstance that would change that.

The CIPA claim (First Claim) fails as well.  Plaintiffs' alleged expectation of privacy is inconsistent with how modern healthcare works.  There are no specific allegations in the Complaint that justify its conclusory allegations that clinical notes are so confidential that they could not even be transcribed via automated technology.  In any event, Plaintiffs were aware of the very practices they now challenge prior to receiving care.  Sutter's NPP *expressly* disclosed that Sutter was using a service like the Abridge platform for the purpose of recording clinical visits.  *See* Ex. A (Sutter's NPP) at 7;[4]

---

[4] *See Notice of Privacy Practices*, Sutter Health, https://www.sutterhealth.org/patient-resources/privacy/hipaa-privacy (last visited July 13, 2026).  As set forth in Sutter's accompanying request for judicial notice, the Court can take judicial notice

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*see also* ECF No. 25-4 (Decl. of Braden Carkhuff), ¶¶ 6–10 & Ex. 3 (ECF No. 25-7).[5]

The CIPA claim fails for the additional reason that, if Plaintiffs are correct that CIPA *requires* authorization for Sutter to make disclosures to third-party service providers in the context of delivering medical care, then CIPA would conflict with CMIA and HIPAA. Canons of statutory construction—as well as HIPAA's preemption provision—counsel the Court to *not* interpret CIPA in such a way. If there is any uncertainty as to the scope or applicability of CIPA, the rule of lenity requires that ambiguity be interpreted in Sutter's favor.

Finally, the UCL claim (Third Claim) fails because the Complaint fails to allege statutory standing or any unlawful, unfair, or fraudulent conduct.

For these reasons and those below, the Complaint should be dismissed, with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether all of Plaintiffs' claims—for intrusion upon seclusion and violations of CMIA, ECPA, CIPA, and UCL—should be dismissed for failure to state a claim.

## III.    BACKGROUND[6]

### A.    Sutter Health

Sutter is a not-for-profit healthcare system headquartered in Northern California. *See* Compl., p. 2-3, ¶ 12. Through its network of hospitals, medical foundations, and affiliated physician groups, Sutter provides healthcare services to patients in Northern and Central California. *Id*.

### B.    The Complaint's Allegations

Plaintiffs Washington, Gueretta, and Matulic[7] bring this suit to challenge their medical providers' use of Abridge, an AI-powered platform, that aids in the drafting of clinical notes. Compl., p. 1, ¶¶ 1–2. The Complaint alleges that Plaintiffs' providers used the Abridge platform to "record, transcribe, process, and summarize conversations" "during medical encounters," and that the Abridge

---

of a fact not subject to reasonable dispute if the fact can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (allowing judicial notice of materials on websites).

[5] Sutter's prior NPP (ECF No. 25-7, Ex. 3 to Carkhuff Decl.), in effect between June 12, 2017 and February 15, 2026, contains the same provision as in Sutter's current NPP, in effect from February 16, 2026 through the present (Ex. A).

[6] Sutter disputes the allegations against it, but recites them for purposes of this Motion.

[7] As explained in Sutter's concurrently filed motion to dismiss under Rule 12(b)(1), only Plaintiff Washington received care from a Sutter provider who was licensed to use the Abridge platform. *See* ECF No. 25.

- 4 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

platform "processed, analyzed, and converted [the conversations] into draft clinical notes that are subsequently incorporated into" their EHRs. *Id*. at p. 6–7, ¶¶ 11, 13.

The Complaint acknowledges that the practice of recording patient visits is routine, and that Plaintiffs do not take issue with "traditional medical documentation," "where a physician manually records relevant information during or after a consultation." *Id*. at p. 7, ¶ 12. Plaintiffs' sole complaint relates to the particular method used: *electronic* recording of that information. *Id*.

The Complaint alleges that Defendants implemented the Abridge platform "to obtain operational and financial benefits," "including reducing clinicians' documentation burdens" and "improving efficiency in generating clinical notes." *Id*. at ¶ 16. It does not allege that Defendants used the Abridge platform for anything other than assisting in the creation of clinical notes to be incorporated into Plaintiffs' medical records. *See id.* at ¶¶ 13–16. The Complaint does *not* allege that anyone besides Plaintiffs' healthcare providers accessed the recordings of their alleged clinical visits.

The Complaint demonstrates that Plaintiffs voluntarily obtained medical services from Defendants and voluntarily provided their information. *See id.* at p. 2, ¶¶ 5, 9–11. It nevertheless claims that Defendants used the Abridge platform "without valid consent or authorization." *Id*. at ¶ 44. Plaintiffs seek to represent a nationwide class and California subclass of individuals. *See id.* at ¶ 46. The Complaint asserts claims for common law invasion of privacy (based on intrusion upon seclusion), and violations of CMIA, ECPA, CIPA, and UCL. *Id*. at ¶¶ 55–112.

**C.     Sutter's Use of the Abridge Platform**

Sutter partners with other entities that assist in providing the multifaceted services that comprise modern healthcare. Sutter is transparent about these practices. For example, it provides patients—and makes available on its website[8]—its HIPAA-required NPP, which explains how Sutter uses and discloses patient information. *See* Ex. A at 7. Sutter's NPP explains:

> There are some services provided in our organization through contracts with business associates. Examples include ***transcribing your medical record***, surveying for patient satisfaction, and a copy service we use when making copies of your health record. When services are provided by contracted business associates, we may disclose the appropriate portions of your health information to them so they can perform the job we

---

[8] https://www.sutterhealth.org/patient-resources/privacy/hipaa-privacy (last visited July 13, 2026).

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

have asked them to do. However, ***our business associates are also required by law to safeguard your information***.

Ex. A at 7 (emphasis added).

