**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
James M. Treglio (SBN 228077)
Isabel Rose Masanque (SBN 292676)
classactions@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
(415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHRISTINA WASHINGTON, on behalf of herself and all others similarly situated

Plaintiff,

v.

SUTTER HEALTH, a California nonprofit public benefit corporation; and DOES 1-100, inclusive

Defendants.

CASE NO. 4:26-cv-03012-HSG

**SECOND AMENDED CLASS COMPLAINT FOR VIOLATIONS OF:**

**(1) VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT (Cal. Penal Code §§ 632 & 637.2);**
**(2) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, ET SEQ.);**
**(3) VIOLATION OF UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.);**
**(4) INVASION OF PRIVACY - INTRUSION UPON SECLUSION;**
**(5) FEDERAL WIRETAP ACT, 18 U.S.C. § 2510 *et seq*.**

**DEMAND FOR JURY TRIAL**

Class Representative Plaintiff Christina Washington ("Plaintiff"), by and through her attorneys, individually and on behalf of others similarly situated, alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This action arises from the alleged use of an ambient artificial-intelligence clinical-documentation service supplied by Abridge AI, Inc. ("Abridge") during confidential patient-provider encounters. Plaintiff Christina Washington asserts claims against Defendant Sutter Health on behalf of herself and a Sutter class.

2. Defendant Sutter Health, a California nonprofit public benefit corporation ("Sutter Health") publicly announced that, beginning in April 2024, it studied Abridge's ambient-AI technology through approximately 100 clinicians in multiple specialties. Sutter has described the technology as listening to clinical visits and generating progress notes.

3. Abridge's published clinician instructions distinguish ordinary manual documentation from ambient recording. The clinician must select the patient and affirmatively press a record control to begin acquiring the encounter. Abridge's instructions also identify obtaining patient consent as an important part of the process and recommend that the clinician tell the patient that a tool will record the conversation and ask whether that is acceptable before recording begins.

4. Despite California's strict protections for confidential communications and medical information—including the all-party consent requirement for recording confidential communications and the requirements of the Confidentiality of Medical Information Act ("CMIA")—Sutter Health implemented the AI recording system without obtaining meaningful, informed consent from patients prior to recording and transmitting their medical conversations.

5. Plaintiff Christina Washington received care through Sutter on November 21, 2025, December 9, 2025, and March 2, 2026. Her encounters included in-person and telehealth care associated with Sutter's Fairfield medical campus.

6. During at least one of Washington's identified encounters, she personally observed a provider use microphone enabled electronic equipment while she spoke. The provider described the equipment as being used for transcription or for taking notes. Washington understood this to refer to an internal method of clinical documentation rather than the capture of the live conversation by a separately operated ambient AI platform.

7. Before the acquisition began, no one told Washington that Abridge was the technology involved, that a live audio stream of the encounter would be captured, that the stream would be processed through Abridge's systems, or that a third-party technology provider would receive the contents of her oral communications. No one asked Washington whether she agreed to that conduct. Washington did not see an Abridge name, logo, recording screen, recording indicator, transcript, or AI generated note.

8. Washington alleges on information and belief that Abridge was used during at least one of her three identified encounters. This allegation is not based merely on Abridge's availability. It is based on Washington's direct observation that a microphone-enabled device was capturing speech while the provider described the process as transcription or note-taking; Sutter's documented deployment of Abridge; Sutter's representation in this action that at least one provider who treated Washington was licensed to use Abridge; and Abridge's documented requirement that its recording function be affirmatively activated during the encounter.

9. The recorded encounter concerned Washington's health, symptoms, medical conditions, treatment, and care. Sutter's records and Abridge activation logs will establish which of those subjects were included in the encounter acquired by Abridge.

10. By implementing and operating this recording system without obtaining valid consent, Sutter Health unlawfully intercepted confidential communications, disclosed protected medical information, and intruded upon Washington's privacy rights in violation of California and federal law.

11. By implementing, authorizing, or permitting the alleged recording conduct without obtaining valid consent, Sutter Health unlawfully intercepted confidential communications,

disclosed protected medical information, and intruded upon the privacy rights of its patients in violation of California and federal law.

## PARTIES

12. Plaintiff Christina Washington resides in San Felipe, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff was in California when she visited Sutter Health.

13. Defendant Sutter Health is a California nonprofit public benefit corporation headquartered in California. Sutter Health operates an integrated healthcare delivery system that includes hospitals, outpatient clinics, and affiliated physician organizations throughout California. Through its network of hospitals, medical foundations, and affiliated physician groups, Sutter Health provides medical care and healthcare services to patients and is responsible for implementing and overseeing clinical technologies and documentation systems used during patient encounters, including artificial intelligence–based clinical documentation tools.

## VENUE AND JURISDICTION

14. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

15. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq., and supplemental jurisdiction over the related California-law claims under 28 U.S.C. § 1367.

16. This Court has personal jurisdiction over Sutter Health because Sutter Health is a California corporation, operates in this District, and Washington's identified encounters were associated with Sutter's Fairfield medical campus. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and under § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

## I. INTRODUCTION

### A. The Confidentiality of Medical Information Act

1. Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* ("CMIA"), Plaintiff and all other persons similarly situated have a right to keep their individually identifiable medical information confidential. The short title of the CMIA states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The CMIA specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a). The CMIA further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Civil Code § 56.101(a).

