J. Jonathan Hawk (254350)
jhawk@mcdermottlaw.com
Arianna R. Swazer (359884)
aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

David P. Saunders (Admitted *pro hac vice)*
dsaunders@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

Attorneys for Defendant Sutter Health

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHRISTINA WASHINGTON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

SUTTER HEALTH, a California nonprofit corporation; and DOES 1-100, inclusive,

Defendants.

CASE NO. 4:26-cv-03012

**DEFENDANT SUTTER HEALTH'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 32) PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Sutter Health's Request for Judicial Notice; [Proposed] Order]*

Date: October 8, 2026
Time: 2:00 p.m. PT
Courtroom: Courtroom 2, 4th Floor (Oakland)
Judge: Haywood S. Gilliam, Jr.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. STATEMENT OF ISSUES TO BE DECIDED ..... 5
III. BACKGROUND ..... 5
A. Sutter Health ..... 5
B. Plaintiff's Allegations ..... 5
C. Sutter's Use of the Abridge Platform ..... 6
IV. LEGAL STANDARD ..... 7
V. ARGUMENT ..... 8
A. Plaintiff Does Not and Cannot Plead a Claim for Intrusion Upon Seclusion ..... 8
1. Plaintiff Does Not Allege a Reasonable Expectation of Privacy ..... 8
a. Applicable Law ..... 8
b. Plaintiff's Expectation Was Unreasonable ..... 10
2. Plaintiff Does Not Allege an Intentional Intrusion ..... 11
3. Plaintiff Does Not Allege a Highly Offensive Intrusion ..... 11
B. Plaintiff Does Not and Cannot Plead a CMIA Claim ..... 13
1. Disclosure of Medical Records to Abridge Is Authorized Under CMIA ..... 13
2. Disclosure of Medical Records to Abridge Is Authorized by HIPAA ..... 14
3. Plaintiff Fails to Plead Any Disclosure of "Medical Information" ..... 14
C. Plaintiff Does Not and Cannot Plead an ECPA Claim ..... 15
D. Plaintiff Does Not and Cannot Plead a Claim Under CIPA, Section 632 ..... 15
1. Plaintiff Consented to the Use of Recording Technologies ..... 16
2. Plaintiff's Conversations Were Not "Confidential" Under Section 632 ..... 17
3. CIPA Cannot Contradict CMIA or HIPAA ..... 19
4. The Rule of Lenity Requires Resolving Any Ambiguity in Sutter's Favor ..... 20
E. Plaintiff Does Not and Cannot Plead a Claim Under the UCL ..... 21



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

1. The SAC Fails to Plead Statutory Standing ....21

2. Plaintiff Fails to Plead a Claim Under Any UCL Prong ....22

a. Legally Authorized Conduct Cannot Support a UCL Claim ....22

b. No Unfair Conduct Supports a UCL Claim ....23

c. Plaintiff Cannot Meet Rule 9(b)'s Heightened Pleading Standard for Fraudulent Conduct ....24

d. No Unlawful Conduct Supports a UCL Claim ....25

F. The Claims Should Be Dismissed with Prejudice ....25

VI. CONCLUSION ....25


MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012) .......... 25

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) .......... 23

*Andersen v. Oak View Grp., LLC*,
2024 WL 5426654 (C.D. Cal. Nov. 22, 2024) .......... 8

*Anglin v. Pratti*,
643 F. Supp. 3d 1077 (E.D. Cal. 2022) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 17, 23

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 14, 15

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) .......... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Blaker v. NetScout Sys., Inc.*,
2026 WL 1709143 (L.A. Cnty. Super. Ct. May 27, 2026) .......... 21

*Capito v. San Jose Healthcare Sys., LP*,
17 Cal. 5th 273 (2024) .......... 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......... 22, 25

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) .......... 22

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......... 7

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 14, 15

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......... 20, 22

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*De May v. Roberts*,
9 N.W. 146 (Mich. 1881) ....................10

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*,
42 F.3d 1541 (9th Cir. 1994) ....................8

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................8

*Deteresa v. Am. Broad. Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ....................15

*Doe v. Davita Inc.*,
2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ....................15

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................20, 21

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................14

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
2018 WL 10072961 (C.D. Cal. May 1, 2018) ....................22

*Elk Grove Answering Serv. v. Hoggatt*,
2010 WL 4723720 (E.D. Cal. Nov. 15, 2010) ....................18

*Elliott v. QF Circa 37, LLC*,
2017 WL 6389775 (S.D. Cal. Dec. 14, 2017) ....................22

*Emmerick v. Ridgecrest Regional Hospital*,
2018 WL 784302 (E.D. Cal. Feb. 8, 2018) ....................13

*Fakhouri v. Parsons Transp. Grp.*,
2026 WL 485761 (C.D. Cal. Feb. 18, 2026) ....................13

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................18

*Fleites v. MindGeek S.A.R.L.*,
801 F. Supp. 3d 1045 (C.D. Cal. 2025) ....................7

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................12

*Graham v. Bank of Am.*,
226 Cal. App. 4th 594 (2014) ....................23

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................11



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hale v. Morgan*,
22 Cal. 3d 388 (1978) ....................21

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................9, 11, 13

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ....................21

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*,
958 F.2d 295 (9th Cir. 1992) ....................19

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ....................8, 12

*Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
2023 WL 7284160 (N.D. Cal. Nov. 3, 2023) ....................24

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................12

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................7, 24

*Khoury v. Maly's of Cal., Inc.*,
14 Cal. App. 4th 612 (1993) ....................23

*Kristensen v. Credit One Bank, N.A.*,
2016 WL 11757832 (C.D. Cal. July 11, 2016) ....................17

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ....................21

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ....................9

*Lisota v. Heartland Dental, LLC*,
2026 WL 91667 (N.D. Ill. Jan. 13, 2026) ....................15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................12, 25

*Maghen v. Quicken Loans*,
680 F. App'x 554 (9th Cir. 2017) ....................17

*Mahajan v. Kumar*,
2010 WL 481215 (E.D. Cal. Feb. 5, 2010) ....................11, 12

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Massey-Diez v. Univ. of Iowa Comm. Med. Servs., Inc.*,
826 F.3d 1149 (8th Cir. 2016) ....................9

*McCann v. Iroquois Mem'l Hosp.*,
622 F.3d 745 (7th Cir. 2010) ....................9

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ....................7

*Membrila v. Receivables Performance Mgmt., LLC*,
2010 WL 1407274 (S.D. Cal. Apr. 6, 2010)....................15, 16

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ....................7

*Metzler Inv. GMBH v. Corinthian Coll., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................25

*Miller v. Bank of Am., N.A.*,
2016 WL 1573447 (S.D. Cal. Apr. 19, 2016)....................25

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ....................17

*Moran v. Prime Healthcare Mgmt., Inc.*,
94 Cal. App. 5th 166 (2023) ....................23

*Myers v. MedQuist, Inc.*,
2006 WL 3751210 (D.N.J. Dec. 20, 2006)....................1, 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................11

*Oddei v. Optum, Inc.*,
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022)....................13

*Perez v. Romantix Online, Inc.*,
2026 WL 1802589 (N.D. Cal. June 23, 2026)....................16, 17

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ....................22

*Pierce v. Holifield*,
2022 WL 126503 (E.D. Cal. Jan. 13, 2022), *rep. and recom. adopted*, 2022 WL 4280248 (E.D. Cal. Sept. 15, 2022)....................1

*In re Qualcomm Litig.*,
2017 WL 5985598 (S.D. Cal. Nov. 8, 2017)....................24

*Reckstin Fam. Tr. v. C3.ai, Inc.*,
718 F. Supp. 3d 949 (N.D. Cal. 2024) ....................4

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) ....................16

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....................11, 12

*Sanchez-Scott v. Alza Pharms.*,
86 Cal. App. 4th 365 (2001) ....................10

*Sanders v. Am. Broad. Cos., Inc.*,
20 Cal. 4th 907 (1999) ....................9, 10

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) ....................1

*Shulman v. Grp. W. Prods., Inc.*,
18 Cal. 4th 200 (1998) ....................8

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ....................1, 9

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....................16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................7, 17

