**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA WASHINGTON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUTTER HEALTH, a California nonprofit public benefit corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 4:26-cv-03012-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)**<br><br>Hearing Date: October 8, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 3

III. ARGUMENT .......... 4

A. Defendant Cannot Use a Factual Rule 12(b)(1) Attack to Decide the Central Merits Question Whether Abridge Acquired Plaintiff's Conversation .......... 4

1. Whether Abridge was activated is intertwined with the merits of Plaintiff's claims. .......... 5

2. At minimum, Plaintiff is entitled to targeted discovery before the Court resolves Defendant's factual assertion. .......... 6

3. Defendant's "provider access" evidence therefore does not justify dismissal at this stage. .......... 8

B. Assuming the Alleged Acquisition Occurred, Plaintiff Suffered a Concrete Privacy Injury Closely Analogous to Eavesdropping and Intrusion Upon Seclusion .......... 8

1. Plaintiff alleges a completed invasion of a historically protected privacy interest, not a bare statutory violation. .......... 8

2. *Popa* is materially different because Plaintiff alleges the sensitive communication and intrusive access that *Popa* lacked. .......... 10

3. Plaintiff's reasonable privacy interest is not defeated merely because she expected her physician to document the visit. .......... 11

4. Plaintiff's reasonable privacy interest is not defeated merely because she expected her physician to document the visit. .......... 13

5. The BAA regulates Defendant and Abridge; it does not constitute Plaintiff's consent. .......... 16

6. Public dissemination is not required because public disclosure of private facts is not Plaintiff's principal historical analogue. .......... 18

7. Defendant's website, vendor, and routine-record authorities involve materially different conduct. .......... 19

8. The alleged circumstances are sufficiently close to a highly offensive intrusion to satisfy Article III, and ultimate offensiveness remains a merits question. .......... 20

9. Separate emotional or economic damages are not prerequisites to Article III once the completed privacy invasion is concrete. .......... 22

10. The UCL economic theory is independent and does not control Article III standing on the privacy claims. .......... 22

C. Traceability and Redressability Are Satisfied ........ 23

D. Any Curable Deficiency Warrants Leave to Amend........ 24

IV. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Novant Health, Inc.*, 2023 WL 5486240, at 2 (M.D.N.C. Aug. 24, 2023)........................ 19

*Augustine v. United States,* 704 F.2d 1074, 1077–79 (9th Cir. 1983)........................................ 4, 6

*Bowen v. Energizer Holdings, Inc.,* 118 F.4th 1134, 1143–46 (9th Cir. 2024) ...................... passim

*Calhoun v. Google LLC*, 113 F.4th 1141, 1147–50 (9th Cir. 2024) ....................................... 12, 16

*Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1117–20 (9th Cir. 2020)................................ 9, 18, 24

*Careau Grp. v. United Farm Workers of Am.,* 940 F.2d 1291, 1293–94 (9th Cir. 1991)............ 4, 6

*Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 983–84 (9th Cir. 2017)............................................. 10

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003)............................ 24

*Flanagan v. Flanagan,* 27 Cal. 4th 766, 776–77 (2002).............................................................. 13

*Foman v. Davis*, 371 U.S. 178, 182 (1962).................................................................................. 24

*Friends of the Earth v. Sanderson Farms, Inc*., 992 F.3d 939, 944–45 (9th Cir. 2021) .................. 6

*Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022)................................ 13

*Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 285–97 (2009) ...................................................... 20

*Hill v. National Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 36–40 (1994).......................................... 20

*Hunstein v. Preferred Collection & Management Services, Inc.,* 48 F.4th 1236, 1248–50 (11th Cir. 2022) (en banc)................................................................................................................. 18

*In re Otter.ai Privacy Litigation,* No. 25-cv-06911-EKL, Dkt. 68 (N.D. Cal. Aug. 13, 2026) .. 3, 11

*Javier v. Assurance IQ, LLC,* 56 F.4th 1173, 1177–78 (9th Cir. 2022)............................ 12, 14, 16

*Jones v. Ford Motor Co.,* 85 F.4th 570, 574 (9th Cir. 2023) .................................................... 9, 18

*Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002)........................................... 14

*Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322–27 (2011)................................................ 22

*Laub v. U.S. Department of the Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003) ................ 1, 4, 7, 24

*Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014) ............................................................... 6

*McCann v. Iroquois Memorial Hospital,* 622 F.3d 745, 749 (7th Cir. 2010) ............................... 14

*McNamar v. Experian Information Solutions, Inc*., 2026 WL 1603306, at 3 (N.D. Cal. June 4, 2026)............................................................................................................................... 18

*Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480, 490–93 (9th Cir. 2019).................... 10, 18

*Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) 19

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1269 (9th Cir. 1998)........ 11

*Patel v. Facebook, Inc.,* 932 F.3d 1264, 1273–75 (9th Cir. 2019)............................................. 10

*Popa v. Microsoft Corp.,* 153 F.4th 784, 789–93 (9th Cir. 2025)................................ 3, 10, 11, 20

*Ribas v. Clark,* 38 Cal. 3d 355, 360–61 (1985)............................................................................ 13

*Saedi v. SPD Swiss Precision Diagnostics GmbH,* 2025 WL 1141168, at 6–10 (C.D. Cal. Feb. 27, 2025)........................................................................................................................... 19

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004) ................................. 4, 6

*Sanders v. American Broadcasting Cos.,* 20 Cal. 4th 907, 914–15, 922–23 (1999)...................... 13

*Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 231–37 (1998) ............................... 12, 21

*Smith v. Radius Global Solutions, LLC*, 2023 WL 6373874, at 3 (C.D. Cal. Sept. 25, 2023)........ 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021)................................................. passim

*United States v. Azure,* 801 F.2d 336, 342 (8th Cir. 1986) .......................................................... 14

*Whalen v. Roe,* 429 U.S. 589, 602 (1977)..................................................................................... 14

*White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000); Leite v. Crane Co., 749 F.3d 1117, 1121–22 (9th Cir. 2014).......................................................................................................... 4, 6

**<u>Statutes</u>**

45 C.F.R. § 164.502(e) .................................................................................................................. 16

45 C.F.R. § 164.520 ....................................................................................................................... 16

45 C.F.R. §§ 160.202–.203 ............................................................................................................ 16

BAA § 1(b)..................................................................................................................................... 16

BAA § 2 ......................................................................................................................................... 16

BAA § 8 ......................................................................................................................................... 16

Cal. Bus. & Prof. Code § 17204..................................................................................................... 22

Cal. Pen. Code § 632 ...................................................................................................................... 13

Fed. R. Civ. P 12(b)(1)................................................................................................................... 24

## I. INTRODUCTION

Defendant's motion asks the Court to decide as a jurisdictional fact the central factual question Plaintiff would otherwise have to prove on the merits: whether Abridge actually acquired Christina Plaintiff's confidential medical conversation. Controlling Ninth Circuit law does not permit that question to be resolved through ordinary Rule 12(b)(1) factfinding. Where, as here, the disputed standing fact is intertwined with an element of the plaintiff's substantive claims, the Court must employ merits-protective procedures and may not weigh a material factual dispute against the plaintiff simply because the defendant has denominated it "jurisdictional." *Bowen v. Energizer Holdings, Inc.,* 118 F.4th 1134, 1143–46 (9th Cir. 2024).

