**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA WASHINGTON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUTTER HEALTH, a California nonprofit public benefit corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 4:26-cv-03012-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date: October 8, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. Plaintiff Plausibly Alleges Intrusion Upon Seclusion Because Consent to Medical Treatment and Documentation Does Not Eliminate Privacy in the Live Conversation ........ 3

1. A patient may expect charting while retaining privacy against an undisclosed system's acquisition of the live conversation. ........ 3

2. The SAC plausibly alleges an intentional intrusion. ........ 5

3. Recording an entire medical consultation without meaningful prior notice may be highly offensive. ........ 5

B. Plaintiff Plausibly Alleges a Violation of CIPA Section 632 Because Medical Documentation Is Not the Same as Recording a Confidential Conversation ........ 6

1. Expected charting does not destroy confidentiality of the live conversation. ........ 6

2. The SAC does not establish consent as a matter of law. ........ 7

3. CMIA and HIPAA do not displace section 632, and lenity does not justify rewriting it. ........ 9

C. The SAC Plausibly Alleges CMIA Violations Not Conclusively Resolved by Defendant's Medical-Data-Processing and HIPAA Defenses ........ 10

1. Section 56.10(c)(3) does not conclusively resolve the pleaded scope of Abridge's activity ........ 10

2. HIPAA business-associate status is not blanket immunity under CMIA or other California law. ........ 11

3. Plaintiff identifies her medical information with sufficient specificity. ........ 12

D. The Federal Wiretap Act Claim Survives Only to the Extent Permitted by the Statute's One-Party-Consent Framework ........ 12

E. Plaintiff Adequately Pleads UCL Standing and Claims Under the Unlawful, Unfair, and Fraudulent Prongs ........ 14

1. Plaintiff alleges lost money or property caused by the challenged practice. ........ 14

2. The unlawful prong survives, and no broad healthcare safe harbor

applies. 14

3. The alleged practice is plausibly unfair. 15

4. The fraudulent-omission theory satisfies Rule 9(b). 15

F. Defendant Cannot Use Judicial Notice or Incorporation by Reference to Convert Its Interpretation of the NPP Into an Undisputed Fact 16

G. Leave to Amend Is Required if the Court Finds Any Curable Deficiency 17

IV. CONCLUSION 18

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Chevron Corp.,* 656 F.3d 925, 933 (9th Cir. 2011) .......... 15

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) .......... 2

*B.K. v. Eisenhower Medical Center,* 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) .......... 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 570 (2007) .......... 2

*Brown v. Mortensen,* 51 Cal. 4th 1052, 1061–62 (2011) .......... 10

*Capito v. San Jose Healthcare System, LP,* 17 Cal. 5th 273, 287–93 (2024) .......... 15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999) .......... 14

*Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1128–29 (S.D. Cal. 2023) .......... 12

*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1164 (9th Cir. 2012) .......... 15

*Desnick v. American Broadcasting Cos.,* 44 F.3d 1345, 1352–53 (7th Cir. 1995) .......... 5

*Doe v. Eating Recovery Center LLC,* 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) .......... 9

*Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-05873-HSG, 2024 WL 1589982, at 18 (N.D. Cal. Apr. 11, 2024) .......... 12

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051–52 (9th Cir. 2003) (per curiam) ... 17

*Emmerick v. Ridgecrest Regional Hospital,* No. 1:17-cv-00758-AWI-JLT, 2018 WL 784302, at *4 (E.D. Cal. Feb. 8, 2018) .......... 11

*Flanagan v. Flanagan,* 27 Cal. 4th 766, 776–77 (2002) .......... 1, 4, 6, 13

*Foman v. Davis,* 371 U.S. 178, 182 (1962) .......... 17

*Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 835–36 (N.D. Cal. 2021) .......... 5

*Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1089–90 (N.D. Cal. 2022) .......... 4

*Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286–87 (2009) .......... 3, 5

*Hill v. National Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 36–37 (1994) .......... 4

*In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 601–08 (9th Cir. 2020) .......... 3, 6

*In re Google, Inc. Privacy Policy Litigation,* 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) .......... 4

*In re iPhone Application Litigation,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) .......... 4

*In re Tobacco II Cases*, 46 Cal. 4th 298, 326–28 (2009) .......... 16

*J.M. v. Illuminate Education, Inc.*, 19 Cal. 5th 705, 722–25 (2026) .......... 11

*Javier v. Assurance IQ, LLC,* 56 F.4th 1173, 1177–78 (9th Cir. 2022) .......... 8

*Kearney v. Salomon Smith Barney, Inc.,* 39 Cal. 4th 95, 118 (2006) .......... 7

*Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125–27 (9th Cir. 2009) .......... 15

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998–1003 (9th Cir. 2018) .......... 2, 16

*Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322–25 (2011) .......... 14

*Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001) .......... 2, 16

*Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) .......... 4

*Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989) .......... 16

*Nienaber v. Overlake Hospital Medical Center,* 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) . 5

*Oddei v. Optum, Inc.,* No. 2:20-cv-07549-MCS-ADS, 2021 WL 6333467, at *3 (C.D. Cal. Dec. 3, 2021), aff'd, No. 22-55090, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) .......... 11

*People v. Avery,* 27 Cal. 4th 49, 58 (2002) .......... 9

*Perez v. Romantix Online, Inc.*, No. 25-cv-02465-NW, 2026 WL 1802589, at 1–2 (N.D. Cal. June 23, 2026) .......... 8

*Peterson v. Cellco Partnership,* 164 Cal. App. 4th 1583, 1591 (2008) .......... 14

*Planned Parenthood Federation of America, Inc. v. Newman,* 51 F.4th 1125, 1135–36 (9th Cir. 2022) .......... 13

*Ribas v. Clark,* 38 Cal. 3d 355, 359–61 (1985) .......... 7

*Rojas v. HSBC Card Services Inc.,* 93 Cal. App. 5th 860, 877–82 (2023) .......... 8

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 8:24-cv-01344-JVS-JDE, 2025 WL 1141168, at 6–10 (C.D. Cal. Feb. 27, 2025) .......... 5

*Sanchez-Scott v. Alza Pharmaceuticals,* 86 Cal. App. 4th 365, 374–77 (2001) .......... 3

*Sanders v. Am. Broad. Cos.,* 20 Cal. 4th 907, 923 (1999) .......... 1, 3, 7

*Shulman v. Group W Prods., Inc.,* 18 Cal. 4th 200, 232–37 (1998) .......... passim

*Sussman v. American Broadcasting Cos.,* 186 F.3d 1200, 1202–03 (9th Cir. 1999) .......... 13

*Whalen v. Roe,* 429 U.S. 589, 602 (1977) .......... 4

*Williams v. What If Holdings, LLC*, No. 22-cv-03780-WHO, 2022 WL 17869275, at 3–5 (N.D. Cal. Dec. 22, 2022) .......... 5

**Statutes**

18 U.S.C. § 2511(2)(d) ... 2
45 C.F.R. § 160.203(b) ... 9
45 C.F.R. § 164.520(c)(2)(ii) ... 9, 17
45 C.F.R. §§ 164.502(e), 164.504(e) ... 9, 11
Cal. Bus. & Prof. Code § 17204 ... 14
Cal. Civ. Code § 56.10(a)–(c) ... 10
Cal. Civ. Code §§ 56.10, 56.101 ... 15
Cal. Penal Code § 632(a) ... 6
Cal. Penal Code §§ 630, 632 ... 15
Fed. R. Civ. P. 15(a)(2) ... 17

## I. INTRODUCTION

Defendant's Motion answers a case Plaintiff did not plead. This case does not challenge physicians' creation of medical records, electronic health records, ordinary transcription, the use of technology in medicine, or artificial intelligence as such. Plaintiff expected her physician to hear what she said and to document medically relevant information. SAC ¶¶ 6–7, 13, 35, 77. What she alleges she did not know or agree to is materially different: that an ambient-AI system operated through a separate technology provider would be affirmatively activated to acquire the contents of her live physician-patient conversation, transmit the audio to Abridge-associated systems outside the immediate encounter, process the communication, and generate clinical documentation from that captured conversation. SAC ¶¶ 6–8, 12–16, 32–47.

Defendant collapses those distinct acts into "transcription." MTD at 1–4, 8–21. Controlling California law does not. *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776–77 (2002) holds that confidentiality under Penal Code section 632 turns on whether the communication itself was reasonably expected not to be overheard or recorded—not whether its subject matter might later be repeated. *Shulman v. Group W Prods., Inc.,* 18 Cal. 4th 200, 232–37 (1998) recognizes a "traditional and legally well-established expectation of privacy" in patient-treatment communications and treats electronic acquisition as materially different from what healthcare personnel legitimately present can naturally hear. And *Sanders v. Am. Broad. Cos.,* 20 Cal. 4th 907, 923 (1999) makes the identity of the intruder and means of intrusion central to the privacy inquiry.

Those principles fit the SAC. Plaintiff alleges that she observed microphone-enabled equipment and understood it to be an internal means of transcription or note-taking. SAC ¶¶ 6–7, 34–37. She alleges that no one told her before acquisition began that Abridge was involved, that a live audio stream would be transmitted through Abridge-associated systems, or that a separate technology provider would acquire and process the conversation; nor did anyone ask her to agree to that conduct. SAC ¶¶ 7, 35–37, 46. At Rule 12, Defendant cannot replace those allegations with its contrary assertion that Plaintiff "knew she was being recorded." MTD at 10.

Nor does Defendant's Notice of Privacy Practices establish consent as a matter of law. The NPP says that business associates may perform services such as "transcribing your medical record"

and that Defendant may disclose "appropriate portions" of health information for contracted work. NPP at 7. It does not name Abridge or state that Defendant will record a patient's live voice, capture an entire physician-patient conversation, or transmit the audio to an ambient-AI platform. Under *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998–1003 (9th Cir. 2018), the Court may consider an incorporated document's actual words; it may not adopt Defendant's disputed inference from them to negate well-pleaded allegations.

The claims do not stand on equal footing. The section 632 and intrusion claims are strongest because controlling California decisions directly protect treatment communications and distinguish recording a communication from later use of its informational content. CMIA presents a closer statutory question because Civil Code section 56.10(c)(3) authorizes disclosure for "medical data processing." But the SAC does not conclusively establish that every alleged aspect of Abridge's acquisition, retention, quality-assurance, troubleshooting, system-operation, or model-related processing fell within that exception. The Federal Wiretap Act is narrower still because 18 U.S.C. § 2511(2)(d) permits one-party consent. Plaintiff addresses that limitation candidly without allowing federal law's different rule to dilute her California claims.

The Motion should be denied. If the Court finds any discrete claim insufficient, dismissal with prejudice is unwarranted and leave to amend should be granted.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the complaint's legal sufficiency, not the truth of competing factual accounts. The Court accepts well-pleaded allegations as true, draws reasonable inferences in Plaintiff's favor, and asks only whether the allegations plausibly state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 570 (2007). The Court may consider properly incorporated or judicially noticeable material, but may not use it to resolve disputed facts or draw defendant-favorable inferences against the complaint. *Khoja,* 899 F.3d at 998–1003; *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001).

## III. ARGUMENT

### A. Plaintiff Plausibly Alleges Intrusion Upon Seclusion Because Consent to Medical Treatment and Documentation Does Not Eliminate Privacy in the Live Conversation

California intrusion upon seclusion requires an intentional intrusion into a place, conversation, matter, or private affair in which the plaintiff has a reasonable expectation of privacy, in a manner highly offensive to a reasonable person. *Shulman,* 18 Cal. 4th at 231; *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286–87 (2009). The SAC plausibly alleges each element.

#### 1. A patient may expect charting while retaining privacy against an undisclosed system's acquisition of the live conversation.

*Shulman* is controlling and closely analogous. The California Supreme Court held that a patient receiving treatment possessed a "traditional and legally well-established expectation of privacy in communications between patient and medical care providers." *Shulman,* 18 Cal. 4th at 232. It further recognized that electronic amplification and recording can invade an interest not extinguished merely because healthcare personnel properly present can naturally hear the patient. *Id. at 233–35.* Thus, a physician's entitlement to hear Plaintiff did not necessarily entitle another system to acquire an electronic copy of the exchange.

*Sanders* independently rejects Defendant's all-or-nothing view. Privacy depends "not only on who might have been able to observe the subject interaction, but on the identity of the claimed intruder and the means of intrusion." *Sanders,* 20 Cal. 4th at 923. Exposure to one legitimate recipient therefore does not surrender privacy against every other actor or means of acquisition.

The healthcare setting reinforces that principle. In *Sanchez-Scott v. Alza Pharmaceuticals,* 86 Cal. App. 4th 365, 374–77 (2001), a patient's consent to treatment did not necessarily authorize an undisclosed pharmaceutical representative's presence during an intimate examination. The invited healthcare professional's access did not eliminate privacy against a differently situated third party. Here, Plaintiff alleges that she intended to communicate with her provider, not that she knowingly invited a separately operated ambient-AI platform to acquire the live exchange.

The Ninth Circuit's modern privacy jurisprudence points the same way. *In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 601–08 (9th Cir. 2020) reversed dismissal where plaintiffs alleged undisclosed technological collection beyond the transactions they knowingly

undertook. The court emphasized context, sensitivity, volume, means of collection, and the parties' representations when assessing privacy expectations and offensiveness. *Id. at 603–08.* The structural analogy is direct: Plaintiff alleges that she intentionally communicated with her provider while an undisclosed technological channel contemporaneously acquired the communication for another system.

Defendant's contrary premise mistakes information for acquisition. A patient may expect a physician to remember symptoms, type a diagnosis into an EHR, and create a treatment note, yet not expect an additional system to record the entire underlying conversation. *Flanagan* confirms the distinction: the possibility that information may later be repeated does not answer whether the communication itself was confidential against contemporaneous overhearing or recording. *Flanagan,* 27 Cal. 4th at 776–77.

Neither *Whalen v. Roe,* 429 U.S. 589, 602 (1977) nor *Hill v. National Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 36–37 (1994) compels a different result. *Whalen* observed that disclosure of medical information to providers, insurers, and public agencies is often essential to modern medicine. Plaintiff does not dispute that proposition. *Whalen* did not hold that necessary downstream disclosure equals consent to recording the source conversation. And *Hill* makes privacy contextual; it does not establish that expected recordkeeping extinguishes privacy in every means of acquiring information. The pleaded context here is a confidential medical consultation, sensitive oral content, an allegedly undisclosed additional processor, and a materially narrower explanation of what the microphone-enabled device was doing.

Defendant's digital-data authorities are materially different. *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1089–90 (N.D. Cal. 2022) involved routing information necessarily disclosed for electronic communications to function. *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), *In re Google, Inc. Privacy Policy Litigation,* 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014), and *In re iPhone Application Litigation,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) concerned commercial browsing, platform, or device data—not a live medical dialogue. Those district decisions cannot override *Shulman*, *Sanders*, or the later published Ninth Circuit decision in *In re Facebook*.

Nor do the session-replay cases establish that every vendor is legally identical to the known participant. *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 835–36 (N.D. Cal. 2021) and *Williams v. What If Holdings, LLC*, No. 22-cv-03780-WHO, 2022 WL 17869275, at 3–5 (N.D. Cal. Dec. 22, 2022) involved commercial website technology characterized as an operator's tool. Whether Abridge's alleged external infrastructure, acquisition, processing, retention, troubleshooting, quality assurance, and model-related functions made it merely the equivalent of a physician's notepad is a disputed characterization, not a Rule 12 fact. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 8:24-cv-01344-JVS-JDE, 2025 WL 1141168, at 6–10 (C.D. Cal. Feb. 27, 2025) and *Nienaber v. Overlake Hospital Medical Center,* 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) are likewise nonbinding digital-technology decisions. And *Desnick v. American Broadcasting Cos.,* 44 F.3d 1345, 1352–53 (7th Cir. 1995) involved testers posing as patients and recording their own commercial interactions, not an actual patient's treatment disclosures acquired by an undisclosed outside system.

**2. The SAC plausibly alleges an intentional intrusion.**

Defendant argues that because it allegedly deployed Abridge for documentation, it did not intend to intrude. MTD at 11. That confuses intent to commit the act with intent to violate the law. The SAC alleges that Defendant selected and deployed Abridge, authorized clinicians to use it, and integrated it into the clinical workflow; that a user had to select the patient encounter and affirmatively activate recording; and that activation caused Abridge to acquire Plaintiff's live communication and transmit it into Abridge-associated systems. SAC ¶¶ 2–4, 17, 41, 43–47, 78–79. Those allegations describe deliberate sensory acquisition, not an accidental data spill. Plaintiff need not plead that Defendant subjectively believed its conduct unlawful.

**3. Recording an entire medical consultation without meaningful prior notice may be highly offensive.**

Offensiveness is contextual and considers the degree and setting of the intrusion, the intruder's motives, and the privacy expectations involved. *Shulman,* 18 Cal. 4th at 236–37; *Hernandez,* 47 Cal. 4th at 287. The SAC alleges a private treatment setting, highly sensitive health information, capture of the live conversation rather than selected chart facts, continuous electronic

acquisition, and transmission to an allegedly undisclosed external technology platform. SAC ¶¶ 12–16, 34–47, 76–82, 114–20.

Defendant's asserted clinical purpose may be relevant to the ultimate balance, but it does not erase the alleged means, scope, or absence of notice. Plaintiff does not allege that efficient documentation is offensive. She alleges that Defendant obtained that benefit by allowing an undisclosed system to acquire an intimate conversation. *Shulman* allowed intrusion liability to turn on a factfinder's assessment of electronic acquisition of treatment communications despite the legitimate presence of medical personnel. *Shulman,* 18 Cal. 4th at 233–37. *In re Facebook* likewise refused to treat contextual privacy and offensiveness questions as categorically defeated on the pleadings. *In re Facebook,* 956 F.3d at 603–08. Whether the particular means, scope, recipient, notice, and sensitivity alleged here would be highly offensive is not resolved by relabeling the conduct "routine transcription."

**B. Plaintiff Plausibly Alleges a Violation of CIPA Section 632 Because Medical Documentation Is Not the Same as Recording a Confidential Conversation**

Section 632 applies when a person "intentionally and without the consent of all parties to a confidential communication" uses an electronic amplifying or recording device to eavesdrop upon or record it. Cal. Penal Code § 632(a). A communication is confidential when the circumstances reasonably indicate that a party desires it confined to the participants, excluding circumstances in which the parties reasonably expect it may be overheard or recorded. *Id.* § 632(c). The SAC alleges intentional electronic recording of Plaintiff's confidential physician-patient communication through an affirmatively activated system without her prior consent. SAC ¶¶ 75–84.

**1. Expected charting does not destroy confidentiality of the live conversation.**

*Flanagan* forecloses Defendant's central theory. The California Supreme Court rejected the view that a communication ceases to be confidential merely because a participant might later repeat or disclose its subject matter. *Flanagan,* 27 Cal. 4th at 776–77. The inquiry instead asks whether the parties reasonably expected that the communication itself would not be overheard or recorded. *Id.*

Plaintiff may therefore expect that symptoms, medications, diagnoses, and treatment will appear in a medical record while also expecting that no additional system is recording the full oral exchange.

That distinction does not pit handwriting against technology. It distinguishes a provider's receipt and later documentation of medically relevant information from a device's contemporaneous acquisition of the communication itself—the precise act section 632 regulates. *Ribas v. Clark,* 38 Cal. 3d 355, 359–61 (1985) reinforces the point: section 632 protected a speaker from an undisclosed additional listener even though the intended participant voluntarily enabled that listening. A known participant's presence does not make every undisclosed electronic listener part of the confidential circle.

*Shulman* and *Sanders* confirm the reasonableness of Plaintiff's alleged expectation. Treatment communications carry a well-established privacy interest, and the additional acquirer's identity and means of access matter. *Shulman,* 18 Cal. 4th at 232–35; *Sanders,* 20 Cal. 4th at 923. Defendant's reliance on routine medical sharing and *Whalen* again addresses later use of information, not whether the underlying oral exchange may be recorded without all parties' consent.

**2. The SAC does not establish consent as a matter of law.**

Section 632 requires consent of all parties. Plaintiff does not contend that consent must always be a separately signed recording release. Consent may be implied from sufficiently clear circumstances, but its existence and scope depend on what the person knew before recording and what conduct she accepted.

*Kearney v. Salomon Smith Barney, Inc.,* 39 Cal. 4th 95, 118 (2006) is instructive. In explaining how businesses could comply with California recording law, the California Supreme Court identified adequate notice at the outset that a call is being recorded, after which the other participant may decide whether to continue. Plaintiff alleges no comparable statement before Abridge acquisition. She alleges that she saw microphone-enabled equipment described as being used for "transcription or for taking notes," understood that explanation as an internal documentation method, and was not told that Abridge would receive and process the live

conversation. SAC ¶¶ 6–7, 34–37, 46, 80–82. Those allegations foreclose Defendant's contrary inference at Rule 12.

*Rojas v. HSBC Card Services Inc.,* 93 Cal. App. 5th 860, 877–82 (2023) confirms that consent may be implied but illustrates why dismissal is improper here. *Rojas* followed trial on evidence including an agreement expressly authorizing listening and recording, repeated call-recording warnings, and evidence of the plaintiffs' actual familiarity with the practice. The phrase "transcribing your medical record" and Plaintiff's alleged understanding of a note-taking device do not present that developed and specific record.

Defendant's online-consent authorities are similarly fact dependent. In *Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018), the challenged data practice was addressed by terms governing the service. *Perez v. Romantix Online, Inc.*, No. 25-cv-02465-NW, 2026 WL 1802589, at 1–2 (N.D. Cal. June 23, 2026) involved a cookie notice stating that use constituted consent under an identified policy describing tracking. Neither establishes that a general healthcare privacy notice or the word "transcription" necessarily discloses live ambient recording.

Timing also matters. *Javier v. Assurance IQ, LLC,* 56 F.4th 1173, 1177–78 (9th Cir. 2022) held in the section 631 context that consent obtained after interception begins does not retroactively authorize earlier collection. The same temporal distinction follows from section 632's prohibition on recording "without the consent of all parties." Plaintiff alleges that meaningful notice and agreement did not precede Abridge's acquisition. SAC ¶¶ 7, 24–28, 46, 80–82.

The NPP does not compel a different result. Its Business Associates section says that contracted services include "transcribing your medical record" and that Defendant may disclose "appropriate portions" of health information to perform the contracted work. NPP at 7. That language does not expressly state that Defendant will record the patient's live voice, capture the full dialogue, transmit audio into an ambient-AI system, or identify Abridge. An acknowledgment of receipt likewise establishes receipt, not necessarily agreement to an unstated recording method. See

45 C.F.R. § 164.520(c)(2)(ii). At minimum, the NPP's scope and Plaintiff's reasonable understanding present disputed questions that cannot be resolved against her on the pleadings.

**3. CMIA and HIPAA do not displace section 632, and lenity does not justify rewriting it.**

Defendant argues that applying section 632 would conflict with CMIA and HIPAA because those regimes permit healthcare providers to use business associates. MTD at 19–21. Permission under one regulatory scheme is not immunity from another. HIPAA permits covered entities to use business associates subject to specified conditions and contractual safeguards. 45 C.F.R. §§ 164.502(e), 164.504(e). It does not require recording patient conversations without consent. Defendant can comply with both regimes by using permissible vendors while obtaining any recording consent California law independently requires.

HIPAA's preemption framework also preserves more protective state privacy rules. 45 C.F.R. § 160.203(b). Defendant's NPP itself states that when state law is more protective, Defendant follows the more stringent law. NPP at 2. CMIA likewise creates exceptions to its authorization requirement, including for medical data processing, but nothing in section 56.10(c)(3) purports to repeal an all-party rule governing the antecedent act of recording a confidential communication. The statutes address different conduct and can coexist.

Lenity does not change the analysis. It is a last-resort doctrine used only when ordinary interpretive tools leave competing reasonable readings in equipoise. *People v. Avery,* 27 Cal. 4th 49, 58 (2002). This is not an effort to fit a pixel, cookie, or URL into a decades-old statute. Section 632 expressly covers use of an "electronic amplifying or recording device" to record a confidential communication without all parties' consent, and the SAC alleges microphone-enabled recording of an oral conversation. Defendant's reliance on *Doe v. Eating Recovery Center LLC,* 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) is misplaced because that decision addressed section 631's application to Meta Pixel technology at summary judgment. It did not construe section 632's definition of "confidential communication" or displace *Flanagan* and *Kearney*.

### C. The SAC Plausibly Alleges CMIA Violations Not Conclusively Resolved by Defendant's Medical-Data-Processing and HIPAA Defenses

CMIA generally prohibits a healthcare provider from disclosing a patient's medical information without authorization, subject to statutory exceptions. Cal. Civ. Code § 56.10(a)–(c). "Medical information" includes individually identifiable electronic or physical information concerning a patient's medical history, condition, or treatment. *Id.* § 56.05(j). CMIA also requires covered entities that create, maintain, preserve, store, abandon, destroy, or dispose of medical information to preserve its confidentiality. *Id.* § 56.101(a). The statute's exceptions are real and must be applied according to their text, not expanded into categorical immunity. See *Brown v. Mortensen,* 51 Cal. 4th 1052, 1061–62 (2011).

#### 1. Section 56.10(c)(3) does not conclusively resolve the pleaded scope of Abridge's activity.

Section 56.10(c)(3) permits disclosure to an entity providing "billing, claims management, medical data processing, or other administrative services" to healthcare providers, while restricting further disclosure in violation of CMIA. Defendant therefore has a substantial defense if Abridge did nothing more than process medical information for clinical documentation within that exception. Plaintiff does not argue that "medical data processing" categorically applies only to records already stored in an EHR.

To the extent Defendant invokes materials submitted with its concurrently filed Rule 12(b)(1) motion, those materials cannot be used to resolve disputed merits facts on this Rule 12(b)(6) motion. Even if considered, they do not establish that every alleged model-related use was authorized. Abridge's Privacy Policy expressly states that its general provisions do not apply to healthcare "Customer Data"; instead, Customer Data—which may include PHI—is processed on behalf of Abridge's customers and governed by the applicable customer agreements and BAAs. ECF No. 35-1 at 2–3. That data, according to Abridge, is used to create modeling for its AI to "streamline services" for all of its customers. ECF No. 35-1 at p. 6. Thus, even if Abridge is properly classified as a contractor under the CMIA, its use of information beyond diagnosis, treatment, or billing goes beyond what is allowable under 56.10(c).

Defendant's authorities concern narrower administrative functions or different pleadings. *Oddei v. Optum, Inc.,* No. 2:20-cv-07549-MCS-ADS, 2021 WL 6333467, at *3 (C.D. Cal. Dec. 3, 2021), aff'd, No. 22-55090, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) involved records-management allegations and an unpublished affirmance. *Emmerick v. Ridgecrest Regional Hospital,* No. 1:17-cv-00758-AWI-JLT, 2018 WL 784302, at *4 (E.D. Cal. Feb. 8, 2018) involved a billing vendor. Those decisions do not establish a published rule that an ambient-AI vendor's entire workflow, including alleged secondary or model-related processing, falls within section 56.10(c)(3) as a matter of law.

Nor does CMIA's authorization of legitimate processing defeat the separate section 56.101 theory. *J.M. v. Illuminate Education, Inc*., 19 Cal. 5th 705, 722–25 (2026) held that confidentiality under section 56.101 may be breached when medical information is exposed to a significant risk of unauthorized access or use; actual human viewing is not invariably required. *J.M.* did not decide section 56.10(c)(3), and Plaintiff does not invoke it for that purpose. It confirms only that confidentiality is not reduced to whether an Abridge employee personally listened to the audio.

**2. HIPAA business-associate status is not blanket immunity under CMIA or other California law.**

Defendant separately asserts that Abridge is a HIPAA business associate. MTD at 14. To the extent that assertion depends on a declaration and business-associate agreement submitted with Defendant's separate Rule 12(b)(1) motion, those materials are not established merits facts under the present Rule 12(b)(6) motion or RJN.

Even assuming Abridge's business-associate status, Defendant's legal conclusion does not follow. HIPAA's business-associate provisions require contractual assurances and regulate the purposes for which protected health information may be used or disclosed. 45 C.F.R. §§ 164.502(e), 164.504(e). They do not declare that every disclosure to a business associate is lawful under every independent state statute. And HIPAA preserves more stringent state privacy requirements. *Id.* § 160.203(b).

*Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-05873-HSG, 2024 WL 1589982, at 18 (N.D. Cal. Apr. 11, 2024) does not establish the categorical proposition that business-associate status defeats CMIA. It arose from website-tracking allegations and turned on the particular data, recipient, and healthcare-operation allegations before the court. Here, the SAC alleges acquisition of Plaintiff's own live treatment conversation and potential handling beyond the core documentation function. Those allegations cannot be resolved by affixing a regulatory label to Abridge.

**3. Plaintiff identifies her medical information with sufficient specificity.**

Defendant argues that Plaintiff does not identify what medical information was disclosed. MTD at 14–15. The SAC alleges that an identified patient encounter was selected for Abridge activation and that the system captured Plaintiff's own treatment conversation concerning her symptoms, medical history, conditions, diagnoses, medications, treatment, and care. SAC ¶¶ 8–9, 38, 44–47, 89–93. It further alleges that the audio and transcript were linked to Plaintiff as the selected patient for whom the draft clinical note was generated. SAC ¶¶ 38, 45, 90. Those allegations identify both the content and the person.

That is materially more concrete than the web- or portal-tracking complaints discussed in *B.K. v. Eisenhower Medical Center,* 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) and *Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1128–29 (S.D. Cal. 2023), where courts required plaintiffs to connect their own identifiable medical information to the challenged transmission. Here the alleged technological object is Plaintiff's selected treatment conversation itself. The precise words on the recording, activation timestamp, transcript, and backend routing data are alleged to reside in Defendant's or Abridge's control. SAC ¶ 47. Rule 8 does not require Plaintiff to quote a recording she alleges Defendant possesses before discovery.

**D. The Federal Wiretap Act Claim Survives Only to the Extent Permitted by the Statute's One-Party-Consent Framework**

The Federal Wiretap Act differs materially from section 632. Section 2511(2)(d) permits a private person to intercept a communication where that person is a party or one party has given prior

consent, unless the interception is undertaken for a criminal or tortious purpose. 18 U.S.C. § 2511(2)(d). That one-party rule imposes a serious limitation on Plaintiff's federal theory.

In *Deteresa v. American Broadcasting Cos.,* 121 F.3d 460, 467 (9th Cir. 1997), the Ninth Circuit applied section 2511(2)(d) to a participant's covert recording. *Sussman v. American Broadcasting Cos.,* 186 F.3d 1200, 1202–03 (9th Cir. 1999) likewise enforced one-party consent and held that the criminal-or-tortious-purpose proviso requires an improper purpose independent of the interception itself. *Planned Parenthood Federation of America, Inc. v. Newman,* 51 F.4th 1125, 1135–36 (9th Cir. 2022) reinforces that limitation.

Plaintiff therefore does not contend that Abridge's nonparty status alone defeats section 2511(2)(d), or that an alleged CIPA violation by itself triggers the tortious-purpose proviso. The SAC's allegation that a Defendant provider affirmatively activated Abridge gives Defendant a substantial one-party-consent defense. SAC ¶¶ 44–47, 78. But the SAC also alleges that the precise timing and technological scope of acquisition—including when it began and ended and what was retained—are within Defendant's and Abridge's possession. SAC ¶ 47. To the extent the federal claim encompasses acquisition outside the timing or scope of any actual party consent, the pleadings do not conclusively establish the defense.

Sections 2511(1)(c) and (d) do not provide an automatic workaround because disclosure and use claims generally require an interception prohibited by federal law. Plaintiff accordingly asks the Court to preserve only the federal theory permitted by the statute and pleaded facts. If the Court concludes that the SAC itself establishes prior one-party consent to all federal interception alleged, dismissal should be confined to the ECPA claim and should not affect California's materially different all-party statute or common-law doctrine. *Deteresa* does not govern section 632; *Flanagan* later rejected the conception of California confidentiality on which *Deteresa* had relied when predicting state law. *Flanagan,* 27 Cal. 4th at 776–77.

### E. Plaintiff Adequately Pleads UCL Standing and Claims Under the Unlawful, Unfair, and Fraudulent Prongs

#### 1. Plaintiff alleges lost money or property caused by the challenged practice.

UCL standing requires injury in fact and lost money or property caused by the challenged practice. Cal. Bus. & Prof. Code § 17204. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322–25 (2011) recognizes economic injury where a plaintiff parts with money in a transaction she otherwise would not have entered or receives less than the transaction led her to expect; the loss need not meet a substantiality threshold.

Plaintiff alleges that she would not have sought treatment from Defendant, or would have demanded different conditions, had the alleged recording and third-party processing been disclosed. SAC ¶ 108. She also alleges that she paid fees for medical services furnished under those undisclosed conditions. SAC ¶¶ 109–10. Those allegations identify money paid to Defendant and transaction causation; they do not rest solely on the abstract proposition that privacy has value.

Defendant's cited economic-loss cases identify a legitimate proof issue but do not require dismissal. See, e.g., *Peterson v. Cellco Partnership,* 164 Cal. App. 4th 1583, 1591 (2008). Plaintiff alleges that the undisclosed privacy condition was material to whether she would transact with Defendant at all. Under *Kwikset*, parting with money in a transaction induced by the challenged omission is a recognized form of economic injury. Whether Plaintiff can ultimately prove a restitutionary allocation of medical fees is a later question.

#### 2. The unlawful prong survives, and no broad healthcare safe harbor applies.

The unlawful prong borrows violations of other law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999). Because Plaintiff plausibly alleges at least a section 632 violation and plausibly alleges CMIA violations, the derivative unlawful theory survives.

Defendant's broader safe-harbor argument misstates California law. A safe harbor exists only where another law actually bars the UCL action or clearly permits the specific challenged conduct; legislative silence is insufficient. *Id. at 182–83.* It is not enough that healthcare providers may generally create records, use transcription services, retain business associates, or make medical-

data-processing disclosures. Defendant must establish affirmative authorization for the conduct alleged here: contemporaneous acquisition of a live confidential conversation without the notice or consent required by independent California law.

*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1164 (9th Cir. 2012) is consistent with *Cel-Tech*: affirmative statutory authorization of the precise practice may preclude UCL liability. The premise is not established here. Nor does *Capito v. San Jose Healthcare System, LP,* 17 Cal. 5th 273, 287–93 (2024) create a healthcare-wide safe harbor. Capito evaluated a hospital's conduct against the specific disclosure regime governing an emergency-services fee and emphasized compliance with that regime. Plaintiff alleges noncompliance with the independent laws governing recording and medical confidentiality.

**3. The alleged practice is plausibly unfair.**

The SAC does not assert that AI is inherently unfair. It ties the challenged practice to California's explicit policies against nonconsensual electronic recording and unauthorized handling of medical information. See Cal. Penal Code §§ 630, 632; Cal. Civ. Code §§ 56.10, 56.101. It also alleges an injury patients cannot reasonably avoid if the critical recording mechanism is undisclosed before they reveal sensitive information necessary to obtain treatment. SAC ¶¶ 102–07.

Defendant invokes the benefits of reducing clinician documentation burdens. MTD at 12–13. Plaintiff does not dispute that ambient documentation may have utility. SAC ¶ 17. The pleaded unfairness lies in obtaining that benefit through the alleged undisclosed acquisition of the underlying conversation, not in efficient documentation itself. On a developed record, utility may be balanced against privacy injury; at Rule 12, Defendant cannot prevail by assuming away the alleged injury. Defendant's cited unfairness cases require a cognizable policy or appropriate consumer-injury analysis, not dismissal where the complaint expressly invokes the policies embodied in CIPA and CMIA. See *Alvarez v. Chevron Corp.,* 656 F.3d 925, 933 (9th Cir. 2011).

**4. The fraudulent-omission theory satisfies Rule 9(b).**

A UCL theory sounding in fraud must satisfy Rule 9(b). *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125–27 (9th Cir. 2009). The SAC does. It identifies the three encounter dates; the Defendant

clinical setting; the microphone-enabled equipment; the alleged Abridge activation; what Plaintiff was told or led to understand—"transcription or taking notes" as an internal documentation method; what allegedly was omitted—Abridge's identity, live audio capture, external transmission, and third-party processing; and why the omission mattered—Plaintiff would have declined treatment or required different conditions. SAC ¶¶ 5–9, 32–47, 80–82, 105–10.

Rule 9(b) does not require inaccessible backend facts to be pleaded with impossible specificity. Where relevant details are peculiarly within the opposing party's knowledge, the rule is applied with appropriate flexibility if the complaint states the factual basis for the allegations. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). Plaintiff explains why she believes Abridge was used and identifies activation logs, configuration records, transcripts, and processing data that would establish the precise backend facts. SAC ¶¶ 8, 47.

*In re Tobacco II Cases*, 46 Cal. 4th 298, 326–28 (2009*)* requires the named plaintiff to plead and prove actual reliance for a deception-based UCL claim. Plaintiff alleges that the omission changed her treatment decision. SAC ¶ 108. And the NPP cannot defeat reliance as a matter of law unless Defendant first establishes its disputed premise that "transcribing your medical record" unambiguously disclosed live ambient-AI recording—a premise *Khoja* does not permit the Court to assume.

### F. Defendant Cannot Use Judicial Notice or Incorporation by Reference to Convert Its Interpretation of the NPP Into an Undisputed Fact

Plaintiff does not dispute that the Court may consider the authentic NPP's existence and words to the extent permitted by incorporation by reference or Federal Rule of Evidence 201. But consideration of a document is not acceptance of the movant's interpretation. *Khoja* holds that judicial notice does not permit courts to notice reasonably disputed facts and that incorporation is not a tool for defendants to "short-circuit" a well-pleaded claim by drawing favorable inferences from extrinsic material. *Khoja,* 899 F.3d at 998–1003. *Lee* likewise permits notice of appropriate public records but not disputed facts asserted through them. *Lee,* 250 F.3d at 688–90.

The inferential gap is dispositive. The NPP says that business associates may provide services such as "transcribing your medical record" and may receive "appropriate portions" of health information to perform contracted work. NPP at 7. It does not state that Abridge will be present through an ambient recording system; that the patient's live voice or entire conversation will be recorded; that audio will be transmitted to Abridge-associated infrastructure; or that continued participation constitutes consent to recording. Whether a reasonable patient would understand the NPP's general language to disclose that alleged sequence is reasonably disputable and therefore cannot be resolved in Defendant's favor at Rule 12.

The exhibit also has a temporal limitation. It states an effective date of February 16, 2026, while the SAC alleges encounters on November 21, 2025, December 9, 2025, and March 2, 2026. NPP at 10; SAC ¶ 5. Exhibit A therefore postdates the first two encounters. Defendant asserts that an earlier notice contained identical language, MTD at 3 n.5, but that separate document was submitted with the Rule 12(b)(1) record, not this RJN. Even if the earlier wording were considered, the same interpretive problem remains: "transcribing your medical record" does not unambiguously disclose the alleged live ambient recording.

Nor does an acknowledgment of receipt resolve consent. HIPAA describes the document as an "acknowledgment of receipt of the notice." 45 C.F.R. § 164.520(c)(2)(ii). Receipt may establish delivery of the notice; it does not transform every practice Defendant later argues is encompassed by that notice into all-party consent under section 632.

### G. Leave to Amend Is Required if the Court Finds Any Curable Deficiency

If the Court finds any claim or allegation deficient, dismissal with prejudice is unwarranted. Rule 15 directs courts to "freely give leave" when justice requires. Fed. R. Civ. P. 15(a)(2). Leave may be denied for undue delay, bad faith, repeated failure to cure identified deficiencies, undue prejudice, or futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Ninth Circuit applies that policy with "extreme liberality," and prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051–52 (9th Cir. 2003) (per curiam).

Defendant identifies no prior order adjudicating the present Rule 12(b)(6) theories and directing Plaintiff to cure specified defects. Its argument is only that an earlier defense motion put her on notice of Defendant's positions. MTD at 25. That does not establish futility. The SAC added allegations concerning the recording mechanism, affirmative activation, timing, Plaintiff's understanding, the live communication, Abridge-associated systems, patient-specific medical information, secondary processing, and UCL transaction causation. SAC ¶¶ 1–16, 32–62, 76–110.

Any perceived deficiency concerning the scope of Abridge's processing, patient-specific medical information, the timing or scope of federal consent, UCL economic loss, or other factual matters is potentially curable through additional allegations consistent with the SAC. At minimum, any dismissal should be without prejudice and with leave to amend; the stronger section 632 and intrusion claims should not be dismissed merely because the Federal Wiretap Act applies a different one-party-consent rule.

## IV. CONCLUSION

Defendant's Motion depends on collapsing three distinct things into one: Plaintiff's medical disclosures to her physician, the physician's resulting documentation, and Abridge's alleged contemporaneous electronic acquisition of the underlying live conversation. Controlling California law recognizes those distinctions. *Flanagan* separates later disclosure of information from recording the communication itself. *Shulman* recognizes the established privacy of treatment communications and the distinct significance of electronic acquisition. *Sanders* makes the intruder's identity and means material. *Kearney* underscores the importance of notice before recording begins. *Ribas* protects against an undisclosed additional listener. *In re Facebook* rejects categorical dismissal of contextual privacy claims involving undisclosed technological collection. And *Khoja* prevents Defendant from turning an ambiguous general notice into dispositive consent through a defendant-favorable inference.

The NPP says "transcribing your medical record." The SAC alleges recording the live physician-patient conversation from which the record was generated. Whether the former disclosed and secured consent to the latter cannot be decided by rewriting the complaint at Rule 12.

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. To the extent the Court finds any discrete claim or allegation deficient, Plaintiff requests that dismissal be without prejudice and that she be granted leave to amend.

Dated: September 2, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio

By: ______________________________

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff