J. Jonathan Hawk (254350)
jhawk@mcdermottlaw.com
Ari R. Swazer (359884)
aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

David P. Saunders (Admitted *pro hac vice)*
dsaunders@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

Attorneys for Defendant SUTTER HEALTH

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHRISTINA WASHINGTON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

SUTTER HEALTH, a California nonprofit corporation; and DOES 1-100, inclusive,

Defendants.

CASE NO. 4:26-cv-03012

**DEFENDANT SUTTER HEALTH'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 32) PURSUANT TO FED. R. CIV. P. 12(B)(1)**

Date: October 8, 2026
Time: 2:00 p.m. PT
Courtroom: Courtroom 2, 4th Floor (Oakland)
Judge: Haywood S. Gilliam, Jr.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................1

II. ARGUMENT ..............................................................................................2

A. Plaintiff Has Failed to Carry Her Burden In Opposing Sutter's Factual Attack on Jurisdiction Under Rule 12(b)(1) ..............................................2

1. Sutter's Evidence Is a Proper Factual Challenge ...................................2

2. There Is No Genuine Factual Dispute to Justify Denying Sutter's Motion Because Plaintiff Has Failed to Carry Her Burden to Submit Evidence ..............................................................................5

3. *Bowen* Does Not Support Plaintiff's Arguments ...................................7

4. Plaintiff Is Not Entitled to Any Jurisdictional Discovery .......................8

B. Plaintiff Identifies No Injury Closely Analogous to Intrusion Upon Seclusion ............9

1. Plaintiff Misapprehends Sutter's Reliance on the NPP and BAA ..................11

2. Plaintiff's Authorities Are Inapposite, As They Involve Unauthorized Outsiders; Not Authorized Service Providers Performing the Function for Which the Information Was Disclosed ......................................12

3. *Otter* Is Inapposite and Cannot Rescue Plaintiff's Theory of Standing..........14

4. Plaintiff's Arguments Regarding Standing Under the UCL Also Fail ............15

C. Leave To Amend and File a Fourth Complaint Is Not Appropriate ...........................15

III. CONCLUSION ...........................................................................................15

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Alghusain v. Webb*, 2025 WL 1643791 (N.D. Cal. June 10, 2025) .......... 8

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) .......... 15

*Am. Fed. of Teachers v. DeVos*, 484 F. Supp. 3d 731 (N.D. Cal. 2020) .......... 8

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) .......... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 8

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .......... 8

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) .......... 1, 4, 6, 7

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) .......... 12

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 12

*De Sousa v. Director of USCIS*, 755 F. Supp. 3d 1266 (N.D. Cal. 2024) .......... 8

*Foster v. Essex Prop. Trust, Inc.*, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) .......... *passim*

*Gonzalez v. Chattem, Inc.*, 2023 WL 8101923 (N.D. Cal. Nov. 21, 2023) .......... *passim*

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) .......... 13

*LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022) .......... 9


McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Luna v. FAC US LLC*,
2020 WL 3605554 (N.D. Cal. July 2, 2020) .... 8

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .... 13

*In re Otter.ai Privacy Litigation*,
No. 25-cv-06911-EKL, Dkt. 68 .... 2, 14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .... *passim*

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) .... 13, 14

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) .... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 1, 2, 10, 11

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .... 3, 4, 5, 6

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .... 15

**Other Authorities**

Fed. R. Civ. P. 8 .... 8

Fed. R. Civ. P. 12(b)(1) .... *passim*

Fed. R. Civ. P. 12(b)(6) .... 11, 15

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## I. INTRODUCTION

When Sutter's previous Rule 12(b)(1) Motion challenging the original complaint showed with evidence that the Abridge platform was never used during Plaintiff Dennis Gueretta's visits to Sutter facilities (ECF 25 at 8), no opposition was filed; Gueretta simply dropped his claims. ECF 32. That is because all claims in this case are predicated on allegations that the Abridge platform was used to record clinical visits with Sutter personnel. Sutter's current Rule 12(b)(1) Motion ("Mot.") and evidence have now made a similar evidentiary showing as to Plaintiff Washington, who has taken a different approach: fighting against dismissal without offering any competing evidence at all. Plaintiff's efforts to salvage the claims in what is already her third complaint must fail for two main reasons, and with no leave to amend granted.

*First*, Plaintiff has failed to carry her evidentiary burden. Sutter's evidence is precisely the type relied on by courts in connection with Rule 12(b)(1) factual attacks (*see*, *e.g.*, *Gonzalez v. Chattem, Inc.*, 2023 WL 8101923, at *4 (N.D. Cal. Nov. 21, 2023)), and it shows that the Abridge platform could not have been used during Plaintiff's alleged visits with Sutter personnel because none of those personnel had access to the Abridge platform. Mot. at 12-13. Plaintiff was required in opposition to offer competing evidence to show that Abridge was used. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1139 (9th Cir. 2024). She, however, has responded with no evidence at all because she has none to address Sutter's showing. Instead, her Opposition relies on, among other things, incorrect legal arguments that claim Sutter's Motion improperly asks the Court to resolve a merits issue, and requests for jurisdictional discovery that have no articulable rationale. All of Plaintiff's efforts to survive the Motion are legally insufficient, and the Motion should be granted based on Plaintiff's failure to carry her burden. *See Foster v. Essex Prop. Trust, Inc.*, 2017 WL 264390, at *2 (N.D. Cal. Jan. 20, 2017).

*Second*, even assuming *arguendo* that Plaintiff has created a factual dispute regarding use of the Abridge platform (she has not), she still cannot establish a concrete injury under Article III. The Opposition repeatedly describes the alleged injury generally as the "unauthorized acquisition" of sensitive medical information. Opp. at 3, 10. But *TransUnion* and *Popa* require a more specific inquiry. Courts must compare the plaintiff's actual circumstances with the substantive features of the

asserted historical analogue. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 792-93 (9th Cir. 2025); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). According to Plaintiff's own allegations, which she reaffirms are true in the Opposition: she knowingly communicated with her healthcare provider; expected her visit would be documented; observed microphone-enabled equipment during her visit; was told it was for transcription; understood relevant information would become part of her medical record; and continued with the encounter. Mot. at 3. This is against the backdrop of medical patients more generally understanding that their visits will be notated through a variety of means, and Plaintiff on three separate occasions having acknowledged via the NPP that Sutter may use third party technology to transcribe her medical visits. *Id.* at 17. These circumstances and allegations do not, and cannot, resemble the type of secret surveillance, outsider eavesdropping, or surprise intrusion historically associated with intrusion upon seclusion.

Plaintiff attempts to sidestep this with strawman legal arguments. For example, Sutter's Rule 12(b)(1) Motion does *not* rely on the NPP or BAA to establish consent. For this Motion, those documents demonstrate that Plaintiff had no reasonable basis to expect only Sutter employees would participate in healthcare documentation activities. Likewise, the cases on which Plaintiff principally relies involve unauthorized outsiders obtaining information they allegedly had no right to access. Abridge, by contrast, functioned as Sutter's HIPAA-regulated business associate in providing clinical documentation services. Plaintiff's Opposition ultimately reduces to the legally unsupportable proposition that the use of statutorily authorized business associates without disclosure of the specific vendor's name is itself a concrete privacy injury. Not so. And while Plaintiff relies heavily on *In re Otter.ai Privacy Litigation*, that case involved allegations of unknown recording, retention, and commercial exploitation. Plaintiff here alleges the opposite.

For these reasons and others set forth in the Motion and herein, the Motion should be granted.

## II. <u>ARGUMENT</u>

### A. Plaintiff Has Failed to Carry Her Burden In Opposing Sutter's Factual Attack on Jurisdiction Under Rule 12(b)(1)

#### 1. Sutter's Evidence Is a Proper Factual Challenge

Plaintiff's claims in the SAC all stem from her contention that the Abridge platform was used



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

during her visits to Sutter facilities in November 2025, December 2025, and March 2026. Mot. at 10; SAC ¶¶ 5-7. Sutter's Rule 12(b)(1) Motion and its undisputed evidence show, however, that Plaintiff's alleged visits were telephonic and that the Abridge platform was *not* used. Mot. at 10. Plaintiff does not offer any competing evidence in opposition; nor could she.

Unable to contest the facts, Plaintiff argues that it is improper for the Court to consider *any* factual attack because the jurisdictional issues are intertwined with merits issues. Opp. at 5-6. That is not so. The Motion presents a classic jurisdictional inquiry, i.e., whether Plaintiff has Article III standing to maintain her claims when the undisputed evidence shows that the challenged conduct did *not* happen. Courts in this district, including this Court, have resolved similar jurisdictional inquiries time and again in connection with factual challenges brought under Rule 12(b)(1), and have dismissed claims for lack of Article III standing under circumstances that are analogous to those here.

For example, in *Foster*, plaintiffs alleged that their information was exposed in a data breach of the defendant's systems. 2017 WL 264390, at *1. The defendant raised a factual attack under Rule 12(b)(1), submitting declarations to show that the plaintiffs' information was never stored on the compromised system and therefore could not have been exposed in the breach. *Id*. at *2. As Judge Davila recognized in granting the defendant's Rule 12(b)(1) motion, the "declarations undermine[d] the allegations critical to Plaintiffs' Article III standing. Specifically, the descriptions of what information was collected from Plaintiffs, and what does and does not exist on [the defendant]'s internal computer system, contradict the factual claims that Essex induced Plaintiffs to provide it with credit card information and kept Plaintiffs' PII on the network that was ultimately breached." *Id.* at *3. That evidence rendered it "factually impossible" that the plaintiffs' information was exposed in the breach, and the plaintiffs' failure to challenge the defendant's showing with evidence of their own rendered it entirely appropriate for the court to dismiss their claims for lack of Article III standing under Rule 12(b)(1). *Id.* at *4 ("[A]ny factual overlap between Plaintiffs' standing and the merits is not an impediment to granting Essex's Rule 12(b)(1) motion").

The same held true in *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1196-97 (N.D. Cal. 2019). There, plaintiffs brought claims against then-Facebook, alleging it unlawfully scraped their call and text data "by exploiting a software vulnerability in the permission settings of older versions

of the Android OS" for the Facebook Lite app. *Id.* at 1192-93. Facebook moved to dismiss under Rule 12(b)(1) based on a declaration from "a Facebook software engineering manager, and accompanying exhibits to show Plaintiffs were not subjected to the practice they are challenging and therefore lack standing." *Id.* at 1195. Among other things, Facebook's evidence showed that "none of the Plaintiffs downloaded Facebook Lite app on their Android devices." *Id.* In granting that motion, Judge Seeborg observed that "Plaintiffs offer nothing in response to Facebook's evidence, such as declarations reaffirming they downloaded the app." *Id.* at 1196-97. It necessarily followed that "no Plaintiff has standing to bring suit regarding conduct associated with that specific app." *Id.* at 1195.

Similarly in *Gonzalez*, plaintiff alleged that he purchased products with misleading labels in 2019. 2023 WL 8101923, at *1. The defendant brought a factual attack under Rule 12(b)(1), showing with evidence that "the product [plaintiff] allegedly purchased in 2019 or 2020 was not shipped to any U.S. retailer until *2021,* such that [plaintiff] could 'not possibl[y]' have purchased the product at issue in the manner alleged in the FAC." *Id.* at *4 (emphasis in original). The plaintiff conceded that, but sought to stave off dismissal by relying on a declaration claiming he did ultimately purchase the product "in or after 2021." *Id.* That was found to be insufficient, and this Court granted the defendant's motion. The Court recognized that the plaintiff's evidence "puts forth *different* allegations … [that] do[] not effectively rebut "Defendant's uncontested factual attack on the allegation contained in the FAC claiming that [plaintiff] purchased the challenged product at a CVS in 'late 2019 and around the middle of 2020.'" *Id.* The "defendant's jurisdictional challenge successfully undermine[d] the factual allegations in the operative complaint purporting to give rise to standing." *Id.*

Sutter's Rule 12(b)(1) Motion is on all fours with these decisions. It asks the Court to recognize that the factual predicate for all of Plaintiff's claims did not happen, i.e., the Abridge platform was not used during Plaintiff's alleged visits. A fact for which Plaintiff has offered *no* contrary evidence.

Instead, Plaintiff's opposition simply cites to *Bowen*, to contend that Sutter's requested relief is inappropriate at the pleading stage because it asks the Court to resolve an issue that is intertwined with the merits of her claims. Opp. at 4-8. Plaintiff's argument is incorrect as discussed in detail in Sec. II.A.3, *infra*. To be clear, the 12(b)(1) Motion is *not* asking the Court to decide whether Sutter's use of the Abridge platform complied with the law. Nor is the Motion asking the Court to resolve



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

contested questions regarding consent or the substantive elements of Plaintiff's claims. Sutter's Motion relies on undisputed evidence and asks the Court to conclude that the events giving rise to Plaintiff's claims never happened. That has been recognized as an appropriate use of a factual attack under Rule 12(b)(1) by numerous courts in this district, including by this Court. *See, e.g., Foster*, 2017 WL 264390, at *1-4; *Williams*, 498 F. Supp. 3d at 1195-97; *Gonzalez*, 2023 WL 8101923, at *4.

It should come as no surprise that Plaintiff's Opposition cites to no case law that could support her argument. Indeed, were Plaintiff's argument valid, Article III standing could never be challenged through a factual attack under Rule 12(b)(1). Following Plaintiff's reasoning, it would *always* be inappropriate to allow a factual attack under Rule 12(b)(1) for the simple reason that granting the motion would result in dismissal. But as shown by the decisions above, that is not the law. There is no merit to Plaintiff's argument. Sutter's factual attack under Rule 12(b)(1) is well-grounded and should be granted as set forth in the Motion and herein.

**2. There Is No Genuine Factual Dispute to Justify Denying Sutter's Motion Because Plaintiff Has Failed to Carry Her Burden to Submit Evidence**

Once a defendant mounts a factual attack with supporting evidence under Rule 12(b)(1), the plaintiff cannot rest on the operative complaint's allegations. Opp. at 4; *see Foster*, 2017 WL 264390, at *1 (where a defendant uses declarations to bring a factual challenge under Rule 12(b)(1), the burden shifts to plaintiff who "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."); *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (where standing is challenged through evidence, plaintiffs must "present affidavits or any other evidence necessary to satisfy [their] burden."). The non-moving party must offer "competing evidence" that can go towards establishing Article III standing. Opp. at 5; *see also Foster*, 2017 WL 264390, at *1. Even Plaintiff's Opposition acknowledges this, as it repeatedly states that courts deny factual attacks under Rule 12(b)(1) only when there is "***competing evidence*** bearing on Article III injury." Opp. at 5 (emphasis added). Plaintiff has nonetheless failed to provide any evidence at all.

Here, Sutter submitted evidence in the form of sworn declarations to support its arguments. Sutter's evidence shows that Plaintiff's visits to Sutter facilities as alleged in the SAC were telephonic visits with clinicians, and that none of the personnel that Plaintiff met with during those visits had a

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

license to use the Abridge platform. Those sworn facts undermine the central premise of the SAC, i.e., that Plaintiff participated in an *in-person* clinical visit on the dates she alleges and was subject to recording using the Abridge platform. SAC ¶¶ 32-35. Sutter's evidence shows the Abridge platform was not, and could not have been, used during Plaintiff's alleged visits. That evidence is undisputed, which shifts the evidentiary burden to Plaintiff. *See Bowen*, 118 F.4th at 1142 ("[O]nce a defendant has contested the truth of the plaintiff['s] factual allegations, the plaintiff has the burden to ***support [her] jurisdictional allegations with competent proof***.") (emphasis added) (quotations omitted).

Instead of submitting evidence on the issue of Article III standing, Plaintiff's Opposition is comprised entirely of legal arguments and citations to the SAC. Opp. at 6-8. Plaintiff, for example, asserts legal arguments about traceability and redressability on the assumption that allegations are sufficient in the context of this Motion. Opp. at 23-24. But those are distractions; the issue is whether the Abridge platform was used at all.[1] What matters is that there is no declaration from Plaintiff, and the Opposition provides no basis for excusing Plaintiff from having to submit such evidence. That is telling. *See Williams*, 498 F. Supp. 3d at 1197 (rejecting plaintiffs' bare arguments in connection with a factual attack under Rule 12(b)(1), where "[p]laintiffs have not explained why they need discovery to uncover facts that are within their control: facts regarding their own devices and experiences").

Plaintiff's failure to provide evidence is also, unto itself, fatal to all of her claims, and her bare legal arguments cannot save the SAC. For example, her arguments that Sutter should have to provide more evidence, including internal records, should be rejected. Those are nothing more than thinly-veiled attempts to distract from Plaintiff's own failings. Sutter has submitted declarations, sworn under penalty of perjury, stating that the medical personnel Plaintiff saw during the visits alleged in the SAC could not have used the Abridge platform. Mot. at 4. Plaintiff's suggestion that Sutter would have to produce "logs" to prove the negative, i.e., the absence of data about Plaintiff, is unsupported by any law. The evidence submitted by Sutter is sufficient to carry Sutter's burden at this stage and is no different than evidence this Court found sufficient to grant a factual attack under Rule 12(b)(1) in *Gonzalez*, where the defendant submitted a declaration, "attest[ing] under penalty of perjury that

---

[1] It goes without saying that there can be no traceability or redressability where Abridge was not used.

according to Defendant's records, the product [plaintiff] allegedly purchased in 2019 or 2020 was not shipped to any U.S. retailer until *2021,* such that [plaintiff] could 'not possibl[y]' have purchased the product at issue in the manner alleged in the FAC." 2023 WL 8101923, at *4. What matters here is that there is no "competing evidence" to stave off Sutter's factual attack. Plaintiff has failed to carry her burden, and the Motion should be granted for this reason alone. *See Bowen*, 118 F.4th at 1142-43; *Foster*, 2017 WL 264390, at *3.

#### 3. ***Bowen* Does Not Support Plaintiff's Arguments**

Plaintiff's Opposition repeatedly argues the circumstances here are just like *Bowen*, where a factual attack under Rule 12(b)(1) failed. Plaintiff's reliance on *Bowen* is misplaced for two reasons.

First, the plaintiff in *Bowen* did something that Plaintiff here has not done—submit competing evidence concerning the factual issue the court was asked to resolve. *Bowen*, 118 F.4th at 1139. In *Bowen,* both parties submitted evidence on the disputed issue of whether an ingredient in the defendant's product posed health risks, and whether in light of potential health risks, the defendant's advertising of the product was accurate. *Id.* The Ninth Circuit recognized that, under those circumstances, the district court could not resolve the parties' factual dispute at the pleading stage. *Id.* Doing so would determine the ultimate merits question underlying plaintiff's false advertising claims. *Id.* That is not the circumstance here, where Plaintiff has failed to submit any competing evidence.

Second, the issue presented in Sutter's Motion is not an ultimate merits question. *Id.* at 1143-44. Whether the Abridge platform was used during the Plaintiff's alleged visits with Sutter personnel is not the same question as whether using the Abridge platform complied with applicable law. In this Motion, Sutter does not ask the Court to determine whether Sutter's use of the Abridge platform could or did violate CIPA, ECPA, CMIA, or any common-law privacy doctrine. Sutter's Motion here asks the Court only to resolve an Article III standing issue—whether Plaintiff can maintain her claims when they are predicated on an alleged use of the Abridge platform that, in reality, did not happen.

The outcome in *Bowen* was driven by markedly different and distinguishable facts from those before the Court here. Sutter's Motion is premised on undisputed evidence and should be granted.

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

### 4. Plaintiff Is Not Entitled to Any Jurisdictional Discovery

Perhaps recognizing that she has failed to carry her evidentiary burden, Plaintiff requests broad swaths of purported jurisdictional discovery. Opp. at 6-8. That request should be denied in light of Plaintiff's failure to present *any* conflicting evidence of her own; for example, contesting that her visits alleged in the SAC were anything other than telephonic.

It is black-letter law that "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). And "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (quotations omitted). These principles have been applied with equal force in the context of Rule 12(b)(1) motions. Plaintiffs cannot file a complaint and then seek discovery to sort out whether they have standing. *See Alghusain v. Webb*, 2025 WL 1643791, at *10 (N.D. Cal. June 10, 2025) (denying request for discovery in granting Rule 12(b)(1) facial challenge).

Those principles are further consistent with the general rule that, "[t]o obtain jurisdictional discovery, a [party] must show more than a 'hunch' that discovery might yield jurisdictionally relevant facts." *Am. Fed. of Teachers v. DeVos*, 484 F. Supp. 3d 731, 748 (N.D. Cal. 2020) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). A party seeking jurisdictional discovery fails to clear that "hunch" threshold where they do not explain what may exist that would establish jurisdiction, or why they believe those materials exist. *See id.* (granting Rule 12(b)(1) motion while denying jurisdictional discovery); *see also De Sousa v. Director of USCIS*, 755 F. Supp. 3d 1266, 1276 (N.D. Cal. 2024) (denying jurisdictional discovery where plaintiffs merely asserted it would be "likely" to reveal facts supporting standing, but provided no evidence substantiating the request or explaining with precision how the requested discovery will establish jurisdiction). A court can deny a request for jurisdictional discovery "when it is clear that the further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," or where the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Luna v. FAC US LLC*, 2020 WL 3605554, at *7 (N.D. Cal. July 2, 2020) (denying jurisdictional discovery where "Defendants simply posit that '[n]arrowly tailored, targeted interrogatories and/or requests for admission regarding

Plaintiff's *alleged damages* should be sufficient to elicit evidence that Stevens Creek is a sham defendant.'") (citations omitted).

Here, Plaintiff relies on nothing more than a "hunch." She asks for sweeping categories of records (Opp. at 7), but does not explain how those records could help her or what she anticipates finding that could go towards Article III standing. She also provides no evidence suggesting Sutter has materials that could establish her Article III standing. Perhaps best illustrating the frivolity of her request for jurisdictional discovery is her demand that Sutter provide logs from the Abridge platform to show that Plaintiff's alleged visits were not recorded. How could there be logs in the Abridge platform of an event that never involved Abridge? Plaintiff's request for broad swaths of documents which could reveal medical information of *other* patients but not her own, is not only inappropriate, but is at odds with the very privacy rights Plaintiff purports to be championing by bringing this action.

Plaintiff's criticisms of the sworn declarations submitted by Sutter fare no better. Plaintiff argues that the declarations are insufficient because they rely on Sutter's business records.[2] Courts in this district routinely consider similar declarations in resolving factual Rule 12(b)(1) challenges, including where, as here, the declaration relies on internal records to directly address whether the conduct on which all claims are predicated actually happened. *See, e.g., Foster*, 2017 WL 264390, at *2; *Gonzalez*, 2023 WL 8101923, at *4. Plaintiff has not provided any argument or any evidence that could validly call into question the facts set forth in Sutter's sworn evidence. Put simply, Plaintiff seeks permission to go fishing. That is insufficient to obtain any jurisdictional discovery. *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022). Her request should be denied.

**B. Plaintiff Identifies No Injury Closely Analogous to Intrusion Upon Seclusion[3]**

Even if Plaintiff could overcome her evidentiary deficiencies discussed above, Plaintiff's standing theory fails for still more, independent reasons. For one, the injury she alleges is not sufficiently analogous to intrusion upon seclusion or any other historically recognized privacy tort to

---

[2] Plaintiff also attacks a strawman, purportedly taking issue with the phrase "may have spoken to Plaintiff" in the Carkhuff declaration. Opp. at 8. Plaintiff badly misreads that out of context. The sentence clearly means that, of all personnel who could have possibly interacted with Plaintiff during the alleged visits, none had an Abridge license. Mot. at 1-2, 12-13.

[3] For the reasons described in Section II.A, Plaintiff's allegations are not reflective of reality and her claims should be dismissed as the result of a factual 12(b)(1) motion. However, the remainder of this brief assumes that Plaintiff's allegations are true as otherwise required in a facial 12(b)(1) motion.

satisfy Article III. Mot. at 13-21. Throughout the Opposition, Plaintiff nonetheless repeatedly recasts her alleged injury broadly as the "unauthorized acquisition" of sensitive medical information. Opp. at 10, 22. That is precisely the mode of analysis rejected by both *TransUnion* and *Popa*.

As the Ninth Circuit recently explained, Article III does not permit courts to compare alleged injuries to common-law privacy torts "at a high level of generality." *Popa*, 153 F.4th at 792. Rather, courts must examine the plaintiff's actual circumstances and compare the specific conduct alleged to the substantive features of the asserted common-law analogue. *Id.* at 792-93. The Opposition largely ignores that instruction and instead focuses on inapposite distinctions, i.e., *Popa* involving a pet-supply website while this case concerns medical information. Opp. at 10. The Opposition misses the point.

The significance of *Popa* is its instruction for how courts must apply *TransUnion*. The Ninth Circuit expressly rejected the practice of invoking broad privacy concepts untethered from the actual alleged conduct, and instead directed courts to evaluate whether the plaintiff's specific circumstances resemble the substantive elements of the historical tort she invokes. That requirement applies here.

The relevant circumstances here are not in dispute. The SAC alleges Plaintiff: intentionally communicated with her healthcare provider; expected her visit would be documented; personally observed microphone-enabled equipment; was told the equipment was used for transcription or note-taking; continued the encounter after receiving that information; understood that relevant information would be incorporated into her medical record; and that Sutter used a HIPAA-regulated business associate to assist with clinical documentation. Opp. at 12; SAC ¶¶ 34-35, 77. Plaintiff's Opposition concedes that these facts "matter" and expressly states that she "does not deny them." Opp. at 12.

The Opposition's concessions end the historical-analogue inquiry in Sutter's favor. Plaintiff's allegations bear no resemblance to the type of conduct historically captured by intrusion upon seclusion. As explained in the Motion, that tort traditionally involved unwanted prying, secret surveillance, eavesdropping by outsiders, or invasion into a private zone from which the defendant was excluded. *See* Mot. at 15-20.

The scenario alleged by Plaintiff does *not* entail any of that. What Plaintiff alleges is that she expected her visit would be documented, that she was told it would be transcribed, and that she still continued with the visit. That lacks the substantive characteristics of intrusion upon seclusion that



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Popa* requires courts to examine, and Plaintiff's Opposition cites to no common-law privacy case remotely resembling her own allegations.

Perhaps realizing she cannot outrun her own allegations, the Opposition presents a strawman. It focuses on issues beyond Article III standing that are irrelevant in the context of Sutter's Rule 12(b)(1) Motion; namely, whether Plaintiff provided consent, the scope of disclosure, and statutory liability. Opp. at 14-16. Those issues go to the merits of Plaintiff's claims and are analytically different from the relevant inquiry here, which is whether under Article III Plaintiff had a reasonable expectation of privacy in not having the Abridge platform used when her own allegations admit that she was shown a microphone-enabled device and told it would be used to transcribe the encounter.

For purposes of the historical-analogue inquiry required by *TransUnion* and *Popa*, medical patients have long expected a wide variety of documentation methods to be used in connection with their visits. Mot. at 18. That is even more true here, where Plaintiff claims to have seen a recording device, was told the device was used for transcription, and continued with the encounter. Plaintiff, in light of widely held expectations around documentation during medical visits and the even more granular disclosures alleged here, cannot plausibly claim that she suffered the kind of surprise intrusion or secret surveillance that is historically associated with intrusion upon seclusion.

### 1. Plaintiff Misapprehends Sutter's Reliance on the NPP and BAA

A recurring flaw in Plaintiff's Opposition is her insistence on reframing Sutter's argument on the 12(b)(1) Motion as one about whether or not Plaintiff consented to the alleged use of Abridge during her visits. *See* Opp. at 12-17. It is not.[4] For purposes of this Motion, Sutter does not contend that the NPP or BAA establish legally effective consent. Nor does Sutter contend for the purposes of this standing challenge that the NPP independently defeats liability as a matter of law. Plaintiff has thus spent considerable time rebutting an argument that Sutter never made in its 12(b)(1) Motion.

The NPP and BAA are relevant to this Motion because they bear directly on the reasonableness of Plaintiff's claimed expectation of privacy. The NPP and BAA bear on whether the alleged injury resembles intrusion upon seclusion. Sutter's point in this regard is straightforward. Plaintiff

---

[4] Sutter does make an implied consent argument in its separate, 12(b)(6) Motion. Rule 12(b)(6) Mot. at Sec. V.D.1.

acknowledged Sutter's NPP on three separate occasions before the encounters alleged in the SAC. Mot. at 7-8. The NPP expressly informs patients, including Plaintiff, that Sutter utilizes business associates in performing certain functions, including in providing transcription-related services and handling medical information. Mot. at 7; Opp. at 15-16.

The BAA meanwhile demonstrates that Abridge was not an independent outsider accessing patient information for its own purposes. The BAA shows that Abridge operated as a HIPAA-regulated business associate, performing services on Sutter's behalf pursuant to contractual restrictions governing its handling of patient information. Mot. at 9.

Sutter's point in this Motion is that the NPP and BAA further show the circumstances pleaded in the SAC do *not* resemble the type of secluded zone or surprise intrusion traditionally protected by the common law. Plaintiff knew clinical care documentation, including transcription of her visit, could occur, and that third-party service providers (such as Abridge) may be used to perform those functions. Plaintiff knew healthcare personnel would handle her information. Those are expressly called out in the NPP, which Plaintiff acknowledged. It is of no import that Abridge is not identified by name in the NPP, and Plaintiff's Opposition cites no authority finding otherwise. The allegations here simply preclude Plaintiff's attempt to analogize the alleged conduct to the common law concept of intrusion upon seclusion.

For the same reason, Plaintiff's reliance on *Calhoun v. Google, LLC* and consent-focused cases misses the mark. 113 F.4th 1141 (9th Cir. 2024). Whether Plaintiff consented for purposes of CIPA, ECPA, or any other claim is a question subject to Sutter's 12(b)(6) Motion. Plaintiff's arguments around consent here are a red herring.

**2. Plaintiff's Authorities Are Inapposite, As They Involve Unauthorized Outsiders; Not Authorized Service Providers Performing the Function for Which the Information Was Disclosed**

The common thread running through the authorities cited in Plaintiff's Opposition is that the allegedly offending party lacked authority to obtain the information, stood outside the intended communication, or acquired the information for purposes unrelated to the reason it was provided.

In *Campbell v. Facebook, Inc.*, for example, then-Facebook allegedly intercepted private



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

messages, extracted URLs contained within those messages, and used that information for its own purposes without users having any idea Facebook was engaging in that conduct. 951 F.3d 1106, 1112 (9th Cir. 2020); Opp. at 9. Similarly, *Jones v. Ford Motor Co.* involved allegations that Ford's infotainment system automatically downloaded and permanently stored plaintiffs' private text messages and call logs without their knowledge or consent. 85 F.4th 570, 573-74 (9th Cir. 2023); Opp. at 9-10. *Nayab v. Capital One Bank* is further afield still. There, the alleged injury arose because a third party obtained plaintiff's credit report for a purpose not authorized by statute. 942 F.3d 480, 492-93 (9th Cir. 2019). The privacy injury flowed from the unauthorized nature of the access.

The Opposition's reliance on *Shulman* underscores how different the circumstances are here. In *Shulman*, the alleged intrusion arose when television producers recorded an accident victim during emergency rescue efforts and later inside a medical helicopter for purposes of a television program. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 211 (1998). The alleged eavesdropper was a media company, and the alleged purpose behind the recording was for public broadcast and entertainment. The plaintiffs there had no reason to expect that television producers would be recording their emergency medical treatment for later dissemination.

Here, Plaintiff alleges that she saw the recording device, was told its function, and proceeded with the encounter. Plaintiff intentionally provided information to her healthcare provider, and the allegedly additional recipient (Abridge) was a service provider engaged to assist in documenting the very information Plaintiff disclosed, with Plaintiff's knowledge.

These distinctions matter. Abridge was not a stranger to the communication. It was not alleged to be acting for its own independent purposes. It was not obtaining information it had no right to access. Rather, Abridge functioned as Sutter's business associate pursuant to a BAA in providing clinical documentation services subject to HIPAA restrictions and contractual limitations. Mot. at 8-10. The SAC does not allege otherwise. As a result, the alleged surreptitious interceptions of private communications in the authorities cited by Plaintiff bear little resemblance to a patient knowingly communicating with a healthcare provider who uses a business associate to assist with documenting the encounter and where there is a complete absence of allegations that the information was misused.

Extending *Shulman* to the facts here puts an even finer point on this. Certainly, a patient may

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

reasonably expect that a television production company will not secretly record her medical treatment for later broadcasting. That is the holding in *Shulman*. But it does not follow that the same patient has a valid expectation that her treating healthcare providers and the service providers assisting them in clinical documentation will not record and transcribe their communications made for the very purpose of diagnosis and treatment. Plaintiff's attempt to equate such fundamentally different circumstances highlights how far removed her allegations are from the historical intrusion recognized in *Shulman*.

The Opposition's authorities simply do not establish that a healthcare provider commits a historically analogous intrusion merely by using a restricted service provider to assist with the healthcare function for which the information was provided.

**3. *Otter* Is Inapposite and Cannot Rescue Plaintiff's Theory of Standing**

Plaintiff's reliance on *In re Otter.ai Privacy Litigation* is similarly misplaced. Opp. at 11. Although Plaintiff portrays *Otter* as involving materially identical conduct, the allegations and context are fundamentally different from those presented here. *In re Otter.ai Privacy Litig.*, No. 25-cv-06911-EKL, Dkt. 68. In *Otter*, the court emphasized allegations that Otter's AI assistant joined virtual meetings without participants' knowledge, recorded and transcribed conversations without participants' consent, retained conversations and voiceprints, and used them for Otter's own commercial purposes, including training its speech-recognition and machine-learning models. *Id.* at 1-2. That court also repeatedly emphasized allegations that plaintiffs did not know their conversations were being recorded and reasonably expected those conversations to remain confidential. *Id.* at 4-5.

Those circumstances bear little resemblance to the SAC. Again, Plaintiff alleges that she observed microphone-enabled equipment, was told it was being used for transcription, expected clinical documentation, continued with the encounter, and acknowledged Sutter's NPP, which expressly stated that third parties would be used for transcription purposes. Opp. at 12. Unlike the plaintiffs in *Otter*, Plaintiff does not allege that recording occurred without her knowledge.

Nor was Abridge alleged to be acting in the manner in *Otter*. There, the standing analysis turned on allegations that Otter independently retained and exploited conversations and voiceprints for its own commercial purposes. *Otter*, Dkt. 68 at 1-2. Here, by contrast, Abridge is alleged to have functioned as Sutter's business associate in performing clinical documentation services on Sutter's

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

behalf. Plaintiff does not allege Abridge was an independent participant obtaining information for unrelated purposes nor does she allege that Abridge used information for any impermissible purpose.

At bottom, *Otter* and this case share one meaningful similarity: both involve AI-assisted transcription technology. That is not enough. Under *Popa*, the Court must examine the specific circumstances of the alleged injury and compare them to the historical tort. Here, Plaintiff alleges that she knew recording was occurring, knew documentation would occur, knew third parties could assist in that process, and nevertheless proceeded. Those allegations do not resemble the type of secret recording or outsider eavesdropping that historically supported claims for intrusion upon seclusion. Nor does *Otter* support the broader proposition Plaintiff needs it to support: that use of an AI-assisted transcription tool, without disclosure of the specific AI vendor, constitutes a concrete privacy injury.

**4. Plaintiff's Arguments Regarding Standing Under the UCL Also Fail**

Plaintiff's Opposition argues she has sufficiently established UCL standing. Opp. at 22. Plaintiff's argument fails for the same reasons set forth in Sutter's reply brief in support of its Rule 12(b)(6) Motion, Sec. V.E.1 at 21-22, which Sutter hereby expressly incorporates herein by reference.

**C. Leave To Amend and File a Fourth Complaint Is Not Appropriate**

Plaintiff is already on her third complaint, and there is no basis for giving Plaintiff a chance to file a *fourth*. Indeed, a district court does not abuse its discretion in denying leave to amend where "any further amendment to the complaint would likely prove futile." *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990). A "district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). These are the circumstances before the Court, where Plaintiff—despite already twice amending after having seen Sutter's previous Rule 12(b)(1) Motion—has made no showing that she can possibly establish Article III standing in a fourth complaint. Leave should be denied. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (failure to correct deficiencies in SAC "a strong indication that the plaintiffs have no additional facts to plead.")

**III. <u>CONCLUSION</u>**

For the reasons above and as set forth in the Motion, all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing, without leave to amend.

Dated: September 16, 2026

Respectfully submitted,

**MCDERMOTT WILL & SCHULTE LLP**

By: */s/ J. Jonathan Hawk*

J. JONATHAN HAWK
ARI R. SWAZER
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

DAVID P. SAUNDERS (*pro hac vice*)
dsaunders@mcdermottlaw.com
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

*Attorneys for Defendant*
SUTTER HEALTH