J. Jonathan Hawk (254350)
jhawk@mcdermottlaw.com
Arianna R. Swazer (359884)
aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

David P. Saunders (Admitted *pro hac vice)*
dsaunders@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

Attorneys for Defendant Sutter Health

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHRISTINA WASHINGTON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

SUTTER HEALTH, a California nonprofit corporation; and DOES 1-100, inclusive,

Defendants.

CASE NO. 4:26-cv-03012

**DEFENDANT SUTTER HEALTH'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 32) PURSUANT TO FED. R. CIV. P. 12(B)(6)**

| | |
|---|---|
| Date: | October 8, 2026 |
| Time: | 2:00 p.m. PT |
| Courtroom: | Courtroom 2, 4th Floor (Oakland) |
| Judge: | Haywood S. Gilliam, Jr. |

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff's Opposition Confirms That Her Intrusion Upon Seclusion Claim Fails ..... 2

1. Plaintiff Lacked a Reasonable Expectation of Privacy ..... 2

2. Plaintiff Cannot Identify an Intentional Intrusion ..... 3

3. The Opposition Confirms That No "Highly Offensive" Conduct Occurred ..... 4

B. Plaintiff's Opposition Confirms That She Cannot Plead a CMIA Claim ..... 5

1. The Disclosure of Medical Records to Abridge Is Authorized Under CMIA ..... 5

2. Plaintiff Cannot Identify Any Improper Disclosure of Medical Information ..... 6

C. Plaintiff's Opposition Confirms That Her ECPA Claim Fails ..... 6

D. Plaintiff's Opposition Confirms That Her Section 632 Claim Fails ..... 7

1. Plaintiff Cannot Plead a "Confidential Communication" or Recast Abridge as a Secret Third-Party Listener ..... 7

2. Plaintiff Consented to the Recording ..... 9

3. Plaintiff's Construction Creates Statutory Conflict ..... 10

E. Plaintiff's Opposition Confirms That Her UCL Claim Fails ..... 12

1. Plaintiff Lacks Statutory Standing ..... 12

2. Plaintiff Fails to Plead a Claim Under Any UCL Prong ..... 12

a. Legally Authorized Conduct Cannot Support a UCL Claim ..... 12

b. No Unfair Conduct Supports a UCL Claim ..... 13

c. Plaintiff Cannot Meet Rule 9(b)'s Heightened Pleading Standard for Fraudulent Conduct ..... 14

F. Leave to Amend Should Not Be Granted ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anglin v. Pratti*,
643 F. Supp. 3d 1077 (E.D. Cal. 2022)....................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................6

*Bartholomew v. Parking Concepts, Inc.*,
118 Cal. App. 5th 438 (1st Dist. 2026)....................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)....................13

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................6

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012)....................11

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)....................11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)....................14

*Elk Grove Answering Serv. v. Hoggatt*,
2010 WL 4723720 (E.D. Cal. Nov. 15, 2010)....................8

*Enigma Software Grp. USA LLC v. Malwarebytes Inc.*,
2024 WL 2883671 (N.D. Cal. June 6, 2024)....................2

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020)....................3, 4

*Fair v. Experian Info. Sols., Inc.*,
2017 WL 3085425 (N.D. Cal. July 20, 2017)....................15

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)....................7

*Goodman v. Kennedy*,
18 Cal. 3d 335 (1976)....................14



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................5

*Graham v. Bank of Am.*, 226 Cal. App. 4th 594 (2014) ....................13

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................3, 4, 8

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................2

*Harrott v. County of Kings*, 25 Cal. 4th 1138 (2001) ....................11

*Ingram v. City of San Francisco Police Dep't*, 2013 WL 3961137 (N.D. Cal. July 29, 2013) ....................15

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................5

*Javier v. Assurance IQ, LLC*, 56 F.4th 1173 (9th Cir. 2022) ....................10

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ....................8

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ....................14

*Kristensen v. Credit One Bank, N.A.*, 2016 WL 11757832 (C.D. Cal. July 11, 2016) ....................9

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) ....................12

*Lazar v. Super. Ct.*, 12 Cal. 4th 631 (1996) ....................14

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................5

*Luminate Home Loans, Inc. v. Better Mortg. Co.*, 2026 WL 102686 (S.D. Cal. Jan. 14, 2026) ....................14

*Maghen v. Quicken Loans Inc.*, 680 F. App'x 554 (9th Cir. 2017) ....................9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008) ....................6

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Miller v. Bank of Am., N.A.*,
2016 WL 1573447 (S.D. Cal. Apr. 19, 2016) ..... 15

*Moledina v. Marriott International, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ..... 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ..... 4

*Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv. Inc.*,
795 F.2d 1501 (9th Cir. 1986) ..... 9

*Robinson v. Meta Platforms, Inc.*,
No. 26-cv-1616-CRB, Dkt. 36 (Sept. 15, 2026) ..... 9

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ..... 3

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) ..... 9

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ..... 4

*Sanchez-Scott v. Alza Pharms.*,
86 Cal. App. 4th 365 (2001) ..... 3

*Sanders v. Am. Broad. Cos., Inc.*,
20 Cal. 4th 907 (1999) ..... 2

*Saridakis v. United Airlines*,
166 F.3d 1272 (9th Cir. 1999) ..... 11

*Schneider v. California Department of Corrections*,
151 F.3d 1194 (9th Cir. 1998) ..... 10

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ..... 2, 4

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ..... 9

*Suchard v. Sonoma Acad.*,
109 Cal. App. 5th 1089 (1st Dist. 2025) ..... 12

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ..... 8

*United States v. Hall*,
419 F.3d 980 (9th Cir. 2005) ..... 3



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................14

*White v. FIA Card Servs., N.A.*,
2013 WL 756292 (S.D. Cal. Feb. 26, 2013) ....................9

*White v. Soc. Sec. Admin.*,
111 F. Supp. 3d 1041 (N.D. Cal. 2015) ....................2

*Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*,
2018 WL 6018504 (S.D. Cal. Nov. 16, 2018) ....................7

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................4

**Statutes**

18 U.S.C. § 2511(2)(d) ....................6, 7

Cal. Civ. Code § 56.10(c)(3) ....................5, 10, 11

Cal. Penal Code § 632(c) ....................7, 8

**Other Authorities**

45 C.F.R. § 164.502 ....................10

45 C.F.R. § 164.504 ....................6

45 C.F.R. § 164.506 ....................10

Fed. R. Civ. P. 8 ....................7

Fed. R. Civ. P. 9(b) ....................14

Fed. R. Civ. P. 12(b)(6) ....................1

Fed. R. Evid. 201(b) ....................2

Transcribe, Merriam-Webster, https://www.merriam-webster.com/dictionary/transcribe (last visited Sept. 15, 2026) ....................3

## I. INTRODUCTION

Plaintiff admits that she expected her clinical visit to be documented, that she knew her visit was being recorded, that a doctor explained the purpose of the recording, that Sutter's NPP expressly disclosed the use of third-party business associates for record transcription, *and* that with all of this knowledge, she continued to receive healthcare from Sutter providers on multiple occasions. *See* Second Amended Complaint ("SAC") ¶ 6 (p. 2); ECF No. 39, Opposition to Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) ("Opp.") at 1. These admissions doom each and every one of her claims.

Plaintiff can claim no surprise, deceit, or invasion of her privacy. And so Plaintiff pivots and now argues that she has a legal basis for her claims because Sutter did not expressly identify the use of Abridge, by name, to Plaintiff. No law requires Sutter to do so, and Plaintiff cites none. Consider another, well-known context: when a customer calls a call center, the message is that the call may be recorded for quality assurance purposes. The caller is not informed by which technology the call is being recorded. Similarly here, Plaintiff knew she was being recorded, was informed that third parties were used for that purpose, and continued to receive care on multiple occasions.

Against this backdrop, the Opposition takes to arguing against strawmen, avoiding controlling law, and attempting to amend Plaintiff's claims through briefing. Ultimately, none of that is successful. The intrusion upon seclusion claim fails because Plaintiff did not have a legally recognizable expectation of privacy under the circumstances; there was no intrusion because Sutter was a party to the communication; and there was no "highly offensive" conduct. Plaintiff all but concedes her CMIA claim, admitting that the statute authorizes the disclosure of medical information to Abridge. Because Plaintiff admits that the one-party exception applies and offers no justification for the Court to depart from that rule, Plaintiff also concedes her ECPA claim. The CIPA claim fails because Plaintiff cannot identify any "confidential communication," and she pleads facts foreclosing any argument that Abridge was a secret third-party eavesdropper. Finally, the UCL claim fails because the conduct at issue was legally authorized and the SAC falls well short of pleading fraud. Having had multiple opportunities to replead, including with the benefit of having seen Sutter's motion to dismiss arguments once before, Plaintiff's claims should be dismissed with prejudice.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## II. ARGUMENT[1]

### A. Plaintiff's Opposition Confirms That Her Intrusion Upon Seclusion Claim Fails

#### 1. Plaintiff Lacked a Reasonable Expectation of Privacy

In its Motion, ECF No. 36 at 8–11, Sutter explained why Plaintiff cannot meet the "high bar for an invasion of privacy claim." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015). Plaintiff admits that she expected her encounter to be documented, that "she personally observed a provider use microphone enabled electronic equipment while she spoke," and that her "provider described the equipment as being used for transcription or for taking notes." SAC ¶¶ 6 (p. 2), 13 (p. 7). She also acknowledges that Sutter's publicly-available NPP "says that business associates may perform services such as 'transcribing your medical record.'" Opp. at 1–2 (quoting NPP at 7).[2] She thus had notice of the very practice about which she now complains, but elected to proceed with *multiple* appointments. There is no protectable expectation of privacy under those circumstances. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (no expectation of privacy when the plaintiff "should know" about a recording practice but still participates in it).

Recognizing these fatal and uncontested truths, Plaintiff's Opposition narrows her claim to be *exclusively* about the fact that she did not know the *particular technology* in use. Opp. at 4. Yet, Plaintiff cannot cite a single authority supporting a similar theory. She instead relies on cases involving news reporters, outside salesmen, and undisclosed internet tracking. *See Sanders v. Am. Broad. Cos., Inc.*, 20 Cal. 4th 907, 923 (1999) (covert recording by journalist for news story could be invasion of privacy); *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998) (patient had a

[1] For purposes of this Reply, Sutter treats as true the allegations in the SAC. However, as described in Sutter's 12(b)(1) Motion, Sutter contests and does not admit to any of the allegations in the SAC.

[2] Plaintiff does not dispute that the Court can consider the NPP under the incorporation-by-reference doctrine in ruling on Sutter's Motion, or that it can take judicial notice of the document pursuant to Fed. R. Evid. 201(b). Opp. at 16; *see also* ECF No. 36-1, Sutter's RJN. Plaintiff admits that the NPP is "authentic," does not challenge its existence or the accuracy of any of its contents, and does not dispute that all versions of the NPP submitted to the Court contain the same language regarding Sutter's use of business associates. Opp. at 16–17. Plaintiff instead argues about the interpretation, sufficiency, and scope of the NPP. *Id.* But these are arguments about its *legal effect*—questions of law that do not prevent the Court from deeming the NPP incorporated by reference (or taking judicial notice of it). *Cf. Enigma Software Grp. USA LLC v. Malwarebytes Inc.*, 2024 WL 2883671, at *4 (N.D. Cal. June 6, 2024).

reasonable expectation of privacy from "reporters and photographers" witnessing and recording medical encounter to create a news report); *Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 376 (2001) (presence of a "drug salesman" in a medical examination room could be deemed an invasion of privacy); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (whether Facebook tracked logged out users). None of these cases are like the situation here.

Plaintiff's allegations make clear that (i) she knew about the recording, SAC ¶¶ 6 (p. 2), 21; (ii) the recording was explained to her, *id.* ¶ 6; (iii) Sutter's NPP informed her that business associates would be used for transcription, *id.* ¶¶ 56, 81; NPP at 7; and that (iv) the Abridge program was used exclusively for that purpose. SAC ¶¶ 6 (p. 2), 13–15 (p. 7–8). These facts are nothing like the purposeful, covert intrusions in the cases cited by Plaintiff. At the end of the day, Abridge was a program used for a specific purpose—transcription, which is defined as "to make a copy of (dictated or recorded matter) in longhand or on a machine (such as a computer)"[3]—*i.e.*, turning speech into writing; there is no allegation that the Abridge platform did anything other than what it was employed to do. Those circumstances are more akin to the use of a visible tape recorder, which courts have held does *not* lead to an invasion of privacy. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (use of a tool like a "tape recorder" is not an act of eavesdropping); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (1975) ("a recording [with a tape recorder] made by a participant does not intercept the message while it is in transit"). The same should hold true here.

The routine, generally accepted, and commonly known nature of medical transcription further highlights the absence of any reasonable expectation of privacy here. Courts have repeatedly recognized that it is commonplace for healthcare providers to document discussions with patients during clinical visits. *See, e.g.*, *United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005); *Anglin v. Pratti*, 643 F. Supp. 3d 1077, 1083–84 (E.D. Cal. 2022).

**2. Plaintiff Cannot Identify an Intentional Intrusion**

Plaintiff misunderstands Sutter's argument regarding intentional intrusion. Sutter does not merely contend that it did not "intend" to intrude. *See* Opp. at 5. Rather, as a matter of law, there was

---

[3] Transcribe, Merriam-Webster, https://www.merriam-webster.com/dictionary/transcribe (last visited Sept. 15, 2026).



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

no intrusion at all. ECF No. 36 at 11. In Opposition, Plaintiff fails to address the central legal principle that "there can be no intrusion into communications to which defendant was a party," and Plaintiff concedes that Sutter was a party to her communications. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) ("Because Plaintiff voluntarily shared her information with Defendant, there was no intrusion"); SAC ¶¶ 32–33. Because Sutter was a party to any alleged communication with Plaintiff, it could not have intruded on that conversation. ECF No. 36 at 11. Sutter's alleged use of Abridge does not change that result. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (no invasion where third party was "merely a tool that was used to record its own communications with plaintiff"); *Graham*, 533 F. Supp. 3d at 832 (third party used to collect data for internal purposes was not an intruder). Abridge acted as an extension of Sutter, performing a function that Sutter otherwise would have performed. *Graham*, 533 F. Supp. 3d at 832 (third-party vendor was "an extension of" the defendant because it "provide[d] a tool" that allowed the defendant "to record and analyze its own data in aid of [its] business"). As a result, there was no actionable intrusion as a matter of law.

**3. The Opposition Confirms That No "Highly Offensive" Conduct Occurred**

In its Motion, Sutter argued that the circumstances alleged in the SAC do not and cannot rise to the level of "highly offensive" conduct necessary to support an intrusion upon seclusion claim. Plaintiff knew about the recording, had been told—and saw with her own eyes—that it was occurring, and Sutter's NPP explained the use of third parties for that purpose. *See* ECF No. 36 at 11–13.

In opposition, Plaintiff concedes that Sutter's "asserted clinical purpose may be relevant" and that she "does not allege that efficient documentation is offensive." Opp. at 6. That should be the end of things. However, Plaintiff continues that the use of "an undisclosed system" was the offensive part and tries to liken this action to *Shulman* and *In re Facebook*. *Id*. As discussed above, both of those cases are readily distinguishable, as they involved the recording of information by a third party for its own purposes; allegations wholly absent from the SAC.

In relying on these distinguishable authorities, Plaintiff once again attempts to dodge the applicable legal standard. As explained in Sutter's Motion, to be "highly offensive," an intrusion must

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

represent an "egregious breach of the social norms." *Saedi*, 2025 WL 1141168, at *6. To make that evaluation, courts consider the setting of the alleged intrusion as well as the purpose of the alleged intrusion. ECF No. 36 at 12. The SAC answers both queries. There is nothing in the SAC that alleges that Abridge was used for *any other purpose* than transcribing clinical visits to start a medical note, and the purpose of the Abridge program was to *improve* patient care. *Id.* at 12–13. Plaintiff's Opposition does nothing to rebut the fact that courts have found other kinds of data collections to not meet the high standard necessary to support a legal intrusion claim. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser history to third parties was *not* highly offensive); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was *not* highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (similar).

### B. Plaintiff's Opposition Confirms That She Cannot Plead a CMIA Claim

#### 1. The Disclosure of Medical Records to Abridge Is Authorized Under CMIA

Plaintiff concedes Sutter "has a substantial defense" under Section 56.10(c)(3) "if Abridge did nothing more than process medical information for clinical documentation" under § 56.10(c)(3). Opp. at 10. The SAC alleges exactly that: "The platform captures the substance of what both the patient and physician say, converts the recorded speech into text, and applies artificial intelligence models to generate structured clinical documentation." SAC ¶ 13. There is no allegation anywhere in the SAC that Abridge did anything more. And as explained in Sutter's Motion, this type of disclosure of medical information to a third party is *expressly* permitted by CMIA Section 56.10(c)(3), which allows the "information . . . [to] be disclosed to a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care or health care service plans." ECF No. 36 at 13. That should be the beginning and end of Plaintiff's CMIA claim.

In an attempt to salvage the claim, Plaintiff now argues Abridge *might* process personal data to train its models. Opp. at 10. However, even assuming *arguendo* that is true (which Sutter does not concede), Plaintiff acknowledges Abridge could only do so in compliance with "applicable customer agreements and BAAs." *Id.* BAAs, however, limit the use of data by business associates for their

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

own purposes. 45 C.F.R. § 164.504(e)(2)(i); (e)(2)(ii)(A). As a result, work performed subject to a BAA necessarily falls within the ambit of disclosures permitted under CMIA Section 56.10(c)(3).

Plaintiff next argues that her Section 56.101 claim should survive because a CMIA claim can be plausible if there is a "significant risk of unauthorized access or use." Opp. at 11. However, the SAC is entirely devoid of allegations that would support that claim. There are no allegations that Abridge did anything improper with patient data, that it was not securing the data, or literally any other allegations that could give rise to such risk. Even at the liberal pleading stage, after three attempts at pleading a claim, Plaintiff must do more than speculate as to a potential claim. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008).

**2. Plaintiff Cannot Identify Any Improper Disclosure of Medical Information**

Even if the disclosure of medical information to Abridge was not expressly permitted under CMIA, to plead a CMIA claim, Plaintiff must allege what *specific* information of hers was disclosed. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123–24 (S.D. Cal. 2023) (dismissing CMIA claim where allegations of disclosure were "conclusory and devoid of any factual support" and plaintiffs failed to identify what information they provided that was subsequently disclosed); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing where plaintiff failed to allege "what, if any medical information or medical records were transmitted or disclosed"); ECF No. 36 at 14–15. This is information in Plaintiff's possession, as she has access to her own medical record—or could have gained access to it pre-Complaint. Yet, the best Plaintiff can muster is generic labels of health information in a single paragraph of the SAC that *might* have been recorded. *See* SAC ¶ 9 (p. 2). The Opposition declares this enough, but that's not what *Cousin* and *B.K.* say. Identifying broad categories of information that *might* have been discussed in a medical visit does not establish what medical information of Plaintiff's was allegedly disclosed. ECF No. 36 at 14–15.

**C. Plaintiff's Opposition Confirms That Her ECPA Claim Fails**

Plaintiff concedes her ECPA claim fails. Opp. at 12–13. Section 2511(2)(d) permits a party to a communication to record the conversation unless that party records for an independent criminal or tortious purpose. ECF No. 36 at 15. Plaintiff acknowledges this "imposes a serious limitation on Plaintiff's federal theory." Opp. at 13. She also "does not contend that Abridge's nonparty status

alone defeats section 2511(2)(d), or that an alleged CIPA violation by itself triggers the tortious-purpose proviso." *Id.* Instead, Plaintiff argues discovery might uncover an acquisition "outside the timing or scope of any actual party consent." *Id.* But "[p]laintiff's request to engage in discovery to then be able to state a plausible claim for relief puts the cart before the horse." *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*, 2018 WL 6018504, at *17 (S.D. Cal. Nov. 16, 2018). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Plaintiff attempts to save her ECPA claim by citing paragraph 47 of the SAC and arguing that Plaintiff may not know all of the information that Abridge obtained about Plaintiff. Opp. at 13. But that is beside the point. The information that Abridge may have obtained would not somehow ascribe some tortious intent to Sutter in using the program. 18 U.S.C. § 2511(2)(d) (providing that ECPA's crime-tort exception applies when a "communication is intercepted *for the purpose* of committing any criminal or tortious act") (emphasis added). Ultimately, the SAC is devoid of *any* allegations that would provide any basis for a departure from the one-party consent standard under ECPA.

### D. Plaintiff's Opposition Confirms That Her Section 632 Claim Fails

#### 1. Plaintiff Cannot Plead a "Confidential Communication" or Recast Abridge as a Secret Third-Party Listener

"A conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002). Section 632 excludes from the definition of "confidential communication" circumstances in which parties "may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c); *see also* ECF No. 36 at 17–18. The SAC makes clear not only that Plaintiff had a reasonable expectation that she was being recorded, but that she *knew* she was being recorded. Plaintiff alleges that she "personally observed a provider use microphone enabled electronic equipment while she spoke." SAC ¶ 6 (p. 2). She also alleges that "[t]he provider described the equipment as being used for transcription or for taking notes." *Id.* And she bases her allegation that Abridge operated during the encounter on her "direct observation that a microphone-enabled device was capturing speech while the provider described the process as

transcription or note-taking." *Id.* ¶ 8 (p. 2). In these circumstances, "[b]y definition, Plaintiffs cannot assert their conversations were supposed to be confined and personal under [CIPA]." *Elk Grove Answering Serv. v. Hoggatt*, 2010 WL 4723720, at *2 (E.D. Cal. Nov. 15, 2010).

In opposition, Plaintiff argues that because she did not know that the recording was being performed by a third party, she nonetheless had a reasonable basis for assuming confidentiality. Opp. at 7. That is not the standard under Section 632(c). Under the plain language of that section, a "confidential communication" excludes circumstances in which "parties to the communication may reasonably expect that the communication may be overheard or recorded." Here, there is no dispute that Plaintiff *knew* she was being recorded. What she quibbles with is the name of the company that did the recording, which is legally immaterial under Section 632(c). Plaintiff's awareness of the recording means that Plaintiff was not engaged in a "confidential communication" under CIPA.

For example, in *Kearney v. Salomon Smith Barney, Inc.*, a case cited by Plaintiff in her Opposition, the California Supreme Court explained that "[a] business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate" Section 632. 39 Cal. 4th 95, 118 (2006); Opp. at 7, 9. Section 632 does not require a business to identify the recording vendor, explain the recording technology, disclose where the recording will be sent, or describe the software's technical architecture. Notice of the recording is sufficient to defeat a claim under Section 632, and based on the SAC's own allegations, there can be no doubt that Plaintiff had not only notice, but knowledge of the recording.

Plaintiff's effort to recast Abridge as an "undisclosed electronic listener" fares no better. The SAC alleges "Sutter Health, through the authorized user operating the Abridge integrated workflow, intentionally activated an electronic recording function." SAC ¶ 78. It does not allege Abridge independently entered the encounter, listened without Sutter's direction, or used the communication for purposes unrelated to Sutter's clinical-documentation workflow. Abridge acted as Sutter's business associate, providing services at Sutter's direction. *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182–83 (N.D. Cal. 2024) (distinguishing "an independent third party hired to eavesdrop" from software used to record a participant's own communications); *Graham*, 533 F. Supp. 3d at 832–33 (a software provider was an extension of its client when it supplied a tool for recording).



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**2. Plaintiff Consented to the Recording**

In its Motion, Sutter argued that Plaintiff's exchange with her provider regarding the recording of her clinical visit plus the Sutter NPP meant Plaintiff's voluntary election to proceed receiving care demonstrated her consent to being recorded. ECF No. 36 at 16–17. Sutter's NPP tells patients: "There are some services provided in our organization through contracts with business associates. Examples include transcribing your medical record[.]" ECF No. 36 at 16 (quoting NPP at 7). Courts have rejected Section 632 claims where the defendant's terms gave notice of the challenged practice and the plaintiff continued the relationship. *See White v. FIA Card Servs., N.A.*, 2013 WL 756292, at *5 (S.D. Cal. Feb. 26, 2013); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 877 (2023).

The Opposition argues that consent presents a fact question because Plaintiff did not know every detail of Abridge's operation. Opp. at 7–9. But Section 632 asks whether Plaintiff consented to the recording, not whether she gave informed consent to a vendor's technical specifications. California courts recognize that "[a] party's awareness that he or she is being recorded may establish that the party impliedly consented to the recording." *Kristensen v. Credit One Bank, N.A.*, 2016 WL 11757832, at *5 (C.D. Cal. July 11, 2016); *see also Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv. Inc.*, 795 F.2d 1501, 1505 (9th Cir. 1986) ("A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it."); *see also Robinson v. Meta Platforms, Inc.*, No. 26-cv-1616-CRB, Dkt. 36 at 6 (Sept. 15, 2026) (rejecting plaintiff's argument that platform provider's terms did not obtain consent because they did not use the word "voiceprint;" recognizing that "a contractual term is not ambiguous just because it is broad" and the platform provider's terms did adequately secure consent).

Plaintiff pleads facts establishing awareness. She saw the microphone-enabled equipment while she spoke, her provider explained that the equipment served a transcription or note-taking function, and she continued the encounter. SAC ¶¶ 6, 8 (p. 2). This is sufficient to defeat her CIPA claim. *See Maghen v. Quicken Loans Inc.*, 680 F. App'x 554, 556 (9th Cir. 2017) (affirming dismissal where the plaintiff was informed that the call was recorded and continued speaking); *Kristensen*, 2016 WL 11757832, at *5 (holding that awareness of recording may establish implied consent); *Moledina*

*v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 952–53 (C.D. Cal. 2022) (finding implied consent where the plaintiff continued participating after receiving notice of recording).

Plaintiff's reliance on *Javier v. Assurance IQ, LLC*, 56 F.4th 1173 (9th Cir. 2022), does not change that result. Plaintiff invokes *Javier* for the proposition that consent obtained after an interception begins cannot retroactively authorize an earlier interception. Opp. at 8. But the SAC never alleges that Abridge captured Plaintiff's communication before the provider activated Abridge or before Plaintiff observed the microphone-enabled equipment capturing speech. Instead, it alleges that the provider "activated the Abridge platform, causing [Plaintiff's] live oral communications . . . to be acquired." SAC ¶ 45. Plaintiff cannot manufacture a Section 632 claim by alluding to a possible timing defect in her Opposition that her SAC does not plead. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Ultimately: (i) Plaintiff knew she was being recorded and (ii) continued with her clinical visit. SAC ¶¶ 6, 34. Taken together, those facts doom her CIPA claim.

**3. Plaintiff's Construction Creates Statutory Conflict**

In its Motion, Sutter argued that the CMIA expressly allows a healthcare provider to disclose medical information to "a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care." Cal. Civ. Code § 56.10(c)(3). HIPAA likewise permits covered entities to use business associates for treatment and healthcare operations without obtaining separate patient authorization for each disclosure. *See* 45 C.F.R. §§ 164.502(a)(1)(vi), (e), 164.506(a)–(c). In other words, both statutes express a legislative choice to allow medical providers to disclose information to a narrow group of third parties engaged in the provision of medical care *without* consent of the patient. ECF No. 36 at 19–20. The decision to permit these disclosures represents a legislative balancing between patient privacy and the practical realities of modern healthcare, which relies on the sharing and disclosure of patient information to a variety of different third parties. The legislative choices made by the California legislature, Congress, and the Department of Health and Human Services reflect the reality that obtaining consent in these narrow circumstances could negatively impact the delivery of healthcare.

Plaintiff nonetheless argues that her reading of CIPA can coexist with HIPAA and CMIA





MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

because Sutter could obtain additional consent before using a business associate to perform an audio recording during a clinical visit. Opp. at 9. That response proves Sutter's point: Plaintiff would make all-party consent a prerequisite to conduct that CMIA expressly permits without patient authorization. It cannot be *both* that Sutter can disclose information to "a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care or health care service plans" without consent *and* that Sutter must also get consent based on the method of the disclosure. Cal. Civ. Code § 56.10(c)(3). Because the California legislature has determined that it is beneficial for healthcare providers to disclose information to certain, limited third parties participating in the provision of healthcare services, the Court ought not criminalize that same conduct. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.").[4]

At minimum, this conflict regarding when consent is required creates ambiguity triggering lenity, given CIPA is a criminal statute. ECF No. 36 at 20–21. Plaintiff calls lenity a "last resort." Opp. at 9. Sutter invokes it for just that reason: if ordinary interpretive principles leave any doubt about whether Section 632 criminalizes a healthcare provider's disclosure of health information to its service providers when providing medical care, California law requires the more narrow construction. "[W]hen the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001). Courts apply that rule "even when the statute is being invoked in a civil action." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025).

Plaintiff asks the Court to extend a criminal eavesdropping statute to a patient who was told about, and then watched, microphone-enabled equipment capture her speech for transcription, heard her provider describe that function, and continued the encounter, all because Plaintiff alleges she did

---

[4] While true that HIPAA allows for more restrictive state statutes, Opp. at 9, there are limits to the conflicts that state laws can create. As Sutter's Motion explained, where a state law would frustrate a purpose of HIPAA, it is preempted. ECF No. 36 at 20; *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999) ("State law is preempted when it conflicts with federal law[.]"). Here, Plaintiff's reading of CIPA would do exactly that by introducing a barrier to an expressly permitted disclosure under HIPAA. ECF No. 36 at 19–20.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

not know the transcription platform's identity or technical architecture. Neither Section 632's text nor Plaintiff's authorities support that approach, and if there were any doubt, lenity counsels against it.

**E. Plaintiff's Opposition Confirms That Her UCL Claim Fails**

**1. Plaintiff Lacks Statutory Standing**

To have standing to pursue a UCL claim in California, the plaintiff must have actually suffered out-of-pocket loss. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011); ECF No. 36 at 21–22. Plaintiff concedes that this leads to "a legitimate proof issue" as to whether she has standing, but nonetheless argues that her payment for medical services satisfies this standing requirement. Opp. at 14. That's not what the SAC says, however. The SAC alleges only that Plaintiff paid for medical services she would not have purchased had she known Abridge would be used. SAC ¶¶ 108–10. It fails to allege that Sutter's use of Abridge caused her to pay a premium, receive services worth less than what she paid, or obtain less than what she bargained for; any one of which could support UCL standing. *See Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438, 451 (1st Dist. 2026) (rejecting UCL claim alleging that plaintiff "would not have paid for parking at the Garage had he known his . . . information would be collected").

The use of Abridge may have been "material" to Plaintiff's decision to transact with Sutter, but Plaintiff does not allege that she ever informed Sutter of that, further undermining her standing. *See Suchard v. Sonoma Acad.*, 109 Cal. App. 5th 1089, 1100 (1st Dist. 2025) (finding no economic injury because "there is no allegation [defendant] provided [plaintiff] with anything but the education for which plaintiffs bargained" because plaintiffs failed to "discuss[] with defendant, when they were transacting over tuition, their assumption" as to what their payment would include).

Having failed to identify any payment beyond that for the medical services she acknowledges receiving, and having failed to allege that she told Sutter that not using recording technology was a material consideration for her, Plaintiff cannot establish standing for UCL purposes.

**2. Plaintiff Fails to Plead a Claim Under Any UCL Prong**

**a. Legally Authorized Conduct Cannot Support a UCL Claim**

Lawful conduct—such as the disclosure of medical information permitted under CMIA and HIPAA—forecloses any UCL claim. ECF No. 36 at 22. Plaintiff concedes that her unlawful prong

claim rises and falls with her CMIA and CIPA claims, such that if they fail (which they do), the UCL claim fails too. Opp. at 14. Plaintiff nonetheless argues that because no law expressly permits the "contemporaneous acquisition of a live confidential conversation," her UCL claim survives. *Id*. at 15. That is a recasting of Plaintiff's own claim. The SAC alleges that "Sutter Health's acts and practices are 'unlawful' under the UCL because they violate CIPA, the CMIA, and other statutes and regulations designed to protect the privacy and confidentiality of medical information." SAC ¶ 100. The SAC does not claim that the recording of a live conversation is "unlawful"; it exclusively points to a violation of CIPA and CMIA. Here, because Sutter only disclosed information to Abridge as permitted under CMIA and HIPAA, and because Plaintiff's CMIA and CIPA claims fail, there is no unlawful conduct that could support a UCL claim. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) (where the Legislature "has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination").

**b. No Unfair Conduct Supports a UCL Claim**

Plaintiff still fails to identify any unfair conduct, which requires an act that offends an established public policy in a manner tethered to an underlying constitutional, statutory, or regulatory provision, or that threatens an incipient violation of, or otherwise violates the policy or spirit of, such law. *See Graham v. Bank of Am.*, 226 Cal. App. 4th 594, 613 (2014); ECF No. 36 at 23. Plaintiff makes no effort to identify any such conduct by Sutter. Instead, she concedes that "ambient documentation may have utility." Opp. at 15. Plaintiff, however, goes on to argue that the "unfairness lies in obtaining [the] benefit of [ambient documentation] through the alleged undisclosed acquisition of the underlying conversation." *Id*. But that's simply not what happened here according to the SAC.

Plaintiff *knew* she was being recorded, and Sutter's NPP expressly informed her that third parties would be used for "transcription." *See supra*, Secs. II.A.1, II.A.3, II.D.1. Even if Plaintiff takes issue with the detail of disclosures she received, she fails to point to an underlying constitutional, statutory, or regulatory violation. ECF No. 36 at 23. And even still, if she had, courts evaluating "unfair" UCL claims balance the utility of the challenged practice against the potential harm. Plaintiff argues that Sutter cannot "assum[e] away" any harms in the balancing test, but that is not what Sutter did in its Motion. Opp. at 15. It argued that because patients *expect* to have medical encounters





MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

recorded, and given the unquestioned utility of the Abridge program, balancing here favors the conclusion that there was no unfair conduct that could support a UCL claim. ECF No. 36 at 23–24.

**c. Plaintiff Cannot Meet Rule 9(b)'s Heightened Pleading Standard for Fraudulent Conduct**

Plaintiff argues that her SAC satisfies the "who, what, when, where, and how" Rule 9(b) requires. Opp. at 15–16. Not so. From her Opposition, it appears the sole "omission" upon which she bases her fraudulent conduct claim is the allegation that her provider did not inform her that a third party program was being used for the recording that she otherwise was aware was occurring. *Id.* at 16. Pleading a fraud claim, however, requires pleading an *intent* to defraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).

Even if Plaintiff's allegations were sufficient to meet the other pleading requirements of a fraud claim (which they are not for the reasons set forth in Sutter's Motion, *see* ECF No. 36 at 24), there is nothing in the SAC that comes close to alleging a fraudulent intent by Plaintiff's provider, let alone one that could be attributable to Sutter. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014) (requiring plaintiff allege fraudulent intent); *Luminate Home Loans, Inc. v. Better Mortg. Co.*, 2026 WL 102686, at *17 (S.D. Cal. Jan. 14, 2026) (requiring a fraud claim against a corporation include, among other things, a showing that the person who made the misrepresentation had the "authority to speak for the corporation"); *Lazar*, 12 Cal. 4th at 638 ("A plaintiff's burden for asserting a fraud claim against an employer is even greater."). These are not "backend facts" that are "impossible to plead" as Plaintiff contends, Opp. at 16; they are Rule 9(b) pleading requirements that Plaintiff entirely fails to meet. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (intent is an "indispensable" element of fraud).

At best, Plaintiff alleged she was not informed of a piece of information that she subjectively would have found material in her decision to obtain treatment. That is not the basis for a fraud claim. *See Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976) ("[i]nsufficient facts are alleged to establish that defendant knew the materiality of the omitted matters or that they were inaccessible to plaintiffs").

**F. Leave to Amend Should Not Be Granted**

Three is the number of strikes before a baseball player is out. It is also the number of times



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff has pleaded her complaint. She has had three opportunities—including *twice* with the benefit of Sutter's original motion to dismiss arguments—to change, augment, tweak, or otherwise alter her allegations against Sutter. Having failed to come forward with factual allegations sufficient to support her claims after three attempts, Plaintiff ought not be given leave to file a *fourth* complaint. *See Miller v. Bank of Am., N.A.,* 2016 WL 1573447, at *1, 3 (S.D. Cal. Apr. 19, 2016) (dismissing amended complaint with prejudice because "Defendants' prior motions afforded [] notice of the deficiencies in [Plaintiff's] complaint, which Plaintiff failed to cure through amendment"); *Fair v. Experian Info. Sols., Inc.*, 2017 WL 3085425, at *2 (N.D. Cal. July 20, 2017) (dismissing with prejudice based on plaintiff's "repeated failure to cure deficiencies" after a prior opportunity to amend); *Ingram v. City of S.F. Police Dep't*, 2013 WL 3961137, at *3 (N.D. Cal. July 29, 2013) (dismissing with prejudice where plaintiff "failed to cure the defects in his complaint despite two rounds of amendments").

## III. CONCLUSION

For the foregoing reasons and those in Sutter's opening Motion (ECF No. 36), all of Plaintiff's claims should be dismissed with prejudice.

Dated: September 16, 2026

Respectfully submitted,

**MCDERMOTT WILL & SCHULTE LLP**

By: */s/ J. Jonathan Hawk*

J. JONATHAN HAWK
ARIANNA R. SWAZER
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

David P. Saunders (Admitted *pro hac vice*)
dsaunders@mcdermottlaw.com
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Facsimile: +1 312 984 7700

*Attorneys for Defendant*
SUTTER HEALTH