Consistent with its NPP, Sutter used the Abridge platform for medical transcription services. Compl., p. 6–7, ¶ 11. As the Complaint acknowledges, the platform is intended to improve the delivery of healthcare by reducing the time doctors spend on crafting medical notes so that they have more time to see patients. *Id*. at ¶ 17. This, in turn, translates to improved patient care and decreased provider burnout. Prior to deploying the Abridge platform, Sutter ensured that Abridge was "required by law to safeguard [patient] information." Ex. A at 7. Sutter and Abridge entered into a HIPAA Business Associate Agreement ("BAA") that limits Abridge's processing of Sutter patient information. *See* ECF No. 25-4, (Decl. of Braden Carkhuff), ¶¶ 4–5. As a business associate, Abridge must also only use patient data consistent with HIPAA. *See* 45 C.F.R. § 164.502(a)(1).

## IV.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "Determining whether a complaint states a plausible claim for relief is a 'context-specific task,' requiring 'the reviewing court to draw on its judicial experience and common sense.'" *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023) (citing *Iqbal*, 556 U.S. at 679).

Rule 8—which applies to the claims for intrusion upon seclusion and for violations of CMIA, CIPA, ECPA, and the UCL's unlawful and unfair prongs—requires more than "the-defendant-unlawfully-harmed-me accusation[s]," or "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, a court "is not required to accept as true legal conclusions couched as factual allegations." *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1064 (C.D. Cal. 2025) (citing *Iqbal*, 556 U.S. at 678). Nor is a court required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[, or] to accept as true allegations that are merely

McDermott Will & Schulte LLP
Attorneys at Law
Los Angeles

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[W]here the well-pleaded facts do not permit the court to infer more than mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

The Complaint's claim under the UCL's fraudulent prong is governed by the heightened pleading standard set forth in Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), a complaint must state with particularity "the circumstances constituting fraud," and "must set forth more than the neutral facts necessary to identify the transaction." Fed. R. Civ. P. 9(b); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)). When pleading fraud, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547 n.7. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

The Complaint does not and cannot satisfy any of these standards.

## V.    ARGUMENT

### A.    The Complaint Does Not and Cannot Plead a Claim for Intrusion Upon Seclusion

California law sets "a high bar for an invasion of privacy claim." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015). To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead the defendant "(1) intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Andersen v. Oak View Grp., LLC*, 2024 WL 5426654, at *5 (C.D. Cal. Nov. 22, 2024). The Complaint does not and cannot plead either element, so the intrusion upon seclusion claim should be dismissed.

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**1.**   **The Intrusion Upon Seclusion Claim Does Not Allege a Reasonable Expectation of Privacy (Fourth Claim, Element (1))**

**a.**   **Applicable Law**

"A claim for intrusion upon seclusion is not viable unless the plaintiff has an 'objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.'" *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 232 (1998).  "[T]he extent of a privacy interest" in this regard "is not independent of the circumstances." *Hill v. Nat'l Collegiate Athletic As'sn*, 7 Cal. 4th 1, 36 (1994).  As the California Supreme Court has recognized, "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Id.* (citing *Whalen*, 429 U.S. at 602 (reporting of drug prescriptions to government was supported by established law and not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care")); *Desnick v. Am. Broadcasting Companies, Inc.*, 44 F.3d 1345, 1352–53 (7th Cir. 1995) (Posner, C.J.) (no invasion of privacy or wiretap claim under Illinois or federal law, where the only conversations recorded were done by testers posing as patients, who then recorded conversations with doctors during a healthcare visit).  The "reasonableness of a person's expectation of visual and aural privacy" also depends "not only on who might have been able to observe the subject interaction, but on the identity of the claimed intruder and the means of intrusion." *Sanders v. Am. Broadcasting Companies, Inc.*, 20 Cal. 4th 907, 923 (1999).

Courts in this Circuit have applied these standards to find that there is no reasonable expectation of privacy when the plaintiff "should know" about the practice being complained of and nonetheless continues to participate in the challenged activity.  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because "they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information").  For example, a court from this district recently dismissed an invasion of privacy claim in connection with wiretap allegations on that very basis, reasoning that "[n]o reasonable consumer would expect to engage in a transaction with Apple without *some* data being collected from Apple to process that transaction." *Libman v. Apple, Inc.*,

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

- 8 -

2024 WL 4314791, at \*15 (N.D. Cal. Sept. 26, 2024) (Davila, J.) (emphasis in original).

These considerations are no less important in the context of healthcare. Multiple courts have recognized that it is commonplace for healthcare providers to document discussions with patients during clinical visits,[9] to provide their notes of patient visits to third parties whose job is to transcribe those notes for inclusion in the patient's file,[10] and even to share a patient's health records with other healthcare personnel for treatment purposes, which is "often an essential part of modern practice."[11]

Put simply, and as case law reflects, patients and medical professionals expect that the details of a patient's discussions with her or his doctor during a clinical visit are documented in some form as part of the overall treatment process. Years ago, that may have involved even less privacy for a patient, when a doctor would provide notes to someone else to read or listen to, organize, and type before putting them in the patient's file. Regardless, it would defy common sense for a patient to claim that they attend appointments with healthcare providers expecting those providers will make no record of their discussions, keep no files, and in the future rely solely on memory, even when seeing hundreds or even thousands of different patients each year.

This common-sense context should be dispositive, where the Complaint fails to allege even a "mere possibility" that Plaintiffs had a reasonable expectation of privacy under the circumstances.

### b. Plaintiffs' Expectation Was Unreasonable

Here, the Complaint does *not* allege that a third party was misrepresented to be a medical professional, and thus allowed under false pretenses to be present during a patient's exam. *Sanchez-Scott v. Alza Pharma.*, 86 Cal. App. 4th 365, 374–75 (2001) (citing *De May v. Roberts*, 9 N.W. 146, 147–49 (Mich. 1881)); *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971). It does *not* allege that Plaintiffs expected their discussions would *not* be documented in any way whatsoever. *C.f. Sanders*, 20 Cal. 4th at 919. And it does *not* allege that someone other than Plaintiffs' healthcare

---

[9] *See*, *e.g.*, *U.S. v. Hall*, 419 F.3d 980, 987 (2005); *Anglin v. Pratti*, 643 F. Supp. 3d 1077, 1083–84 (E.D. Cal. 2022).

[10] *See McCann v. Iroquois Mem. Hosp.*, 622 F.3d 745, 749 (7th Cir. 2010); *U.S. v. Azure*, 801 F.2d 336, 342 (8th Cir. 1986); *Massey-Diez v. Univ. of Iowa Comm. Med. Srvcs., Inc.*, 826 F.3d 1149, 1153 (8th Cir. 2019); *In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d at 583; *Medquist, Inc.*, 2006 WL 3751210, at \*2.

[11] *Whalen*, 429 U.S. at 602 ("disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern practice . . . ."); *see also In re Zuniga*, 714 F.2d 632, 641 (6th Cir. 1983) ("a person possesses no reasonable expectation that his medical history will remain *completely* confidential.").

providers actually listened to or read the notes of their clinical visits. Instead, the Complaint's claim for intrusion upon seclusion admits that Plaintiffs expected their alleged clinical visits would be documented, but only in the "traditional" way, *i.e.*, via handwritten or typed notes. Compl., p. 7, ¶ 12 ("traditional medical documentation" involves healthcare providers *only* "manually record[ing] relevant information during or after a consultation."). From that premise, the Complaint takes issue with the method in which Plaintiffs' discussions during clinical visits were purportedly documented, *i.e.*, ambient recording technology. *Id.* at ¶ 16.

The Complaint's key premise, and thus its claim for intrusion upon seclusion, are fatally flawed as a matter of law. Contrary to the Complaint's allegations, it is widely understood that, not only do healthcare providers create notes of their clinical visits with patients for the patients' files, but those healthcare providers create notes in a variety of ways, including dictating (i.e., recording) those notes. *Whalen*, 429 U.S. at 602. It is also common for other healthcare professionals such as clinical scribes to sit through clinical visits to take notes of the patient's encounter with the healthcare provider, and for patient notes to be shared among still other healthcare personnel for a variety of functions related to the provision of healthcare services.

Simply put, the Complaint's allegations about Plaintiffs' expectations of privacy being tied to a sole "traditional method" of notetaking—handwritten or typed notes that only the doctor sees— cannot be used at the pleading stage to contradict common sense about the mechanics of healthcare visits. There are multiple methods of notetaking that have been broadly used for years, ranging from handwritten notes to dictation to recording, which, in turn, other personnel see as part of the file-keeping and/or treatment process. *See* nn.9–11, *supra*. Ambient recording technology is just another method of taking notes. It is akin to dictation, while simultaneously offering significant benefits to patients and providers alike, including, as Plaintiffs acknowledge: "reducing clinicians' documentation burdens," and "improving efficiency in generating clinical notes." Compl., ¶ 16.

There is nothing in the Complaint that changes this conclusion. Nothing in the Complaint plausibly explains how it could be reasonable for a patient to expect that a healthcare provider would only handwrite or type notes of a clinical visit. Nothing in the Complaint explains how the use of ambient recording technology differs from other "traditional medical documentation" methods in a

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

manner that jeopardizes privacy expectations. Nothing in the Complaint alleges that anyone beyond Plaintiffs' healthcare providers, who were already in the exam room, purportedly listened to the recordings. And nothing in the Complaint explains how Plaintiffs could plausibly have been unaware that their information would be shared with business associates such as Abridge when Sutter's NPP disclosed that precise fact to them. Ex. A (NPP) at 7.

"[T]here is no reasonable expectation of privacy when the data collection is within users' common-sense expectation." *Hammerling*, 615 F. Supp. 3d at 1089. Under the circumstances here, it necessarily follows that Plaintiffs' purported expectation of privacy is patently ***un***reasonable as a matter of law. The Complaint's Fourth Claim fails for this reason alone.

### 2. The Complaint's Claim for Intrusion Upon Seclusion Does Not Allege an Intentional Intrusion (Fourth Claim, Element (1))

To sufficiently allege its claim for intrusion upon seclusion, the Complaint must additionally plead that the defendant "penetrated some zone of physical or sensory privacy . . . or obtained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Mahajan v. Kumar*, 2010 WL 481215, at *2 (E.D. Cal. Feb. 5, 2010). Under this standard, "there can be no intrusion into communications to which defendant was a party." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025) (dismissing intrusion upon seclusion claim where defendant was a party to the communication, and then allegedly shared those communications with third parties) (collecting cases); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) ("Because Plaintiff voluntarily shared her information with Defendant, there was no intrusion upon Plaintiff's solitude, seclusion, or private affairs by Defendant."). In other words, one does not actionably "intrude" into a conversation where they are a known participant and voluntarily provided with information.

That is precisely the scenario here. The Complaint admits that Plaintiffs' claims stem from each of them allegedly having conversations with Sutter, where they voluntarily "discussed sensitive medical information." Compl., ¶¶ 5 (p. 2), 31–33. And in this context, the Abridge platform was "merely a tool that [Sutter] used to record" clinical visits. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3–5 (N.D. Cal. Dec. 22, 2022) (dismissing invasion of privacy claim). Where a

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

third party acts merely as an extension of the party to a communication, there is no intrusion.  *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832, 835 (N.D. Cal. 2021) (dismissing invasion of privacy claim). The Complaint attempts to muddle the legal concepts and essentially alleges that Sutter's alleged sharing of information with the Abridge platform is actionable.  But that cannot be where the conversations that were purportedly recorded were voluntary and where Sutter was a known participant and the Abridge platform was a mere extension or program used for the recording.  This is independently dispositive of the claim.

### 3.    The Complaint's Claim for Intrusion Upon Seclusion Does Not Allege a Highly Offensive Intrusion (Fourth Claim, Element (2))

A complaint also must plead facts showing that an actionable intrusion was "*highly offensive* to a reasonable person and sufficiently serious and unwarranted as to constitute an *egregious* breach of the social norms." *Saedi*, 2025 WL 1141168, at *6 (emphasis added).  "Offensiveness" is "an indispensable consideration in assessing an alleged invasion of privacy," because "[n]o community could function if every intrusion into the realm of private action gave rise to a viable claim." *Hill*, 7 Cal. 4th at 37. In determining whether a defendant's actions were highly offensive, courts "must carefully examine all the circumstances[,] including the degree and setting of the intrusion and the intruder's motives and objectives." *Mahajan*, 2010 WL 481215, at *3.  The conduct alleged here does not meet this standard.

First, the degree and setting of any "intrusion" shows that it was both expected and reasonable, as discussed in Section V.A.1, *supra*.  Providers used the Abridge platform to facilitate creating a clinical note in the context of the medical encounter itself.  This is part of the delivery of routine healthcare services and promotes accuracy, enables providers to have more time with patients, and improves the ability of providers to share their clinical observations with others involved in providing healthcare to the patient.  Entirely absent from the Complaint is any allegation that Plaintiffs' information was viewed by any human being beyond Plaintiffs' healthcare providers, let alone outside the circle of entities engaged to provide medical care to Plaintiffs.

Second, there are no specific factual allegations in the Complaint to support any notion the ambient recording technology was being used for any purpose *other* than the provision of care.  Rather,

- 12 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

as the Complaint admits, the motives and objectives were to improve the care and services that Plaintiffs received. *See* Compl., ¶ 96. That is hardly an offensive act.

Third, and relatedly, even if the use of the Abridge platform were an act of intrusion (it is not), it would be acceptable as a matter of public policy because it involves the use of a service to *improve* patient care. Courts in this district have found far less socially desirable activities to not meet the bar for "highly offensive" disclosures. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser history to third parties was *not* highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was *not* highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (similar). The Complaint's Fourth Claim fails.

## B.    The Complaint Does Not and Cannot Plead a CMIA Claim (Second Claim)

### 1.    Disclosure of Medical Records to Abridge Is Authorized Under CMIA

The Abridge platform "records," "transcribes," and "processes" physician-patient conversations. Compl., ¶¶ 2, 11, 66. It generates "draft clinical notes" for inclusion in patient medical records. *Id.* at ¶ 13. And it is used to improve documentation efficiency and support operational functions. *Id.* at ¶¶ 16, 96. These are all examples of processing medical data for administrative services on behalf of a healthcare provider, which fall within CMIA's express provisions allowing for the disclosure of medical information without patient authorization to entities that provide "medical data processing, or other administrative services for providers of health care." Cal. Civ. Code § 56.10(c)(3).

It follows that courts have applied Section 56.10(c)(3) to bar CMIA claims precisely like the one asserted here. For example, in *Oddei v. Optum, Inc.*, the plaintiff challenged the disclosure of her medical records to a company that performed records management and data processing services. The court dismissed the CMIA claim, holding that Section 56.10(c)(3) applied because the defendant's role was to process and manage medical information on the provider's behalf; functions that qualify as administrative services. 2021 WL 6333467, at *3 (C.D. Cal. Dec. 3, 2021), *aff'd*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022). Other courts within this Circuit have reached similar conclusions, dismissing CMIA claims at the pleading stage. *See, e.g.*, *Emmerick v. Ridgecrest Regional Hospital*,

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

2018 WL 784302, at *4 (E.D. Cal. Feb. 8, 2018) (dismissing CMIA claim related to disclosure of medical information to billing vendor); *see also Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, 2010 WL 11552917, at *7 (D.N.M. June 24, 2010) (same).

The Complaint's specific factual allegations place the Abridge platform squarely within CMIA's provisions allowing for disclosure without specific authorization, and the claim for a purported violation of CMIA should be dismissed for this reason alone.

### 2.    Disclosure of Medical Records to Abridge Is Authorized by HIPAA

CMIA also permits disclosures without patient authorizations where the disclosures are "otherwise specifically authorized by law."  Cal. Civ. Code § 56.10(c)(14).  HIPAA, in turn, provides such authorization.  Under HIPAA, covered entities may disclose protected health information to "business associates" for purposes including data processing, recordkeeping, and clinical documentation.  *See* 45 C.F.R. §§ 164.502(e)(1)(i), 160.103.

Here, the Complaint admits that Sutter is a covered entity under HIPAA.  Compl., ¶ 2 (p. 4). The Complaint also admits that the Abridge platform "processes," "analyzes," and converts physician-patient encounters into draft clinical notes that are incorporated into Sutter's health records system. *Id.* at ¶ 13.   These allegations place Abridge squarely within HIPAA's definition of a business associate—*i.e.*, an entity that "creates, receives, maintains, or transmits" protected health information on behalf of a covered entity for functions such as data processing and healthcare operations.  45 C.F.R. § 160.103(1)(i).  Abridge even operates pursuant to a BAA with Sutter.  It follows that Sutter can disclose protected health information to Abridge as a business associate under HIPAA, including the contents of Plaintiffs' alleged discussions with Sutter providers.  *See Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024) (dismissing CMIA claim where the alleged disclosure was to a HIPAA business associate).  Where, as here, the alleged disclosures were permitted as a matter of law, the Complaint's CMIA claim must fail.

### 3.    The Complaint Fails to Plead Any Disclosure of "Medical Information"

CMIA applies to the disclosure of "medical information," meaning individually identifiable information regarding a patient's medical condition or treatment.  Cal. Civ. Code § 56.05(j).  The Complaint, however, does not identify any medical information belonging to any Plaintiff that was

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

allegedly disclosed.  At best, it offers vague categories—such as "discussions regarding symptoms, medical history, diagnoses, medications, and treatment plans" that *may* have been disclosed.  *See* Compl., ¶¶ 3 (p. 1), 2 (p. 4), 13 (p. 7), 67.  These generic allegations are insufficient.

When confronted with similarly generic allegations, the court in *B.K. v. Eisenhower Medical Center* dismissed a CMIA claim.  721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024).  The *B.K.* court observed that the complaint failed to allege "what medical information [of the plaintiff's] was allegedly disclosed or when it was disclosed," relying instead on broad categories of medical information not specific to any plaintiff.  *Id.*  Likewise, in *Cousin v. Sharp Healthcare*, the court dismissed a CMIA claim where the plaintiff did not identify the specific medical information at issue.  681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023).  Without allegations identifying the specific medical information that was disclosed as to *each* Plaintiff, the CMIA claim fails.  *See Doe v. Davita Inc.*, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing CMIA claim where plaintiffs failed to allege what specific information each plaintiff provided that was allegedly disclosed); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 901 (S.D. Cal. 2025) (same).

### C.    The Complaint Does Not and Cannot Plead an ECPA Claim (Fifth Claim)

To plead a claim under ECPA, the Complaint must allege that Sutter "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]" *Williams v. United Airlines, Inc.*, 2021 WL 77932, at *2 (N.D. Cal. Jan. 8, 2021).  But under ECPA's one-party consent exception, "a private party who intercept[s] a wire, oral, or electronic communication does *not* violate [] [ECPA] if such person is a party to the communication[.]" *Id*. at *3 (emphasis in original).

Because the Complaint admits that Sutter was a party to the communications with Plaintiffs forming the basis for their ECPA claim, that claim fails as a matter of law.  Indeed, the Complaint alleges that the purportedly intercepted communications were between "Defendants" and Plaintiffs.  Compl., ¶¶ 2, 6, 21, 33, 107.  That means that Sutter "was the party that was meant to, and did, receive [Plaintiffs'] communications . . . [and] under the party exception, any alleged interception of the communications is not actionable." *B.K.*, 721 F. Supp. 3d at 1065; *see also Weston v. Lefiti*, 2024 WL 4579237, at *1 (9th Cir. Oct. 25, 2024) (affirming dismissal of ECPA claim where defendant was a

- 15 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

party to the conversation and recorded it); *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 467 (9th Cir. 1997) (affirming summary judgment for defendant where defendant was a party to the conversation and recorded it); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) (same).    The Court should dismiss the ECPA claim here as well.  *See Lisota v. Heartland Dental, LLC*, No. 25 CV 7518, 2026 WL 91667, at *6–7 (N.D. Ill. Jan. 13, 2026) (N.D. Ill. Jan. 13, 2026) (granting motion to dismiss ECPA claim related to AI recording technology used during patient calls).

### D.    The Complaint Does Not and Cannot Plead a Claim Under CIPA, Section 632

Section 632 creates a civil remedy against any person who "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication." *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010).  Here, the Complaint's CIPA claim is fatally flawed because Plaintiffs consented to Sutter's use of the Abridge platform, because the alleged conversations were not "confidential" under Section 632, and because application of CIPA in the way advocated for in the Complaint would conflict with CMIA and HIPAA. And to the extent that the Court has any doubt as to any of these outcomes, the rule of lenity requires resolution of any ambiguity in Sutter's favor.[12]

### 1.    Plaintiffs Consented to the Use of Recording Technologies

Section 632(a) applies only to recording or eavesdropping that occurs "without the consent" of the parties.  *Membrila*, 2010 WL 1407274, at *2.  Here, however, Plaintiffs were on notice of Sutter's use of business associates to perform services on its behalf, including medical-record transcription.  Sutter's NPP, which is regularly made available to patients, and is on Sutter's website, states: "There are some services provided in our organization *through contracts with business associates*. Examples include *transcribing your medical record*."  *See* Ex. A, NPP (emphasis added).

Sutter's NPP defeats their CIPA claim.  For example, in *White v. FIA Card Services, N.A.*, the court rejected a Section 632 claim because the plaintiff agreed to terms stating the defendant could

---

[12] *Cf. Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) (no CIPA liability under Section 631 for use of devices akin to tape recorders).

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

record conversations between the plaintiff and the defendant or its affiliates. 2013 WL 756292, at \*5 (S.D. Cal. Feb. 26, 2013). Likewise, in *Smith v. Facebook, Inc.*, the court dismissed a Section 632 claim because the plaintiffs consented to a privacy policy disclosing the technology underlying their claims. 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 877 (2023) (affirming trial court's finding that defendant did not violate Section 632 because the defendant mailed the plaintiff its terms of service, which disclosed that customer calls may be recorded, and plaintiff continued to place calls to defendant after receiving notice). And, in *Perez v. Romantix Online, Inc.*, the court dismissed the plaintiff's CIPA claim where the plaintiff continued using the defendant's services with at least some awareness of the privacy policy disclosing the very practice at issue. 2026 WL 1802589, at \*1 (N.D. Cal. June 23, 2026).

The same should hold true here. Having been informed of the use of service providers like Abridge, and nonetheless continuing to receive care from Sutter, Plaintiffs cannot now claim that the use of the Abridge platform was without their consent. Their CIPA claim fails for this reason alone.

### 2.    Plaintiffs' Conversations Were Not "Confidential" Under Section 632

Section 632(a) does not protect every conversation—only a "confidential communication," which is defined in CIPA as "any communication carried on in circumstances as may *reasonably* indicate that any party to the communication desires it to be *confined to the parties thereto*, but excludes a communication . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). The California Supreme Court has held that "a conversation is confidential under section 632 if a party to that conversation has an *objectively reasonable* expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002) (emphasis added). The Complaint pleads itself out of this definition in two respects.

First, the Complaint does not allege—nor could it—that Plaintiffs desired their communications to be confined to themselves and their provider. Moreover, any such desire would simply be inconsistent with widely-understood realities in the "modern medical practice." *Whalen*, 429 U.S. at 602. Even if the Complaint somehow were alleging that Plaintiffs anticipated their

- 17 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

conversations with their healthcare providers would never be repeated to anyone else, that could be harmful to Plaintiffs' own interests.  If a medical provider was expected to keep to themselves the information they learn from a patient, medical care would suffer.  There could be no coordination of care, and patients would have to repeat medical histories each time they saw a provider.  This is why no reasonable person expects that their conversations with their medical provider will remain "confined to the parties thereto."

Second, as described above, Plaintiffs were each expressly informed about the use of business associates that would transcribe their visits.  *See* Ex. A (NPP) at 7.  As a result, it was unreasonable for Plaintiffs to believe that their conversations would not be recorded.

The delivery of medical care in this country *depends* on the sharing of health information between providers and an array of service providers.  *Whalen*, 429 U.S. at 602.  Federal and state law authorize providers to use and disclose medical information to business associates and contractors.  *See, e.g.,* 45 C.F.R. §§ 164.502(a)(1), 164.506(c) (HIPAA Privacy Rule permitting covered entities to use and disclose protected health information without patient authorization for treatment, payment, and health care operations); Cal. Civ. Code § 56.10(c) (permitting disclosure of medical information for purposes of diagnosis, treatment, and payment, among other enumerated exceptions).  Therefore, it is completely *unreasonable* for Plaintiffs to believe that their communications with any medical provider would stay confined to the patient and provider alone.  For this additional reason, their CIPA claim fails and should be dismissed.  *See also* Sec. V.A, *supra*.

### 3.   CIPA Cannot Contradict CMIA or HIPAA

Basic rules of statutory interpretation dictate that CIPA cannot criminalize conduct that *both* CMIA and HIPAA permit.  The Court must attempt to read statutes in congruence with one another rather than in conflict.  *Hellon & Associates, Inc. v. Phoenix Resort Corp.,* 958 F.2d 295, 297 (9th Cir. 1992) ("[T]o the extent that statutes can be harmonized, they should be, but in case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

general one.").[13]  It is impossible to read CIPA both as Plaintiffs want, and in congruence with CMIA or HIPAA.  If the Complaint's allegations were correct (they are not), then the delicate balancing of privacy and effective provision of healthcare that was struck by the California legislature, Congress, *and* a federal agency would be upended.

CIPA, CMIA and HIPAA all start from a basic premise: private information should remain private *unless* (1) there is consent *or* (2) there is an exception that allows the disclosure.  45 C.F.R. §§ 164.502(a)(1), (e)(1)(i)–(ii), 164.506(a)–(c); Cal. Civ. Code §§ 56.10(a), (c)(3); Cal. Penal Code § 632(a).  At the heart of CMIA and HIPAA is the concept of patient privacy.  Both laws require the implementation of reasonable security safeguards, and HIPAA requires the disclosure of healthcare providers' privacy practices through public NPPs.  45 C.F.R. §§ 164.308, 164.310, 164.312, 164.520; Cal. Civ. P. 56.101.  Sutter takes seriously and complies with its obligations under these laws.  Both CMIA and HIPAA, however, strike a careful balance between patient privacy and practical realities regarding the use of third parties in the delivery of healthcare.

When the CMIA was enacted, California lawmakers engaged in exactly that careful balancing of patient rights.  While medical information was generally meant to be confidential absent authorization, legislators recognized that the delivery of healthcare required the flexibility of providers to interact with and share information with a host of third parties, hence why Cal. Civ. P. 56.10(c)(3) was included as an exception to the authorization requirement in CMIA.  In other words, when enacting CMIA, California's legislators evaluated whether express consent was required to disclose information to certain third parties connected to the delivery of healthcare and decided *not* to apply that barrier to the sharing of medical information. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.").  Plaintiffs' reading of CIPA would undo that careful balancing.  Application of a more general statute (CIPA) in a way that undermines the terms of a more specific statute (CMIA) cannot stand. *Fourco Glass Co. v. Transmirra*

---

[13] Section 632 of CIPA was added in 1967 and most recently amended by 2016 Cal. Stat. ch. 855, § 1, effective January 1, 2017. Section 56.10 of CMIA was added in 2000 and most recently amended by 2025 Cal. Stat. ch. 123, § 2, effective September 20, 2025.

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Prods. Corp.*, 353 U.S. 222, 228–29 (1957) ("Specific terms prevail over the general in the same or *another* statute which otherwise might be controlling.") (emphasis added); *see also In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000) (similar).

The same problem arises when comparing the Complaint's reading of CMIA to HIPAA. When enacting HIPAA, Congress started from the premise that medical information should remain confidential absent consent or certain express exemptions. One exemption identified by the U.S. Department of Health and Human Services ("HHS") is when the information is shared with a business associate in connection with the delivery of healthcare. *See* 45 C.F.R. § 164.502(e). Congress, and implementing rules from HHS, expressly permit covered entities to share medical information with business associates *without authorization*. 45 C.F.R. §§ 164.502(a)(1)(vi)(A), (e)(1)(i)–(ii); 164.506(a)–(c). If Plaintiffs' reading of CIPA is correct, and authorization is nonetheless required prior to disclosure of information to a HIPAA business associate, CIPA is an obstacle to accomplishing the full purpose and objectives of the Administrative Simplification provisions of HIPAA, and CIPA would be preempted. 45 C.F.R. §§ 164.502(a)(1)(vi)(A), (e)(1)(i)–(ii); 164.506(a)–(c).

Whether evaluated against CMIA or HIPAA, Plaintiffs' proffered application of CIPA would contradict and upset the delicate legislative balance struck among the California legislature, Congress, and HHS related to medical privacy. Each evaluated whether an authorization would be required prior to disclosure of patient information to administrative service providers, and each decided to *not* require authorization. For that additional reason, the CIPA claim should be dismissed.

**4.     The Rule of Lenity Requires Resolving Any Ambiguity in Sutter's Favor**

Any uncertainty about Section 632(a)'s applicability here must be resolved in Sutter's favor. CIPA is a criminal statute. Where application of a criminal statute is ambiguous, California courts apply the rule of lenity—"even when the statute is being invoked in a civil action." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025); *see also Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001) ("[W]hen the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage."). The same narrow construction principle applies with particular force where, as here, the Complaint seeks punitive statutory penalties. *See Hale v. Morgan*, 22 Cal. 3d 388, 401 (1978) (courts

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

"have looked with disfavor" on "and have narrowly construed" civil statutes that "require or permit" punitive penalties); Compl., ¶ 73.  Here, at best, there is ambiguity as to whether CIPA was meant to apply in ways that directly conflict with another California statute and HIPAA.

Indeed, courts apply the rule of lenity in evaluating CIPA claims, recognizing that "the state of affairs with CIPA is untenable" because "conflicting rulings" leave parties unable to determine "whether their . . . business activities will subject them to liability."  *Doe*, 806 F. Supp. 3d at 1112. Accordingly, courts refuse to stretch CIPA beyond its statutory limits.  *See, e.g.*, *Blaker v. NetScout Systems, Inc.*, No. 25STCV31283, (L.A. Cnty. Super. Ct., May 27, 2026) (sustaining demurrer without leave to amend).  This case is a far cry from the clandestine recording or third-party eavesdropping Section 632(a) was enacted to address.  And where the statute does not clearly reach the alleged conduct, lenity requires the Court to reject Plaintiffs' expansive interpretation.

To the extent that the Court has any uncertainty regarding the application of CIPA here, and despite any ordinary presumptions that are in Plaintiffs' favor on a motion to dismiss, lenity requires the resolution of this ambiguity in Sutter's favor.

**E.     The Complaint Does Not and Cannot Plead a Claim Under Any Prong of the UCL (Third Claim)**

**1.     The Complaint Fails to Plead Statutory Standing**

Standing under the UCL is "more restrictive" than the Constitutional standing requirement of "injury in fact."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011).  A complaint establishes standing to assert a UCL claim only if it alleges both that: (1) the plaintiff lost or was deprived of money or property sufficient to qualify as injury in fact, i.e., economic injury; *and* (2) the economic injury was the result of the unfair business practice or false advertising that is the gravamen of the claim.  *Id.* at 322 (citing Cal. Bus. & Prof. Code § 17204).

Here, the Complaint does not identify any specific economic loss, does not allege that Plaintiffs paid more for care or that they received inferior services, and does not include any specific factual allegations that could tie any purported loss to Sutter's use of the Abridge platform.  The Complaint merely states, in conclusory fashion, that Plaintiffs "suffered injury in fact and lost money or property, including but not limited to the payment of fees for medical services."  Compl., ¶ 86.

- 21 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

That bare recitation of the statutory element is unsupported by any specific factual allegations, and it is not entitled to any deference even at the pleading stage. *See, e.g.*, *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2018 WL 10072961, at \*7 (C.D. Cal. May 1, 2018) (holding plaintiffs lacked standing where they alleged only that they "lost money" without identifying a specific economic injury or tying it to defendant's conduct); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008) (holding plaintiffs lacked UCL standing where the alleged loss of money was merely paying for products or services rendered, not diminution in value as required to show loss); *Elliott v. QF Circa 37, LLC*, 2017 WL 6389775, at \*13 (S.D. Cal. Dec. 14, 2017) ("'formulaic recitation' of the elements of a UCL claim, such as a conclusory allegation of 'loss of money or property,' is insufficient" to establish statutory standing) (quoting *Iqbal*, 556 U.S. at 678).

The same should hold true here. The Complaint does not include any specific factual allegations showing that any of the Plaintiffs suffered any non-speculative economic harm. That is plainly insufficient as a matter of law, and the UCL claim should fail for lack of statutory standing.

**2.  The Complaint Fails to Plead a Claim Under Any UCL Prong**

**a.  Legally Authorized Conduct Cannot Support a UCL Claim**

As discussed above, CMIA and HIPAA *both* expressly permit Sutter to disclose medical information to third parties that provide "medical data processing" or other administrative services. Cal. Civ. Code § 56.10(c)(3); 45 C.F.R. § 164.502(e); *see* Sec. V.B(1)–(2), *supra*. The Complaint confirms that the Abridge platform performs these functions, and falls within CMIA's and HIPAA's rules allowing disclosure. Compl., ¶¶ 2, 13, 16. Where certain actions are authorized by law, that action cannot be deemed "unfair" or be actionable under the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999) ("Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law"); *Davis*, 691 F.3d at 1164 ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (same). Because the alleged conduct here is authorized under both federal and state law, it cannot form the basis for a UCL claim.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

### b.     There Is No Unfair Conduct That Supports a UCL Claim

To plead an "unfair" practice in connection with a UCL claim, a plaintiff must allege conduct that offends an established public policy in a manner that is tethered to an underlying constitutional, statutory, or regulatory provision, or that threatens an incipient violation of, or otherwise violates the policy or spirit of, such law. *See Graham v. Bank of Am.*, 226 Cal. App. 4th 594, 613 (2014). Alternatively, courts assess unfairness by balancing the utility of the challenged conduct against the gravity of the alleged harm, requiring a showing that the practice is substantially injurious in light of its justifications. *See Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006). Under either formulation, the claim fails. Here, as discussed in Sections V.B(1)–(2), *supra*, the conduct at issue *is expressly authorized* by law, and thus cannot "offend" an established public policy. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (holding business practice could not be subject to UCL liability where "law unequivocally permits Defendants' conduct"); *Moran v. Prime Healthcare Mgmt., Inc.*, 94 Cal. App. 5th 166, 186 (2023) (finding no unfair UCL claim could lie because there is no violation of public policy where "both the state and federal governments have thoroughly considered" and permitted a healthcare system's challenged practice).

The Complaint nonetheless baldly asserts that the use of the Abridge platform "offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers." Compl., ¶ 79. The Complaint further alleges that "[a]ny purported utility Defendants claim from improved documentation or efficiency is outweighed by the severe invasion of privacy and erosion of trust in the physician-patient relationship." Absent *any* authority other than their own *ipse dixit*, these conclusory allegations are not enough. *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (holding that conclusory allegations are insufficient to state a UCL claim); *Iqbal*, 556 U.S. at 678 (holding that labels, conclusions, and formulaic recitations of elements do not state a plausible claim). Plaintiffs do not and cannot point to any public policy violation tethered to an underlying statutory or regulatory provision that would support their claim.

Moreover, if the Court were to apply a balancing test, the utility of the use of the Abridge platform based on even the Complaint's own allegations is clear and obvious. As discussed above in Sections V.B(1)–(2), *supra*, there was no "invasion of privacy" or an erosion of trust. Patients *expect*

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

and were *informed* that their information would be shared with business associates.

As to the utility of the Abridge platform, even the Complaint acknowledges its usefulness. *See* Compl., ¶ 16 (stating Sutter implemented the Abridge platform to "reduc[e] clinicians' documentation burdens," and "improv[e] efficiency in generating clinical notes"). When evaluating this utility against the harms alleged in the Complaint, *see* ECF No. 25 (Sutter's motion under Rule 12(b)(1)), at 5–6, this is not a close call. There is nothing unfair about improving the delivery of medical care. *See Capito v. San Jose Healthcare Sys., LP*, 17 Cal. 5th 273, 287 (2024) (holding a hospital's pricing disclosures were not unfair; they complied with statutory disclosure requirements and given the balance between transparency and avoiding deterrence of emergency care); *In re Qualcomm Litig.*, 2017 WL 5985598, at *10–11 (S.D. Cal. Nov. 8, 2017) (holding the challenged conduct was not unfair under the balancing test because its asserted harms were conclusory and outweighed by the legitimate utility of ensuring a uniform product experience and controlling costs). It follows that the Complaint has not pleaded any claim under the UCL's unfair prong.

### c. Plaintiffs Cannot Meet Rule 9(b)'s Heightened Pleading Standard for Fraudulent Conduct

The Complaint's claim under the fraudulent prong of the UCL fails both the heightened pleading standard of Rule 9(b) as well as basic pleading requirements.

Claims sounding in fraud must be pled with particularity, including the "who, what, when, where, and how" of the alleged misconduct. *Kearns*, 567 F.3d at 1126. Despite this, the Complaint does not identify a single actionable misrepresentation or omission by Sutter, does not identify who specifically made such an alleged statement, does not allege when the statement was made, and does not allege that any of the Plaintiffs relied on such a statement to their detriment. At most, the Complaint alleges in general terms that "Defendants' conduct is also 'fraudulent[.]'" Compl., ¶ 82.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together" in such a manner. *Swartz*, 476 F.3d at 764–65. The Complaint is required "to differentiate [its] allegations . . . and inform each defendant separately of the allegations surrounding" their respective conduct. *Id*. The Complaint fails to do that, and does not come close to satisfying its obligations to plead a claim based on fraud under Rule 9(b). The Court (and Defendants) are left to wonder as to each of the "what,

- 24 -

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

when, where and how" that would support any fraudulent conduct. Having failed at this heightened pleading—and in fact having failed to allege *any* facts that form the basis for any fraud—this prong of the UCL claim fails. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).

Moreover, Plaintiffs will not be able to plead any fraud because the use of providers like Abridge was disclosed in Sutter's NPP. *See Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2023 WL 7284160, at *3 (N.D. Cal. Nov. 3, 2023) (no deception where challenged practice was disclosed); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 221 (2012) ("could not have been deceived" where they saw or were made aware of disclosures).

### d.    There Is No Unlawful Conduct to Support a UCL Claim

The Complaint's allegations likewise fail under the unlawful prong. The unlawful prong of the UCL is derivative: it "borrows" violations of other laws. *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180. Plaintiffs predicate their UCL claim on alleged violations of CIPA, CMIA, and ECPA. Compl., ¶¶ 75–88. Those claims fail for the reasons set forth herein. Without a viable predicate violation, the unlawful prong fails. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012); *Whiting v. Coachella Valley Hous. Coal.*, 2024 WL 4891021, at *1 (9th Cir. Nov. 26, 2024).

## VI.    CONCLUSION

For the foregoing reasons, each of Plaintiffs' claims should be dismissed in full as a matter of law pursuant to Rule 12(b)(6).

Dated: July 13, 2026                    Respectfully submitted,

**MCDERMOTT WILL & SCHULTE LLP**


By:    */s/ J. Jonathan Hawk*
       J. JONATHAN HAWK
       ARIANNA R. SWAZER
       2049 Century Park East
       Suite 3200
       Los Angeles,  CA  90067-3206
       Telephone:  +1 310 277 4110
       Facsimile: +1 310 277 4730

       David P. Saunders (Admitted *pro hac vice*)
       dsaunders@mcdermottlaw.com
       **MCDERMOTT WILL & SCHULTE LLP**
       444 West Lake Street, Suite 4000
       Chicago, IL  60606-0029
       Telephone: +1 312 372 2000
       Facsimile: +1 312 984 7700

       *Attorneys for Defendant*
       SUTTER HEALTH