2. Defendant Sutter Health is a provider of health care within the meaning of CMIA and maintains and handles individually identifiable medical information relating to its patients, including Plaintiff Christina Washington. Plaintiff Christina Washington and the members of the proposed Class, are "patients" within the meaning of Civil Code § 56.05(k) whose individually identifiable medical information was created, maintained, and handled by Sutter Health in connection with their medical treatment. The communications recorded during Washington's medical visits—including discussions regarding symptoms, medical history, diagnoses, medications, and treatment plans—constitute "medical information" within the meaning of Civil Code § 56.05(j) because they relate to a patient's medical condition and identify the patient. By recording, transmitting, processing, and allowing third-party access to Washington's confidential

medical communications through the artificial-intelligence platform developed by Abridge AI, Inc., Sutter Health disclosed and handled Washington's medical information without first obtaining a valid authorization that complies with CMIA.

3. Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph*, it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the patient." (Emphasis added.)

**B. The California Invasion of Privacy Act**

4. The California Legislature enacted CIPA to protect certain privacy rights of California citizens. The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

5. CIPA prohibits any person from intentionally recording or eavesdropping upon a confidential communication without the consent of all parties to that communication. Cal. Penal Code § 632(a). A "confidential communication" includes any communication carried on in circumstances reasonably indicating that any party to the communication desires it to be confined to the parties involved. Communications between a patient and a physician during a medical visit constitute confidential communications within the meaning of CIPA because they occur in a private medical setting where patients reasonably expect that their discussions regarding symptoms, diagnoses, treatment, and other personal health matters will remain private.

6. CIPA provides a private right of action to any person whose confidential communication has been recorded or intercepted in violation of the statute. Cal. Penal Code § 637.2

authorizes recovery of statutory damages of five thousand dollars ($5,000) per violation or three times the amount of actual damages, whichever is greater.

**C. The Federal Wiretap Act**

7. The ECPA, commonly referred to as the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq., prohibits the intentional interception, use, or disclosure of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device. It was originally enacted in October 1986 to extend privacy protections to emerging technologies. In drafting the legislation, Congress acknowledged that "[t]he dramatic development of the Internet has transformed methods of gathering, processing and sharing information." Senate Judiciary Committee Report (S. Rep. No. 99-541, 1986). Therefore, the statute aimed to address "individuals' concerns that a sufficient degree of privacy and the integrity of personal information are maintained in an age of modern communications and information storage." *Id.*

8. Although limiting overreach by law enforcement was one of the main purposes of the statute, the ECPA explicitly applies to private actors, including "any individual, partnership, association, joint stock company, trust, or corporation" who illegally intercepts, or attempts to intercept the communications. 18 U.S.C. § 2511.

9. Communications between a patient and a physician during a medical appointment constitute protected communications under the statute because they involve private discussions concerning medical symptoms, diagnoses, treatment plans, and other confidential health matters. The Federal Wiretap Act provides a private right of action to any person whose communications are intercepted, disclosed, or intentionally used in violation of the statute. 18 U.S.C. § 2520.

10. The statute authorizes individuals to recover civil damages of up to $10,000 from any person who violates the provisions of the ECPA.

11. Washington asserts her Federal Wiretap Act claim against Sutter Health on behalf of the Sutter Health Class.

## II. SUTTER HEALTH'S AMBIENT AI SYSTEM INTERCEPTS AND RECORDS CONFIDENTIAL DOCTOR–PATIENT COMMUNICATIONS

**A. Sutter Health's Deployment of the Abridge Ambient AI Recording System**

12. Sutter Health deployed an artificial-intelligence-powered "ambient clinical documentation" system developed by Abridge AI, Inc. to record, transcribe, process, and summarize conversations between healthcare providers and patients during medical encounters. The Abridge platform was activated on clinicians' microphone-enabled devices, including smartphones, tablets, or similar recording-enabled hardware used during patient visits. When activated, the system captured and recorded the entirety of the doctor–patient conversation in real time.

13. Unlike traditional medical documentation—where a physician manually records relevant information during or after a consultation—the Abridge system electronically records the live oral communication itself. The platform captures the substance of what both the patient and physician say, converts the recorded speech into text, and applies artificial intelligence models to generate structured clinical documentation.

14. To perform these functions, the Abridge platform necessarily intercepts the communications at the moment they occur. The audio of the clinical encounter is transmitted to external servers associated with the Abridge platform, where it is processed, analyzed, and converted into draft clinical notes that are subsequently incorporated into Sutter Health's EHR system. The audio recordings and transcripts generated through this system contain individually identifiable medical information, including highly sensitive health data disclosed during confidential physician–patient consultations. Such information includes, but is not limited to:

- Symptoms described by the patient;
- Medical history and prior conditions;
- Diagnoses and differential diagnoses;
- Medications and treatment plans;
- Mental health disclosures;
- Family medical history; and
- Other intimate and identifying health information.

15. Upon information and belief, the recorded communications and transcripts are transmitted outside the clinical environment and retained, stored, or otherwise processed on

infrastructure associated with the Abridge platform. The handling of these recordings and transcripts involves automated processing and may involve review or access for purposes such as transcription functionality, system maintenance, troubleshooting, quality assurance, and model improvement. As a result, the contents of confidential physician–patient communications are transmitted beyond the immediate clinical encounter and handled by systems and personnel outside Sutter Health's healthcare facility.

16. Because the Abridge system captures and processes the substance of oral communications during the medical encounter itself, the technology intercepts the contents of those communications within the meaning of federal and California privacy laws governing the interception and disclosure of confidential communications.

17. Sutter Health implemented and deployed this recording technology across its healthcare operations in order to obtain operational and financial benefits, including reducing clinicians' documentation burdens, improving efficiency in generating clinical notes, and enhancing the capture of billable medical services.

18. Despite obtaining these operational advantages, Sutter Health implemented the Abridge system without first establishing legally compliant consent procedures, authorization protocols, or adequate safeguards necessary to protect patients' confidential medical communications and medical information.

**B. Lack of Informed Consent, Unauthorized Recording, and Disclosure of Confidential Medical Communications by Sutter Health**

19. California law strictly protects the confidentiality of physician–patient communications. Patients receiving medical care reasonably expect that their private discussions with healthcare providers—including discussions concerning symptoms, diagnoses, medications, medical history, and treatment—will remain confidential and will not be recorded, intercepted, or disclosed without their knowledge and consent.

20. Under the California Invasion of Privacy Act, including California Penal Code § 632, all parties to a confidential communication must consent before that communication may be recorded. Separately, the CMIA, Civil Code §§ 56 et seq., protects the confidentiality of

individually identifiable medical information and prohibits healthcare providers and contractors from disclosing such information without a valid authorization from the patient.

21. Sutter Health deployed an artificial-intelligence-powered recording system developed by Abridge AI, Inc. during medical encounters involving Washington and Sutter Health Class Members. When activated on clinicians' microphone-enabled devices, the system captured and recorded live physician–patient conversations occurring during confidential medical visits.

22. The system recorded the full substance of the physician–patient discussion and transmitted the audio to external systems associated with the Abridge platform for transcription, processing, and analysis. Through this process, the platform captured and acquired the contents of confidential medical communications contemporaneously with their occurrence.

23. The recorded communications contained highly sensitive and individually identifiable medical information, including but not limited to descriptions of symptoms, medical history, diagnoses, treatment recommendations, medications, and other intimate health-related disclosures exchanged between patients and their physicians. These communications constitute "medical information" under CMIA because they relate to a patient's medical history, condition, diagnosis, or treatment and identify the patient.

24. Despite the sensitive nature of these communications and the legal protections governing them, Sutter Health failed to implement a standardized or system-wide procedure to obtain valid all-party consent within the meaning of California Penal Code § 632 before recording physician–patient conversations using the Abridge system.

25. Sutter Health also failed to ensure that patients received clear and conspicuous notice prior to their medical visits that their conversations might be recorded. Sutter Health did not require clinicians to follow standardized procedures or scripts to obtain express consent before activating the recording system, nor did Sutter Health provide reliable visual or auditory indicators notifying patients that recording was occurring during the clinical encounter.

26. Sutter Health further failed to obtain written authorizations that satisfy the requirements of CMIA before transmitting or disclosing patients' medical information through the Abridge platform. Among other deficiencies, Sutter Health did not obtain authorizations that

identified the third-party recipient, disclosed the purpose for which the information would be transmitted, described the nature and scope of the medical information disclosed, specified the duration of the authorization, or informed patients of their right to revoke consent.

27. Upon information and belief, the recordings and transcripts generated through the Abridge system were transmitted to and processed on infrastructure outside the clinical setting, where the communications were stored, processed, or otherwise handled for purposes such as transcription, system operation, quality assurance, maintenance, or model improvement. In doing so, Sutter Health permitted the contents of confidential physician–patient communications to be transmitted to and processed by a third-party technology vendor that was not a party to the medical encounter.

28. Sutter Health did not obtain Washington's prior, express, and informed consent to intercept, record, transmit, or process these confidential communications, nor did Defendant obtain any court order authorizing such interception. By implementing and operating technology that captures and transmits the contents of confidential medical conversations in real time, Sutter Health intercepted and acquired Washington's communications within the meaning of the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act.

29. Sutter Health's conduct also constitutes an unauthorized disclosure of confidential medical information in violation of CMIA, including Civil Code §§ 56.10 and 56.101, which require healthcare providers and contractors to preserve the confidentiality of patient medical information and prohibit disclosure without proper authorization.

30. The communications intercepted and processed by Sutter Health contain the "contents" of a communication because they reveal the substance, purport, and meaning of the physician–patient discussions, including patients' symptoms, medical concerns, diagnoses, and treatment recommendations.

31. Because Sutter Health intercepted, recorded, and transmitted these communications without obtaining the consent of all parties and without obtaining lawful authorization for the disclosure of medical information, Sutter Health's conduct violates California law and federal law protecting the privacy of confidential communications.

**III. WASHINGTON'S SUTTER ENCOUNTERS AND ACTUAL ABRIDGE ACTIVATION**

32. Plaintiff Christina Washington received Sutter care on November 21, 2025, December 9, 2025, and March 2, 2026.

33. Those encounters included telehealth and in-person care associated with Sutter's Fairfield medical campus.

34. During at least one encounter, Washington personally spoke with a Sutter healthcare provider about private health matters while a microphone-enabled electronic device was used to capture speech for transcription or note creation.

35. Washington reasonably understood that participating healthcare personnel would hear her statements and that relevant information would be entered into her medical chart. She did not understand that an ambient-AI service operated through a separate technology company would receive the live conversation.

36. Washington did not see any indication that would have enabled her to identify Abridge, determine when recording began, determine what portion of the encounter was being acquired, or determine whether the acquired content had been transmitted.

37. Washington did not affirmatively consent to Abridge's acquisition or processing of the encounter.

38. The encounter involved Washington's personal medical condition, symptoms, treatment, or care and was linked to Washington as the identified patient whose draft clinical note was being generated.

39. The acquisition invaded Washington's interest in controlling sensory access to her private medical conversation. That injury occurred when the microphone-enabled system acquired the communication without prior consent; it does not depend on subsequent public dissemination.

40. The injury is particularized because it concerns Washington's own patient-provider communication, not an abstract disagreement with Sutter's general technology policy.

41. The injury is traceable to Sutter because Sutter selected or deployed Abridge within its network, controlled or administered clinician access, integrated the service into its clinical

workflow, and permitted or caused the recording function to be activated during Washington's encounter.

42. An award of statutory or compensatory damages would redress Washington's completed injury. Declaratory relief identifying the parties' rights concerning the completed recording would likewise resolve an actual controversy.

43. Sutter Health selected and deployed the artificial-intelligence platform developed by Abridge AI, Inc. as part of its clinical-documentation workflow and enabled healthcare providers to use the platform through microphone-enabled electronic devices.

44. When activated, the Abridge platform contemporaneously acquires live patient-provider communications and processes their substance for purposes including transcription, analysis, summarization, and the generation of draft clinical documentation.

45. During at least one of Washington's medical encounters, a Sutter healthcare provider activated the Abridge platform, causing Washington's live oral communications concerning her symptoms, treatment, medications, and other individually identifiable health information to be acquired. Upon information and belief, the acquired communications were transmitted to or processed on infrastructure associated with the Abridge platform.

46. Washington was not provided clear advance notice that Abridge, a separate technology vendor, would acquire or process her live patient-provider communications, and she did not provide prior, express, and informed consent to their acquisition, recording, transmission, processing, or storage.

47. The precise configuration of the Abridge platform, the time at which it was activated, the portions of Washington's communication that it acquired, and the resulting transmission, processing, and retention records were not visible to Washington and are within the possession, custody, or control of Sutter, Abridge, or both.

48. Washington seeks to receive medical care without having her confidential patient-provider communications acquired, recorded, transmitted, or processed by third-party technology vendors without valid authorization or, at minimum, without clear advance notice and a meaningful opportunity to provide or withhold consent before such technology is activated.

## IV. SUTTER HEALTH'S PATTERN AND PRACTICE: CLASS-WIDE POLICY OF RECORDING PATIENT ENCOUNTERS WITHOUT VALID CONSENT

49. Washington's experience was not an isolated incident but was the result of Defendant's systematic deployment of an artificial intelligence recording system during patient encounters without implementing lawful consent or authorization safeguards.

50. Upon information and belief, Defendant Sutter Health deployed the ambient clinical documentation platform developed by Abridge AI, Inc. across its healthcare facilities and physician practices. As part of this deployment, healthcare providers were encouraged or permitted to activate the system during outpatient medical appointments to capture physician–patient conversations for automated transcription and clinical documentation.

51. The use of the Abridge system was not limited to the encounters involving Washington. Rather, upon information and belief, the platform was implemented across numerous clinics and provider practices operated or affiliated with Defendant, resulting in the recording of a substantial number of patient visits throughout Defendant's healthcare networks.

52. Washington's alleged recording occurred during Sutter's documented deployment of Abridge and was not an allegation that Abridge merely existed as a generally available product.

53. Upon information and belief, the recordings generated through the Abridge system were routinely transmitted to external infrastructure associated with the platform for transcription, analysis, and the generation of draft clinical documentation. These recordings and transcripts contained patients' confidential medical communications, including discussions of symptoms, diagnoses, treatment plans, medications, and other individually identifiable health information.

54. Upon further information and belief, the Abridge platform retained or stored recordings and transcripts for defined periods of time, and such materials could be accessed or processed for purposes including system operation, troubleshooting, quality assurance, or model improvement. This process resulted in the handling of patients' confidential medical information outside the immediate physician–patient encounter and beyond the direct control of the healthcare provider.

55. Sutter Health implemented and maintained this recording practice without establishing uniform procedures to ensure that patients provided prior, express, and informed consent before their confidential medical conversations were recorded and transmitted through the Abridge system.

56. A general notice of privacy practices addressing contractors, transcription, treatment, payment, or healthcare operations does not itself establish that each Sutter Health Class Member received clear notice of live ambient recording before the recording began.

57. Whether Sutter Health obtained prior consent is capable of proof through Sutter's consent procedures, scripts, electronic health record fields, opt out records, activation logs, and encounter documentation.

58. As a result of this practice, numerous patients across Sutter Health's healthcare network had their confidential physician–patient communications recorded, transmitted, and processed through the Abridge platform without valid consent or authorization.

59. Sutter Health's Abridge integration created standardized electronic records capable of identifying actual recording sessions, participating clinicians, selected patients, generated notes, and recorded consent or opt out status.

60. The proposed Sutter Health Class and Sutter Health Subclass are limited to persons for whom those records establish actual acquisition of an encounter, thereby excluding patients whose providers merely possessed devices or access to Abridge.

61. Sutter Health's pattern and practice caused class-wide harm, including the invasion of patients' privacy, loss of control over their confidential medical information, emotional distress, and the increased risk that sensitive medical communications could be accessed, disclosed, or misused by unauthorized persons.

62. Washington does not base standing on the mere risk that a recording might occur. Washington bases her damages claims on an actual recording alleged from her personal observations and the corroborating facts stated above.

## V. CLASS ACTION ALLEGATIONS

**Sutter Health Class Allegations**

64. Washington brings the Sutter Health claims on her own behalf and on behalf of all other persons similarly situated. The putative classes Washington seeks to represent is composed of:

**Sutter Health Nationwide Class**

All United States residents who received medical care from healthcare providers affiliated with Sutter Health during which their confidential physician–patient communications were recorded, intercepted, transmitted, stored, or processed using the artificial-intelligence recording platform developed by Abridge AI, Inc. without their prior informed consent and/or despite declining consent two years prior to the filing date of this Complaint through the date of an order granting class certification and/or a motion for preliminary approval of class action settlement (hereinafter the "Class").

**Sutter Health California subclass**

All California residents who received medical care from healthcare providers affiliated with Sutter Health during which their confidential physician–patient communications were recorded, intercepted, transmitted, stored, or processed using the artificial-intelligence recording platform developed by Abridge AI, Inc. without their prior informed consent and/or despite declining consent one year prior to the filing date of this Complaint through the date of an order granting class certification and/or a motion for preliminary approval of class action settlement (hereinafter the "Subclass").

65. Excluded from the Sutter Health Class and Sutter Health California Subclass are natural persons who are directors, and officers, of Sutter Health, as well as judicial officers, their families, and their staff who are assigned to this action. Washington expressly disclaims any request for class-wide recovery of personal injury attributable to Sutter Health's conduct.

66. Washington is informed and believes that the members of the Sutter Health Class and Sutter Health Subclass are so numerous that joinder of all members is impracticable. While

the exact number is presently unknown, that information can be ascertained through appropriate discovery, from records maintained by Sutter Health, Abridge, or both.

67. There is a well-defined community of interest among members of the Sutter Health Class and Sutter Health California Subclass because common questions of law and fact predominate, Washington's claims are typical of the members' claims, and Washington can fairly and adequately represent their interests.

68. Common questions of law and fact exist as to the Sutter Health Class and Sutter Health California Subclass and predominate over questions affecting only individual members, including:

(a) Whether Sutter Health had a policy or practice of using Abridge or similar technology to record patient conversations without obtaining all-party consent;

(b) Whether Sutter Health failed to implement any system-wide protocol reasonably designed to ensure that patient consent was obtained prior to recording;

(c) Whether Sutter Health violated CIPA section 632;

(d) Whether doctor–patient conversations during medical consultations constitute "confidential communications" within the meaning of CIPA;

(e) Whether Sutter Health's recording and transmission of audio and transcripts to third-party vendors involved "medical information" within the meaning of the CMIA;

(f) Whether Sutter Health violated CMIA Civil Code §§ 56, *et seq.*;

(g) Whether Sutter Health's practices constitute "unlawful," "unfair," and/or "fraudulent" business acts and practices under the UCL;

(h) Whether Sutter Health committed intrusion upon seclusion by secretly recording private medical consultations;

(i) Whether Sutter Health violated the Wiretap Act, 28 U.S.C. section 2510 et seq.;

(j) Whether Sutter Health sought or obtained prior consent—express or otherwise—from Plaintiff and the Class;

(k) Whether Washington and Sutter Health Class Members are entitled to actual and/or statutory damages for the aforementioned violations; and

(l) The appropriate form and scope of injunctive relief necessary to remedy and prevent recurrence of Sutter Health's practices.

Class Representative Washington's claims are typical of those of the other Class members because Washington, like every qualifying member, alleges an actual acquisition of a confidential patient-provider communication through Abridge without valid consent and seeks relief under CIPA, CMIA, the UCL, the common-law tort of intrusion upon seclusion, and the Federal Wiretap Act.

69. Washington will fairly and adequately protect the interests of the Sutter Health Class and Sutter Health California Subclass. Moreover, Washington has no interest that is contrary to or in conflict with those classes and has retained competent counsel experienced in class-action litigation to prosecute the Sutter claims vigorously.

70. The prosecution of separate actions by individual Sutter Health Class Members would create a risk of inconsistent or varying adjudications and repetitious trials of common questions. A class action is superior to other available methods for the fair and efficient adjudication of the Sutter controversy, and Washington knows of no management difficulty that would preclude class treatment.

71. Proper and sufficient notice of the Sutter claims may be provided to Sutter Class Members through direct mail, electronic notice, or other methods approved by the Court.

72. Moreover, Sutter Class Members' individual damages are insufficient to justify the cost of separate litigation. Without class treatment, Sutter's alleged violations causing substantial aggregate harm would go unremedied.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act,

### Cal. Penal Code §§ 632 and 637.2

### (Sutter Health California subclass only)

73. Washington incorporates the preceding allegations concerning Washington, Sutter, the Sutter Class, and the Sutter California Subclass as if fully set forth herein.

74. Washington brings this cause of action pursuant to Penal Code section 637.2 for violations of Penal Code section 632.

75. California Penal Code section 632 prohibits the intentional recording of a confidential communication between parties, including communications made in the presence of one another, without the consent of all parties to the communication.

76. Washington's medical conversation was a confidential communication within the meaning of Penal Code section 632 because it occurred in a private medical setting and concerned her health, treatment, and care under circumstances reasonably indicating that she expected the live conversation to remain confined to the participating patient and healthcare personnel and not to be acquired by an undisclosed ambient AI service.

77. Washington's expectation of confidentiality did not depend on believing that her provider would create no medical record. Washington expected ordinary clinical documentation. She did not expect an electronic device to acquire the live oral exchange.

78. Sutter Health, through the authorized user operating the Abridge integrated workflow, intentionally activated an electronic recording function. The acquisition was not accidental because the Abridge workflow required the user to select the patient encounter and affirmatively begin recording.

79. Once activated, Abridge acquired the contents of Washington's communication while Washington and the provider were speaking.

80. Before the acquisition began, Washington did not receive clear notice that the encounter would be recorded through Abridge or another ambient AI platform and did not consent to that recording.

81. A general Notice of Privacy Practices concerning medical records, contractors, transcription, treatment, payment, or healthcare operations did not inform Washington that a microphone would acquire the live oral communication during the encounter and did not constitute her consent to that recording.

82. The provider's description of the equipment as being used for transcription or note taking did not disclose that a third-party ambient AI service was acquiring the live communication and did not obtain Washington's agreement.

83. Each class member's qualifying encounter involved an actual Abridge activation and was not merely an encounter in which Abridge was available to the provider.

84. Each acquisition of a qualifying confidential communication without prior consent constituted a separate violation of Penal Code section 632.

85. As a direct and proximate result of Sutter's conduct, Washington and Sutter Health California Subclass Members suffered an invasion of their legally protected privacy interests and a loss of control over their confidential communications.

86. Pursuant to Penal Code section 637.2, Washington and Sutter Health California Subclass Members are entitled to statutory damages of $5,000 per violation or three times the amount of actual damages, whichever is greater, as well as injunctive relief and any other relief the Court deems proper.

## SECOND CAUSE OF ACTION

**Violations of the Confidentiality of Medical Information Act,**

**Civil Code § 56, et seq.**

**(Sutter Health California subclass only)**

87. Washington incorporates the preceding allegations concerning Washington, Sutter, the Sutter Class, and the Sutter California Subclass as if fully set forth herein.

88. Sutter is a provider of health care, a contractor, and/or another covered entity within the meaning of Civil Code section 56.05(d). At all relevant times, Sutter created, maintained, transmitted, stored, or otherwise handled medical information as defined by Civil Code section 56.05(j).

89. Washington and Sutter California Subclass Members are "patients" within the meaning of Civil Code § 56.05(k). Within the past six months, Washington received medical treatment from healthcare providers affiliated with Sutter. During those medical encounters, Washington disclosed highly sensitive and confidential health information to her physicians in the

course of private physician–patient consultations. During these encounters, Sutter deployed an artificial-intelligence clinical documentation platform developed by Abridge AI, Inc., which captured, recorded, and transmitted the substance of physician–patient conversations for automated transcription and documentation purposes.

90. The recordings and transcripts generated by the Abridge system contained individually identifiable medical information, including but not limited to medical histories, symptoms, diagnoses, medications, treatment discussions, and other sensitive health disclosures communicated during confidential medical consultations. Such information constitutes "medical information" within the meaning of Civil Code § 56.05(j) because it relates to a patient's medical history, condition, diagnosis, or treatment and identifies the patient.

91. Sutter disclosed and transmitted Washington's and Sutter California Subclass Members' medical information to third-party vendors, including Abridge, without first obtaining valid written authorizations satisfying the requirements of Civil Code §§ 56.10 and 56.11. Among other deficiencies, Sutter failed to obtain written authorizations that:

- clearly identified the recipient of the medical information;
- described the purpose of the disclosure;
- specified the nature and extent of the medical information to be disclosed;
- provided a defined duration for the authorization; and
- informed patients of their right to revoke authorization.

92. Upon information and belief, employees, agents, or contractors associated with the Abridge platform had the ability to access, review, or process the audio recordings and transcripts containing Washington's and Sutter California Subclass Members' medical information for purposes including transcription processing, quality assurance, troubleshooting, and artificial-intelligence model improvement.

93. Sutter further failed to maintain and preserve the confidentiality of Washington's and Sutter California Subclass Members' medical information as required by Civil Code § 56.101(a). Among other failures, Sutter transmitted confidential medical communications to third-party technology vendors without adequate safeguards, permitted retention and processing of the

recordings outside the control of patients, and failed to implement reliable mechanisms allowing patients to halt processing or require deletion of their recorded medical communications.

94. By recording, transmitting, disclosing, and failing to safeguard Washington's and Sutter California Subclass Members' confidential medical information without valid authorization, Sutter violated multiple provisions of the CMIA, including but not limited to Civil Code §§ 56.10 and 56.101.

95. As a direct and proximate result of Sutter's unlawful conduct, Washington and Sutter California Subclass Members suffered injury, including the unauthorized disclosure of their confidential medical information, invasion of privacy, loss of control over sensitive health data, emotional distress, and dignitary harm.

96. Pursuant to Civil Code § 56.35, Washington and Sutter California Subclass Members are entitled to receive their actual damages, plus punitive damages, not to exceed $3,000, plus attorneys' fees of $1,000 for each and every unauthorized disclosure.

97. Pursuant to Civil Code § 56.36, Washington and Sutter California Subclass Members are also entitled to recover statutory nominal damages of $1,000 per violation, as well as actual damages where applicable, punitive damages as permitted by law, equitable and declaratory relief, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**Violation of Unfair Competition Law,**

**(Cal. Bus. & Prof. Code § 17200 et seq.)**

**(Sutter Health California subclass only)**

98. Washington incorporates the preceding allegations concerning Washington, Sutter, the Sutter Class, and the Sutter California Subclass as if fully set forth herein.

99. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice.

**Unlawful Prong**

100. Sutter Health's acts and practices are "unlawful" under the UCL because they violate CIPA, the CMIA, and other statutes and regulations designed to protect the privacy and confidentiality of medical information.

101. Sutter Health's violations of these statutes constitute predicate "unlawful" acts under the UCL.

**Unfair Prong**

102. Sutter Health's conduct is "unfair" because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

103. Sutter Health exploited patients' vulnerability and trust in the medical setting by secretly recording confidential medical communications, transmitting medical information to third-party vendors without valid authorization all to advance Defendant's operational and financial interests.

104. Any purported utility Sutter Health claims from improved documentation or efficiency is outweighed by the severe invasion of privacy and erosion of trust in the physician-patient relationship.

**Fraudulent Prong**

105. Sutter Health's conduct is also "fraudulent" within the meaning of the UCL because it is likely to deceive members of the public, including patients seeking medical care.

106. Patients reasonably expect that confidential physician–patient conversations will not be recorded, transmitted to technology vendors, or processed by artificial-intelligence systems without clear notice and meaningful consent. By failing to adequately disclose the recording, transmission, and processing of patient communications through the Abridge platform, Sutter Health created a misleading impression that medical visits were conducted in the ordinary confidential manner expected in healthcare settings.

107. These omissions and nondisclosures were material and likely to mislead reasonable patients regarding the privacy of their medical consultations and the handling of their sensitive health information.

**Injury and Restitution**

108. Plaintiff Christina Washington would not have sought treatment from Sutter Health, or would have demanded different conditions of treatment, had they known their confidential

physician–patient communications would be recorded, transmitted to third-party vendors, and processed by artificial-intelligence systems without their consent.

109. As a direct and proximate result of Sutter Health's unlawful, unfair, and fraudulent business practices, Washington and Sutter California Subclass Members suffered injury in fact and lost money or property, including but not limited to the payment of fees for medical services that were provided under circumstances that violated patients' privacy rights and statutory protections governing medical information.

110. Washington and the Sutter California Subclass therefore seek restitution and disgorgement of all monies and benefits Sutter Health obtained as a result of their unlawful, unfair, and fraudulent practices, including the portion of fees and economic benefits attributable to the unauthorized recording and processing of patients' medical communications.

111. Washington further seeks injunctive relief pursuant to Business and Professions Code § 17203 requiring Sutter Health to cease the challenged practices and to implement lawful consent procedures and safeguards governing the recording, processing, and disclosure of physician–patient communications.

## FOURTH CAUSE OF ACTION

### Invasion of Privacy – Intrusion Upon Seclusion

### (Sutter Health California Subclass only)

112. Washington incorporates the preceding allegations concerning Washington, Sutter, the Sutter Class, and the Sutter California Subclass as if fully set forth herein.

113. Intrusion upon seclusion occurs when a defendant intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or the other's private affairs or concerns, in a manner that would be highly offensive to a reasonable person.

114. Washington and Sutter California Subclass Members engaged in private medical consultations with their physicians in exam rooms and other private clinical environments. These conversations concerned highly personal and sensitive health information, including medical histories, symptoms, diagnoses, treatments, medications, mental health, sexual health, and other intimate matters.

115. Medical examination rooms and doctor–patient consultations are quintessentially private spaces and conversations. Patients reasonably expect that their conversations in such settings will not be recorded or transmitted to third parties without their knowledge and consent.

116. Sutter Health intentionally intruded into Washington's and Sutter Health Subclass Members' private affairs by surreptitiously recording entire medical consultations using electronic recording devices and cloud-based processing systems without notice or consent.

117. The intrusions were deliberate and systemic. Sutter Health authorized and implemented the Abridge system, trained providers to use it, and configured it to record entire encounters and transmit recordings to a vendor.

118. The intrusions were highly offensive to a reasonable person. They captured intimate medical communications in their entirety, in one of the most sensitive contexts recognized by law and society, and were executed covertly, in a manner that involved deception and betrayal of trust.

119. Sutter Health's motives were commercial and operational, including improving documentation and billing, rather than patient-protective. Reasonable persons would find it highly offensive when a healthcare provider prioritizes such interests over fundamental privacy rights.

120. As a direct and proximate result of Sutter Health's intrusion upon seclusion, Washington and Sutter Health California Subclass Members suffered damages, including invasion of their legally protected privacy interests, emotional distress, mental anguish, anxiety, anger, humiliation, loss of dignity and autonomy, loss of trust in their healthcare providers, and apprehension regarding future medical visits.

121. Washington and Sutter California Subclass Members are entitled to general and compensatory damages in amounts to be proven at trial.

122. Sutter Health's conduct was carried out with oppression, fraud, or malice within the meaning of Civil Code section 3294. Sutter Health knowingly implemented a recording system in a context of heightened privacy and failed to obtain consent. Washington seeks punitive damages on behalf of herself and the Sutter Health California Subclass in an amount sufficient to punish and deter such conduct.

**<u>FIFTH CAUSE OF ACTION</u>**

**Violation of the Federal Wiretap Act**

**Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510, *et seq.*)**

**(Sutter Health Class)**

123. Washington incorporates the preceding allegations concerning Washington, Sutter Health, and the Sutter Health Class as if fully set forth herein.

124. The Wiretap Act prohibits the intentional interception, use, and/or disclosure of the contents of any wire, oral, or electronic communication. 18 U.S.C. § 2511(a), (c), (d).

125. "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4).

126. "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8).

127. "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

128. Washington is an individual and is therefore a "person" for purposes of § 2510(6).

129. Sutter Health is a corporation and is therefore a "person" for purposes of § 2510(6).

130. During Washington's and Sutter Class Members' qualifying visits to Sutter facilities, Abridge captured, recorded, and transmitted the substance of live physician–patient conversations occurring during confidential medical encounters, Sutter Health violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting the contents of Washington's and Sutter Health Class members' confidential communications through the use of electronic recording devices and software integrated into Sutter Health's clinical workflow.

131. Sutter Health further violated 18 U.S.C. § 2511(1)(c) when it disclosed the contents of Washington's and Sutter Health Class Members' intercepted communications through transmission to, and processing on, external systems and infrastructure associated with the Abridge platform and related technology vendors, without their consent.

132. Sutter Health also violated 18 U.S.C. § 2511(1)(d) when it used Washington's and Sutter Health Class Members' intercepted communications to generate clinical documentation and to operate and improve artificial intelligence systems, without their consent.

133. Washington and Sutter Class Members did not provide prior express consent to the interception, disclosure, or use of their confidential physician–patient communications through the Abridge system.

134. As a result of Sutter Health's violations of the Wiretap Act, Washington and Sutter Health Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, loss of their information and loss of money and costs incurred, all of which have ascertainable value to be proven at trial.

135. Pursuant to 18 U.S.C. § 2520, Washington and the Sutter Health Class have been damaged by the interception, disclosure, and/or use of their communications in violation of the ECPA and are each entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Washington and any profits made by Sutter Health as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (2) reasonable attorneys' fees and other litigation costs reasonably incurred.

## DEMAND FOR JURY TRIAL

136. Plaintiff, individually and on behalf of the Sutter Health Classes, hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Sutter Health Classes, prays for judgment against Defendant as follows:

1. For an order certifying the Sutter Health Class and Sutter Health California Subclass, appointing Washington as their representative, and appointing Plaintiff's attorneys as Class Counsel for those classes;

2. For an order declaring that Sutter Health's conduct violate the statutes and common law identified in the causes of action asserted against it;
3. For an order finding in favor of Washington and the Sutter Health Classes on the causes of action asserted against Sutter Health;
4. For nominal, actual, and/or statutory damages for each violation of CMIA section 56;
5. For statutory damages of $5,000 for each violation of CIPA section 632;
6. For actual damages, plus $3,000 in punitive damages, plus $1,000 in attorneys' fees for each and every unauthorized disclosure of medical information;
7. For nominal damages of $1,000 for each negligent release of medical information;
8. For statutory damages of $10,000 for each violation of the Federal Wiretap Act;
9. For pre- and post-judgment interest on all amounts awarded;
10. For an order of restitution and all other forms of equitable monetary relief; and
11. For injunctive and other equitable relief as necessary to protect Washington and the Sutter Health Classes from Sutter Health's challenged practices, including:
    a. Ordering that Sutter Health immediately cease and desist intercepting, recording, transmitting, storing, or processing of Washington's confidential physician-patient communications without valid authorization;
    b. Ordering that Sutter Health implement safeguards, policies, and technical controls to ensure that no medical communications are intercepted or processed without prior, express, and informed consent consistent with applicable law;
    c. Ordering that Sutter Health purge, delete, and destroy in a reasonably secure manner any unlawfully obtained medical communications or data not necessary for its provision of services; and
12. For an order awarding Plaintiff and the Sutter Health Classes reasonable attorneys' fees, expenses, and costs of suit.

Dated: August 5, 2026

**POTTER HANDY LLP**

By: /s/ James M. Treglio
James M. Treglio, Esq.
Mark Potter, Esq.
Isabel Rose Masanque, Esq.
Attorneys for Plaintiff