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................15

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
445 F. Supp. 3d 139 (N.D. Cal. 2020) ....................4

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....................24

*Tucker v. Pac. Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012) ....................25

*United States v. Azure*,
801 F.2d 336 (8th Cir. 1986) ....................9

*United States v. Hall*,
419 F.3d 980 (9th Cir. 2005) ....................9

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024)....................15

*Whalen v. Roe*,
429 U.S. 589 (1977)........................................1, 9, 18

*White v. FIA Card Servs. N.A.*,
2013 WL 756292 (S.D. Cal. Feb. 26, 2013)........................................16

*White v. Soc. Sec. Admin.*,
111 F. Supp. 3d 1041 (N.D. Cal. 2015)........................................8

*Whiting v. Coachella Valley Hous. Coal.*,
2024 WL 4891021 (9th Cir. Nov. 26, 2024)........................................25

*Williams v. United Airlines, Inc.*,
2021 WL 77932 (N.D. Cal. Jan. 8, 2021)........................................15

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)........................................11

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)........................................15

*In re Zuniga*,
714 F.2d 632 (6th Cir. 1983)........................................9

**Statutes**

18 U.S.C. § 2510........................................2

18 U.S.C. § 2511(2)(d)........................................4

Cal. Bus. & Prof. Code § 17200........................................2

Cal. Civ. Code § 56........................................2

Cal. Civ. Code § 56.05........................................14

Cal. Civ. Code § 56.10........................................*passim*

Cal. Civ. Code § 56.101........................................19

Cal. Penal Code § 632........................................*passim*

Cal. Penal Code § 637.2........................................2

Cal. Stat. ch. 123, § 2........................................19

Cal. Stat. ch. 855, § 1........................................19



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**Other Authorities**

45 C.F.R. § 160.103 ....................4, 14

45 C.F.R. § 164.308 ....................19

45 C.F.R. § 164.310 ....................19

45 C.F.R. § 164.312 ....................19

45 C.F.R. § 164.502 .................... *passim*

45 C.F.R. § 164.506 ....................3, 18, 19, 20

45 C.F.R. § 164.520 ....................19

Fed. R. Civ. P. 8 ....................7

Fed. R. Civ. P. 9(b) ....................7, 24

Fed. R. Civ. P. 12(b)(1) ....................2, 3, 5, 24

Fed. R. Civ. P. 12(b)(6) .................... *passim*

Fed. R. Evid. 201(b) ....................4

*Notice of Privacy Practices*, Sutter Health, https://www.sutterhealth.org/patient-resources/privacy/hipaa-privacy (last visited August 19, 2026) ....................4

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 8, 2026 at 2:00 p.m. PT, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Haywood S. Gilliam, Jr., or any judge sitting in his stead in courtroom 2 of the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, and shall then and there present *Sutter Health's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*.

Defendant Sutter Health ("Sutter"), by and through its undersigned counsel, moves to dismiss with prejudice Plaintiff Washington's ("Plaintiff") Second Amended Complaint (ECF No. 32, "SAC"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), as set forth below.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should dismiss the SAC with prejudice. Plaintiff's amendment comes after Sutter moved to dismiss the original Complaint under Rule 12(b)(6). *See* ECF No. 26. Yet, the SAC makes *no* substantive change to the bulk of the claims. Having seen Sutter's arguments as to the legal deficiency of those claims and having failed to substantively amend them, the claims should now be dismissed with prejudice. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

## I. INTRODUCTION

For centuries, it has been fundamental to the provision of high-quality healthcare for care providers to document the details of their clinical sessions with patients and share those details with others who provide care.[1] Indeed, common sense and experience dictates that the provision of healthcare necessarily involves multiple people discussing patients' conditions and documenting the course of care.[2] Patients visiting doctor's offices regularly witness front desk personnel, medical assistants, and doctors all accessing and reviewing medical files. Patients also witness providers documenting their clinical visits in various ways, and then sharing and discussing those notes with other healthcare personnel as part of the delivery of services and record-keeping processes.

---

[1] *See*, *e.g.*, *Whalen v. Roe*, 429 U.S. 589, 602 (1977) ("[D]isclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice[.]").

[2] *See*, *e.g.*, *Myers v. MedQuist, Inc.*, 2006 WL 3751210, at *1–2 (D.N.J. Dec. 20, 2006); *Pierce v. Holifield*, 2022 WL 126503, at *2 (E.D. Cal. Jan. 13, 2022), *report and recommendation adopted*, 2022 WL 4280248 (E.D. Cal. Sept. 15, 2022); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 583 (S.D. Tex. 2005).

Here, Plaintiff not only concedes that she "expected" Sutter providers to create "clinical documentation" of her encounters, SAC ¶ 77, but also admits knowingly participating in clinical visits while she "personally observed" a "microphone enabled electronic equipment" being used "for transcription or for taking notes," *id.* ¶ 6 (p. 2).[3] Critically, she does not claim that she objected or declined to proceed with these visits. *Id.* ¶¶ 5–8 (p. 1–2), ¶¶ 32–37. In short, the SAC demonstrates that Plaintiff never had a reasonable expectation of privacy upon which her claims are premised.

The SAC nonetheless asserts myriad claims, all starting from the premise that Plaintiff expected that her healthcare providers would, at most, create hand-written or typed notes of her visits, and then not share those notes with anyone. *Id.* ¶ 13 (p. 7). But Plaintiff's purported expectations are patently ***un***reasonable in light of common experience and her own allegations confirming she knew Sutter's providers document the details of all patient medical encounters, including her own. *Id.* ¶¶ 6, 8 (p. 2). Claims under wiretap laws should not be expanded for the first time to upend historically-recognized practices that federal and California healthcare privacy laws expressly permit. This is particularly true where the challenged notetaking method significantly benefits patients by reducing physician documentation obligations and burnout, leading to greater attention to patients. *Id.* ¶ 17.

Yet here, the SAC takes issue with Sutter's alleged use of a third-party transcription platform, Abridge AI, Inc. ("Abridge"), to aid in creating clinical notes. As explained in Sutter's Rule 12(b)(1) motion, Abridge is a business associate under the Health Insurance Portability and Accountability Act ("HIPAA"), and is thus allowed to process patient information and assist in the delivery of healthcare. The SAC asserts Plaintiff was harmed when Sutter allegedly did not obtain her consent to use the Abridge platform during clinical visits. SAC ¶¶ 10–11 (p. 2). The SAC alleges violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 632, 637.2 ("CIPA"), the Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*. ("CMIA"), the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"), the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. ("ECPA"), and a common-law claim for intrusion upon seclusion.

---

[3] The SAC (like the Original Complaint) contains duplicative paragraph numbers. Where multiple paragraphs have the same number, Sutter provides the SAC page number to identify the paragraph.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

As Plaintiff's own allegations make clear, her claims fail for a threshold reason: it would be unreasonable as a matter of law for Plaintiff to expect that Sutter would *not* be documenting her clinical visits, which in modern healthcare necessarily includes transcribing the details of a visit into a recorded entry into her medical record. Indeed, maintaining electronic health records ("EHR") in a third-party tool is central to the operation of modern healthcare. Everyone, from the Court to Plaintiff, accesses their medical records through a third-party platform. Third-party service providers, including transcription providers, are integral to the function of healthcare recordkeeping. Plaintiff not only acknowledges this routine and expected nature of clinical documentation, but she even admits that she witnessed the use of a recording device, was informed by her provider that the device was being used "for transcription or for taking notes," and proceeded with her visit. SAC ¶ 6 (p. 2). This recording practice is routine and is described in Sutter's Notice of Privacy Practices ("NPP"), which is publicly available and which is made available to patients prior to receiving treatment. *See* Ex. A (NPP) at 7; *see also* SAC ¶ 81 (acknowledging existence of NPP).[4]

Each claim also fails for additional, independent reasons. The claim for intrusion upon seclusion (Fourth Claim) requires two elements—an (1) intentional intrusion that was (2) either egregious or offensive to social norms. The SAC, however, does not include any specific factual allegations as to either element. The SAC admits Plaintiff voluntarily provided information to Sutter, eliminating any possibility of an intentional intrusion. And the use of a business associate to perform routine transcription functions that both federal and state law expressly permit is neither egregious nor offensive to social norms. *See, e.g.*, 45 C.F.R. §§ 164.502(a)(1), 164.506(c); Cal. Civ. Code § 56.10(c); *see also* SAC ¶ 17.

Plaintiff's claim under CMIA (Second Claim) fails for at least two reasons. First, CMIA permits the disclosure of information to third parties that are part of the delivery of care chain. *See* Cal. Civ. Code § 56.10(c)(3) (permitting disclosure to "a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care.").

---

[4] As shown in the declaration of Braden Carkhuff submitted in support of Sutter's concurrently-filed motion to dismiss under Rule 12(b)(1), Plaintiff signed an "Acknowledgement of Receipt" of this NPP on *three occasions*, all prior to the visits she identifies in her complaint. *See* ECF No. 35-2 (Decl. of Braden Carkhuff), ¶ 13; SAC ¶ 32.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

It also permits the disclosure of medical information consistent with federal law, such as HIPAA. *See* 45 C.F.R. §§ 164.502(e)(1)(i), 160.103. Plaintiff's allegations place the use of Abridge here squarely within those permitted disclosures. *See* SAC ¶¶ 12–13 (p. 7). Second, Plaintiff fails to allege with any specificity what of her medical information was supposedly disclosed.

Plaintiff's claim under ECPA (Fifth Claim) likewise fails. ECPA is a one-party consent statute, meaning that only one of the parties to the communication must consent to a recording. *See* 18 U.S.C. § 2511(2)(d). Here, Sutter, as a party to the communication, was entitled to consent. Despite multiple opportunities to replead, Plaintiff still cannot identify any circumstance that would alter this outcome.

The CIPA claim (First Claim) also fails. Plaintiff's alleged expectation of privacy is inconsistent with how modern healthcare works and her own experience. She offers no facts to support her conclusory allegations that clinical notes are so confidential that they could not be transcribed via automated technology. In any event, Plaintiff was aware of the very practices she now challenges. Sutter's NPP *expressly* discloses that Sutter uses services like Abridge to record and transcribe clinical visits, and Plaintiff admits she witnessed and knew "microphone enabled electronic equipment" was used "for transcription or for taking notes" during her visits. SAC ¶ 6 (p. 2); *see* Ex. A (NPP) at 7;[5] *see also* ECF No. 35-2 (Decl. of Braden Carkhuff), ¶¶ 5–8, 14 & Ex. 3 (ECF No. 35-5).[6]

The CIPA claim fails for the additional reason that, if Plaintiff is correct that CIPA *requires* authorization for Sutter to make disclosures to HIPAA business associates, then CIPA would conflict with CMIA and HIPAA. Canons of statutory construction—as well as HIPAA's preemption provision—counsel the Court to *not* interpret CIPA as Plaintiff suggests. If there is any uncertainty as to the scope or applicability of CIPA, that ambiguity should be interpreted in Sutter's favor.

/ / /

---

[5] *See Notice of Privacy Practices*, Sutter Health, https://www.sutterhealth.org/patient-resources/privacy/hipaa-privacy (last visited August 19, 2026). The Court can consider the NPP because it is incorporated by reference into the SAC, and it can also take judicial notice of it under Fed. R. Evid. 201(b) without converting this motion to one for summary judgment. *See Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 965 (N.D. Cal. 2024) (considering documents that "underlay certain of Plaintiffs' claims" under the incorporation-by-reference doctrine); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (allowing judicial notice of materials on websites).

[6] Sutter's prior NPP (ECF No. 35-5, Ex. 3 to Carkhuff Decl.), in effect between June 12, 2017 and February 15, 2026, contains the same provision as in Sutter's current NPP, in effect from February 16, 2026 through the present (Ex. A).

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Finally, the UCL claim (Third Claim) fails because the SAC fails to allege statutory standing or any unlawful, unfair, or fraudulent conduct.

For these reasons, and because Plaintiff had an opportunity to amend the complaint with the benefit of Sutter's prior motion to dismiss, the SAC now should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether all of Plaintiff's claims should be dismissed with prejudice for failure to state a claim.

## III. BACKGROUND[7]

### A. Sutter Health

Sutter is a not-for-profit healthcare system headquartered in Northern California. *See* SAC ¶ 13 (p. 3). Through its network of hospitals, medical foundations, and affiliated physician groups, Sutter provides healthcare services to patients in Northern and Central California. *Id.*

### B. Plaintiff's Allegations

Plaintiff Christina Washington brings this suit to challenge her medical providers' use of Abridge, an AI-powered platform, that aids in the drafting of clinical notes. SAC ¶¶ 1–2 (p. 1). She alleges her providers used the Abridge platform to "record, transcribe, process, and summarize conversations" "during medical encounters," and that the Abridge platform "processed, analyzed, and converted [the conversations] into draft clinical notes that are subsequently incorporated into" her EHR. *Id.* ¶¶ 12, 14 (p. 7).

Plaintiff acknowledges that the practice of recording patient visits is routine. Indeed, she does not take issue with "traditional medical documentation," "where a physician manually records relevant information during or after a consultation." *Id.* ¶ 13 (p. 7). And she admits that she personally observed the use of "microphone enabled electronic equipment" used "for transcription or for taking notes" during her medical encounter, but did not object to its use. *Id.* ¶ 6 (p. 2). Plaintiff's complaints are thus not about the recording or transcription itself, but about Sutter's use of a particular tool. *Id.*

---

[7] Sutter disputes the allegations against it, but recites them for purposes of this Motion. Further, as set forth in Sutter's contemporaneously filed Rule 12(b)(1) motion to dismiss, Sutter's records show that any provider who may have spoken to Plaintiff in connection with the three visits she identifies in her complaint did not have access to the Abridge platform. ECF No. 35, Section V.A. This motion under Rule 12(b)(6) is thus submitted based on the SAC's allegations, without conceding that Abridge was ever used with Plaintiff.

Plaintiff alleges Sutter implemented the Abridge platform "to obtain operational and financial benefits," "including reducing clinicians' documentation burdens" and "improving efficiency in generating clinical notes." *Id.* ¶ 17. She does *not* allege Sutter used the Abridge platform for anything other than assisting in the creation of clinical notes. *See id.* ¶¶ 14–17 (p. 7–8). Plaintiff does *not* allege that anyone besides her healthcare providers accessed the recordings of her alleged clinical visits.

Plaintiff's own allegations demonstrate that she voluntarily obtained medical services from Sutter and voluntarily provided her information while knowing she was being recorded. *See id.* ¶¶ 5–6, 8 (p. 1–2), ¶ 12 (p. 7). Plaintiff nevertheless claims Sutter used the Abridge platform "without valid consent or authorization." *Id.* ¶ 58. On this basis, she asserts claims for common law invasion of privacy and violations of CMIA, ECPA, CIPA, and UCL. *Id.* ¶¶ 73–136. She also seeks to represent a nationwide class and California subclass of individuals. *Id.* ¶¶ 64, 69–72.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

### C. Sutter's Use of the Abridge Platform

Sutter partners with other entities that assist in providing the services that comprise modern healthcare. Sutter is transparent about these practices. It provides patients—and makes available on its website[8]—its NPP, which explains:

> There are some services provided in our organization through contracts with business associates. Examples include ***transcribing your medical record***, surveying for patient satisfaction and a copy service we use when making copies of your health record. When services are provided by contracted business associates, we may disclose the appropriate portions of your health information to them so they can perform the job we have asked them to do. However, ***our business associates are also required by law to safeguard your information***.

Ex. A at 7 (emphasis added); *see also* SAC ¶ 81 (acknowledging existence of NPP).[9]

Consistent with its NPP, Sutter uses the Abridge platform for medical transcription services. SAC ¶ 12 (p. 7). As the SAC acknowledges, the platform is intended to improve the delivery of healthcare by reducing the time doctors spend on crafting medical notes so that they have more time to see patients. *Id.* ¶ 17. This, in turn, translates to improved patient care. Prior to deploying the Abridge platform, Sutter ensured Abridge was "required by law to safeguard [patient] information."

---

[8] https://www.sutterhealth.org/patient-resources/privacy/hipaa-privacy (last visited August 19, 2026).

[9] Plaintiff signed an "Acknowledgement of Receipt" of this NPP on *three occasions*, all prior to the dates she alleges she saw a Sutter provider. *See* ECF No. 35-2, ¶ 14; SAC ¶ 32.

Ex. A (NPP) at 7. Sutter and Abridge entered into a HIPAA Business Associate Agreement ("BAA") limiting Abridge's processing of Sutter patient information. *See* ECF No. 35-2 (Decl. of Braden Carkhuff), ¶ 4. As a business associate, Abridge can only use patient data consistent with the privacy standards of HIPAA. *See* 45 C.F.R. § 164.502(a)(1).

## IV. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "Determining whether a complaint states a plausible claim for relief is a 'context-specific task,' requiring 'the reviewing court to draw on its judicial experience and common sense.'" *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 679).

Rule 8—which applies to the claims for intrusion upon seclusion, and violations of CMIA, CIPA, ECPA, and the UCL's unlawful and unfair prongs—requires more than "the-defendant-unlawfully-harmed-me accusation[s]," or "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, a court "is not required to accept as true legal conclusions couched as factual allegations." *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1064 (C.D. Cal. 2025) (citing *Iqbal*, 556 U.S. at 678). Nor is a court required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[, or] to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

Plaintiff's claim under the UCL's fraudulent prong is governed by the heightened pleading standard set forth in Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), a complaint must state with particularity "the circumstances constituting fraud," and "must set forth more than the neutral facts necessary to identify the transaction." Fed. R. Civ. P. 9(b); *Cooper*



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)). When pleading fraud, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547 n.7.

The SAC does not and cannot satisfy any of these standards.

## V. <u>ARGUMENT</u>

### A. Plaintiff Does Not and Cannot Plead a Claim for Intrusion Upon Seclusion

California law sets "a high bar for an invasion of privacy claim." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015). To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead the defendant "(1) intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Andersen v. Oak View Grp., LLC*, 2024 WL 5426654, at *5 (C.D. Cal. Nov. 22, 2024). Despite multiple attempts, Plaintiff still does not (and cannot) plead either element—and in fact makes concessions that defeat her claim.

#### 1. Plaintiff Does Not Allege a Reasonable Expectation of Privacy

##### a. Applicable Law

"A claim for intrusion upon seclusion is not viable unless the plaintiff has an 'objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.'" *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 232 (1998). "[T]he extent of a privacy interest" in this regard "is not independent of the circumstances." *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994) (quotations and citations omitted). As the California Supreme Court has recognized, "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Id.* (citing *Whalen*, 429 U.S. at 602 (reporting of drug prescriptions to government was supported by established law and not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care")); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1352–53 (7th Cir. 1995) (Posner, C.J.) (no invasion of privacy or wiretap claim under Illinois or federal law, where the only conversations recorded were done by testers posing as patients,





MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

who then recorded conversations with doctors during a healthcare visit). The "reasonableness of a person's expectation of visual and aural privacy" also depends "not only on who might have been able to observe the subject interaction, but on the identity of the claimed intruder and the means of intrusion." *Sanders v. Am. Broad. Cos., Inc.*, 20 Cal. 4th 907, 923 (1999).

Courts in this Circuit applying these standards find there is no reasonable expectation of privacy when the plaintiff "should know" about the recording practice being complained of and nonetheless continues to participate in the challenged activity. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because "they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"). Indeed, a court in this district recently dismissed an invasion of privacy claim in connection with wiretap allegations on that very basis, reasoning that "[n]o reasonable consumer would expect to engage in a transaction with Apple without *some* data being collected from Apple to process that transaction." *Libman v. Apple, Inc.*, 2024 WL 4314791, at *15 (N.D. Cal. Sept. 26, 2024) (Davila, J.).

These considerations are no less important in the context of healthcare. Multiple courts have recognized that it is commonplace for healthcare providers to document discussions with patients during clinical visits,[10] to provide their notes of patient visits to third parties whose job is to transcribe those notes for inclusion in the patient's file,[11] and even to share a patient's health records with other healthcare personnel for treatment purposes, which is "often an essential part of modern practice."[12]

Put simply, patients expect that the details of a patient's discussions with her or his doctor during a clinical visit are documented in some form as part of the overall treatment process. It would

---

[10] *See*, *e.g.*, *United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005); *Anglin v. Pratti*, 643 F. Supp. 3d 1077, 1083–84 (E.D. Cal. 2022).

[11] *See McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 749 (7th Cir. 2010); *United States v. Azure*, 801 F.2d 336, 342 (8th Cir. 1986); *Massey-Diez v. Univ. of Iowa Comm. Med. Servs., Inc.*, 826 F.3d 1149, 1153 (8th Cir. 2016); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d at 583; *MedQuist, Inc.*, 2006 WL 3751210, at *2.

[12] *Whalen*, 429 U.S. at 602 ("disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern practice"); *see also In re Zuniga*, 714 F.2d 632, 641 (6th Cir. 1983) ("a person possesses no reasonable expectation that his medical history will remain *completely* confidential.").

defy common sense for a patient to claim that they attend appointments with healthcare providers expecting those providers would make no record of their discussions, keep no files, and in the future rely solely on memory, even when seeing hundreds or even thousands of different patients each year.

This common-sense context should be dispositive, where the SAC fails to allege even a "mere possibility" that Plaintiff had a reasonable expectation of privacy under the circumstances, and to the contrary, *knew* she was being recorded.

**b. Plaintiff's Expectation Was Unreasonable**

Here, the SAC does *not* allege that a third party posed as a medical professional and attended a patient's exam under false pretenses. *Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 374–75 (2001) (citing *De May v. Roberts*, 9 N.W. 146, 147–49 (Mich. 1881)). It does *not* allege that Plaintiff expected her discussions would *not* be documented in any way whatsoever. *Cf. Sanders*, 20 Cal. 4th at 919. And it does *not* allege that someone other than Plaintiff's healthcare providers actually listened to or read the notes of their clinical visits. Instead, Plaintiff admits she expected Sutter to document her clinical visit, and she concedes that she "observed a provider use a microphone enabled electronic device" that "was used to capture her speech for transcription or note creation" during a medical visit—and proceeded with the visit. SAC ¶ 6 (p. 2), ¶ 34; *see also id.* ¶ 14 (p. 7). Despite this, the SAC alleges that Plaintiff nonetheless expected documentation only to occur the "traditional" way, *i.e.*, via handwritten or typed notes. *Id.* ¶ 13 (p. 7). The SAC thus takes issue with the *method* Sutter chose to use, not with the act of recording or transcription itself. *Id.* ¶¶ 6–7 (p. 2).

Plaintiff's attempt to tie her expectation of privacy to a "traditional method" of notetaking—handwritten or typed notes that only the doctor sees—is both overly narrow and belied by her own allegations. Plaintiff's view of "traditional" notetaking as limited to "manually record[ing] relevant information," *see id.* ¶ 13 (p. 7), ignores that Courts have recognized the litany of ways in which medical charting can occur. *See* nn. 2, 11, *supra*. Plaintiff does not explain how the use of ambient recording technology differs from other "traditional medical documentation" methods or "an internal method of clinical documentation" in a manner that jeopardizes privacy expectations. Even if she had, her allegations cannot be used at the pleading stage to contradict common sense about the delivery of healthcare or what Plaintiff's own eyes told her about how clinical notes were being taken.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

The SAC acknowledges that Plaintiff saw a recording device in use *and continued with the clinical visit*. SAC ¶ 6 (p. 2). Plaintiff cannot now claim that she had a reasonable expectation that her visit was only being documented by "traditional" methods." And Plaintiff does not explain how she could have been unaware that her information would be shared with business associates, when Sutter's NPP disclosed that precise fact to her. Ex. A (NPP) at 7; *see also* SAC ¶ 81. "[T]here is no reasonable expectation of privacy when the data collection is within users' common-sense expectation." *Hammerling*, 615 F. Supp. 3d at 1089. Here, Plaintiff's purported expectation of privacy is patently ***un***reasonable as a matter of law.

**2. Plaintiff Does Not Allege an Intentional Intrusion**

To sufficiently allege a claim for intrusion upon seclusion, Plaintiff must additionally plead that Sutter "penetrated some zone of physical or sensory privacy . . . or obtained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Mahajan v. Kumar*, 2010 WL 481215, at *2 (E.D. Cal. Feb. 5, 2010). Under this standard, "there can be no intrusion into communications to which defendant was a party." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025) (dismissing intrusion upon seclusion claim where defendant was a party to the communication, and then allegedly shared those communications with third parties) (collecting cases); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) (same). In other words, one does not "intrude" into a conversation where they are a known participant and voluntarily provided with information.

That is precisely the scenario here. Plaintiff's claim stems from her alleged conversations with Sutter. SAC ¶ 2 (p. 4). And in this context, the Abridge platform was "merely a tool that [Sutter] used to record" clinical visits. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3–5 (N.D. Cal. Dec. 22, 2022) (dismissing invasion of privacy claim). Where a third party acts merely as an extension of the party to a communication, there is no intrusion. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 835–36 (N.D. Cal. 2021) (dismissing invasion of privacy claim). The SAC attempts to muddle these legal concepts, but ultimately that Plaintiff elected to communicate with Sutter defeats the claim.

**3. Plaintiff Does Not Allege a Highly Offensive Intrusion**

A complaint also must plead facts showing that an actionable intrusion was "*highly offensive*

to a reasonable person and sufficiently serious and unwarranted as to constitute an *egregious* breach of the social norms." *Saedi*, 2025 WL 1141168, at *6 (emphasis added). "Offensiveness" is "an indispensable consideration," because "[n]o community could function if every intrusion into the realm of private action gave rise to a viable claim." *Hill*, 7 Cal. 4th at 37. In determining whether a defendant's actions were highly offensive, courts "must carefully examine all the circumstances[,] including the degree and setting of the intrusion and the intruder's motives and objectives." *Mahajan*, 2010 WL 481215, at *3. The conduct alleged here does not meet this standard.

First, the degree and setting of any "intrusion" shows that it was both expected and reasonable, as discussed in Section V.A.1, *supra*. Providers used the Abridge platform to facilitate creating a clinical note. This is part of the delivery of routine healthcare services and promotes accuracy, enables providers to have more time with patients, and improves the ability of providers to share their clinical observations with others involved in providing healthcare to the patient. Entirely absent from the SAC is any allegation that Plaintiff's information was viewed by anyone beyond Plaintiff's healthcare providers, let alone outside the circle of entities engaged to provide medical care to Plaintiff.

Second, there are no specific factual allegations in the SAC to support any notion the ambient recording technology was being used for a purpose *other* than the provision of care.[13] Rather, as the SAC admits, the motives and objectives were to improve the care and services that Plaintiff received. *See* SAC ¶ 17. That is hardly an offensive act.

Third, and relatedly, even if the use of the Abridge platform were an act of intrusion (it is not), it would be acceptable as a matter of public policy because it involves the use of a service to *improve* patient care. Courts in this district have found far less socially desirable activities to not meet the bar for "highly offensive" disclosures. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser history to third parties was *not* highly offensive); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was *not* highly offensive); *In re iPhone Application Litig.*, 844

---

[13] The SAC alleges that this knowledge is within Sutter's control, but that ignores that Plaintiff has access to her medical records.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (similar).

Finally, Plaintiff's suggestion that her "provider's description of the equipment as being used for transcription or note taking" was somehow actionable because it did not specifically identify the tool or company name being used does not alter this analysis. Neither HIPAA nor CMIA require healthcare providers to inventory the list of service providers used in the provision of healthcare. If the governing laws (and therefore public policy) related to healthcare privacy do not require something, the absence of that information cannot be "highly offensive" to social norms. *See Hammerling*, 615 F. Supp. 3d at 1090 (whether an intrusion is "highly offensive" also "focuses on the degree to which the intrusion is unacceptable as a matter of public policy").

### B. Plaintiff Does Not and Cannot Plead a CMIA Claim

#### 1. Disclosure of Medical Records to Abridge Is Authorized Under CMIA

The Abridge platform "records," "transcribes," and "processes" physician-patient conversations. SAC ¶¶ 12, 14 (p. 7). It generates "draft clinical notes" for inclusion in patient medical records. *Id.* ¶ 14 (p. 7). And it is used to improve documentation efficiency and support operational functions. *Id.* ¶ 17. These are all examples of processing medical data for administrative services on behalf of a healthcare provider, which fall within CMIA's provisions allowing the disclosure of medical information without patient authorization to entities that provide "medical data processing, or other administrative services for providers of health care." Cal. Civ. Code § 56.10(c)(3).

It follows that courts have applied Section 56.10(c)(3) to bar CMIA claims like the one asserted here. In *Oddei v. Optum, Inc.*, the plaintiff challenged the disclosure of her medical records to a company that performed records management services. The court dismissed the CMIA claim, holding that Section 56.10(c)(3) applied because the defendant's role was to process and manage medical information on the provider's behalf; functions that qualify as administrative services. 2021 WL 6333467, at *3 (C.D. Cal. Dec. 3, 2021), *aff'd*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022). Other courts within this Circuit have reached similar conclusions, dismissing CMIA claims at the pleading stage. *See, e.g.*, *Emmerick v. Ridgecrest Regional Hospital*, 2018 WL 784302, at *4 (E.D. Cal. Feb. 8, 2018) (dismissing CMIA claim related to disclosure of medical information to billing vendor); *Fakhouri v. Parsons Transp. Grp.*, 2026 WL 485761, at *5 (C.D. Cal. Feb. 18, 2026) (similar).



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**2. Disclosure of Medical Records to Abridge Is Authorized by HIPAA**

CMIA also permits disclosures without patient authorizations where the disclosures are "otherwise specifically authorized by law." Cal. Civ. Code § 56.10(c)(14). HIPAA, in turn, provides such authorization. Under HIPAA, covered entities may disclose protected health information to "business associates" for purposes including data processing, recordkeeping, and clinical documentation. *See* 45 C.F.R. §§ 164.502(e)(1)(i), 160.103.

Here, the SAC admits Sutter is a covered entity under HIPAA. *See* SAC ¶ 2 (p. 4). The SAC also admits that the Abridge platform "processes," "analyzes," and converts physician-patient encounters into draft clinical notes that are incorporated into Sutter's health records system. *Id.* ¶ 14 (p. 7). These allegations place Abridge squarely within HIPAA's definition of a business associate—*i.e.*, an entity that "creates, receives, maintains, or transmits" protected health information on behalf of a covered entity for functions such as data processing and healthcare operations. 45 C.F.R. § 160.103(1)(i). It follows that Sutter can disclose protected health information to Abridge as a business associate under HIPAA, including the contents of Plaintiff's alleged discussions with Sutter providers. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024) (dismissing CMIA claim where the alleged disclosure was to a HIPAA business associate).

**3. Plaintiff Fails to Plead Any Disclosure of "Medical Information"**

CMIA applies to the disclosure of "medical information," meaning individually identifiable information regarding a patient's medical condition or treatment. Cal. Civ. Code § 56.05(j). The SAC, however, does not identify any medical information that was allegedly improperly disclosed. At best, it offers vague categories—such as "discussions regarding symptoms, medical history, diagnoses, medications, and treatment plans" that *may* have been disclosed. *See* SAC ¶ 2 (p. 4), ¶ 14 (p. 4), ¶ 90. These generic allegations are insufficient.

When confronted with similarly generic allegations, the court in *B.K. v. Eisenhower Medical Center* dismissed a CMIA claim. 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024). The *B.K.* court observed that the complaint failed to allege "what medical information [of the plaintiff's] was allegedly disclosed or when it was disclosed," relying instead on broad categories of medical information not specific to any plaintiff. *Id.* Likewise, in *Cousin v. Sharp Healthcare*, the court

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

dismissed a CMIA claim where the plaintiff did not identify the specific medical information at issue. 681 F. Supp. 3d 1117, 1128–29 (S.D. Cal. 2023). Without allegations identifying the specific medical information that was disclosed as to *each* Plaintiff, the CMIA claim fails. *See Doe v. Davita Inc.*, 2024 WL 1772854, at *2–3 (S.D. Cal. Apr. 24, 2024) (dismissing CMIA claim where plaintiffs failed to allege what specific information each plaintiff provided that was allegedly disclosed); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 901 (S.D. Cal. 2025) (same).

**C. Plaintiff Does Not and Cannot Plead an ECPA Claim**

To plead a claim under ECPA, Plaintiff must allege that Sutter "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]" *Williams v. United Airlines, Inc.*, 2021 WL 77932, at *2 (N.D. Cal. Jan. 8, 2021) (quoting 18 U.S.C. § 2511). But under ECPA's one-party consent exception, "a private party who intercept[s] a wire, oral, or electronic communication does *not* violate [] [ECPA] if such person is a party to the communication[.]" *Id.* at *3 (quoting 18 U.S.C. § 2511(2)(d)).

The SAC admits that Sutter was a party to the communications at issue. SAC ¶ 2 (p. 4), *id.* ¶¶ 22, 44–45. That means Sutter "was the party that was meant to, and did, receive [Plaintiff's] communications," and "under the party exception, any alleged interception of the communications is not actionable." *B.K.*, 721 F. Supp. 3d at 1065 (quotations and citations omitted); *see also Weston v. Lefiti*, 2024 WL 4579237, at *1 (9th Cir. Oct. 25, 2024) (affirming dismissal of ECPA claim where defendant was a party to the conversation and recorded it); *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 467 (9th Cir. 1997) (affirming summary judgment for defendant where defendant was a party to the conversation and recorded it); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) (same); *Lisota v. Heartland Dental, LLC*, 2026 WL 91667, at *6–7 (N.D. Ill. Jan. 13, 2026) (dismissing ECPA claim related to AI recording technology used during patient calls). The Court should dismiss the ECPA claim here as well.

**D. Plaintiff Does Not and Cannot Plead a Claim Under CIPA, Section 632**

Section 632 creates a civil remedy against any person who "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication.'" *Membrila v.*

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010). Here, the CIPA claim remains fatally flawed for multiple reasons: Plaintiff consented to Sutter's use of the Abridge platform, the alleged conversations were not "confidential" under Section 632, Plaintiff admits she knew her provider recorded her medical visit through "microphone enabled electronic equipment," and stretching the scope of CIPA as Plaintiff requests would conflict with CMIA and HIPAA. And to the extent the Court has any doubt as to any of these outcomes, the rule of lenity requires resolution of any ambiguity in Sutter's favor.[14]

**1. Plaintiff Consented to the Use of Recording Technologies**

Section 632(a) applies to recording or eavesdropping that occurs "without the consent" of the parties. *Membrila*, 2010 WL 1407274, at *2. Here, however, Plaintiff was on notice of Sutter's use of business associates to perform medical-record transcription. Sutter's NPP, which is regularly made available to patients, and is on Sutter's website, states: "There are some services provided in our organization *through contracts with business associates*. Examples include *transcribing your medical record*[.]" *See* Ex. A (NPP) at 7 (emphasis added). Moreover, the SAC admits that Plaintiff was aware of the recordings *at the time* of her clinical visits. Plaintiff's claim therefore fails.

Sutter's NPP defeats Plaintiff's CIPA claim. In *White v. FIA Card Services, N.A.*, the court rejected a Section 632 claim because the plaintiff agreed to terms stating the defendant could record conversations between the plaintiff and the defendant or its affiliates. 2013 WL 756292, at *5 (S.D. Cal. Feb. 26, 2013). Likewise, in *Smith v. Facebook, Inc.*, the court dismissed a Section 632 claim because the plaintiffs consented to a privacy policy disclosing the technology underlying their claims. 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 877 (2023) (affirming trial court's finding that defendant did not violate Section 632 because the defendant mailed the plaintiff its terms of service, which disclosed that customer calls may be recorded, and plaintiff continued to place calls to defendant after receiving notice). And in *Perez v. Romantix Online, Inc.*, the court dismissed the plaintiff's CIPA

---

[14] *Cf. Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) (no CIPA liability under Section 631 for use of devices akin to tape recorders).

claim where the plaintiff continued using the defendant's services with at least some awareness of the privacy policy disclosing the very practice at issue. 2026 WL 1802589, at *1 (N.D. Cal. June 23, 2026). The same should hold true here. Having been informed of the use of service providers like Abridge, and nonetheless continuing to receive care from Sutter, Plaintiff cannot now claim that the use of the Abridge platform was without their consent.

Moreover, the SAC now admits that Plaintiff knew that her provider was using "microphone-enabled electronic equipment," heard her provider explain the equipment would transcribe the conversation, *and* nevertheless proceeded with the appointment. SAC ¶¶ 6, 8 (p. 2). "[A] party's awareness that he or she is being recorded may establish that the party impliedly consented to the recording." *Kristensen v. Credit One Bank, N.A.*, 2016 WL 11757832, at *5 (C.D. Cal. July 11, 2016); *see also Maghen v. Quicken Loans*, 680 F. App'x 554, 556 (9th Cir. 2017) (same); *Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 952–53 (C.D. Cal. 2022) (same). The combination of Sutter's NPP and Plaintiff's admitted awareness of the use of a transcription tool dooms any contrary allegations that Plaintiff was somehow unaware of the recording or did not consent. *See, e.g.*, SAC ¶¶ 56, 58. The Court need not accept legal conclusions dressed as factual allegations when the facts alleged in the SAC contradict those conclusions. *Iqbal*, 556 U.S. at 678; *Sprewell*, 266 F.3d at 988. Plaintiff here complains about the *type* of tool used, not about the recording itself. The Section 632 claim does not turn on whether Plaintiff knew the name or technical architecture of the tool or service provider in use; it turns on whether Plaintiff consented to the action of being recorded. Her own allegations establish that she did.

**2. Plaintiff's Conversations Were Not "Confidential" Under Section 632**

Section 632(a) does not protect every conversation—only a "confidential communication," which is defined under CIPA as "any communication carried on in circumstances as may *reasonably* indicate that any party to the communication desires it to be *confined to the parties thereto*, but excludes a communication . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c) (emphasis added). The California Supreme Court has held that "a conversation is confidential under section 632 if a party to that conversation has an *objectively reasonable* expectation that the

conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002) (emphasis added). The SAC pleads itself out of this definition in three respects.

First, the SAC does not allege—nor could it—that Plaintiff desired her communications to be confined to herself and her provider. Indeed, any such desire would simply be inconsistent with widely understood realities in modern medical practice. *Whalen*, 429 U.S. at 602. Even if the SAC somehow alleged that Plaintiff anticipated her conversations with her healthcare providers would never be repeated to anyone else, that could be harmful to Plaintiff's own interests. If a medical provider was expected to keep to themselves the information they learn from a patient, medical care would suffer. There could be no coordination of care, and patients would have to repeat medical histories each time they saw a provider. This is why no reasonable person expects that their conversations with their medical provider will remain "confined to the parties thereto."

Second, Sutter expressly informed Plaintiff that business associates could transcribe her visits, and Plaintiff concedes she knew her visit was being recorded. SAC ¶¶ 6, 8 (p. 2); *see* Ex. A (NPP) at 7. Those allegations foreclose any objectively reasonable expectation that her conversation would remain confidential as between her and her provider. *See Elk Grove Answering Serv. v. Hoggatt*, 2010 WL 4723720, at *2 (E.D. Cal. Nov. 15, 2010) ("Plaintiffs concede that they knew their conversations were being recorded. By definition, Plaintiffs cannot assert their conversations were supposed to be confined and personal under this statute.").

Third, the SAC's attempt to distinguish "ordinary clinical documentation" from the electronic acquisition of a live conversation fares no better. SAC ¶¶ 76–77. Section 632 asks whether the circumstances reasonably indicated that Plaintiff expected the communication would not be overheard or recorded—not whether she anticipated the precise device, software, or vendor. Plaintiff's alleged lack of knowledge about Abridge's identity or processes does not transform a conversation she knew would be shared with other parties into a "confidential communication" under Section 632.

The delivery of medical care in this country *depends* on the sharing of health information between providers and an array of service providers. *Whalen*, 429 U.S. at 602. Federal and state law authorize providers to use and disclose medical information to business associates and contractors. *See, e.g.*, 45 C.F.R. §§ 164.502(a)(1), 164.506(c) (HIPAA Privacy Rule permitting covered entities to



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

use and disclose protected health information without patient authorization for treatment, payment, and health care operations); Cal. Civ. Code § 56.10(c) (permitting disclosure of medical information for purposes of diagnosis, treatment, and payment, among other enumerated exceptions). Therefore, it is completely *unreasonable* for Plaintiff to believe that her communication with any medical provider would stay confined to the patient and provider alone. For this additional reason, her CIPA claim fails and should be dismissed. *See also* Section V.A, *supra*.

**3. CIPA Cannot Contradict CMIA or HIPAA**

Basic rules of statutory interpretation dictate that CIPA cannot criminalize conduct that *both* CMIA and HIPAA permit. The Court must attempt to read statutes in congruence with one another. *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("[T]o the extent that statutes can be harmonized, they should be, but in case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more general one.").[15] It is impossible to read CIPA both as Plaintiff wants, and in congruence with CMIA or HIPAA. If Plaintiff's allegations were correct, then the balancing of privacy and provision of healthcare struck by the California legislature, Congress, *and* a federal agency would be upended.

CIPA, CMIA and HIPAA all start from a basic premise: private information should remain private *unless* (1) there is consent *or* (2) there is an exception that allows the disclosure. 45 C.F.R. §§ 164.502(a)(1), (e)(1)(i)–(ii), 164.506(a)–(c); Cal. Civ. Code §§ 56.10(a), (c)(3); Cal. Penal Code § 632(a). Both CMIA and HIPAA require reasonable security safeguards, and HIPAA requires the disclosure of healthcare providers' privacy practices through public NPPs. 45 C.F.R. §§ 164.308, 164.310, 164.312, 164.520; Cal. Civ. Code § 56.101. Sutter takes seriously and complies with its obligations under these laws. Both CMIA and HIPAA, however, strike a careful balance between patient privacy and practical realities regarding the use of third parties in the delivery of healthcare.

When the CMIA was enacted, California lawmakers engaged in exactly that careful balancing of patient rights. While medical information was generally meant to be confidential absent

---

[15] Section 632 of CIPA was added in 1967 and most recently amended by 2016 Cal. Stat. ch. 855, § 1, effective January 1, 2017. Section 56.10 of CMIA was added in 1981 and most recently amended by 2025 Cal. Stat. ch. 123, § 2, effective September 20, 2025.

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

authorization, legislators recognized that the delivery of healthcare required the flexibility of providers to interact with and share information with a host of third parties, hence why Cal. Civ. Code § 56.10(c)(3) was included as an exception to the authorization requirement in CMIA. In other words, when enacting CMIA, California's legislators evaluated whether express consent was required to disclose information to certain third parties connected to the delivery of healthcare and decided *not* to apply that barrier to the sharing of medical information. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.").

The same problem arises when comparing Plaintiff's reading of CMIA to HIPAA. When enacting HIPAA, Congress started from the premise that medical information should remain confidential absent consent or certain express exemptions. One exemption identified by the U.S. Department of Health and Human Services ("HHS") is when the information is shared with a business associate in connection with the delivery of healthcare. *See* 45 C.F.R. § 164.502(e). Congress, and implementing rules from HHS, expressly permit covered entities to share medical information with business associates *without authorization*. 45 C.F.R. §§ 164.502(a)(1)(vi)(A), (e)(1)(i)–(ii); 164.506(a)–(c). If Plaintiff's reading of CIPA is correct, and authorization is nonetheless required prior to disclosure of information to a HIPAA business associate, CIPA is an obstacle to accomplishing the full purpose and objectives of the Administrative Simplification provisions of HIPAA, and CIPA would be preempted. 45 C.F.R. §§ 164.502(a)(1)(vi)(A), (e)(1)(i)–(ii); 164.506(a)–(c).

Whether evaluated against CMIA or HIPAA, Plaintiff's proffered application of CIPA would contradict and upset the delicate legislative balance struck among the California legislature, Congress, and HHS related to medical privacy. Each evaluated whether an authorization would be required prior to disclosure of patient information to administrative service providers, and each decided to *not* require authorization. For that additional reason, the CIPA claim should be dismissed.

**4. The Rule of Lenity Requires Resolving Any Ambiguity in Sutter's Favor**

Any uncertainty about Section 632(a)'s applicability here must be resolved in Sutter's favor. CIPA is a criminal statute. Where application of a criminal statute is ambiguous, California courts apply the rule of lenity—"even when the statute is being invoked in a civil action." *Doe v. Eating*

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025); *see also Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001) ("[W]hen the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage."). The same narrow construction principle applies with particular force where, as here, the plaintiff seeks punitive statutory penalties. *See Hale v. Morgan*, 22 Cal. 3d 388, 401 (1978) (courts "have looked with disfavor" on "and have narrowly construed" civil statutes that "require or permit" punitive penalties); SAC ¶ 86. Here, at best, there is ambiguity as to whether CIPA was meant to apply in ways that directly conflict with another California statute and HIPAA.

Indeed, courts apply the rule of lenity in evaluating CIPA claims, recognizing that "the state of affairs with CIPA is untenable" because "conflicting rulings" leave parties unable to determine "whether their . . . business activities will subject them to liability." *Doe*, 806 F. Supp. 3d at 1112. Accordingly, courts refuse to stretch CIPA beyond its statutory limits. *See, e.g.*, *Blaker v. NetScout Sys., Inc.*, 2026 WL 1709143, at *2–4 (L.A. Cnty. Super. Ct. May 27, 2026) (sustaining demurrer without leave to amend). This case is a far cry from the clandestine recording or third-party eavesdropping Section 632(a) was enacted to address. And where the statute does not clearly reach the alleged conduct, lenity requires the Court to reject Plaintiff's expansive interpretation.

To the extent that the Court has any uncertainty regarding the application of CIPA here, lenity requires the resolution of this ambiguity in Sutter's favor.

### E. Plaintiff Does Not and Cannot Plead a Claim Under the UCL

#### 1. The SAC Fails to Plead Statutory Standing

Standing under the UCL is "more restrictive" than the Constitutional standing requirement of "injury in fact." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011). A complaint establishes standing to assert a UCL claim only if it alleges both that: (1) the plaintiff lost or was deprived of money or property sufficient to qualify as injury in fact, i.e., economic injury; *and* (2) the economic injury was the result of the unfair business practice or false advertising that is the gravamen of the claim. *Id.* at 322 (citing Cal. Bus. & Prof. Code § 17204).

Here, despite having an attempt to replead her claims, Plaintiff does not identify any specific economic loss, does not allege she paid more for care or that she received inferior services, and does

not include any specific factual allegations that could tie any purported loss to Sutter's use of the Abridge platform. She merely states, in conclusory fashion, that she "suffered injury in fact and lost money or property, including but not limited to the payment of fees for medical services." SAC ¶ 109.

That bare recitation of the statutory element is unsupported by any specific factual allegations, and it is not entitled to any deference even at the pleading stage. *See, e.g.*, *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2018 WL 10072961, at *7–9 (C.D. Cal. May 1, 2018) (plaintiffs lacked standing where they alleged only that they "lost money" without identifying a specific economic injury or tying it to defendant's conduct); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008) (plaintiffs lacked UCL standing where the alleged loss of money was merely paying for products or services rendered); *Elliott v. QF Circa 37, LLC*, 2017 WL 6389775, at *13 (S.D. Cal. Dec. 14, 2017) ("'formulaic recitation' of the elements of a UCL claim, such as a conclusory allegation of 'loss of money or property,' is insufficient" to establish statutory standing) (quoting *Iqbal*, 556 U.S. at 678).

The same should hold true here. Even after amending her complaint twice, Plaintiff does not offer any factual allegations showing she suffered non-speculative economic harm. That is plainly insufficient as a matter of law. As a result, the UCL claim fails for lack of statutory standing.

**2. Plaintiff Fails to Plead a Claim Under Any UCL Prong**

**a. Legally Authorized Conduct Cannot Support a UCL Claim**

CMIA and HIPAA *both* expressly permit Sutter to disclose medical information to third parties that provide "medical data processing" or other administrative services. Cal. Civ. Code § 56.10(c)(3); 45 C.F.R. § 164.502(e); *see* Section V.B(1)–(2), *supra*. The SAC confirms that the Abridge platform performs these functions and falls within CMIA's and HIPAA's rules. SAC ¶ 2 (p. 4), ¶ 14 (p. 7), ¶ 17. Where an action is sanctioned by law, that action cannot be actionable. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999) ("Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law"); *Davis*, 691 F.3d at 1164 ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (same). Because the alleged conduct here is authorized under federal and state law, it cannot form the basis for a UCL claim.

**b. No Unfair Conduct Supports a UCL Claim**

To plead an "unfair" practice in connection with a UCL claim, a plaintiff must allege conduct that offends an established public policy in a manner that is tethered to an underlying constitutional, statutory, or regulatory provision, or that threatens an incipient violation of, or otherwise violates the policy or spirit of, such law. *See Graham v. Bank of Am.*, 226 Cal. App. 4th 594, 613 (2014). Alternatively, courts assess unfairness by balancing the utility of the challenged conduct against the gravity of the alleged harm, requiring a showing that the practice is substantially injurious in light of its justifications. *See Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006). Under either formulation, the claim fails. Here, as discussed in Sections V.B(1)–(2), *supra*, the conduct at issue *is expressly authorized* by law, and thus cannot "offend" an established public policy. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (holding business practice could not be subject to UCL liability where "law unequivocally permits Defendants' conduct"); *Moran v. Prime Healthcare Mgmt., Inc.*, 94 Cal. App. 5th 166, 186 (2023) (finding no unfair UCL claim could lie because there is no violation of public policy where "both the state and federal governments have thoroughly considered" and permitted a healthcare system's challenged practice).

In the SAC, Plaintiff nonetheless continues to assert that the use of the Abridge platform "offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers." SAC ¶ 102. She further alleges that "[a]ny purported utility [Sutter] claims from improved documentation or efficiency is outweighed by the severe invasion of privacy and erosion of trust in the physician-patient relationship." *Id.* ¶ 104. These conclusory allegations are Plaintiff's own *ipse dixit* and are not enough. *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (holding that conclusory allegations are insufficient to state a UCL claim); *Iqbal*, 556 U.S. at 678 (holding that labels, conclusions, and formulaic recitations of elements do not state a plausible claim). Plaintiff does not and cannot point to any public policy violation tethered to an underlying statutory or regulatory provision that would support her claim.

Moreover, if the Court were to apply a balancing test, the utility of the Abridge platform is clear and obvious. As discussed in Sections V.A, *supra*, there was no "invasion of privacy." Patients *expect* and were *informed* that their information would be shared with business associates.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

As to the utility of the Abridge platform, even Plaintiff acknowledges its usefulness. *See* SAC ¶ 17 (Abridge platform used to "reduc[e] clinicians' documentation burdens" and "improv[e] efficiency in generating clinical notes"). When evaluating this utility against the harms alleged in the SAC, *see* ECF No. 35 (Sutter's motion under Rule 12(b)(1)), Section III.B–C, this is not a close call. There is nothing unfair about improving the delivery of medical care. *See Capito v. San Jose Healthcare Sys., LP*, 17 Cal. 5th 273, 287 (2024) (a hospital's pricing disclosures were not unfair because they complied with statutory disclosure requirements and given the balance between transparency and the need to avoid deterrence of emergency care); *In re Qualcomm Litig.*, 2017 WL 5985598, at *10–11 (S.D. Cal. Nov. 8, 2017) (challenged conduct was not unfair under the balancing test because the asserted harms were conclusory and outweighed by the legitimate utility of ensuring a uniform product experience and controlling costs). As a result, Plaintiff fails to plead a claim under the UCL's unfair prong.

#### c. Plaintiff Cannot Meet Rule 9(b)'s Heightened Pleading Standard for Fraudulent Conduct

Plaintiff's claim under the fraudulent prong of the UCL continues to fail both the heightened pleading standard of Rule 9(b) as well as basic pleading requirements.

Claims sounding in fraud must be pled with particularity, including the "who, what, when, where, and how" of the alleged misconduct. *Kearns*, 567 F.3d at 1126. Despite this—and despite being notified of her many pleading defects—Plaintiff still does not identify a single actionable misrepresentation or omission by Sutter, does not identify who specifically made such an alleged statement, does not allege when the statement was made, and does not allege that Plaintiff relied on such a statement to her detriment. At most, she claims in general terms that Sutter's "conduct is also 'fraudulent[.]'" SAC ¶ 105. The Court (and Sutter) are left to wonder as to each of the "what, when, where and how" that would support any fraudulent conduct. Having failed at this heightened pleading—and in fact having failed to allege *any* facts that form the basis for any fraud—this prong of the UCL claim fails. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).

Moreover, Plaintiff cannot plead any fraud because Sutter's NPP disclosed the use of business associates like Abridge. *See Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,

2023 WL 7284160, at *3 (N.D. Cal. Nov. 3, 2023) (no deception where challenged practice was disclosed); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 221 (2012) (plaintiffs "could not have been deceived" where they saw or were made aware of disclosures).

**d. No Unlawful Conduct Supports a UCL Claim**

Plaintiff's allegations likewise fail under the unlawful prong. The unlawful prong of the UCL is derivative: it "borrows" violations of other laws. *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180. Plaintiff predicates her UCL claim on alleged violations of CIPA, CMIA, and ECPA. SAC ¶ 100. Those claims fail for the reasons set forth herein. Without a viable predicate violation, the unlawful prong fails. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012); *Whiting v. Coachella Valley Hous. Coal.*, 2024 WL 4891021, at *1 (9th Cir. Nov. 26, 2024).

**F. The Claims Should Be Dismissed with Prejudice**

The Court should dismiss each claim in the SAC with prejudice. Sutter's prior Rule 12(b)(6) motion notified Plaintiff as to each of the pleading and legal failures of her claims. Yet, the SAC cures none of those defects. In fact, it does the opposite. The new allegations confirm that Plaintiff knew what was happening and nonetheless elected to receive care from Sutter on multiple occasions. The SAC also makes *no attempt* to amend the bulk of the claims, electing to only make new allegations regarding the CIPA claim. Where a plaintiff is given notice of the failures of her claims, amends, but does not cure the identified defects, dismissal with prejudice is appropriate. *See Low*, 900 F. Supp. 2d at 1033 (dismissing claims with prejudice after "Defendant's first motion to dismiss placed Plaintiffs on notice regarding the deficiencies of these claims . . ., and Plaintiffs failed to cure the defects in the Amended Complaint."); *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (affirming dismissal with prejudice where the pleading deficiencies "persisted in every prior iteration of the [complaint]"); *Miller v. Bank of Am., N.A.*, 2016 WL 1573447, at *3 (S.D. Cal. Apr. 19, 2016) (dismissing claims with prejudice where "Defendants' prior motions afforded Plaintiff notice of the deficiencies in his complaint, which Plaintiff failed to cure through amendment").

## VI. CONCLUSION

For the foregoing reasons, each of Plaintiff's claims should be dismissed in full as a matter of law pursuant to Rule 12(b)(6), with prejudice.

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: August 19, 2026

Respectfully submitted,

**MCDERMOTT WILL & SCHULTE LLP**

By: */s/ J. Jonathan Hawk*

J. JONATHAN HAWK
ARIANNA R. SWAZER
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

David P. Saunders (Admitted *pro hac vice*)
dsaunders@mcdermottlaw.com
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

*Attorneys for Defendant*
SUTTER HEALTH