That rule is dispositive of Defendant's first argument. Defendant submits the declaration of its Senior Deputy Chief Privacy Officer, Braden Carkhuff, who states that Defendant's records show that any provider who "may have spoken to" Plaintiff in connection with her identified contacts lacked access to Abridge. Carkhuff Decl. ¶ 13. But whether Abridge was activated and acquired Plaintiff's communication is not a fact collateral to liability. Actual acquisition is central to Plaintiff's CIPA and Federal Wiretap Act claims, to the challenged handling of medical information under CMIA, to the alleged intrusion upon seclusion, and to the derivative UCL theory. Deciding Defendant's proposed jurisdictional fact would therefore decide a central merits fact.

Nor does Defendant's declaration supply the session-level evidence that could directly answer that question. The record submitted with the motion contains no Plaintiff-specific Abridge activation or session log, patient-selection record, audit trail, device or session identifier, generated transcript or draft-note metadata, EHR provenance metadata, consent or stop-recording record, or Abridge-side processing record. The SAC expressly alleges that the timing and configuration of any activation, the portions acquired, and the resulting transmission, processing, and retention records were not visible to Plaintiff and reside with Defendant, Abridge, or both. SAC ¶ 47. The appropriate course is not to resolve that merits issue adversely before Plaintiff can obtain the evidence principally in Defendant's or its contractor's possession. At minimum, *Laub v. U.S. Department of the Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003), requires a fair opportunity for targeted

jurisdictional discovery where material jurisdictional facts are controverted or a fuller factual showing is necessary.

Defendant's alternative Article III argument attacks a different case from the one Plaintiff pleads. Plaintiff does not allege that she expected her physician to create no medical documentation. The SAC says the opposite. Plaintiff understood that participating healthcare personnel would hear her statements and that medically relevant information would be entered in her chart. SAC ¶¶ 35, 77. Her allegation is narrower: before the challenged acquisition she was not told that Abridge—a separately operated ambient-AI system—would acquire the live conversation, process its spoken contents through Abridge's systems, and receive those contents as the conversation occurred; and she did not affirmatively consent to that acquisition. SAC ¶¶ 34–39, 46–47, 76–82.

Defendant's own evidence confirms why that distinction cannot simply be collapsed into "note-taking." Dr. Veena Jones describes traditional documentation as handwritten or typed notes, another person taking notes, or dictation, followed where appropriate by later review and entry in the medical record. Jones Decl. ¶¶ 8–11. She then describes Abridge as a different three-step sequence: first, "a microphone-enabled device captures the audio of a patient visit"; second, Abridge generates a transcript from that audio and drafts the beginnings of a clinical note; and third, the physician reviews and finalizes the note in the EHR. *Id.* ¶ 15. Thus, on Defendant's own evidence, the conversation was captured as live audio through the microphone, transmitted to Abridge for transcription and processing, and ultimately incorporated into a physician-reviewed medical-record note.

An expectation concerning the final step does not necessarily establish consent to every actor and means involved in the antecedent steps.

If the alleged acquisition occurred, Article III is satisfied. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021), requires a concrete injury and rejects standing based on a bare statutory violation. Plaintiff accepts that rule. But *TransUnion* also expressly identifies intrusion upon seclusion as a traditionally actionable intangible harm and requires only a close historical relationship, not an exact historical duplicate. The alleged injury here is an old privacy injury accomplished through a new instrument: an additional electronic system allegedly obtained sensory

access to and acquired the contents of an intimate physician-patient conversation without prior consent to that acquisition.

That is materially different from the mundane pet-shopping telemetry in *Popa v. Microsoft Corp.,* 153 F.4th 784, 789–93 (9th Cir. 2025). Popa found no close common-law analogue where session-replay technology captured ordinary retail browsing, including mouse movements and product interactions, and the plaintiff identified no embarrassing, invasive, or otherwise private information. Plaintiff alleges actual acquisition of the spoken contents of a medical consultation. And in a decision issued only weeks ago, *In re Otter.ai Privacy Litigation,* No. 25-cv-06911-EKL, Dkt. 68 (N.D. Cal. Aug. 13, 2026), another court in this District held that allegations of unauthorized interception, recording, transcription, and retention of private conversations—including a communication with a medical professional—adequately alleged concrete privacy injury under the *TransUnion–Popa* framework. The court also declined to infer consent merely from the alleged visibility of an AI notetaker where the plaintiff alleged he did not know the service was recording and transcribing the conversation.

Finally, Defendant's public-dissemination theory selects the wrong historical tort. Plaintiff is not attempting to analogize her injury principally to public disclosure of private facts. She alleges eavesdropping, interception, and intrusion—the unauthorized acquisition itself. Neither the common-law concept of intrusion nor the interception interest recognized in Ninth Circuit precedent depends on broadcasting the conversation to the public at large.

The motion should be denied. Alternatively, the Court should defer Defendant's factual challenge and permit the narrowly targeted discovery necessary to determine what actually occurred.

## II. LEGAL STANDARD

Article III requires a plaintiff to show a concrete and particularized, actual or imminent injury that is fairly traceable to the defendant and likely redressable by judicial relief. *TransUnion LLC,* 594 U.S. 413, 423. An intangible injury is concrete when it bears a close relationship to a harm traditionally recognized as providing a basis for suit; the historical analogue need not be an exact duplicate. *Id.* at 424–25. *TransUnion* specifically identifies intrusion upon seclusion among traditionally recognized intangible harms.

A Rule 12(b)(1) attack may be facial or factual. In an ordinary factual attack, the defendant may introduce evidence contesting jurisdictional allegations, and the court generally may consider that evidence. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000); Leite v. Crane Co., 749 F.3d 1117, 1121–22 (9th Cir. 2014). Defendant invokes that ordinary rule. MTD at 18–19.

But the ordinary rule stops where jurisdiction and the merits become intertwined. The Ninth Circuit has long held that a "[j]urisdictional finding of genuinely disputed facts is inappropriate" where the jurisdictional inquiry depends upon factual issues going to the merits. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004). In that setting, the court employs a merits-protective standard akin to Rule 56 rather than unrestricted jurisdictional factfinding. *Augustine v. United States,* 704 F.2d 1074, 1077–79 (9th Cir. 1983); *Careau Grp. v. United Farm Workers of Am.,* 940 F.2d 1291, 1293–94 (9th Cir. 1991). *Careau* explains that dismissal is appropriate only if no triable factual issue remains; where the jurisdictional issue is the merits and evidence conflicts, jurisdiction is determined with the merits rather than through preliminary factfinding.

*Bowen* now squarely applies that doctrine to factual attacks on Article III standing. The Ninth Circuit held that when standing is "intertwined with an element of the merits of the plaintiff's claim," the district court must treat the challenge like summary judgment and "leave the resolution of material factual disputes to the trier of fact." *Bowen,* 118 F.4th at 1143 (quoting *Leite,* 749 F.3d at 1122). The issue is whether the standing question is "separable from the merits," not whether the motion happens to bear a Rule 12(b)(1) label. *Id.* at 1143–46.

Where facts necessary to resolve jurisdiction are contested or a more satisfactory factual showing is needed, jurisdictional discovery "should ordinarily be granted." *Laub,* 342 F.3d at 1093. Particularly where the dispositive information is held by the moving party or a related entity, dismissal before a fair opportunity to obtain that evidence is inappropriate unless further discovery clearly could not establish jurisdiction.

## III. ARGUMENT

### A. Defendant Cannot Use a Factual Rule 12(b)(1) Attack to Decide the Central Merits

**Question Whether Abridge Acquired Plaintiff's Conversation**

**1. Whether Abridge was activated is intertwined with the merits of Plaintiff's claims.**

Defendant's first argument is straightforward: because its internal records purportedly show that providers who may have spoken with Plaintiff lacked Abridge access, Abridge could not have acquired her communication; without acquisition there was no injury; therefore there is no standing. MTD at 18–19; Carkhuff Decl. ¶ 13.

That syllogism proves the intertwined merits problem rather than avoiding it.

Plaintiff's CIPA claim alleges that an electronic recording function was activated and acquired the contents of her confidential communication while she and the provider were speaking. SAC ¶¶ 76–84. Her Federal Wiretap Act theory likewise rests on alleged contemporaneous acquisition of communication contents. Her CMIA theory depends materially on Abridge's alleged receipt or handling of her medical information. Her intrusion claim alleges that Defendant permitted an additional electronic system to obtain sensory access to the oral exchange. And the UCL theory depends on the challenged practice having occurred. Whether Abridge actually acquired Plaintiff's conversation is therefore both a fact necessary to Defendant's standing argument and a fact going directly to substantive liability.

That is *Bowen*. The district court there considered competing evidence bearing on Article III injury and resolved the factual dispute against the plaintiff. The Ninth Circuit reversed because the standing issue overlapped the merits. It held that, although a court may resolve facts bearing on a purely jurisdictional issue, it may not resolve material factual disputes where Article III standing is intertwined with a merits element. *Bowen,* 118 F.4th at 1143–46.

The overlap here is even more direct. In *Bowen*, the disputed facts concerning benzene safety and economic injury overlapped the plaintiff's false-advertising claims. *Id.* Here the fact Defendant asks the Court to decide—whether the allegedly unlawful acquisition happened at all—is itself the operative event underlying the interception and intrusion claims.

*Safe Air* compels the same conclusion. There, the Ninth Circuit held that a district court erred by deciding under Rule 12(b)(1) whether the challenged material fell within the substantive federal

statute because that jurisdictional determination depended upon a merits question. *Safe Air,* 373 F.3d at 1039–40. The court treated the matter through a summary-judgment framework instead.

So too *Careau*. The jurisdictional issue there was "precisely the same as the ultimate issue on the merits." *Careau,* 940 F.2d at 1293. Because material evidence was disputed, the Ninth Circuit held that the case should not have been dismissed for lack of jurisdiction and the factual question was to be resolved with the merits. *Id.* at 1293–94. And *Augustine* rejected use of Rule 12(b)(1)'s "relatively expansive" factfinding procedures where jurisdiction depended on facts going to the heart of the plaintiff's substantive claim. *Augustine,* 704 F.2d at 1077–79.

Defendant's cited authorities do not permit a different result. *White v. Lee* states the ordinary factual-attack rule—that the court may consider evidence outside the pleadings and need not presume challenged jurisdictional allegations true. *White,* 227 F.3d at 1242. It does not dispense with the intertwined-merits exception. *Bowen*, decided nearly a quarter-century later, expressly holds that this exception applies to factual Article III challenges. *Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014), affirmatively supports Plaintiff. *Leite* is the authority *Bowen* quotes for the proposition that a district court must "leave the resolution of material factual disputes to the trier of fact" when jurisdiction is intertwined with a merits element. *Bowen*, 118 F.4th at 1143. *Friends of the Earth v. Sanderson Farms, Inc*., 992 F.3d 939, 944–45 (9th Cir. 2021) is distinguishable for exactly the reason *Bowen* identified: the standing disputes there were "not intertwined with the merits," so factual resolution by the district court was permissible. *Bowen* expressly described *Friends of the Earth* as illustrating the inverse of the rule governing intertwined facts. *Bowen,* 118 F.4th at 1144.

Thus, Defendant may ultimately prove that Abridge was not used during Plaintiff's encounters. But it cannot obtain that merits determination through unrestricted Rule 12(b)(1) factfinding merely because absence of acquisition would also negate injury.

The Court should deny Defendant's factual Rule 12(b)(1) challenge as presented.

**2. At minimum, Plaintiff is entitled to targeted discovery before the Court resolves Defendant's factual assertion.**

The alternative is targeted discovery—not speculation in either direction.

Carkhuff declares that any provider who "may have spoken to" Plaintiff lacked Abridge access. Carkhuff Decl. ¶ 13. Plaintiff does not ask the Court to disregard that declaration, find it false, or adjudicate its evidentiary weight now. But the declaration states Defendant's conclusion from internal records; the record supplied with the motion does not include the underlying provider-access records or the session-level technical records capable of directly showing whether Abridge was activated for Plaintiff.

That distinction matters because the SAC alleges that the precise activation configuration, timing, acquired portions, transmission, processing, and retention records were invisible to Plaintiff and within Defendant's or Abridge's possession or control. SAC ¶ 47. And Defendant's declarants establish that such operational records are not fanciful. Carkhuff says Defendant keeps records concerning providers who had and used Abridge. Carkhuff Decl. ¶¶ 2–3. Dr. Jones says Abridge works through a discrete sequence beginning with microphone capture and that the patient can ask the provider to stop the tool. Jones Decl. ¶¶ 15, 17.

Under *Laub*, discovery ordinarily should be permitted where jurisdictional facts are controverted or a fuller factual showing is necessary. *Laub*, 342 F.3d at 1093. This is not a request to explore Defendant's entire Abridge program. The discovery can be confined to Plaintiff and her identified encounter dates.

Plaintiff should be permitted to obtain, for those encounters, Abridge activation and session logs; historical provider-access and licensing records; patient-selection records; encounter logs; Defendant and Abridge audit trails; device and session identifiers; generated transcript or draft-note metadata; EHR metadata reflecting whether a note originated from an Abridge session; consent, notice, opt-out, and stop-recording records; information concerning any shared-device, assistant, or delegated workflow relevant to activation; and Abridge-side processing, retention, and deletion records.

Those records bear directly on the exact proposition Defendant put at issue. Unlike broad jurisdictional discovery rejected where a plaintiff has only a "hunch," this request follows from Plaintiff's alleged personal observation of microphone-enabled equipment, what she says the provider told her, Defendant's admitted deployment of Abridge, and Defendant's own evidence

describing the system's operation. The requested evidence can confirm Defendant's position or Plaintiff's. Either way, it supplies the reliable factual basis that a merits-protective procedure requires.

If the Court treats Defendant's factual attack under the Rule 56-type framework required by *Bowen*, Plaintiff should likewise receive a fair opportunity to obtain the material records before judgment is entered. The fundamental point is the same under either label: Defendant should not obtain adjudication of the central merits fact on an evidentiary record consisting of its official's summary conclusion where the underlying, Plaintiff-specific electronic evidence is principally in Defendant's and Abridge's possession.

#### 3. Defendant's "provider access" evidence therefore does not justify dismissal at this stage.

The Court need not decide whether Carkhuff's provider-access evidence ultimately proves non-use. The present question is procedural.

Carkhuff does not attach the identified provider list; does not identify in ¶ 13 which provider or providers are encompassed by the phrase "may have spoken to Plaintiff"; does not attach historical access records for the relevant dates; and does not supply session, activation, audit, device, patient-selection, or Abridge-side records for Plaintiff. Carkhuff Decl. ¶¶ 10–13.

The Court therefore should not convert a dispute about what the underlying systems show into a merits finding before Plaintiff can examine those systems' records. Under *Bowen*, the decisive fact is intertwined. Under *Laub*, the evidence sought is targeted to the controverted jurisdictional proposition. The proper result is denial or, at minimum, deferral pending limited discovery.

### B. Assuming the Alleged Acquisition Occurred, Plaintiff Suffered a Concrete Privacy Injury Closely Analogous to Eavesdropping and Intrusion Upon Seclusion

#### 1. Plaintiff alleges a completed invasion of a historically protected privacy interest, not a bare statutory violation.

Defendant is correct about one premise: a statutory violation alone does not confer Article III standing. *TransUnion,* 594 U.S. at 426–27. Plaintiff does not contend otherwise.

But *TransUnion* also supplies the governing answer. It recognizes that intangible injuries bearing a close relationship to historically actionable harms can be concrete and specifically lists "intrusion upon seclusion" among them. *Id.* at 425. The Court does not search for an exact nineteenth-century technological counterpart. It asks whether the harm is sufficiently similar in kind to a traditionally actionable harm.

Plaintiff's alleged harm is the unauthorized opening of an additional channel of sensory access to a private conversation. SAC ¶¶ 34–40, 76–85. She alleges that a microphone-enabled system acquired the contents of her oral physician-patient communication in real time, allowing Abridge's system to process what she said, without prior consent to Abridge's acquisition. That is not merely a procedural failure to provide a notice in a particular form. It is the completed acquisition of communication contents.

*Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1117–20 (9th Cir. 2020) is the strongest Ninth Circuit interception analogue. There, alleged interception and processing of the contents of private Facebook messages implicated concrete privacy interests protected by the ECPA and CIPA. The court grounded its standing analysis in the historical interests protected against wiretapping and interception of private communications. *Id.* Plaintiff does not rely on *Campbell* for a categorical proposition that every CIPA or ECPA violation automatically creates standing; after *TransUnion* and *Popa*, that would be too broad. Rather, *Campbell* demonstrates that the particular conduct alleged here—actual acquisition of communication contents—has the historical characteristics of intrusion and interception that Article III recognizes.

*Jones v. Ford Motor Co.,* 85 F.4th 570, 574 (9th Cir. 2023) is post-*TransUnion* and even more instructive on the need for consequential harm. The plaintiffs alleged that a vehicle system automatically downloaded and permanently stored private text messages and call logs without knowledge or consent. They did not allege that Ford itself later accessed those communications. The Ninth Circuit nonetheless held at the pleading stage that the alleged unauthorized downloading and storage plausibly articulated an Article III privacy injury.

Similarly, *Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480, 490–93 (9th Cir. 2019) recognized unauthorized acquisition of a consumer's credit report as a concrete privacy invasion analogous to intrusion upon seclusion, independently of whether the information was later published or used. *Nayab* predates *TransUnion*, so Plaintiff does not invoke it as a categorical statutory-standing rule. Its historical proposition—that obtaining access to sensitive information can itself constitute an intrusion—is entirely consistent with *TransUnion*'s express recognition of intrusion upon seclusion.

The same is true of *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 983–84 (9th Cir. 2017) and *Patel v. Facebook, Inc.,* 932 F.3d 1264, 1273–75 (9th Cir. 2019). Those cases predate *TransUnion* but reinforce the historically grounded principle that a privacy invasion may be complete upon the invasion itself rather than only when it causes subsequent financial loss or public embarrassment.

This case therefore does not ask the Court to recognize a novel Article III harm because ambient AI is new. It asks the Court to recognize the traditional injury of unwanted access to a private communication notwithstanding the modern instrument used to obtain that access.

**2. *Popa* is materially different because Plaintiff alleges the sensitive communication and intrusive access that *Popa* lacked.**

Defendant understandably relies heavily on *Popa*. *Popa,* 153 F.4th at 789. But *Popa* does not establish a categorical rule against standing for technology-mediated acquisition. It requires attention to what was actually acquired and the context in which it was acquired.

The session-replay technology in *Popa* captured a user's interactions with a pet-supply website: information about the visit and device, mouse movements, screen swipes, scrolling, products viewed, and limited text input. The Ninth Circuit emphasized that Popa identified no "embarrassing, invasive, or otherwise private information" and compared the conduct to a store clerk observing shoppers. *Id.* at 790–92. On those allegations, the asserted harm was not remotely similar to the highly offensive interference historically actionable at common law.

The difference here is qualitative, not rhetorical.

Plaintiff alleges spoken medical communications concerning her condition, symptoms, treatment, and care. SAC ¶¶ 38, 76. She alleges that a microphone acquired those words as she spoke them. SAC ¶¶ 34, 39, 78–82. And the alleged recipient was not merely the physician to whom she intentionally spoke, but an additional technology system whose involvement she alleges was not disclosed before acquisition. These discussions are, as a matter of law, defined as confidential. See Civil Code §56, et seq. This confidential medical information cannot be disclosed absent a written authorization by the Plaintiff. Civil Code §56.10.

Medical information has long occupied an especially private sphere. See *Norman-Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1269 (9th Cir. 1998). And California's recording cases recognise that oral communications can retain privacy from undisclosed listening or recording even where the speaker necessarily communicates with intended listeners.

The very recent *In re Otter.ai Privacy Litigation* illustrates the distinction in almost technological mirror image. There, plaintiffs alleged that an AI meeting assistant recorded, transcribed, and retained private conversations without all participants' consent. Applying *Popa*, the court concluded that allegations of actual acquisition of private conversational content were materially different from the mundane website interactions in *Popa*. One plaintiff's allegation that the captured conversation was with a medical professional was specifically sufficient to allege confidentiality under CIPA. *In re Otter.ai Priv. Litig.,* Dkt. 68.

That decision is persuasive rather than binding, but its factual analogy is far closer than *Popa*. Abridge, like the service alleged there, is an AI transcription platform alleged to receive the spoken contents of an ongoing conversation. Plaintiff alleges medical speech, not shopping clicks.

*Popa* therefore sharpens Plaintiff's case rather than defeating it: Article III turns on the particular privacy invasion alleged. Plaintiff pleads the sensitive communication and actual content acquisition that *Popa* found absent.

**3. Plaintiff's reasonable privacy interest is not defeated merely because she expected**

**her physician to document the visit.**

Defendant next argues that there can be no privacy injury because Plaintiff saw microphone-enabled equipment, was told it was used for transcription or taking notes, remained in the encounter, expected clinical documentation, and had acknowledged Defendant's NPP. MTD at 21–23.

Those facts matter. Plaintiff does not deny them. They do not, however, necessarily establish consent to every actor, means, and stage of the alleged acquisition.

The proper question is scope. *Calhoun v. Google LLC*, 113 F.4th 1141, 1147–50 (9th Cir. 2024) is instructive. Consent to digital information practices is evaluated according to the conduct objectively disclosed and the scope reasonably conveyed; generic language does not automatically establish agreement to materially different conduct. Whether a disclosure encompassed the challenged collection depends on what the user was told about the particular practice. The Ninth Circuit did not treat "consent" as an unlimited licence divorced from the representations defining its scope. *Javier v. Assurance IQ, LLC,* 56 F.4th 1173, 1177–78 (9th Cir. 2022) makes the temporal point equally clear in a CIPA setting. Consent to an interception must precede the interception; a later disclosure or assent cannot retroactively authorize collection that has already occurred.

Those principles fit the allegations here. Plaintiff does not say she objected to a provider remembering her words, handwriting or typing notes, dictating a note after the encounter, or placing medically relevant information in her chart. SAC ¶¶ 35, 77. She says she did not receive clear notice before acquisition that Abridge would itself receive and process the live oral exchange. SAC ¶¶ 36–39, 46–47, 80–82.

California Supreme Court authority reinforces that privacy is actor- and context-specific. In *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 231–37 (1998), an accident victim necessarily communicated with medical-rescue personnel, yet the California Supreme Court recognized a potentially actionable privacy interest against undisclosed recording and listening to those medical communications. Consent to communicate with the caregiver did not necessarily eliminate privacy against an additional recorder.

*Sanders v. American Broadcasting Cos.,* 20 Cal. 4th 907, 914–15, 922–23 (1999) similarly rejected an all-or-nothing conception of privacy. A person may expose a communication to intended or authorized listeners while retaining a reasonable expectation against covert recording or observation by another actor.

And *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776–77 (2002) explains that Cal. Pen. Code § 632's concept of a confidential communication concerns a reasonable expectation that a conversation is not being overheard or recorded in the challenged manner. It does not require an expectation that the subject matter will never be repeated to anyone.

*Ribas v. Clark,* 38 Cal. 3d 355, 360–61 (1985) likewise illustrates the distinct privacy interest implicated when an unannounced additional listener is given access to an otherwise participant-to-participant communication.

The application here is narrow. Plaintiff's awareness that a device was connected to "transcription" or "taking notes" is relevant evidence regarding consent. It does not conclusively resolve what the provider said, what Plaintiff reasonably understood from that explanation, whether she was told that Abridge would receive the live audio content, or whether she consented before the acquisition began. Those are quintessential scope-of-consent questions, and they also go to the merits of the privacy claims.

Defendant's reliance on *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) and its cited *Ingraham* decision does not change that analysis. Those technology-tracking cases concern the privacy implications of ordinary digital interactions and disclosures associated with use of a defendant's digital services. Plaintiff alleges direct microphone acquisition of intimate oral medical speech in a clinical encounter. To the extent those cases ask whether the plaintiff knowingly exposed information to the defendant with whom she was interacting, *Shulman* and *Sanders* show why that reasoning does not mechanically answer privacy as against an additional undisclosed listener or recording system.

**4. Plaintiff's reasonable privacy interest is not defeated merely because she expected**

**her physician to document the visit.**

Defendant repeatedly characterizes Abridge as simply a modern method of routine clinical documentation. MTD at 23–25. The asserted healthcare purpose may be relevant to statutory defenses and ultimately to offensiveness. But it does not erase the factual sequence established by Defendant's own witness.

Dr. Jones distinguishes handwritten or typed notes, staff note-taking, physician dictation, and later review from Abridge's workflow. Jones Decl. ¶¶ 8–11, 15–16. Abridge first "captures the audio of a patient visit"; then Abridge generates a transcript and draft note; only then does the provider finalize the clinical note in the EHR. *Id.* ¶ 15.

Thus the oral communication and the resulting medical record are not the same thing. The record is a downstream product of the antecedent acquisition.

Interception law has long recognized a corresponding temporal distinction between contemporaneous acquisition of a communication and later access to stored information. See *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002). *Javier* likewise focuses on what consent existed before the challenged capture. *56 F.4th at 1177–78.*

Defendant's reliance on *McCann v. Iroquois Memorial Hospital,* 622 F.3d 745, 749 (7th Cir. 2010), *United States v. Azure,* 801 F.2d 336, 342 (8th Cir. 1986), and *Whalen v. Roe,* 429 U.S. 589, 602 (1977) therefore proves too much. None holds that a patient's expectation of ordinary medical documentation establishes consent, for CIPA or Article III purposes, to an additional technology company's allegedly undisclosed real-time acquisition of the underlying oral exchange. Authorities involving physician dictation, medical-record creation, evidentiary treatment of medical information, or regulated retention of health records address what happens to medical information once recorded or created; they do not decide the distinct question presented here.

Indeed, *Whalen* recognized the substantial individual privacy interest implicated by personal medical information, notwithstanding that the Court ultimately upheld the particular government reporting regime at issue. *429 U.S. at 599–605.* It did not address Article III standing arising from

the contemporaneous interception of a private conversation, much less hold that patients surrender all privacy interests in the manner by which their communications are captured.

That distinction is material. Plaintiff does not dispute that she accepted ordinary documentation of her medical care. She alleges, instead, that she did not consent to Abridge's antecedent acquisition of the live conversation itself. Nothing technologically unusual or legally novel follows from distinguishing consent to documentation from consent to the means by which the underlying conversation is acquired.

The NPP therefore does not conclusively establish consent to the particular live acquisition alleged here. Defendant's reliance on the NPP warrants consideration, but it does not warrant dismissal. The NPP tells patients that Defendant uses contracted business associates and gives "transcribing your medical record" as one example. It says Defendant may disclose "appropriate portions of your health information" to business associates to perform assigned functions. ECF No. 35-4 at 8; ECF No. 35-5 at 5.

That language is meaningful. It informs a patient that contractors can handle health information and perform transcription-related work. But Defendant asks the Court to hold that it necessarily conveyed—and secured Plaintiff's agreement to—a more specific sequence that its own witness describes as: activation of a microphone during the encounter; capture of the live oral conversation; Abridge's receipt and processing of that audio; creation by Abridge of an audio-derived transcript and draft note; followed by creation of the final medical record. Jones Decl. ¶ 15.

Whether "transcribing your medical record" objectively communicated that sequence is not a jurisdictional fact the Court can simply assume in Defendant's favor. The wording itself distinguishes a "medical record" and "appropriate portions of health information" from the antecedent live conversation that Dr. Jones says must first be captured before Abridge creates the transcript and draft note.

Nor does acknowledging receipt of an NPP necessarily amount to affirmative consent to any information-collection method that might facilitate a broadly described healthcare operation. HIPAA separately regulates notices of privacy practices and business-associate relationships. See

45 C.F.R. § 164.502(e), 45 C.F.R. § 164.520. Whatever consequences those provisions may have for the ultimate HIPAA or CMIA analysis, they do not answer the distinct question whether Plaintiff consented to an alleged recording within the meaning of CIPA or the historical privacy analogue required by Article III.

*Calhoun* reinforces that the scope of consent is tied to what the disclosure reasonably communicated about the challenged conduct. *Calhoun*, 113 F.4th at 1147–50. *Javier* requires any relevant consent to exist before interception. *Javier*, 56 F.4th at 1177–78. Here, what was actually said before the microphone captured Plaintiff's speech, what the NPP objectively conveyed, and whether those disclosures encompassed Abridge's receipt of the live communication are factual merits issues—not grounds for declaring that no privacy injury could have occurred.

**5. The BAA regulates Defendant and Abridge; it does not constitute Plaintiff's consent.**

Defendant similarly relies on Abridge's status as a HIPAA business associate. That may matter considerably to ultimate statutory liability. It does not eliminate Article III injury.

The BAA provides that Abridge may create, receive, maintain, or transmit PHI on Defendant's behalf. BAA Recital B. It extends PHI to California "medical information." BAA § 1(b). It also imposes confidentiality and safeguarding obligations, BAA § 2, and identifies Abridge as an independent contractor. BAA § 8. But it does not state the scope of work, or whether Abridge can use medical information provided by Plaintiff and the Class Members to train its AI – which would be prohibited under Cal. Civil Code §56.10(c). In fact, the BAA does not explain the purpose of Abridge's work for Defendant at all.

While, those provisions establish the contractual relationship between Defendant and Abridge, they do not establish that Plaintiff agreed to allow her confidential communications with her doctor to be overheard. Plaintiff is not a party to the BAA, and nothing identified by Defendant purports to make the BAA an individual patient's consent to microphone recording. Again, the California Confidentiality of Medical Information Act specifically requires written authorization for the sharing of a patient's medical information. Cal. Civil Code §56.10 (a) ("A provider of health

care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization, except as provided in subdivision (b) or (c).")

Nor does HIPAA permissibility answer CIPA consent. HIPAA's pre-emption structure preserves more stringent state privacy protections, 45 C.F.R. §§ 160.202–.203, and Defendant's own NPP tells patients that where state law is more protective, Defendant follows the more stringent state rule. ECF No. 35-4 at 3. Whether particular healthcare-operation or business-associate exceptions ultimately authorize Defendant's conduct under CMIA or other law is a merits question. It is not a rule that a patient suffers no concrete privacy intrusion whenever the alleged recorder is contractually subject to HIPAA safeguards.

That distinction is critical because Defendant's argument improperly collapses several separate legal inquiries into one. Whether Abridge's conduct was permissible under HIPAA is distinct from whether a CMIA exception or authorization applies; whether Plaintiff consented to recording or interception under CIPA or the Federal Wiretap Act; whether the elements of common-law intrusion ultimately can be proved; and whether the alleged acquisition itself bears a sufficiently close relationship to a historically cognizable privacy injury for purposes of Article III standing. Those questions arise under different legal standards and cannot be resolved simply by treating compliance with one statutory regime as dispositive of the others.

A BAA may bear on the first two and potentially on the reasonableness or offensiveness analysis. It does not decide the fifth, and it is not Plaintiff's consent for the third.

Abridge's Privacy Policy does not change that conclusion. It expressly states that its ordinary public-facing policy does not govern healthcare Customer Data; instead, healthcare Customer Data, which may contain PHI, is processed on customers' behalf under the governing customer agreements and BAAs. ECF No. 35-1 at 2–3. Plaintiff therefore does not rely on Abridge's provisions regarding public websites, advertising, or FullStory session replay as though they governed Plaintiff's encounter. The relevant point is simply that Defendant's own exhibit confirms a distinct healthcare-customer data-processing relationship. In fact, Abridge specifically states that

medical information is being used to "provide, operate, and improve" its services (ECF No. 35-1 at p. 6), which is specifically prohibited under Cal. Civil Code §56.10(c), which states that a contractor can only use medical information for the purposes of diagnosis, treatment, or medical debt collection. Absent Plaintiff's express written authorization, that information could not be used.

**6. Public dissemination is not required because public disclosure of private facts is not Plaintiff's principal historical analogue.**

Defendant argues repeatedly that Plaintiff disclaims dissemination to the general public and therefore cannot establish a concrete privacy injury. MTD at 24–25. That argument conflates two distinct privacy injuries.

Public disclosure of private facts requires publicity. Intrusion upon seclusion does not. An intrusion is committed through the unwanted observation, listening, or acquisition itself. *TransUnion* expressly lists "disclosure of private information" and "intrusion upon seclusion" separately. *TransUnion*, 594 U.S. at 425.

Plaintiff invokes the latter analogue, together with eavesdropping and interception. She alleges that an electronic system crossed the boundary around a confidential conversation and acquired its contents as it occurred. SAC ¶ 39. The allegedly unwanted sensory access is the injury.

*Campbell* supports that distinction. The Ninth Circuit's concrete-interest analysis concerned interception and processing of private-message contents; it did not require the plaintiffs to allege subsequent broadcast of those contents to the public. *Campbell*, 951 F.3d at 1117–20. *Jones* likewise found a plausible privacy injury from the unauthorized downloading and storage of private texts even though the plaintiffs did not allege that Ford had subsequently read or publicly disseminated them. *Jones*, 85 F.4th at 574. And *Nayab* treated unauthorized obtaining of sensitive credit information as an intrusion-type injury independent of subsequent publication. *Nayab*, 942 F.3d at 490–93. By contrast, *Hunstein v. Preferred Collection & Management Services, Inc.*, 48 F.4th 1236, 1248–50 (11th Cir. 2022) (en banc) concerned a debtor's information sent by a debt collector to a mail vendor. The plaintiff invoked an analogue to public disclosure of private facts, and the Eleventh Circuit found the common-law "publicity" requirement unsatisfied by that limited

vendor disclosure. *Hunstein* is nonbinding and concerned the historical tort Plaintiff does not principally invoke here.

The same limitation applies to *Smith v. Radius Global Solutions, LLC*, 2023 WL 6373874, at 3 (C.D. Cal. Sept. 25, 2023) and Defendant's cited *McNamar v. Experian Information Solutions, Inc*., 2026 WL 1603306, at 3 (N.D. Cal. June 4, 2026) to the extent they apply a public-disclosure analogue to the downstream transmission of already-existing information to a service vendor. Those district decisions do not hold that contemporaneous eavesdropping or interception of an oral communication is harmless unless someone later publishes it to the world.

Nor does footnote 6 of *TransUnion* impose such a requirement. *TransUnion* was assessing the historical analogue for misleading credit information that had remained within internal files. Its discussion of publication addressed the particular defamation-type theory before the Court. *TransUnion*, 594 U.S. at 434 & n.6. It cannot sensibly be read to erase the Court's express recognition, nine pages earlier, that intrusion upon seclusion is independently a traditionally actionable intangible harm. *Id.* at 425.

Plaintiff therefore need not prove that Abridge broadcast her medical conversation to the general public to establish that allegedly unwanted acquisition of the conversation was itself an invasion.

**7. Defendant's website, vendor, and routine-record authorities involve materially different conduct.**

The same factual distinction answers the remaining authorities on which Defendant relies. *Hammerling*, *Ingraham*, and *Saedi* involve technology-mediated collection associated with digital or consumer interactions, not a microphone obtaining the spoken contents of a physician-patient consultation. To the extent *Saedi v. SPD Swiss Precision Diagnostics GmbH,* 2025 WL 1141168, at 6–10 (C.D. Cal. Feb. 27, 2025) reasoned that a website operator could not "intrude" into communications intentionally sent to that operator, Plaintiff's allegation is different: she intentionally communicated with her healthcare provider; the asserted additional acquirer is Abridge.

*Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) and *Allen v. Novant Health, Inc*., 2023 WL 5486240, at 2 (M.D.N.C. Aug. 24, 2023) likewise arise from web- or pixel-based handling of information directed to healthcare entities. Even putting aside their nonbinding status, intentional entry of data into a hospital website is not the same event as an allegedly undisclosed technology processor obtaining live spoken medical communications through a microphone.

*McCann*, *Azure*, and *Whalen* establish no Article III rule governing this case. Routine physician dictation and maintenance or regulated use of medical records show that healthcare necessarily involves documentation and information handling. Plaintiff agrees. None establishes consent as a matter of law to the particular antecedent live acquisition alleged here.

And *Popa* itself demonstrates why context matters rather than why all technology collection is non-concrete. The Ninth Circuit focused on the mundane character of the particular retail information before it. *Popa*, 153 F.4th at 790–92. Plaintiff alleges the capture of actual medical speech—a fundamentally different content, setting, and privacy boundary

**8. The alleged circumstances are sufficiently close to a highly offensive intrusion to satisfy Article III, and ultimate offensiveness remains a merits question.**

Defendant also argues that no reasonable person could regard the alleged conduct as highly offensive because Abridge assists clinical documentation, Plaintiff saw a microphone-enabled device, the provider mentioned transcription or note-taking, and Abridge is a regulated business associate. MTD at 25–27.

The Court need not decide ultimate tort liability to decide Article III. *TransUnion* requires a close relationship in kind to a historical harm, not identity with every element of the common-law cause of action. But *Popa* makes the character and context of the asserted intrusion relevant, so Plaintiff addresses them directly.

California law evaluates intrusion contextually. *Hill v. National Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 36–40 (1994) considers the nature of the privacy interest, the setting, expectations, competing interests, and surrounding circumstances. *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272,

285–97 (2009) likewise considers the degree and setting of the intrusion, the defendant's motives and objectives, and the actual scope of surveillance.

The alleged facts here are materially different from *Hernandez*. There, an employer installed a concealed camera to identify a person improperly accessing pornography, but the camera was activated when the plaintiff employees were not present and did not record them. *Id.* at 286–98. The California Supreme Court assessed offensiveness against that limited actual intrusion. Plaintiff alleges the critical opposite: actual acquisition while she was present and discussing her medical condition and care.

*Shulman* is much closer. The California Supreme Court recognized that recording medical-rescue conversations could intrude upon privacy despite the injured patient's necessary communications with rescue personnel. *Shulman*, 18 Cal. 4th at 231–37. The case refutes Defendant's suggestion that once a patient willingly speaks to a caregiver, no protectable privacy boundary remains against an additional undisclosed listener or recording mechanism.

The alleged setting here reinforces—not diminishes—the historical analogy. The communication allegedly occurred in the physician-patient context; concerned Plaintiff's health, symptoms, treatment, and care; involved actual acquisition of spoken contents rather than possible observation; and, according to the SAC, occurred without clear prior disclosure that Abridge would receive and process the live conversation. SAC ¶¶ 34–39, 76–82.

Defendant's own case study underscores that the medium is not mundane telemetry. A Defendant clinician describes the physician-patient conversation facilitated by Abridge as more "intimate and therapeutic." ECF No. 35-8 at 2. Plaintiff does not cite that statement as an admission of wrongdoing. It simply confirms the obvious contextual point: Abridge is capturing an interpersonal medical conversation, not mouse movements through an online shop.

The legitimate clinical purpose of Abridge may weigh in Defendant's favor on ultimate merits. The availability of safeguards and the BAA may do so as well. But neither transforms an allegedly non-consensual acquisition of intimate medical speech into the mundane retail observation at issue in *Popa*. At a minimum, the alleged invasion is sufficiently similar in kind to historical

intrusion and eavesdropping to constitute concrete injury; whether Plaintiff ultimately establishes every element of common-law intrusion is a separate question.

**9. Separate emotional or economic damages are not prerequisites to Article III once the completed privacy invasion is concrete.**

Defendant's challenge to Plaintiff's emotional-distress allegations does not eliminate standing. The SAC alleges invasion of privacy, loss of control, emotional distress, and dignitary harm. SAC ¶¶ 61, 85, 95, 120. Some of the consequential-emotional allegations may ultimately require proof. But Plaintiff does not need emotional distress to manufacture a concrete injury if the completed unauthorized acquisition itself is the historically analogous injury.

That is the significance of *TransUnion*'s recognition of intangible historical harms and of *Jones*, *Campbell*, and *Nayab*. A plaintiff whose private communication was actually subjected to the challenged acquisition does not have to wait for identity theft, financial loss, publication, or clinically documented distress before the unwanted access becomes concrete.

The converse is equally important: Plaintiff does not contend that statutory damages alone confer standing. *TransUnion* forecloses that approach. The alleged completed privacy invasion supplies the injury; CIPA, the Federal Wiretap Act, CMIA, and other remedies become available only if Plaintiff proves the additional requirements of those causes of action.

Defendant's attacks on emotional damages therefore concern consequential damages, not the existence of the asserted privacy injury.

**10. The UCL economic theory is independent and does not control Article III standing on the privacy claims.**

The UCL presents a different statutory-standing question because Cal. Bus. & Prof. Code § 17204 requires loss of money or property. The SAC alleges that Plaintiff paid fees for medical services provided under conditions allegedly different from those she would have accepted had the challenged recording practice been disclosed. SAC ¶¶ 109–10. Under *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322–27 (2011), a consumer can suffer UCL economic injury where a challenged representation or omission causes her to part with money in a transaction she otherwise

would not have made. Thus, as a legal theory, payment for a transaction the plaintiff alleges she would have declined but for the challenged omission is a recognized form of economic loss.

But UCL statutory standing should not be allowed to obscure the Article III analysis. Plaintiff's principal constitutional injury is the alleged completed privacy invasion. Whether she can ultimately establish the additional "lost money or property" and causation requirements of Cal. Bus. & Prof. Code § 17204 is analytically distinct.

Nor should the Court infer Plaintiff-specific payment facts not established by the present record. The SAC alleges payment of fees, but the supplied record does not establish the amount or form of any copayment, coinsurance, deductible, direct fee, or other out-of-pocket payment for the particular encounter in which Abridge allegedly was used. Those particulars can be established through appropriate evidence and discovery. They are not necessary to the separate proposition that actual unwanted acquisition of her private medical conversation constitutes Article III injury.

### C. Traceability and Redressability Are Satisfied

Defendant does not identify an independent traceability or redressability defect that warrants extended discussion. Assuming the acquisition alleged in the SAC occurred, the injury is plausibly traceable to Defendant. The SAC alleges that Defendant selected and deployed Abridge, integrated it into its clinical workflow, and controlled or administered clinician access. SAC ¶ 41. Defendant's own declarations and exhibits confirm that Defendant contracted with Abridge, deployed the platform to affiliated clinicians, maintained access information, and integrated Abridge into clinical documentation. Carkhuff Decl. ¶¶ 2–4; Jones Decl. ¶¶ 15–18.

The BAA confirms the contractual relationship under which Abridge could create, receive, maintain, or transmit PHI on Defendant's behalf. ECF No. 35-3 at 2. The Defendant/Abridge case study states that, following a pilot, Defendant expanded Abridge to more than 1,000 clinicians within three months. ECF No. 35-8 at 2.

Again, none of that proves Plaintiff-specific activation. That is the disputed fact addressed above. But if activation occurred as alleged, Defendant cannot plausibly contend that the resulting acquisition is unconnected to its deployment and integration of the platform.

Redressability is likewise straightforward for the completed injury. Plaintiff seeks statutory and compensatory relief for the alleged acquisition. A monetary judgment for a completed privacy invasion is paradigmatic redress. Any separate requirements for prospective injunctive relief do not eliminate standing to seek damages for an alleged completed injury.

### D. Any Curable Deficiency Warrants Leave to Amend

If the Court identifies any deficiency in Plaintiff's jurisdictional allegations, dismissal with prejudice would be unwarranted. Rule 15 requires that leave to amend be freely given, and Defendant cannot establish that amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Any perceived deficiency concerning Plaintiff-specific acquisition, consent, economic injury, or the circumstances of Abridge's alleged use is factual and potentially curable through additional allegations consistent with the SAC. Accordingly, if the Court finds Plaintiff's jurisdictional allegations insufficient, Plaintiff respectfully requests leave to amend.

## IV. CONCLUSION

Defendant's motion should be denied. Its contention that Abridge did not acquire Plaintiff's physician-patient communication is intertwined with the merits of Plaintiff's claims and therefore is not properly resolved through ordinary Fed. R. Civ. P 12(b)(1) factfinding. *Bowen*, 118 F.4th at 1143–46.

At minimum, the Court should defer resolution and permit targeted discovery concerning the Plaintiff-specific Abridge records necessary to test Defendant's assertion. *Laub* 342 F.3d at 1093. If the Court applies the Rule 56-type framework required by *Bowen*, Plaintiff must be afforded a fair opportunity to obtain that evidence.

Defendant's Article III argument likewise fails. Plaintiff alleges that an additional electronic system acquired the live contents of a private physician-patient conversation without prior notice or consent to that acquisition. If proved, that completed privacy invasion is sufficiently concrete for Article III purposes. *TransUnion,* 594 U.S. at 424–25; *Campbell,* 951 F.3d at 1117–20.

Accordingly, the Court should deny Defendant's Rule 12(b)(1) motion or, alternatively, defer determination pending narrowly tailored jurisdictional discovery consistent with *Bowen*.

If the Court nevertheless identifies any deficiency in Plaintiff's jurisdictional allegations, Plaintiff respectfully requests leave to amend to cure that deficiency. See *Foman*, 371 U.S. at 182; *Eminence Cap.*, 316 F.3d at 1051–52.

Dated: September 2, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio
By: ______________________________
James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff